Joshua B. Swigart, Esq. (SBN: 225557)
josh@westcoastlitigation.com
Robert L. Hyde, Esq. (SBN: 227183)
bob@westcoastlitigation.com
**Hyde & Swigart**
411 Camino Del Rio South, Suite 301
San Diego, CA 92108-3551
Telephone:      (619) 233-7770
Facsimile:      (619) 297-1022

Douglas J. Campion (SBN 75381)
doug@djcampion.com
**Law Offices of Douglas J. Campion**
409 Camino Del Rio South, Suite 303
San Diego, CA 92108

Attorneys for the Plaintiffs and Proposed
Settlement Class

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Patricia Connor**, Individually and on Behalf of All Others Similarly Situated<br><br>                              Plaintiffs,<br><br>v.<br><br>**JPMorgan Chase Bank and Federal National Mortgage Association a/k/a Fannie Mae,**<br><br>                              Defendants. | **Case No.: 10-CV-1284 DMS(BGS) CLASS ACTION**<br><br>**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS; MEMORANDUM OF POINTS AND AUTHORITIES INS UPORT THEREOF**<br><br><br>**THE HON. DANA M. SABRAW COURTROOM 10 (2ND. FL.)** |

//

//

//

**HYDE & SWIGART**<br>San Diego, California

# TABLE OF CONTENTS

I.     Introduction ...................................................................................................1

II.    Statement of Facts .......................................................................................2

     A. Factual Background ..................................................................................2

     B. Proceedings to Date .................................................................................3

III.   The Settlement .............................................................................................4

     A. The Settlement Class and Subclass .......................................................4

         1. The Settlement Class.................................................................4

         2. Subclass A Membership Determination ...................................4

     B. Settlement Payment .................................................................................5

     C. Monetary Award to Subclass A Members ..............................................6

     D. Non-Monetary Award to Class Members ...............................................7

     E. Class Notice .............................................................................................8

     F. Scope of Release .....................................................................................9

     G. Opportunity to Opt Out and Object .......................................................9

     H. Termination of Settlement ......................................................................9

     I.   Payment of Notice and Administrative Costs by Defendant .................9

     J.   Class Representatives' Application for Incentive Awards ...................10

     K. Class Counsel's Application for Attorneys' Fees, Costs, and Expenses ......................10

     L. *Cy Pres* Distribution ...............................................................................10

IV. Argument ........................................................................................................11

    A. Legal Standards for Preliminary Approval of a Class Action Settlement ..........................11

    B. The Proposed Settlement Is Fair, Reasonable and Adequate and Should Be Preliminarily

    Approved....................................................................................................13

         1. Liability is Highly Contested and Both Sides Face Significant Challenges in

          Litigating this Case ..........................................................................13

         2. Defendant's Agreement to Create a $9,000,000 Settlement Fund Provides a Fair

          and Substantial Benefit to the Class....................................................14

**HYDE & SWIGART**
San Diego, California

3. The Settlement Was Reached As the Result of Arms-Length Negotiation, Without Collusion, With the Assistance of the Court ........................................................15

4. Experienced Counsel Have Determined That the Settlement Is Appropriate and Fair to the Class .......................................................................................................16

C. The Court Should Preliminarily Certify the Class for Purposes of Settlement ...................17

1. The Proposed Class Is Numerous ...............................................................................17

2. The Commonality Requirement Is Satisfied, Because Common Questions of Law and Fact ExistLiability is Highly Contested and Both Sides Face Significant Challenges in Litigating this Case.........................................................................17

3. The Typicality Requirement Is Met ............................................................................18

4. The Adequacy Requirement is Satisfied .....................................................................18

5. Common Questions Predominate, Sufficient to Certify a Class for Settlement Purposes Only .........................................................................................................19

6. Class Treatment for Settlement Purposes is Superior to Individual Resolutions.....19

D. The Proposed Method of Class Notice Is Appropriate ........................................................21

E. The Court Should Appoint the Class Representatives and Appoint Class Counsel..............23

F. The Court Should Grant Leave to File a Second Amended Complaint ................................24

G. The Court Should Appoint Gilardi & Co. as the Claims Administrator ..............................25

H. A final Approval Hearing Should Be Scheduled  ................................................................25

V. Conclusion .....................................................................................................................................25

HYDE & SWIGART
San Diego, California

Unopposed Motion for Prelim.
Approval of Settlement                              ii                              10-CV-1284 DMS(BGS)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES

*Boyd v. Bechtel Corp.,* 485 F. Supp. 610, 622 (N.D. Cal. 1979)......................................13

*Elkins v. Equitable Life ins. of Iowa,* No. Civ A96-296-Civ-T-17B, 1998 WL 133741, at *20

(M.D. Fla. Jan. 27, 1998) ............................................................................................20

*Global Crossing Sec. and ERISA Litig.,* 225 F.R.D. 436, 460 (E.D. Pa. 2000) ...........14

*Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir. 1998)..............................*passim*

*Harris v. Palm Springs Alpine Estates, Inc.,* 329 F.2d 909. 913-14 (9th Cir. 1964)........17

*Kirkorian v. Borelli,* 695 F. Supp. 446 (N.D. Cal. 1988) ..............................................13

*Lerwill v. Inflight Motion Pictures, Inc.,* 582 F.2d 507, 512 (9th Cir. 1978) ..................24

*Linney v. Cellular Alaska P'ship,* 151 F.3d 1234, 1238 (9th Cir. 1998).........................13

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,* 244 F.3d 1152,

1162 (9th Cir. 2001) .....................................................................................................19

*Marshall v. Holiday Magic, Inc.,* 550 F.2d 1173, 1178 (9th Cir. 1977) ......................22

*Mego Finl'l Corp. Sec. Litig.,* 213 F. 3d 454, 459 (9th Cir. 2000) ...............................16

*Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950) ..................22

*National Rural Tele. Coop v. DIRECTV, Inc.,* 221 F.R.D. 523, 527 (C.D. Cal. 2004) ......14

*Officers for Justice v. Civil Service Comm'n,* 688 F.2d 615 (9th Cir. 1982) ...........11, 12

*Omnivision Tech., Inc.,* 559 F. Supp. 2d 1036 (N.D. Cal. jan. 9, 2008) .......................14

*Philadelphia Hous. Auth. v. Am Radiator & Standard Sanitary Copr.,* 323 f. Supp. 364, 372 (E.D.

Pa. 1970) ......................................................................................................................12

*Prudential Sec. Inc. Ltd. Partnerships Litig.,* 163 F.R.D. 200, 209 (S.D.N.Y. 1995) ..................11

*Strube v. Am. Equity Inv. Life Ins. Col.,* 226 F.R.D. 688, 697 (M.D. Fla. 2005) ..................20

*Torrisi v. Tucson Electric Power Co.,* 8 F.3d 1370, 1374-1375 (9th Cir. 1993) ...........22

*Utility Reform Project v. Bonneville Power Admin.,* 869 F.2d 437, 443 (9th Cir. 1989) ..............11

*Valentino v. Carter-Wallace,* 97 F.3d 1227, 1235-36 (9th Cir. 1996) ..........................20

*Wehner v. Syntex Corp.,* 117 F.RD. 641, 644 (N.D. Cal. 1987) ...................................18

*West Va. Chas. Pfizer & Co.,* 440 F.2d 1079, 1086 (2d Cir. 1971) ..............................12

*Wireless Facilities, Inc. Sec. Litig. II,* 253 F.R.D. 607, 610 (S.D. Cal. 2008) ..................16, 17, 18

**HYDE & SWIGART**
San Diego, California

*Zincser v. Accufix Research Institute, Inc.,* 253 F.3d 1188, 1189 (9th Cir. 2001) amended, 273 F.3d 1266 (9th Cir. 2001) ................................................................................................19

**SECONDARY AUTHORITIES**

*Moore's Federal Practice - Civil § 23.165[3] (3d ed.)* ...........................................................12, 22

*Manual for Complex litigation § 21.632, at 321 (4th ed. 2004)* ...................................................12

**HYDE & SWIGART**
San Diego, California

## I.    **INTRODUCTION**

Plaintiff Patricia Connor, ("Plaintiff"), and Plaintiff Sheri L. Bywater, (collectively "Plaintiffs"), submit this application for preliminary approval of a proposed settlement (the "Settlement") of this action (the "Litigation"), which is unopposed by defendants JPMorgan Chase Bank ("Chase" or "Defendant") and the Federal National Mortgage Association ("Fannie Mae") (collectively referred to as "Defendants").[1]  The terms of the Settlement are set forth in the Settlement Agreement and Release (hereinafter the "Agreement") filed as Exhibit A to the Declaration of Douglas J. Campion In Support of Preliminary Approval ("Campion Decl.").[2]  The Settlement also settles the later-filed case of *Bywater v. JPMorgan Chase Bank, N.A. and Chase Bank USA, N.A.*, Case No. CV 11 2257 (the "Bywater Action") filed in the Northern District of California, San Francisco / Oakland Division.  Because Connor and Chase had already reached a settlement in principle, and because Defendant desired a global settlement, and also because Plaintiff Bywater's complaint included essentially the same allegations on behalf of the same putative class, Bywater's counsel agreed to join this case and settle the Bywater Action by including it in the Connor settlement.   Agreement, § 1.02.

The proposed Settlement, which resulted from several Early Neutral Evaluation conferences with Magistrate Judge Skomal, informal discovery, and subsequent negotiations between the Parties, provides for a substantial financial benefit to the Class Members.  The Settlement would create a Settlement Fund to be paid by Chase in a maximum amount of $9,000,000.00 and a minimum amount of $7,000,000.00.   That Settlement Fund would be used to fund the settlement payments to Class Members, any incentive payments awarded to the named Plaintiffs, any attorneys' fees and costs awarded to Class Counsel, certain expenses, including notice and claims administration expenses, and if a limited number of claims are received, a *cy pres* distribution to one or more charitable organizations.  There is a sliding scale of possible settlement claim payments depending on the number of claims made, with a maximum payment of $500.00 and a minimum payment of $25.00, unless so many claims are submitted to exceed the maximum $9,000,000.00 less settlement costs, then each claimant would receive a pro rata award.

[1] Plaintiffs and Defendants are collectively referred to as the "Parties."

[2] Unless otherwise specified, defined terms used in this memorandum are intended to have the meaning ascribed to those terms in the Agreement.

HYDE & SWIGART
San Diego, California

In return for the Settlement Fund, Plaintiffs, on behalf of the proposed Settlement Class (the "Class"), will dismiss the Litigation and unconditionally release and discharge Defendants and other Released Parties from all claims relating to the Litigation.

While Plaintiffs are confident of a favorable determination on the merits, they have determined that the proposed Settlement provides significant benefits to the Class Members and is in the best interests of the Class.  Plaintiffs also believe that the Settlement is appropriate because Plaintiffs recognize the expense and amount of time required to continue to pursue the Litigation, as well as the uncertainty, risk, and difficulties of proof inherent in prosecuting such claims.

Similarly, as evidenced by the Agreement, Chase and Fannie Mae have stated  they have substantial and meritorious defenses to Plaintiffs' claims, but have determined that it is desirable to settle the Litigation on the terms set forth in the Agreement.

Accordingly, the Plaintiffs  move the Court for an order preliminarily approving the proposed Settlement, provisionally certifying the Class pursuant to Federal Rule of Civil Procedure 23(b)(3) ("Rule 23(b)(3)") for settlement purposes, directing dissemination of class notice, and scheduling a final approval hearing.  The motion is unopposed; Defendants will be filing a Statement of Non-Opposition to this motion at or near the filing date.  A proposed Preliminary Approval Order is filed as Exhibit 2 to the Agreement (Exhibit 1 to the Campion Decl.).    The proposed Settlement satisfies all of the criteria for preliminary approval.

## II.    STATEMENT OF FACTS

### A.    Factual Background

In the relevant time period, June 16, 2006 through June 15, 2011, [3]  Chase provided account servicing, collection and related services for its own home mortgages, as well as those previously serviced or owned by Chase Home Finance LLC, and accounts previously serviced or owned by Washington Mutual, certain assets of which were acquired by Chase during the relevant time period.  Chase also serviced or subserviced loans for EMC Mortgage starting July 1, 2009.  Chase also provides such account servicing for Fannie Mae relating to certain of its home mortgages.  In filing suit herein, Plaintiffs alleged that in its collection efforts Chase

---

[3]    The Class Period for all Class Members is June 16, 2006 to June 15, 2011, except for former EMC Mortgage customers whose loans were serviced or subserviced by Chase or Chase Home Finance LLL, and the Class Period for those borrowers is June 16, 2006 through July 7, 2011.  Agreement, §2.06.  The TCPA's statute of limitations period runs for four years preceding the filing of the original Complaint.

HYDE & SWIGART
San Diego, California

violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.,* ("TCPA") by calling cellular telephones of persons with those accounts without "prior express consent," using an "automatic telephone dialing system" and/or using an "artificial or prerecorded voice." Plaintiffs contend they are entitled to statutory damages pursuant to the TCPA. Chase and Fannie Mae have denied and continue to deny that they violated the TCPA, and deny all charges of wrongdoing or liability against them in the Action.

**B.      Proceedings to Date**

Plaintiff Patricia Connor filed the initial class action complaint on June 16, 2010 asserting claims under the TCPA. (Dkt. No. 1,) Plaintiff's counsel agreed to amend the complaint as a result Chase's informal challenge of the sufficiency of the Complaint and filed a First Amended Complaint on Sept. 10, 2010. (Dkt. No.17,) In the First Amended Complaint, Plaintiff Connor alleged the same causes of action, for negligent and intentional violations [4] of the TCPA, and based on those allegations, sought $500 per violation and injunctive relief. Plaintiff Connor's claims were brought on behalf of a class of individuals who received telephone calls from Chase during the Class Period, made to their cellular telephone using automatic telephone dialing systems or artificial or prerecorded voice technology. Defendants answered and denied all of the allegations and liability. (Dkt. Nos. 23, 24).

All Parties' counsel attended Early Neutral Evaluation Conferences presided over by Magistrate Judge Bernard G. Skomal. With Judge Skomal's guidance, progress was made toward informally determining the parameters of the Class, the number of calls made to persons on cellular phones during the proposed Class period, i.e., four years prior to June 16, 2010, and consequently the range of potential damages. Defendant Chase agreed to assemble the information and databases it would need to respond to those questions. Chase then provided much of that information informally to the Court and Plaintiff's counsel, both at and after subsequent hearings. Campion Decl., ¶4. When negotiations before the Court reached an impasse, the Parties then continued negotiations among themselves for several months. *Id.* Shortly thereafter the Parties settled this case. *Id.*

---

[4] Under the TCPA, a violation consists of a single call made that is prohibited under the statute.

**HYDE & SWIGART**
San Diego, California

### III.    THE SETTLEMENT

### A.  The Settlement Class and Subclass

#### 1.  The Settlement Class.

The terms "Settlement Class" or "Settlement Class Members" are defined in the Agreement as follows:

> %LThe "Settlement Class" or "Settlement Class Members" means all present or former borrowers or co-borrowers as identified in JPMCB's records whose residential mortgage loan or home equity line of credit is or was serviced or subserviced by JPMCB, or Chase Home Finance LLC and either the borrower, coborrower or both, were contacted on their cellular telephone(s) by JPMCB through the use of an automated dialer system and/or an artificial or pre-recorded voice during the Class Period.   Subclass A of the Settlement Class consists of those persons whose cell phones were actually called by JPMCB or Chase Home Finance LLC during the Class Period, and are thus entitled to a monetary payment.   Excluded from the Settlement Class are Defendants, their parent companies, affiliates or subsidiaries, or any employees thereof, and any entities in which any of such companies has a controlling interest, the Judge or Magistrate Judge to whom the Action is assigned and any member of those Judges' staffs and immediate families, as well as all persons who validly request exclusion from the Settlement Class.

Agreement § 2.16. [5]

#### 2.  Subclass A Membership Determination

Based on data contained in the Notice Database which was prepared using the information in Chase's records, the total number of Class Members in the Settlement Class that will be mailed personal direct mail Notice is 1,718,866. Campion Decl.  ¶¶ 5, 7; Declaration of Jeff Hansen in Support of Request for Preliminary Approval ("Hansen Decl."), ¶ 6  (Plaintiff's Information Technology consultant).   The Settlement Class members in Subclass A are  those persons with unique cell phone numbers actually called by Chase or its agents and number 1,181,441.  *Id.* Those numbers were confirmed by confirmatory discovery responses provided by

---

[5] The Parties have agreed that, with the Court's permission with Preliminary Approval of the Settlement, Plaintiff will file a Second Amended Complaint that includes a Class definition as set forth in the proposed Settlement, and adding the Bywater action the this case   Agreement, §1.02.

HYDE & SWIGART
San Diego, California

Chase.  Campion Decl., ¶ 8.  That information was also confirmed by review and investigation by Mr. Hansen.  Hansen Decl. ¶¶ 4, 5.  Thus, the Settlement Class not only includes those 1,181,441 persons called on their cell phones but also the other approximately 600,000 persons named as borrowers and co-borrowers on the accounts containing the called cell phone numbers. Agreement, §§ 2.16, 5.03, 10.01, 10.03, 11.01.  This is because Chase can determine from its records all their accounts which have at least one cell phone number associated with that account that was called during the Class Periods. But the records do not indicate which person on the account was called on that cell phone – but that person was either the borrower or co-borrower on that account.  Thus, all the persons associated with the accounts with cell phone numbers called – the borrowers or co-borrowers, usually spouses – are Class Members but only those persons whose cell phone numbers were actually called are in Subclass A and entitled to receive a monetary payment from the Settlement Fund.   If the Claims Administrator determines that cell phone number was not called, that person will not be entitled to file a claim for a monetary payment, but they will instead benefit from Chase's newly implemented procedures put in place because of this Action to ensure future compliance with the TCPA, and they will not receive future calls to their cell phone without prior express consent.  See Agreement, §§ 5.03, 5.04.

**B.   Settlement Payment**

Under the Settlement, Chase agrees to establish a Settlement Fund in an amount up to an all-inclusive maximum settlement amount of Nine Million Dollars ($9,000,000.00) into the Settlement Fund.  That Settlement Fund will include funds to pay the "Settlement Costs", i.e., 1) all Administrative Expenses, including expenses of providing Class Notice and claims administration, 2) all Taxes and tax-related expenses, 3) any incentive payments that the Court may award to the Class Representatives, and 4) any attorneys' fees, costs or expenses that the Court may award to Class Counsel.  Agreement, § 2.18.  That maximum payment is subject to the number of claims made and approved ("Approved Claims").  If the number of Approved Claims made total an amount that when added to the Settlement Costs is less than $7,000,000, that $7,000,000 is the minimum amount that Chase will be required to pay to fund the Settlement Fund.  Agreement, §§ 5.01, 5.02.  If the amount necessary to pay the Approved Claims and the Settlement Costs is less than $7,000,000, the difference between the sum of the Approved Claims

payments and the Settlement Costs  and the $7,000,000 minimum payment will be paid to a charity as a *cy pres*.  Agreement, § 5.01.  If the amount necessary to pay the Approved Claims and the Settlement Costs are more than $7,000,000, those amounts will be paid up to the $9,000,000 maximum amount agreed upon in the Agreement.  Agreement, § 5.02.

### C.  Monetary Award to Subclass A  Members

All of the approximately 1,715,866  persons associated with the accounts listing cell phone numbers called – the borrowers or co-borrowers, usually spouses – are Settlement Class members but only those members whose cell phone numbers were actually called are in Subclass A and entitled to receive a monetary payment from the Settlement Fund.  Agreement, §§ 10.01, 10.02.  If the Claims Administrator determines that cell phone number was not called, that person will not be entitled to file a claim for a monetary payment, but they will instead benefit from Chase's newly implemented procedures designed to prohibit the calling of a cell phone unless the mortgage loan servicing record is systematically coded to reflect the borrower's prior express consent to receive calls on his or her cell phone.  These procedures were largely developed and implemented after the *Connor* complaint was filed in June 2010.  *See* Agreement, §§ 2.16, 5.03, 5.04.

But those in Subclass A are entitled to make a claim for a monetary payment. There is a two tier payment system, with a minimum Settlement Fund payment of $7,000,000 and a maximum payment of $9,000,000.  If the amount of Approved Claims is such that no more than the minimum of the $7,000,000 floor is needed to pay all Approved Claims and Settlement Costs, the amount paid per Approved Claim shall be divided among the approved claimants on a *pro rat*a basis from the amount remaining after deducting the Settlement Costs from the $7,000,000, up to a maximum recovery of $500 per approved claim. Agreement, §§5.01-5.02.  If a sufficient number of Approved Claims are submitted so that their payment and the payment of Settlement Costs exceed the $7,000,000 minimum payment, such Approved Claims shall be paid at the $25.00 rate until the amount of Approved Claims and payment of the Settlement Costs equal $9,000,000.  If a sufficient number of Approved Claims are submitted such that the amount paid per claim on a *pro rata* basis is $25.00, then the Approved Claims shall all be paid $25.00 until, and if, a sufficient number of Approved Claims are received to exceed the maximum payout

amount of $9,000,000 after deducting the Settlement Costs.  If that occurs, all Approved Claims shall be paid a *pro rata* amount of the funds remaining of the $9,000,000 after the Settlement Costs are paid from the $9,000,000.  Agreement, §5.02.  In other words, while the Approved Claims could be paid any equal amount up to $500 each, no approved claim shall be paid less than $25.00 unless the amount of total Approved Claims and Settlement Costs exceed $9,000,000. If fewer Approved Claims are received to leave funds available in the $7,000,000 minimum Settlement Fund after all such Approved Claims are paid (capped at $500), and after Settlement Costs are paid from that $7,000,000 Settlement Fund, those remaining funds shall be paid to a *cy pres* recipient, subject to Court approval. Agreement, §§5.02.  Chase's  responsibility to pay any amounts in settlement shall not exceed the $9,000,000, and if the total amount of Approved Claims and Settlement Costs exceeds $7,000,000 but does not exceed $9,000,000, Defendants shall only be liable for such amount that is less than $9,000,000.

There is a 90 day Claims Period.  Agreement, §2.04. To submit a claim for monetary payment, a Settlement Class member must simply contact the Claims Administrator to determine if Chase's records indicate the claimant's cell phone was called and they are in Subclass A.  That will be done by either (a) calling their toll-free number; (b) contacting them online at the Settlement website; or (c) by submitting by mail a completed Claim Form downloaded from the Settlement website.  Agreement, §§10.02, 11.01.  In the case of a phone call or online inquiry, the Claims Administrator expects to determine whether the Class member is in Subclass A while the Class member is on the phone line or submitting the online information.  If the Claims Administrator determines the cell phone number was called, a claim for payment will be submitted at that time.  If an inquiry is made by mail, a claim for payment will be submitted immediately upon determining the cell phone number is on the list of called numbers, and the Class member will be notified, regardless of whether they are in Subclass A.

### D.  Non-Monetary Award to Class Members

If the Claims Administrator determines that a Class member's cell phone number was not called because it is not on the list of 1,181,441 called cell phone numbers, that person will not be entitled to file a claim for a monetary payment.   However, those persons also benefit from the Settlement because Chase put in place newly implemented procedures designed to prohibit the

calling of a cell phone unless the Settlement Class Member's mortgage loan servicing record is systematically coded to reflect the borrower's prior express consent to receive calls on his or her cell phone.  These procedures were largely developed and implemented after the *Connor* complaint was filed in June 2010.  Agreement, §§ 5.03, 5.04. [6]

### E.  **Class Notice**

Even though the expense of such notice is considerable, the Agreement provides that notice of the proposed Settlement will be mailed by the proposed Claims Administrator Gilardi & Co., LLC  to Class Members by direct mail post-card notice ("Direct Mail Notice") to all 1,718,866  persons in the Class.   See Agreement, Ex. 1 for that proposed notice.  That Notice summarizes the Settlement, instructs how to make a claim, opt out or object, and directs the recipient to a toll-free telephone number  and  a Settlement Website www.connorTCPAsettlement.com to learn the details of the Settlement. That website will also contain  a formal lengthy Notice in a Question & Answer format.   See Agreement, Ex. 4. Agreement §§ 9.01 through 9.04.     In addition, the Settlement Website and Toll-Free Number will permit Class Members to determine whether they are Subclass A Class Members and also to obtain information and a copy of the Agreement.  Agreement §§ 9.03 through 9.04; 10.01 through 10.03.

The Claims Administrator has the records from Chase listing the last known addresses for all of the 1,718,866 Class Members in order to mail  the Direct Mail Notice. Agreement, §2.17.   Because these accounts are all related to home mortgages or home equity loans, the addresses  are believed to have a high percentage of accuracy.    However, if any notices are returned by the U.S. Postal Service, the Claims Administrator will do a search for each such Notice and remail to a more current address, if one is found. Agreement, § 9.02.  Because there are social security numbers associated with each Class member, a search for a new address for a remail is expected to have a very high success rate.

---

[6]     If there is more than one Settlement Class member on the same account and they both receive the Direct Mail Notice, it is likely that they are spouses and that one of them -- either the borrower or the co-borrower --  on that account received a cell phone call.  Therefore, at least one of them will likely be able to submit a claim and receive a monetary payment.

HYDE & SWIGART
San Diego, California

### F. Scope of Release

The scope of the release by all Class Members (other than those who elect not to participate in the Settlement) tracks the scope of Plaintiffs' allegations in the original complaint and also in the proposed Second Amended Complaint relating to the prohibition against "the use of an 'automatic dialing system' or an 'artificial or prerecorded voice'" as used in the TCPA.[7] The release also covers known and unknown claims, including California Civil Code Section 1542 claims.  Agreement, § 16.01.

### G. Opportunity to Opt Out and Object

Under the terms of the proposed Settlement, Class members will have the right to opt out of the Settlement or to object to its terms.  Agreement §§ 12.01, 12.02.  The Direct Mail Notice, and the Q & A Notice on the Settlement Website and information available by calling the Toll-Free Number, will inform Class members of these rights.   See Agreement, Exhibits 1 and 4.

### H. Termination of Settlement

If more than ten percent (10% ) of the Class members submit valid Requests for Exclusion, then Chase, in its sole discretion, shall have the right to terminate the Settlement. Agreement §§12.01; 17.02.  If the Settlement is not finally approved by the Court or is materially modified in the course of approval proceedings, it will be void.  *Id.* at § 17.01 through 17.03.

### I. Payment of Notice and Administrative Costs by Defendant

The Agreement provides that the estimated costs of Direct Mail Notice and

---

[7]  "Released Claims" means any and all claims, causes of action, suits, obligations, debts, demands, agreements, promises, liabilities, damages, losses, controversies, costs, expenses, and attorneys' fees of any nature whatsoever, whether based on any federal law, state law, common law, territorial law, foreign law, contract, rule, regulation, any regulatory promulgation (including, but not limited to, any opinion or declaratory ruling), common law or equity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, punitive or compensatory as of the date of the Final Approval Order that arise out of or relate in any way to the use of an "automatic telephone dialing system" or an "artificial or prerecorded voice" (to the fullest extent that those terms are used, defined or interpreted by the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, relevant regulatory or administrative promulgations and case law) by any of the Released Parties to contact or attempt to contact Settlement Class Members including, but not limited to, claims under or for a violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, and any other statutory or common law claim arising from the use of automatic telephone dialing systems and/or an artificial or prerecorded voice, including any claim under any federal or state unfair and deceptive practices statutes, violations of any federal or state debt collection practices acts (including but not limited to, the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.*), invasion of privacy, conversion, breach of contract, unjust enrichment, specific performance and/or promissory estoppels.  Agreement, §  16.01. Unknown claims are also released.  *Id.*

HYDE & SWIGART
San Diego, California

establishing the claims administration procedures are to be deposited by Chase into the Settlement Fund Account administered by the Claims Administrator Gilardi & Co. within ten days after entry of the Preliminary Approval order.  Agreement §§ 8.01, 8.02.   The funds necessary to fund the Settlement, including the Approved Claims and Settlement Costs, will be paid within five days of the Effective Date and the amounts not paid for in advance will be billed  by itemized invoices and shall be billed and paid monthly.  Agreement §§ 8.02, 8.03.

### J.   Class Representatives' Application for Incentive Awards

The proposed Settlement contemplates that Class Counsel will request incentive awards in the aggregate amount of $5,000 to be distributed among the two Class Representatives as proposed by Class Counsel, subject to Court approval.  Agreement § 6.02.  Chase has agreed not to oppose a request for such incentive awards in the agreed-upon aggregate amount.  *Id.*

### K.   Class Counsel's Application for Attorneys' Fees, Costs, and Expenses

The proposed Settlement contemplates that Class Counsel shall be entitled to apply to the Court for an award of attorneys' fees, costs, and expenses to be paid from the Settlement Fund.  Agreement § 6.01.  Chase has agreed not to oppose an application by Class Counsel for an award of attorneys' fees up to $3,000,000, which represents one-third of the Settlement Fund Maximum Payment.  *Id.*  Class Counsel also intends to request that the  costs of litigation and any costs of Notice and Claims administration (presently estimated by Gilardi & Co. to be approximately $916,523, depending upon the number of claims submitted) be paid from the Settlement Fund.  *Id.*  Class Counsel intends to also ask for costs of litigation not to exceed $25,000, including approximately $20,000 for the services incurred by Hansen & Levey Forensics, Inc., for information technology consulting.   Campion Decl., ¶ 12. The attorneys' fees and costs application will be prepared solely by Connor Class Counsel, and any attorneys' fees and costs shall be paid to all counsel through the Connor Class Counsel. Agreement, §6.01.

### L.   *Cy Pres* Distribution

Under the terms of the Settlement, Chase shall pay at least a minimum payment of Approved Claims and of Settlement Costs of $7,000,000.00 and a maximum payment of $9,000,000.  If the aggregate amount of the payment of Approved Claims and Settlement Costs is less than $7,000,000.00 (the "Minimum Payment"), then a *Cy Pres* Distribution will be sought to

**HYDE & SWIGART**
San Diego, California

be awarded by the Court equal to the positive difference between the Minimum Payment and the aggregate amount of the Approved Claims and the Settlement Costs (the "*Cy Pres* Distribution"). Agreement §§ 5.01, 5.02.  If the Court approves the *Cy Pres* Distribution, the payment will be made within thirty days, or upon Court approval, to one or more non-profit charitable organizations with a purpose and intent that is  in accordance with case authority, to be suggested by Class Counsel, and agreed upon by defense counsel. Agreement, § 5.02, § 8.03.  If no agreement as to the recipient(s) is reached, then the Court shall decide.  Agreement, § 5.02.

## IV.   ARGUMENT

### A.   Legal Standards for Preliminary Approval of a Class Action Settlement

A class action may not be dismissed, compromised or settled without the approval of the court. Fed. R. Civ. Proc. 23(e).  Judicial proceedings under Rule 23 have led to a defined procedure and specific criteria for settlement approval in class action settlements, described in the *Manual for Complex Litigation* (Fourth) (Fed. Judicial Center 2004) ("*Manual*") § 21.63, *et seq.*, including preliminary approval, dissemination of notice to class members, and a fairness hearing. *Manual*, §§ 21.632, 21.633, 21.634.  The purpose of the Court's preliminary evaluation of the settlement is to determine whether it is within the "range of reasonableness," and thus whether notice to the class of the terms and conditions of the settlement, and the scheduling of a formal fairness hearing, are worthwhile.  *See* 4 Herbert B. Newberg, *Newberg on Class Actions* § 11.25 *et seq.*, and § 13.64 (4th ed. 2002 and Supp. 2004) ("*Newberg*").  The Court is not required to undertake an in-depth consideration of the relevant factors for final approval.  Instead, the "judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." *Manual*, § 21.632 (4th ed. 2004).

As a matter of public policy, settlement is a strongly favored method for resolving disputes. *See Utility Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989).  This is especially true in class actions such as this. *See Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615 (9th Cir. 1982).  As a result, courts should exercise their discretion to approve settlements "in recognition of the policy encouraging settlement of disputed claims." *In re Prudential Sec. Inc. Ltd. Partnerships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995).  To make

the preliminary fairness determination, courts may consider several relevant factors, including "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status through trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; [and] the experience and views of counsel . . . ."  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).  Furthermore, courts must give "proper deference to the private consensual decision of the parties," since "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."  *Id.* at 1027.

Preliminary approval does not require the Court to make a final determination that the settlement is fair, reasonable, and adequate.  Rather, that decision is made only at the final approval stage, after notice of the settlement has been given to the class members and they have had an opportunity to voice their views of the settlement or to exclude themselves from the settlement.  *See* 5 James Wm. Moore, *Moore's Federal Practice – Civil* § 23.165[3] (3d ed.).  Thus, in considering a potential settlement, the Court need not reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute, *West Va. v. Chas. Pfizer & Co.*, 440 F.2d 1079, 1086 (2d Cir. 1971), and need not engage in a trial on the merits, *Officers for Justice v. Civil Service Comm'n,* 688 F.2d at 625.  Preliminary approval is merely the prerequisite to giving notice so that "the proposed settlement . . . may be submitted to members of the prospective class for their acceptance or rejection."  *Philadelphia Hous. Auth. v. Am. Radiator & Standard Sanitary Corp.*, 323 F. Supp. 364, 372 (E.D. Pa. 1970).

Preliminary approval of the settlement should be granted if there are no "reservations about the settlement, such as unduly preferential treatment of class representatives or segments of the class, inadequate compensation or harms to the classes, the need for subclasses, or excessive compensation for attorneys."  *Manual for Complex Litigation* § 21.632, at 321 (4th ed. 2004).  This proposed settlement satisfies those standards.

Furthermore, the opinion of experienced counsel supporting the settlement is

HYDE & SWIGART
San Diego, California

entitled to considerable weight.  *See., e.g.,  Kirkorian v. Borelli*, 695 F.Supp. 446 (N.D. Cal.1988) (opinion of experienced counsel carries significant weight in the court's determination of the reasonableness of the settlement); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) (recommendations of plaintiffs' counsel should be given a presumption of reasonableness).

The decision to approve or reject a proposed settlement "is committed to the sound discretion of the trial judge[.]"  *See Hanlon*, 150 F.3d at 1026.  This discretion is to be exercised "in light of the strong judicial policy that favors settlements, particularly where complex class action litigation is concerned," which minimizes substantial litigation expenses for both sides and conserves judicial resources.  *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998) (quotations omitted).

Based on these standards, Plaintiffs' counsel  respectfully submit that, for the reasons detailed below, the Court should preliminarily approve the proposed Settlement as fair, reasonable and adequate.  This request is not opposed by Defendants' counsel, as shown by their Statement of Non-Opposition to the motion.

**B.**     **The Proposed Settlement Is Fair, Reasonable and Adequate and Should Be Preliminarily Approved**

**1.**     **Liability is Highly Contested and Both Sides  Face Significant Challenges in Litigating this Case**

Defendant Chase has vigorously contested the claims asserted by Plaintiffs in this Action.  While both sides strongly believe in the merits of their respective cases, there are risks to both sides  of continuing the Action.  Class Counsel understands there are uncertainties associated with complex class action litigation and that no one can predict the outcome of the case, but is confident that a class would be certified here, should the case proceed.    If the Action were to continue, challenges would likely be made to any class certification motion made by Plaintiffs, thereby placing in doubt whether a class could be certified in the Action, and additional substantive challenges to the claims might be raised.  In considering the Settlement, Plaintiffs and Class Counsel carefully balanced the risks of continuing to engage in protracted and contentious litigation, against the benefits to the Class including the significant Settlement Fund and the deterrent effects it would have.  Campion Decl. ¶¶ 17, 18.  Similarly, Chase has to recognize that if a class is certified, the potential amount of damages could be substantially higher than the Settlement agreed upon here. Therefore, the  Settlement  avoids that risk and therefore Plaintiffs'

HYDE & SWIGART
San Diego, California

counsel seek to have the Court approve this Settlement.  Because of the costs, risks to both sides, and delays of continued litigation, the Settlement presents a fair and reasonable alternative to continuing to pursue the Litigation as a class action for alleged violations of the TCPA.

### 2.      Defendant's Agreement to Create a $9,000,000 Settlement Fund Provides a Fair and Substantial Benefit to the Class

As set forth above in III. B.  and C, Chase has agreed to pay up to $9,000,000, and a minimum of $7,000,000, to settle this lawsuit.  After the Settlement Costs are deducted, the Subclass A Class Members with Approved Claims will be paid an equal amount between $25.00 and $500.00, depending on the amount of the Approved Claims and the amount of Settlement Costs deducted from the Settlement Fund. If the Approved Claims exhaust the $7,000,000 after the Settlement Costs are deducted, each Approved Claim will be paid on a pro rata basis of $25.00 until  the $9,000,000 cap is reached. If that cap is reached, the $25.000 payment will necessarily be reduced to be paid on a pro rata basis. Agreement §§ 5.01 through 5.03.

The settlement award that each Subclass A Class Member will receive is fair, appropriate, and reasonable given the purposes of the TCPA and in light of the anticipated risk, expense, and uncertainty of continued litigation.  The purpose of the TCPA is to protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls.  S. REP. NO. 102-178, at 6 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1973.  Although the TCPA provides for statutory damages of $500 for each violation, it is well-settled that a proposed settlement may be acceptable even though it amounts to only a small percentage of the potential recovery that might be available to the class members at trial.  *See e.g., National Rural Tele. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) ("well settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery"); *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 460 (E.D. Pa. 2000) ("the fact that a proposed settlement constitutes a relatively small percentage of the most optimistic estimate does not, in itself, weigh against the settlement; rather, the percentage should be considered in light of strength of the claims"); *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. Jan. 9, 2008) (court-approved settlement amount that was just over 9% of the maximum potential recovery); *In re Mego Fin'l Corp. Sec. Litig.*, 213 F. 3d 454, 459 (9th Cir.

HYDE & SWIGART
San Diego, California

2000).  At statutory damages of $500 per violation for the 1,181,411 cell phones called, the potential damages are almost $600,000,000.

The Settlement Class will also benefit from Chase's newly implemented procedures designed to prohibit as designed to prohibit the calling of a cell phone unless the Settlement Class Member's mortgage loan servicing record is systematically coded to reflect the borrower's prior express consent to receive calls on his or her cell phone.  These procedures were largely developed and implemented after the *Connor* complaint was filed in June 2010.  That includes both the Subclass A Class Members who have previously been called and received a monetary payment as a result, and those Settlement Class Members who have not yet been called to date, but now will certainly have the additional protection  from such calls by the new procedures implemented by Chase in the future.  *Id.*   Chase agrees  the procedures were largely put in place after the Connor complaint was filed in June 2010.  *Id.*  Thus, this Action has provided substantial benefit to the Settlement Class Members, both monetarily and through the cessation of potentially illegal conduct directed toward the Settlement Class.

### 3. The Settlement Was Reached As the Result of Arms-Length Negotiation, Without Collusion, With the Assistance of the Court.

The proposed Settlement is the result of intensive arms-length negotiation, including two appearances before Magistrate Judge Bernard G. Skomal, followed by further negotiations between the Parties on their own.  With the guidance of Judge Skomal, who assisted in the informal discovery procedures that permitted the Parties to facilitate this Settlement, and working independently of the Court, the Parties were able to reach a Settlement.  See Agreement, §§ 1.04-1.05; Campion Decl., ¶ 4; Declaration of Joshua B. Swigart in Support of Preliminary Approval ("Swigart Decl."), ¶ 4;  Declaration of Abbas Kazerounian in Support of Preliminary Approval ("Kazerounian Decl."), ¶ 4.  Informal discovery was provided to Class Counsel, that discovery was provided to and reviewed by Plaintiff's information technology consultant used often by Plaintiff's counsel for these cases, followed by confirmatory discovery to confirm the parameters of the broader Class and the number of cell phones called making up the Subclass A Class Members.  Campion Decl, ¶¶ 4,8.  With counsel for both sides also participating, there was a lengthy conference call between the information technology advisors for both sides arranged  to go over methodology, databases used, technical details of database searches and other questions

HYDE & SWIGART
San Diego, California

related to the parameters of the Settlement Class and how the number of cell phones called was determined.   Hansen Decl. ¶ 4.    Plaintiff's counsel and their consultant are satisfied the information provided about the number of persons in the Settlement Class and the number of cell phones called is correct.  Campion Decl., ¶8; Hansen Decl., ¶4.  The case settled just as responses to formal discovery was due from both sides to the other, and as many depositions of Chase's personnel were to take place.  Chase was to produce discovery responses, including interrogatory answers and documents at the time a settlement was finally reached. Plaintiff had   her answers to Chase's interrogatories completed and had her documents to provide to Chase as requested in Chase's document requests.   Campion Decl., ¶ §4.   Furthermore, after reaching an agreement in principle to settle the case, the Parties' counsel  engaged in extensive discussions for several more months.  That was required to work out the many details surrounding data production, payment of claims, including their amounts, how the Settlement Fund would be allocated, and how best to determine the identity of the Subclass A members.   Campion Decl., ¶ 4. The time and effort spent on settlement negotiations, as well the time spent with Judge Skomal in the settlement process, militate in favor of preliminary approval of the proposed Settlement, as they strongly indicate there was no collusion.  *See In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008) ("Settlements that follow sufficient discovery and genuine arms-length negotiation are presumed fair.").

### 4. Experienced Counsel Have Determined That the Settlement Is Appropriate and Fair to the Class

The Parties are represented by counsel experienced in complex class action litigation.  Class Counsel has extensive experience in class actions, as well as particular expertise in class actions relating to consumer protection and specifically the TCPA.  Campion Decl., ¶¶ 21-27; Swigart Decl., ¶¶ 23-28; Kazerounian Decl, ¶¶ 23-31.  Counsel for Chase similarly has extensive experience based upon a long track record in complex class actions.  [8]  They have vigorously defended Chase throughout the course of this Action.  Class Counsel believe that under the circumstances, the proposed Settlement is fair, reasonable and adequate and in the best

---

[8]    Burke, Warren MacKay & Serritella, P.C.'s website states under the Class Action Defense heading :  "The firm's Consumer Financial Services Class Action Defense group is a national commercial litigation practice concentrating in class action and multi-district litigation. The group has defended several of the country's major banks and mortgage banking companies in over 100 nationwide class action cases involving a variety of state and federal claims."

HYDE & SWIGART
San Diego, California

interests of the Class Members.   Campion Decl., ¶¶ 17-18; Swigart Decl., ¶¶ 18-19; Kazerounian Decl. ¶¶ 18-19; Declaration of Jonathan D. Selbin in Support of Preliminary Approval ("Selbin Decl."), ¶¶ 2-9.  Chase's counsel has filed a Statement of Non-Opposition to this motion, so they also support this request.

### C. The Court Should Preliminarily Certify the Class for Purposes of Settlement

Courts have long acknowledged the propriety of class certification for purposes of a class action settlement.  *See In re Wireless Facilities*, 253 F.R.D. at 610 ("Parties may settle a class action before class certification and stipulate that a defined class be conditionally certified for settlement purposes").  Like any other class certification decision, certification of a class for settlement purposes requires a determination that the requirements of Rule 23 are met.  *Id.*  As explained below, class certification is appropriate here because the Litigation meets the requirements of Rule 23(a) and Rule 23(b)(3).

### 1. The Proposed Class Is Numerous

Class certification under Rule 23(a)(1) is appropriate where a class contains so many members that joinder of all would be impracticable.  "Impracticability does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class.'" *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964) (citation omitted).  Here, the Notice Database that will be used to provide notice to the Class contains information relating to approximately 1,718,866 individual Settlement Class Members.  Campion Decl., ¶¶ 5, 7; Hansen Decl., ¶ 6.    Thus, the proposed Class is sufficiently numerous for purposes of certifying a settlement class.

### 2. The Commonality Requirement Is Satisfied, Because Common Questions of Law and Fact Exist

The commonality requirement is met if there are questions of law and fact common to the class.  *Hanlon*, 150 F.3d at 1019 ("The existence of shared legal issues with divergent legal factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.").  Here, for purposes of settlement, the proposed Class Members' claims all stem from the same factual circumstances, specifically that calls were made or would be made by Chase to Class Members between June 16, 2006 to June 15, 2011 (and to July 5, 2011 for the EMC Mortgage Class Members) using autodialing equipment or with a

**HYDE & SWIGART**
San Diego, California

prerecorded voice message.  Plaintiffs' claims also present a number of questions of law that are common to all members of the Class for settlement purposes, including: (1) whether Chase negligently violated the TCPA; (2) whether Chase willfully or knowingly violated the TCPA; and (3) whether Chase had "prior express consent" for the calls.  The Class Members all seek the same remedy.  Under these circumstances, the commonality requirement is satisfied for purposes of certifying a settlement class.  *See Hanlon,* 150 F. 3d at 1019-20.

### 3. The Typicality Requirement Is Met

The typicality requirement is met if the claims of the named representatives are typical of those of the class, though "they need not be substantially identical."  *Hanlon*, 150 F.3d at 1020.  For purposes of settlement, Plaintiffs' claims are typical of the claims of the whole class because they arise from the same factual basis – calls made to Plaintiffs using autodialing equipment – and are based on the same legal theory as applies to the Class as a whole – that the calls violated the TCPA.  *See Wehner v. Syntex Corp.*, 117 F.R.D. 641, 644 (N.D. Cal. 1987).  Both of the Class Representatives claim that they were contacted by Chase on their cellular telephones via an automatic telephone dialing system that used an artificial or prerecorded voice.  First Amended Complaint (Dkt. No. 17); Proposed Second Amended Complaint lodged herewith, ¶¶ 18, 25.  Accordingly, the Class Representatives' claims are typical of those of the Class Members. Thus, the typicality requirement is satisfied for certifying a settlement class.

### 4. The Adequacy Requirement Is Satisfied

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  The Court must measure the adequacy of representation by two standards: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *In re Wireless Facilities*, 253 F.R.D. at 611 (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 958 (9th Cir. 2003)).

Plaintiffs and Class Counsel have no conflicts of interest with other Class Members because, for purposes of the Settlement, Plaintiffs' claims are typical of those of other Class Members.  *See* Declaration of Patricia Connor in Support of Preliminary Approval ("Connor Decl.") ¶ 5; Campion Decl., ¶¶ 28-29; Swigart Decl., ¶¶ 29-30. In addition, Plaintiff

Connor and Class Counsel have been prosecuting this Litigation vigorously on behalf of the Class.  *See* Campion Decl., ¶ 30.  Plaintiffs and Class Members share the common goal of protecting and improving consumer and privacy rights throughout the nation, and there is no conflict among them.   Class Counsel have extensive experience in business and corporate litigation, including the prosecution of class actions seeking to protect privacy and consumer rights, including TCPA actions.  Campion Decl., ¶ 23-27; Swigart Decl., ¶¶ 23-28; Kazerounian Decl., ¶¶ 23-31.  Class Counsel is qualified and able to conduct this Litigation.  Campion Decl., ¶¶ 23-27; Swigart Decl., ¶¶ 23-28; Kazerounian Decl., ¶¶ 23-31;  Selbin Decl.,  ¶¶ 2-9. Plaintiffs' counsel have vigorously represented Plaintiffs and the Class in negotiating the proposed Settlement.  Campion Decl., ¶30.    Rule 23(a)(4) is therefore satisfied.

### 5. Common Questions Predominate, Sufficient to Certify a Class for Settlement Purposes Only

Class certification under Rule 23(b)(3) is appropriate where "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3).  The inquiry focuses on whether the class is "sufficiently cohesive to warrant adjudication by representation." *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001).  Central to this question is "'the notion that the adjudication of common issues will help achieve judicial economy.'" *Zincser v. Accufix Research Institute, Inc.*, 253 F.3d 1188, 1189 (9th Cir. 2001) (citation omitted), *amended*, 273 F. 3d 1266 (9th Cir. 2001).

Here the central inquiry is whether Chase violated the TCPA with calls made to Settlement Class Members.  Considerations of judicial economy favor litigating a predominant common issue once in a class action instead of thousands of times in separate lawsuits.  "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022.

### 6. Class Treatment for Settlement Purposes is Superior to Individual Resolutions

To determine whether the superiority requirements of Rule 23(b)(3) are satisfied, a court must compare a class action with alternative methods for adjudicating the parties' claims.

Lack of a viable alternative to a class action necessarily means that a class action satisfies the superiority requirement. "[I]f a comparable evaluation of other procedures reveals no other realistic possibilities, [the] superiority portion of Rule 23(b)(3) has been satisfied." *Culinary/Bartenders Trust Fund*, 244 F.3d at 1163. *See also, Valentino v. Carter-Wallace*, 97 F.3d 1227, 1235-36 (9th Cir. 1996) ("a class action is a superior method for managing litigation if no realistic alternative exists").

Consideration of the factors listed in Rule 23(b)(3) supports the conclusion that, for purposes of a settlement class, certification is appropriate. Ordinarily, these factors are (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3).

However, when a court reviews a class action settlement, the fourth factor does not apply. In deciding whether to certify a settlement class action, a district court "need not inquire whether the case, if tried, would present intractable management problems." *Amchem Prods. Inc. v. Woodward*, 521 U.S. 591, 620 (1997). "With the settlement in hand, the desirability of concentrating the litigation in one forum is obvious . . . ." *Elkins v. Equitable Life Ins. of Iowa*, No. Civ A96-296-Civ-T-17B, 1998 WL 133741, at *20 (M.D. Fla. Jan. 27, 1998); *see also Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 697 (M.D. Fla. 2005) (Rule 23(b)(3)(C) and (D) factors are "'conceptually irrelevant in the context of settlement'") (citation omitted). Here, the Rule 23(b)(3)(A), (B) and (C) factors all favor class certification:

- Any class member who wishes to pursue a separate action can opt out of the Settlement.
- The Parties are unaware of any competing litigation regarding the claims at issue, as the Bywater action is incorporated into this Action for purposes of Settlement.
- The Parties agree that it would be desirable to resolve Plaintiffs' claims in this forum.

Campion Decl., ¶ 16; Agreement, §§ 1.01 – 1.03.

**D.      The Proposed Method of Class Notice Is Appropriate**

Rule 23(c)(2)(B) provides that, in any case certified under Rule 23(b)(3), the court must direct to class members the "best notice practicable" under the circumstances.  Rule 23(c)(2)(B) does not require "actual notice" or that a notice be "actually received."  *Silber v. Mabon*, 18 F. 3d 1449, 1454 (9th Cir. 1994).  Notice need only be given in a manner "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  "Adequate notice is critical to court approval of a class settlement under Rule 23(e)."  *Hanlon*, 150 F.3d at 1025. [9]

Pursuant to Fed. R. Civ. P. 23(e)(1)(B), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal".  Rule 23(c)(2)(B) also sets forth requirements as to the content of the notice.  The notice must concisely and clearly state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class; (iii) the class claims, issues, or defenses; (iv) that class member may enter an appearance through counsel if the member so desires; (v) that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on class members under Rule 23(c)(3).  Fed. R. Civ. P. 23(c)(2)(B).

Here, the Direct Mail Notice and the Formal Q & A Form Notice to be posted on the settlement website meet all the requirements.  *See* Agreement, Exhibits 1 and 4.  The Claims Administrator will mail individual Direct Mail Notices to the 1,718,866 Settlement Class Members whose addresses are contained in the Notice Database, via first-class mail in postcard style  form (Exhibit 1 to the Agreement).  This initial mailing of the Direct Mail Notice shall occur within 45 days after the Preliminary Approval   Agreement § 9.01.  The notice procedure also requires searches by the Claims Administrator  to obtain current addresses for mail returned by the postal service. Agreement, § 9.02. If the Direct Mail Notice to any person is returned as undeliverable, and if a new address is obtained for such person, a second Direct Mail Notice shall be mailed to the new address as soon as possible  after the original Direct Mail Notice was

---

[9]   Defendant has agreed to provide the requisite Class Action Fairness Act ("CAFA") Notices pursuant to 28 U.S.C. Section 1715(b) within 10 days of filing this motion and to pay for the costs of that Notice.  Agreement, § 9.05.

HYDE & SWIGART
San Diego, California

mailed.  Agreement, § 9.02.

In addition,  the Parties have agreed to provide notice through the formal and lengthy Q & A Form Notice posted on  the Settlement Website which the Claims Administrator will establish and maintain.  The Settlement Website will allow visitors to access (and print) a complete copy of the Direct Mail Notice, the Agreement of Settlement, and the Q&A Notice Form, and it will allow them to determine whether they are Subclass A Class Members once they have provided identifying information as set forth in the  Notice.  Agreement § 9.03.

Also,  anyone can obtain  information about the Settlement  through the Toll-Free Number.  Agreement, §§ 9.01 through 9.04.  The Claims Administrator will maintain a Toll-Free Number throughout the 90 day Claims Period, which shall allow callers to request copies of the Direct Mail Notice and the Agreement of Settlement,  and to determine whether they are Class Members once they have provided appropriate identifying information.  Agreement § 9.04.

Furthermore,   the notices will be disseminated and also posted on the website sufficiently prior to the Final Approval hearing to give Class members the opportunity to comment on the settlement, or to opt out and preserve their rights.  *See Torrisi v. Tucson Electric Power Co.*, 8 F.3d 1370, 1374-1375 (9th Cir. 1993) (31 days is more than sufficient, as Class as a whole had notice adequate to flush out whatever objections might reasonably be related to the settlement) citing *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977) (approving timing of a notice which was mailed 26 days before the deadline for opting out of a settlement). Here there will be 90 days to opt out or object. Accordingly, both the Direct Mail Notice  as well as   the lengthy Q & A Form Notice posted on the Settlement Website fulfills all requirements of adequate notice and should be duly approved.    *Torrisi, supra*; Fed. R. Civ. P. 23(c)(2); *Manual, 3d*, 30.21.

Pursuant to the proposed Settlement, Chase has agreed to provide a Notice Database to the Claims Administrator and to Class Counsel.  Agreement § 2.17.  The Notice Database is a database containing the names, current or last known mailing addresses, account numbers and cell phone numbers called that are contained in Chase's records pertaining to 1,718,866 Settlement Class Members.  Campion Decl., ¶ 8; Hansen Decl., ¶ 6.

To create the Notice Database, Chase reviewed its outbound dial lists to locate the

**HYDE & SWIGART**
San Diego, California

calls made to cell phones, matched them to accounts, and matched them to addresses for that accounts, for borrowers and co-borrowers. Campion Decl., ¶ 8, (from confirmatory discovery responses provided).   Chase then took the call record data and analyzed and refined the data to create a database of individuals who met the class definition.  Chase then provided that database to Plaintiff's counsel who forwarded it to their Information Technology consultant, Jeff Hansen of Hansen & Levey Forensics Inc.   Campion Decl., ¶ 8.  Mr. Hansen analyzed the data provided, had communications with Chase's IT persons, and confirmed he agreed with the data produced and the process used.   Hansen Decl., ¶¶ 4,5.  A final database was then put together for giving Notice. *Id*.  That database will be utilized by the Claims Administrator, in providing notice to the Class Members.  Campion Decl., ¶ 15.  Not less than fourteen  days prior to the Fairness Hearing, the Claims Administrator  shall file a declaration certifying the Notice has been properly given, and the Preliminary Approval Order has been followed. Agreement § 13.01.  The Claims Administrator shall also file under seal a final list of all Settlement Class Members.  *Id.*

This notice program was designed to meaningfully reach the largest possible number of Class Members.  Courts have approved settlements in which notice was calculated to reach 75-83% of the class [10] and 70% of the class.[11]  Here, the Direct Mail Notice is calculated to reach every member of the 1,718,866 Settlement Class members identified in the Notice Database by Direct Mail Notice.   It will most certainly reach more than the 70% to 80% found to be sufficient in those other cases.   The mailing of the Direct Mail Notice combined with the posting of the formal Notice in the Q & A Form on the website,  satisfies the requirements of due process, is the best notice practicable under the circumstances, and constitutes due and sufficient notice.

### E. **The Court Should Appoint the Class Representatives and Appoint Class Counsel.**

"[T]wo criteria for determining the adequacy of representation have been recognized.  First, the named representatives must appear able to prosecute the action vigorously through qualified counsel, and second, the representatives must not have antagonistic or

---

[10] *Hartless v. Clorox Co.*, 2011 U.S. Dist. LEXIS 5427, at *25 (S.D. Cal. Jan. 20, 2011) (court granted final approval of settlement where notice was estimated to reach 75-83 percent of the class).

[11] *Wilson v. Airborne, Inc.*, 2008 U.S. Dist. LEXIS 110411, at *13-14 (C.D. Cal. Aug. 13, 2008) (court granted final approval of settlement where measurements used to estimate notice reach suggested that 80 percent of adults learned of the settlement).

HYDE & SWIGART
San Diego, California

conflicting interests with the unnamed members of the class." *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). The adequacy of representation requirement is met here. For settlement purposes, the Parties jointly request that the two Plaintiffs, Patricia Connor and Sheri L. Bywater, be appointed as the Class Representatives. The Parties have agreed that Hyde & Swigart, the Law Offices of Douglas J. Campion and the Kazerouni Law Group, APC should be appointed as Class Counsel for Plaintiff Connor and for all other purposes of the Settlement. Agreement, § 4.01. The Parties have also agreed that Lieff, Cabraser Heimann & Bernstein, LLP and David P. Meyer & Associates Co., LPA shall be Bywater Class Counsel for matters relating solely to the Bywater Plaintiff. Agreement, §4.01. The attorneys' fees and costs application will be prepared solely by Connor Class Counsel, and any attorneys' fees and costs shall be paid to all counsel through the Connor Class Counsel.    Agreement, §6.01. Plaintiffs' counsel all have extensive experience sufficient to be appointed as Class Counsel here. Campion Decl., ¶¶ 23-27; Swigart Decl., ¶¶ 23-28; Kazerounian Decl.,  ¶¶ 23-31; Selbin Decl.",  ¶¶ 2-9.. Plaintiffs Connor and Bywater understand the obligations of serving as class representatives, have adequately represented the interests of the putative class, and have retained experienced counsel. Campion Decl., ¶ 30; Swigart Decl., ¶ 31. Connor Decl., ¶ 6. Plaintiffs have no antagonistic or conflicting interests with the Class Members. Campion Decl., ¶28;; Swigart Decl., ¶ 29. Connor Decl., ¶ 4. Plaintiffs and the Class Members seek the same relief, i.e., money damages for Defendant's alleged unlawful actions. Considering the identity of claims, there is no potential for conflicting interests in this action.

**F.  The Court Should Grant Leave to File a Second Amended Complaint**

The Parties have stipulated that Plaintiffs are permitted to amend their operative First Amended Complaint, and request that the Court permit Plaintiffs to file a Second Amended Complaint, substantially in the form lodged herewith.  The Second Amended Complaint is essentially substantively identical to the First Amended Complaint, except that it includes an agreed-upon definition of the Class and includes the additional proposed Class Representative Sheri L. Bywater.  Campion Decl., ¶ 16.  The Court should also find that Defendants are not required to answer the Second Amended Complaint.

HYDE & SWIGART
San Diego, California

### G.  The Court Should Appoint Gilardi & Co. as the Claims Administrator

The Parties have agreed upon and propose that the Court appoint Gilardi & Co. to serve as the Claims Administrator. Agreement, § 8.01.  Gilardi & Co. specializes in providing administrative services in class action litigation, and has extensive experience in administering consumer protection and privacy class action settlements.  Campion Decl., ¶15.

### H.   A Final Approval Hearing Should Be Scheduled

The last step in the settlement approval process is the formal fairness or final approval hearing, at which time the Court may hear all evidence and argument, for and against, to evaluate the proposed Settlement.  The Parties request that the hearing be held not before 160 days after the date of entry of the Preliminary Approval Order to allow sufficient time for providing CAFA Notice, direct mail notice and the 90 day claims period.

### V.   CONCLUSION

For all the foregoing reasons, the Parties respectfully request that the Court enter an order preliminarily approving the proposed Settlement.

LAW OFFICES OF DOUGLAS J. CAMPION

Date:  January 17, 2012          s/Douglas J. Campion

Douglas J. Campion
409 Camino Del Rio South, Suite 303
San Diego, CA  92108

Dated:  January 17, 2012          HYDE & SWIGART

s/ Joshua B. Swigart
Joshua B. Swigart
411 Camino Del Rio South, Suite 301
San Diego, CA  92108

Dated:  January 17,  2012          THE  KAZEROUNI LAW GROUP, APC

s/ Abbas Kazerounian
Abbas Kazerounian
2700 North Main Street, Ste. 1050
Santa Ana, CA 92866

Attorneys for Plaintiff and the Settlement Class

**HYDE & SWIGART**
San Diego, California