Joshua B. Swigart, Esq. (SBN: 225557)
josh@westcoastlitigation.com
Robert L. Hyde, Esq. (SBN: 227183)
bob@westcoastlitigation.com
**Hyde & Swigart**
411 Camino Del Rio South, Suite 301
San Diego, CA 92108-3551
Telephone:   (619) 233-7770
Facsimile:   (619) 297-1022

Douglas J. Campion (SBN: 75381)
**Law Offices of Douglas J. Campion**
409 Camino Del Rio South, Suite 303
San Diego, CA 92108
Telephone:   (619) 299-2901
Facsimile:   (619) 858-0034

Attorneys for Patricia Connor,
on behalf of herself and all others similarly situated

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICIA CONNOR, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED | Case No: 10-cv-01284 DMS (BGS) |
| | CLASS ACTION |
| PLAINTIFFS, | MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS AND SERVICE AWARDS TO THE NAMED PLAINTIFFS |
| V. | |
| JPMORGAN CHASE BANK AND FEDERAL NATIONAL MORTGAGE ASSOCIATION A/K/A FANNIE MAE, | Date:  August 3, 2012 |
| | Time:  1:30 p.m. |
| | Ctrm: 10 |
| DEFENDANTS. | THE HON. DANA M. SABRAW |

*Hyde & Swigart*
*San Diego, California*

# Table Of Contents

I.    Introduction ................................................................................................1

II.   Factual And Procedural Background...........................................................2

III.  Argument .....................................................................................................3

    A. Class Counsel's Request for an Award of Attorneys' Fees is Well Supported by Authority .................................................................................3

        1.   The Parties Have Agreed to a Fee of Up to $3,000,000 (1/3 of the $9,000,000) ...3

        2.   Despite the Agreed Upon Fee of 1/3 of the Common Fund, Class Counsel Only Seeks the Benchmark of 25% ...................................................3

    B. The 9th Circuit Supports a Percentage of the Common Fund Award...............................4

    C. The Percentage-of-the-Fund Method is Warranted Here ........................................5

    D. The Percentage-of-the-Fund Award Provides a Fair and Reasonable Fee.......................7

        1.   The Court Examines Certain Factors to Arrive at a Reasonable Fee ....................7

          i.   Class Counsel Have Obtained an Excellent Result........................................9

        2.   The Risk of Litigation Was High.........................................................11

        3.   The Skill Required and the Quality of Work Was High ...........................................12

        4.   The Contingent Nature of the Fee and the Financial Burden ..................................12

        5.   Awards Made in Similar Cases Are Similar To That Requested Here ...................13

        6.   Class Counsel Have Obtained An Excellent Early Result Only As A Result of Tactics and Negotiation ......................................................13

    E. Courts Often Award Fees In Common Fund Cases of More Than 25 %.......................15

    F. The Proper Measure of the Common Fund is Based Upon the Entire Common Fund Negotiated on Behalf of the Class ..................................................16

        1.   The $9,000,000 Maximum Fund, Not the $7,000,000 Minimum Fund, Should be Utilized as the Common Fund From Which to Award the Fees............................16

        2.   The Lodestar-Multiplier Cross-Check Confirms the Requested Fee ....................18

        3.   A Significant Multiplier is Warranted .........................................................20

        4.   Class Counsel's Lodestar is Reasonable.......................................................21

**HYDE & SWIGART**
San Diego, California

G.  Plaintiffs' Counsel's Lodestar Should Not Be Reduced Due to the Amount of Judgment or the Number of Claims Made ............................................................23

H.  The Payment of Costs is Fair and Reasonable....................................................23

I.  The Requested Incentive Awards for the Named Plaintiffs Are Reasonable ..................24

J.  The Class Response to Date Supports Approval of the Requested Fee ...........................25

IV.   Conclusion..........................................................................................................25

**Hyde & Swigart**
San Diego, California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Table Of Authorities**

**Cases**

*Bellows v. NCO Fin. Sys.,*

   2008 U.S. Dist LEXIS 103525 (S.D. Cal. 2008) ..................................................9

*Gutierrez v. Barclays Group, et al*

   10-CV-1012 DNS(BGS) (S.D. Cal. 2010) ..................................................9, 13, 22

*Lemieux v. Global Credit & Collection,*

   08-CV-01012-IEG-POR (S.D. Cal. 2008) ..........................................................9, 13

*Staton v. Boeing Co.,*

   327 F.3d 938 (9th Cir. 2003) ..........................................................................2, 4, 5

*Vizcaino v. Microsoft Corp.,*

   290 F.3d 1043, 1048–49 (9th Cir. 2002) ............................................................passim

*Hanlon v. Chrysler Group,*

   150 F.3d 1011 (9th Cir. 1998) .....................................................................2, 4, 20

*Boeing Co. v. Van Gemert,*

   444 U.S. 472 (1980) ..........................................................................5, 14, 16, 17

*In re Washington Public Power Supply System Sec. Litig.,*

   19 F.3d 1291 (9th Cir. 1994) .................................................................................18

*In re Omnivision Technologies, Inc.,*

   559 F. Supp. 2d 1036 (N.D. Cal. 2007) ......................................................4, 5, 7, 15

*Paul, Johnson, Alston & Hunt v. Graulty,*

   886 F.2d 268 (9th Cir. 1989) ..............................................................................5, 6, 18

*Sutton v. Bernard,*

   504 F.3d 688 (7th Cir. 2007) ..................................................................................6

*Torrisi v. Tucson Elec. Power Co.,*

   8 F.3d 1370 (9th Cir. 1993) ...................................................................................4

*Six Mexican Workers v. Ariz. Citrus Growers,*

   904 F.2d 1301 (9th Cir. 1990) ................................................................................5

HYDE & SWIGART
San Diego, California

**Table Of Authorities**

**(continued)**

*In re Mego Fin. Corp. Sec. Litig.,*
213 F.3d 454 (9th Cir. 2000) ........................................................................15, 24

*In re Public Serv. Co. of New Mexico,*
1992 WL 278452 (S.D. Cal. July 28, 1992) ....................................................15

*Antonopulos v. N. Am. Thoroughbreds, Inc.,*
1991 WL 427893 (S.D. Cal. May 6, 1991) ......................................................15

*In re M.D.C. Holdings Sec. Litig.,*
1990 WL 454747 (S.D. Cal. Aug. 30, 1990) ....................................................15

*Castaneda v. Burger King Corp.,*
2010 U.S. Dist. LEXIS 78299 (N.D. Cal. jul. 12, 2010) ................................15

*Wright v. Linkus Enter., Inc.,*
259 F.R.D. 468 (E.D. Cal. 2009) ......................................................................7

*Garner v. State Farm Mut. Auto. Ins. Co.*
2010 WL 1687829 (N.D. Cal. Apr. 227, 2010) ................................................15

*Knight v. Red Door Salon, Inc.,*
2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ......................................................15

*In re Activision Sec. Litig.*
723 F.Supp. 1373 (N.D. Cal. 1989) ..................................................................15

*Hensley v. Eckerhart,*
461 U.S. 424 (1983) ..........................................................................................9

*Goodrich Management Corp. v. Afgo Mechanical Services, Inc.,*
2009 WL 2602200 (D.N.J. 2009) ................................................................10, 11

*Covington & Burling v. International Mktg. & Research. Inc.,*
No. CIV.A. 01-0004360, 2003 WL 21384825, 9 (D.C. Super. Apr. 17, 2003) ........10

*Linney v. Cellular Alaska P'ship*
1997 WL 450064 (N.D. Cal. Jul. 18, 1997) ................................................10, 15

HYDE & SWIGART
San Diego, California

**Table Of Authorities**

**(continued)**

*Kaplan v. Democrat & Chronicle,*

266 A.D.2d 848 (N.Y. App. Div. 1999)........................................................10

*ESI Ergonomic Solutions, LLC v. United Artists Theatre Circuit Inc.,*

203 Ariz. 94 P.3d 844 (Ariz. App. Div. 1, 2002).....................................10

*Hooters of Augusta, inc. American Global Ins. Co.,*

272 F. Supp. 2d 1365 (S.D. Ga. 2003) ......................................................10

*Penzer v. Transportation Ins. Co.,*

545 F.3d 1303 (11th Cir. 2008) ..................................................................10

*Pelletz v. Weyerhaeuser Co.,*

255 F.R.D. 537 (W.D. Wash. 2009) ........................................13, 14, 24, 25

*In re Corel Corp. Inc. Sec. Litig.,*

293 F.Supp.2d 484 (E.D. Pa. 2003).........................................................11

*In re Gen. Instruments Sec. Litig.,*

209 F.Supp.2d 423 (E.D. Pa. 2001).........................................................11

*In re Medical X-Ray Film Antitrust Litig.,*

1998 WL 661515 (E.D.N.Y. Aug. 7, 1998).............................................11

*In re Crazy Eddie Sec. Litig.,*

824 F.Supp. 320 (E.D.N.Y. 1993) .............................................................11

*Arenson v. Board of Trade of City of Chicago,*

372 F. Supp. 1349 (N.D. Ill. 1974).........................................................13

*Lealao v. Beneficial California, Inc.,*

82 Cal. App. 4th 19 (2000)........................................................................14

*In re Critical Path, Inc.,*

No. C 01-00551 WHA 2002 WL 32627559 (N.D. Cal. June 18, 2002) ............15

*Kerr v. Screen Extras Guild, Inc.,*

526 F.2d 67 (9th Cir. 1975)...................................................................7, 20

HYDE & SWIGART
San Diego, California

**Table Of Authorities**

**(continued)**

*Ballen v. City of Redmon,*

  466 F.2d 736 (9th Cir. 2006) ....................................................................................20

*Steiner v. Am. Broad. Co.,*

  248 Fed. Appx. 780 (9th Cir. 2007) ......................................................................19, 20

*Fischel v. Equitable Life. Assur. Soc'y.,*

  307 F.3d 997, 1007 (9th Cir. 2002) ......................................................................11, 20

*Moreno v. City of Sacramento,*

  534 F.3d 1106 (9th Cir. 2008) ...................................................................................22

*In re Merry-Go-Round Enterprises, Inc.,*

  244 B.R. 327 (Bankr.D.Md. 2000)........................................................................19, 21

*In re Rite Aid Corp. Sec. Litig.,*

  146 F.Supp.2d 706 (E.D. Pa. 2001)......................................................................19, 21

*In re Rite Aid Corp. Sec. Litig.,*

  362 F.Supp.2d 587 (E.D. Pa.2005)..................................................................18, 19, 21

*In re RJR Nabisco, Inc. Sec. Litig*

  1992 WL 210138 (S.D.N.Y Aug. 24, 1992)...........................................................19, 21

*In re Media Vision Tech. Sec. Litig.*

  913 F. Supp. 1362 (N.D. Cal. 1996).........................................................................23

*In re Immune Response Sec. Litig.*

  497 F. Supp. 2d 1166 (S.D. Cal. 2007) .....................................................................23

*Grays Harbor Adventist Christian Sc. v. Carrier Corp.,*

  No. C05-5437, 2008 WL 1901988 (W.D. Wash. Apr. 24, 2008) ....................................24, 25

*In re Bluetooth,*

  654 F.3d at 942 ...............................................................................................4, 20

*Lo v. Oxnard European Motors, LLC,*

  2011 U.S. Dist. LEXIS 144490 (S.D. Cal. 2011).........................................................9, 22

HYDE & SWIGART
San Diego, California

**Table Of Authorities**

**(continued)**

*Satterfield v. Simon & Schuster, Inc. et al.,*

    No. 06-2893 (N.D. Cal. Aug. 6, 2010).............................................................13

*Weinstein v. AIRIT2ME, et al.*,

    No. 06-CV-484 (N.D. Ill. Dec. 18, 2008)........................................................13

*Craft v. County of San Bernardino,*

    624 F. Supp. 2d 1113, 1127 (C.D. Cal. 2008).................................8, 13, 19, 20

*Glass v. UBS Fin. Servs*.,

    2007 U.S. Dist. LEXIS 8476, *49 (N.D. Cal. Jan. 26, 2007).........................20

*HCL Partners Ltd. P'ship v. Leap Wireless Int'l, Inc.*,

    2010 U.S. Dist. LEXIS 109829 (S.D. Cal. Oct. 15, 2010).............................20

*Chem. Bank v. City of Seattle,*

    19 F.3d 1291, 1296 (9th Cir. 1994).....................................................................7

*Ingalls v. Hallmark Mktg. Corp*.,

    08-cv-4342 VBK, Doc. No. 77, ¶ 6 (C.D. Cal. Oct. 16, 2009).......................15

*Rippee v. Boston Mkt. Corp.,*

    Case No. 05cv1359 (BTM (JMA) Doc. No. 70, at 7-8 (S.D. Cal. Oct. 10, 2006)............15

*Anderson v. Merit,*

    2009 U.S. Dist. LEXIS 100681, 2009 WL 3378526 at * 3 (Dist. Ct. Colo.)....................15

*Lucas v. Kmart Corp*,

    2006 U.S. Dist. LEXIS 51420, 2006 WL 2729260 at * 6 (Dist. Ct. Colo.)......................15

*Vaszlavik v. Storage Technology Corp.*,

    2000 U.S. Dist. LEXIS 21140, at * 10 (D. Colo. March 9, 2000)....................15

*Cimarron Pipeline Construction, Inc., v. National Council on Compensation*,

    1993 U.S. Dist. LEXIS 19969, 1993 WL 355466, at * 2 (W.D. Okla. June 8, 1993).......15

*Williams v. MGM-Pathe Communications Co.*,

    129 F.3d 1026, 1027 (9th Cir. 1997)............................................................16, 23

HYDE & SWIGART
San Diego, California

1

**Table Of Authorities**

2

**(continued)**

3   *Evans v. Jeff D.*,

4       475 U.S. 717, 734-35, 738 n. 30, 106 S.Ct. 1531, 1540-42, 1543 n. 30, 89 L.Ed.2d 747

5       (1986)......................................................................................................................18

6   *McKinnie v. JPMorgan Chase Bank, N.A.*,

7       678 F. Supp. 2d 806, 815 (E.D. Wis 2009)................................................................18

8   *Masters v. Wilhelmina Model Agency, Inc.*,

9       473 F.3d 423, 437 (2d Cir. 2007).............................................................................18

10  *Waters Int's Precious Metals Corp.*,

11      190 F.3d 1291, 1295-98 (11th Cir. 1999).................................................................18

12  *Florin v. Nations Bank of Georgia*,

13      34 F.3d 560, 564 (9th Cir. 1994)........................................................................11, 19

14  *City of Riverside v. Rivera*,

15      477 U.S. 561, 581, 106 S. Ct. 2686.........................................................................23

16  *Johnson v. Eaton*,

17      80 F.3d 148 (5th Cir. 1996)......................................................................................23

18  *Carroll v. Wolpoff & Abramson*,

19      961 F.2d 459 (4th Cir. 1992)....................................................................................23

20  *Beecher v. Able*,

21      441 F.Supp. 426 (S.D.N.Y. 1977).............................................................................23

22  *Mills v. Electric Auto-Lite Co.*,

23      396 U.S. 375, 391-392, 90 S. Ct. 616, 24 L. Ed. 2d 593 (1970).................................23

24  *Van Vranken v. Atlantic Richfield Co.*,

25      901 F.Supp. 294 (N.D.Cal.,1995).............................................................................24

26

27

28

HYDE & SWIGART
San Diego, California

**Statutes**

47 U.S.C. § 227 ..................................................................................................2, 3

**Other Authorities**

MCL 4th § 14.121 ......................................................................................................18

MCL 4th § 14.122 ...............................................................................................20, 21

**Treatises**

Federal Judicial Center, *Manual for Complex Litigation*, (4th ed. 2004) § 27.71 ....................9, 19

**HYDE & SWIGART**
San Diego, California

PLAINTIFFS' MEMO OF PS & AS IN SUPPORT OF MOTION
FOR ATTORNEYS' FEES AND COSTS                    10-cv-01284 DMS (BGS)

## I.   INTRODUCTION

Hyde & Swigart, The Law Offices of Douglas J. Campion and the Kazerouni Law Group, APC ("Class Counsel") negotiated a settlement in this matter on behalf of the Settlement Class consisting of $9,000,000.00 in monetary relief.[1]   This settlement is an excellent result for the Settlement Class in that 100% of the Class Members can participate equally in the Settlement, claims are easily filed, and all Approved Claims will be paid a *pro rata* distribution of the Settlement Fund, depending on the sliding scale described in the Settlement Agreement and Release ("Agreement"), §§ 5.01, 5.02.  The amount paid will depend on the amount of Settlement Costs to be deducted from the Settlement Fund and the number of Approved Claims filed. Furthermore, this Settlement is consistent with other Telephone Consumer Protection Act ("TCPA") actions approved by courts here in the Southern District of California.  For its efforts in achieving this result, Class Counsel seek attorneys' fees consistent with the benchmark in the Ninth Circuit of 25% of the $9,000,000.00 Settlement Fund.   That amount is $2,250,000. Defendant has agreed not to oppose any amount up to one-third of the $9,000,000, or $3,000,000. Agreement, § 6.01).  Class Counsel also seek reimbursement of out-of-pocket litigation expenses of $23,878.58 from the settlement fund, and Court approval of reimbursement or payment from the Settlement Fund of all costs of notice and claims administration expenses incurred by the third party claims administrator Gilardi & Co., LLC ("Gilardi").[2]   Those were estimated to be $916,523 prior to the Preliminary Approval; a more accurate bill will be submitted just prior to the hearing of this motion.  That estimate is attached to the Declaration of Douglas J. Campion in Support of Fees and Costs ("Campion Fee Decl."), Ex. 2.  Class Counsel also seek $5,000 in service or incentive awards in total, or $2,500 each, for the two named Plaintiffs.  The costs in

---

[1] The Parties have agreed on a Settlement Fund for the Class not to exceed $9,000,000.00, but with a minimum Settlement Fund payable by Defendant of $7,000,000.00.  If insufficient claims are received to exceed the $7,000,000 minimum fund at the minimum payment of $25.00 each, and after deducting Settlement Costs, including attorneys' fees and litigation expenses, incentive payments, and notice and claims administration expenses, that $7,000,000 is the only amount payable by Defendant.  If more claims are received, the additional claims will be paid until the $9,000,000 amount is reached.  If more claims are filed that would permit payment at the minimum $25 rate, they would then be paid on a pro rata basis. Agreement, §§ 5.01, 5.02. At the time of filing this motion in mid-June, approximately 6 weeks prior to the hearing, there have been 55,850 claims filed.  We cannot yet tell if the minimum fund will be exceeded.

[2] While the Agreement specifies that Class Counsel may seek an award of attorneys' fees up to 1/3 of the $9,000,000 Settlement Fund or $3,000,000,  Class Counsel only moves for the Ninth  Circuit benchmark of 25%.  Agreement, § 6.01.

this paragraph are referred to herein collectively as "Settlement Costs" to be paid from the Settlement Fund.

Class Counsel's request for fees is squarely supported by the percentage-of-the-fund method of calculating attorneys' fees applicable to common fund cases, like this one, under Ninth Circuit authority.[3]  That Ninth Circuit benchmark provides for recovery out of a common fund of 25 percent, or more, of the common fund obtained. *Id.*  The request here is for 25% of the fund, in line with that benchmark.  Class Counsel obtained an excellent result for the Class.  That result occurred only after lengthy and  repeated settlement negotiations.  The Settlement terms are set forth in the Agreement filed with the Plaintiff's Motion for Preliminary Approval, Attachment 1, an Exhibit to the Declaration of Douglas J. Campion. (Dkt. No. 50.)  To summarize that Settlement, it requires a total payment by Defendant JP Morgan Chase Bank ("Chase") of up to a maximum of $9,000,000.00.  In addition, Class Counsel's request for reimbursement of Settlement Costs of $23,878.58, and for service awards to the two named Plaintiffs for their service to the Class of $2,500 each, are not only similarly supported by Ninth Circuit authority and the facts of this case, but both are unopposed by  Chase.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Chase provides account servicing, collection and related services for its own home mortgages, as well as those previously serviced or owned by Chase Home Finance LLC, and accounts previously serviced or owned by Washington Mutual.   Chase also serviced or sub-serviced loans from EMC mortgage, and provides such accounting for Fannie Mae relating to certain of its home mortgages. Representative Plaintiffs Patricia Connor and Sheri L. Bywater brought this case as a consumer protection class action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(A), alleging that Chase has engaged in a systematic practice of contacting them and other consumers' cellular telephones through the use of automatic

HYDE & SWIGART
San Diego, California

---

[3] *Staton v. Boeing Co.*, 327 F.3d 938, 963-64 (9th Cir. 2003); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048, 49 (9th Cir. 2002); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998).

telephone dialing systems and/or an artificial or prerecorded voice without prior express consent.[4]

Because the TCPA requires prior express consent before taking such action, this failure to abide by the law competitively disadvantages other creditors who abide by the law, and generally invades the privacy of consumers.[5]

When negotiations before the Court reached an impasse, the Parties continued negotiations among themselves for several months and ultimately settled the case.  The details of the Settlement and the reasons why it merits approval will be more fully set forth in the Motion for Final Approval scheduled for hearing at the same date and time as this motion.  However, the Settlement provides for a maximum payment of $9,000,000.00 and a minimum payment of $7,000,000.00, and all Settlement Costs are to be paid from that Settlement Fund, regardless of whether it is the minimum or maximum fund.  (See Fn 1 for specific details of claims pay out).

**III.    ARGUMENT**

**A.    CLASS COUNSEL'S REQUEST FOR AN AWARD OF ATTORNEYS' FEES IS WELL SUPPORTED BY AUTHORITY.**

**1.    THE PARTIES HAVE AGREED TO A FEE OF UP TO $3,000,000 (1/3 OF THE $9,000,000).**

Federal Rule of Civil Procedure Rule 23(h) provides that "[i]n a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement."  Here the Parties agreed in the Agreement that Chase would not object to a fee of *up to $3,000,000*, or *one-third* of the Settlement Fund (i.e., the maximum $9,000,000 Fund): "Class Counsel shall move the Court for an award of attorneys' fees and expenses to be paid from the Settlement Fund. Defendants will not object to any request by Class Counsel for attorneys' fees totaling $3,000,000 or less (up to one-third of the maximum Settlement Fund)." Agreement, § 6.01.

**2.    DESPITE THE AGREED UPON FEE OF 1/3 OF THE COMMON FUND, CLASS COUNSEL ONLY SEEKS THE BENCHMARK OF 25%.**

However, instead of the "one-third of the $9,000,000" as agreed upon, Class Counsel seek only 25% of the $9,000,000 Settlement Fund, i.e., $2,250,000.  But it must be remembered that

---

[4] The case of *Sheri L.Bywater, on behalf of herself and all others similarly situated vs. JPMorgan Chase Bank, N.A.and Chase Bank USA, N.A.*, Case No. CV 11 2257 (the "Bywater Action) was filed after this Action was filed and just after a settlement was reached.  Thus, the Parties have agreed to incorporate the Bywater Action into this settlement.   Settlement Agreement,Section 1.02.

[5] 47 U.S.C. § 227 (b)(1)(A)

HYDE & SWIGART
San Diego, California

the Agreement establishes the Parties intended the fee to be based upon the *total amount* that Defendant would have to pay should there be a sufficient number of claims -- $9,000,000 -- and the ratio and percentage established a *sum certain agreed-upon* common fund from which the total percentage fee can be computed.   Of course any such fee Agreement or amount of any fees in a class action has to be approved by the Court.   Thus, pursuant to the Agreement, Class Counsel seek less than the $3,000,000, so that is within the unopposed range of fees.   Class Counsel also seek payment of litigation expenses in the amount of $23,878,58.[6]   In addition, Class Counsel seek to have the Court order that the costs of notice and claims administration incurred by Gilardi be paid from the Settlement Fund, estimated to be approximately $916,523. As stated, Chase does not oppose Class Counsel's application (Agreement, § 6.01), and the Court has preliminarily approved the process of paying the attorneys' fees from the Settlement Fund.[7]

## B.   THE 9TH CIRCUIT SUPPORTS A PERCENTAGE OF THE COMMON FUND AWARD.

Where counsel for a class seek fees from a common fund, courts most commonly use the use one of two methods to determine whether the request is reasonable: "percentage-of-the-fund" or "lodestar/multiplier".   *Staton v. Boeing Co.*, 327 F.3d 938, 963-64 (9th Cir. 2003); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048, 49 (9th Cir. 2002); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). Courts prefer a percentage-of-the-fund model over a lodestar-multiplier approach in cases where it is possible to ascertain the value of the settlement through a common fund. *See In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 942 ("Because the benefit to the class is easily quantified in common-fund settlements, we have allowed courts to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar."); *In re Omnivision Techs, Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) ("[U]se of the percentage method in common fund cases appears to be dominant.").

When a percentage of the common fund is awarded, the Ninth Circuit has established a "benchmark" award of 25 percent. *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th

---

[6] Declaration of Abbas Kazerounian in Support of Fees and Costs ("Kazerounian Fee Decl."), para. 14; Campion Fee Decl., ¶ 2.

[7]   See Preliminary Approval Order, para. 9.  Dkt. No. 55, filed March 12, 2012.

HYDE & SWIGART
San Diego, California

1   Cir. 1993); *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990);

2   *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989).

3        This "benchmark percentage can be adjusted, or replaced by a lodestar calculation, when

4   special circumstances indicate that the percentage recovery would be either too small or too large

5   in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers v. Az.*

6   *Citrus Growers*, 904 F.2d 1301, 1311 (1990). Regardless of the method applied, the fundamental

7   requirement is that the resulting fee is fair and reasonable. *Staton,* 327 F.3d at 963-64.

8        Here, under the percentage-of-the-fund analysis, a request for fees equal to 25% of the

9   common fund   is reasonable, and is further confirmed by the lodestar/multiplier cross-check

10  resulting in a multiplier of 4.39[8] of Class Counsel's combined lodestar.  *See Vizcaino v. Microsoft*

11  *Corp.*, 290 F.3d 1043, 1049 (9th Cir. 2002).

12  ### C.   THE PERCENTAGE-OF-THE-FUND METHOD IS WARRANTED HERE.

13       The common fund doctrine rests on the understanding that attorneys should normally be

14  paid by their clients. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[A] litigant or a

15  lawyer who recovers a common fund . . . is entitled to a reasonable attorney's fee from the fund as

16  a whole."). Where the attorneys and unnamed class member clients have no express retainer

17  agreement, those who benefit from the fund without contributing to it would be unjustly enriched

18  if attorneys' fees were not paid out of the common fund.  *In re Omnivision Techs., Inc.*, 559 F.

19  Supp. 2d 1036, 1046 (N.D. Cal. 2007).  When clients do not pay an ongoing hourly fee to their

20  counsel, they typically negotiate an agreement in which counsel's fee is based upon a percentage

21  of any recovery.   Here, for example, Class Counsel's retainer agreement with Plaintiff Patricia

22  Connor provides that counsel "will be entitled to compensation for their services in the amount of

23  one-third (33 1/3%) of [any] settlement proceeds."  Declaration of Joshua B. Swigart in Support

24  of Fees and Costs (" Swigart Fee Decl."), ¶ 69.  The percentage-of-the-fund approach mirrors this

25  aspect of the market and, accordingly, in a case where a benchmark case of 25% is warranted, that

26  amount reflects a fee less than the fee that would have been negotiated by the class members in

27  advance, had such negotiations been feasible, given the prospective uncertainties and anticipated

28  _____

[8]  The actual ratio is 4.39135780783418 but will be referred to here only in two places past the decimal point.

HYDE & SWIGART<br>San Diego, California

risks and burdens of the litigation.  *See, e.g., Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989) ("[I]t is well settled that the lawyer who creates a common fund is allowed an extra reward, beyond that which he has arranged with his client, so that he might share the wealth of those upon whom he has conferred a benefit."); *Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. 2007) ("In deciding fee levels in common fund cases, we have consistently directed district courts to 'do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time.'"). Equity requires the Class Members  to pay a fair and reasonable fee, based on what the market would traditionally require, no less than if they had hired private counsel to litigate their cases individually. *Boeing*, 444 U.S. at 479-81.

   For these reasons, and because the lodestar method has many problems in determining a fair fee, the percentage-of-the-fund method is overwhelmingly preferred by courts. *Theodore Eisenberg & Geoffrey P. Miller, Attorneys' Fees and Expenses in Class Action Settlements*: 1993-2008, 7 Journal of Empirical Legal Studies 248 (2010). That empirical study based on eighteen years of published opinions on settlements in 689 common fund class action and shareholder derivative settlements in both state and federal courts found that: (1) 83 percent of cases employed the percentage-of the-recovery method, and (2) the number of courts employing the lodestar method has declined over time, from 13.6 percent from 1993-2002 to 9.6 percent from 2003 to 2008. *Id.* at 267-69.  *Accord,* Brian T. Fitzpatrick, An Empirical Study of Class Action Settlements and their Fee Awards, 7 Journal of Empirical Legal Studies, 2010 at 25 (finding, in a similar empirical study of 688 settlements approved by federal district courts during 2006 and 2007, nearly 69 percent of courts employed the percentage-of-the-settlement method, nearly 12 percent employed the lodestar method, and 20 percent did not report which method they used).[9]

   Similarly, it has been determined in a study of the Northern District of California's federal courts, the percentage of common fund method was used six times more often than the lodestar method, 78% to 9%.  *See* "Empirical Study of Class Actions in Four Federal District Courts: Final

HYDE & SWIGART
San Diego, California

---

[9] Decl. Swigart ¶¶ 56 and 56; Exs. J and K.

Report to the Advisory Committee on Civil Rules", by the Federal Judicial Center, p. 71;   Study Appendix, Figure 73.  Also, that study found the mean attorneys' fees recovery in the Northern District was 29% and the median was 30%.  *Id.*, Appendix, Figure 72.[10]

**D.   THE PERCENTAGE-OF-THE-FUND AWARD PROVIDES A FAIR AND REASONABLE FEE.**

**1.   THE COURT EXAMINES CERTAIN FACTORS TO ARRIVE AT A REASONABLE FEE.**

When examining fees, "district courts in the Ninth Circuit 'should be guided by the fundamental principle that fee awards out of common funds be reasonable under the circumstances.'"   *Wright v. Linkus Enter., Inc.*, 259 F.R.D. 468, 476 (E.D. Cal. 2009) (*citing Chem. Bank v. City of Seattle* (*In re Wash. Pub. Power Supply Sys. Sec Litig.*), 19 F.3d 1291, 1296 (9th Cir. 1994) (internal quotations omitted and emphasis in original)). "In looking at the circumstances of each case, relevant factors may include early settlement, achievement of an excellent result, risk, and a showing of standard fees for similar litigation." *Wright*, 259 F.R.D. at 476–77 (*citing Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048–50 (9th Cir. 2002)).  There are a number of factors that the Ninth Circuit has approved that are relevant to the analysis of whether the attorneys' fee awarded is fair and reasonable: "(1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases."   *In re Omnivision Techs., Inc.*, 2007 WL 4293467 at *10 (N.D. Cal. Dec. 6, 2007), citing *Vizcaino*, 290 F.3d at 1048-50.   *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (1975) sets forth the following more inclusive factors to use in evaluating the fairness of the fee:  "(1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of

HYDE & SWIGART
San Diego, California

---

[10]   That 208 page study is available for review at ftp.resource.org/courts.gov/fjc/rule23.pdf or at 10 Newberg on Class Actions Appendix XI (4th ed.).

the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases."[11]

Here all the factors demonstrate that Class Counsel's request for $2,250,000.00 in attorneys' fees (25% percent of the common fund) is reasonable. Furthermore, to date no Class Member has objected to the requested fees and costs. Swigart Decl. ¶¶ 65, 36.

To summarize, this was an excellent result, as a $9,000,000.00 Settlement Fund was obtained. The TCPA issues can be complex, especially to counsel unfamiliar with this area of the law, as much of the law on the issues is ever-changing, especially relating to class certification, standing, the affirmative defense of prior express consent, and the Federal Communications Commission's rules and regulations. In addition, Class Counsel assumed the risk of non-payment for any of their fees and costs, as is usually the case in these cases litigated on a contingency basis. Counsel's skill and experience, especially in litigating these TCPA cases, resulted in a fairly early and substantial settlement. Campion Fee Decl., ¶¶ 16-18 ; Swigart Fee Decl. ¶¶ 37-42; Kazerounian Decl. ¶¶ 41-42. As a result, Class Counsel achieved that early settlement based upon their experience in litigating these TCPA cases, as shown in their accompanying declarations. Class Counsel worked hard to achieve this result and this was only achieved by pursuing a successful strategy learned in litigating these TCPA cases, and by focusing on an early resolution. The time spent in litigating this case is set forth in the time sheets attached to each firm's declarations. By working hard to accomplish these tasks, and through time-consuming and aggressive negotiation, Class Counsel were able to negotiate an efficient, favorable, and timely result for the Settlement Class Members.

//

//

---

[11] See Also *Craft v. County of San Bernardino*, 624 F.Supp.2d 1113 (C.D. Cal. 2008). The *Craft* court acknowledged the many problems associated with awarding fees through the lodestar method in common fund cases, citing *Vizcaino v. Microsoft, supra*, 290 F.3d at 1050 and awarded fees based upon a common fund. The *Craft* court explained that the Ninth Circuit does not require the use of certain factors in evaluating the benchmark percentage to be used, but nonetheless courts often consider the following factors: "(1) The result obtained for the class; (2) the effort expended by counsel; (3) counsel's experience; (4) counsel's skill; (5) the complexity of the issues; (6) the risks of non-payment assumed by counsel; (7) the reaction of the class, and (8) comparison with counsel's lodestar." *Id.*, citing *In re Heritage Bond Litigation*, 2005 WL 1594403, *18 (C.D. Cal. 2005). The court analyzed those factors and explained the reasons why the percentage of the fund was appropriate, and in the benchmark amount. The court awarded attorneys' fees of $6,375,000, which was 25% of the $25,648,204 recovery. That resulted in a multiplier of 5.2 of the $1.2 million lodestar incurred. The Court found that 25% amount "is substantially below the average class fund fee nationally", *Id.*, at 1125.

HYDE & SWIGART
San Diego, California

**i.    CLASS COUNSEL HAVE OBTAINED AN EXCELLENT RESULT.**

Here all the factors demonstrate that Class Counsel's request for $2,250,000.00 in attorneys' fees (25% percent of the common fund) is reasonable.    The result obtained is an important factor  in determining whether the fee is fair and reasonable. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (results achieved most important factor in determining appropriate fee award); *Vizcaino, supra*, 290 F.3d at 1049; *Federal Judicial Center, Manual for Complex Litigation*, § 27.71, p.336 (4th ed. 2004) (the "fundamental focus is on the result actually achieved for class members").

In Class Counsel's experience and review of other similarly settled TCPA class cases reveal Class Counsel have obtained a fair, reasonable, and adequate settlement for the proposed class.[12]   This Settlement is consistent with other Telephone Consumer Protection Act ("TCPA") actions approved by courts here in the Southern District of California.  See, for example, *Bellows v. NCO Fin. Sys.*, 2008 U.S. Dist. LEXIS 103525 (S.D. Cal. 2008) (Class claimants   received $70); *Lo v. Oxnard European Motors, LLC*, 2011 U.S. Dist. LEXIS 144490 (S.D. Cal. 2011) (Class claimants received approximately $1,300 each); *Lemieux v. Global Credit & Collection*, 08-CV-01012-IEG-POR (S.D. Cal. 2008) (Class claimants  received $70); and *Gutierrez, et al. v. Barclays Group, et al.*, 10-CV-1012 DMS(BGS) (Class members received $100 each).

The Settlement is substantial, especially considering this is a case of no actual, but only statutory, damages.  Class Counsel obtained a total payment by Chase of up to $9,000,000.00, with a minimum payment of $7,000,000, out of which Subclass A Class Members will receive pro rata monetary payments, depending on the sliding scale payments which vary by the amount of claims made.  The Class Members will have a 90 day claim period, from the date of the mailing of direct mail Notice,[13] to contact the Claims Administrator either online or by telephone at a toll free number to determine if their cell phone was actually called.  Agreement, § 2.04, 10.01-10.03.  If so, they are then a member of Subclass A, and entitled to receive a monetary payment. *Id*.  Any member of the Class that is not entitled to monetary payments will benefit from this settlement

---

[12] Id., para 37.

[13] Class counsel fought hard to assure the best notice practicable in this case, which was direct mail notice.

HYDE & SWIGART
San Diego, California

via the new protocols and protections that Chase has implemented in regards to its autodialing system.   Agreement, § 5.04. Also, any funds from settlement checks that go un-cashed or are returned as undeliverable will be delivered as a *cy pres* contribution to an appropriate *cy pres* recipient, to be named later if necessary. *Id*. at § 11.02. Thus, the results Class Counsel have achieved are excellent by any measure.

Furthermore, TCPA statutory damages are generally considered to be in a manner of speaking "punitive" damages designed to deter wrongful conduct, not compensatory damages. *See, e.g., Goodrich Mgmt. Corp. v. Afgo Mech. Servs.*, Inc., 2009 WL 2602200, at *5 (D.N.J. 2009) (holding that the TCPA's statutory damages provisions are "a punitive element to deter such conduct and motivate private lawsuits").[14]   Plaintiffs respectfully submit that this Settlement adequately effectuates those purposes.  However, the fact that the $9,000,000.00 Settlement does not constitute the full measure of statutory damages potentially available to the  Class does not merit any deviation from the 25% benchmark.  *See, e.g., Linney v. Cellular Alaska P'ship*, 151 F. 3d 1234, 1242 (9th Cir. 1998)("[I]t is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.  The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators.  Thus, the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes.") (citations omitted).

Courts regularly award a 25 percent fee or greater where the proportional recovery for the class is far less than full where there were "actual," out-of-pocket damages.   In contrast, the TCPA provides for only statutory damages which bear no relationship to any actual economic

---

[14] *Covington & Burling v. International Mktg. & Research, Inc.*, No. CIV.A. 01-0004360, 2003 WL 21384825, 9 (D.C. Super. Apr. 17, 2003) (TCPA statutory damages provisions designed "to punish and deter certain proscribed conduct"); *Kaplan v. Democrat & Chronicle*, 266 A.D.2d 848, 698 N.Y.S.2d 799, 800-01 (N.Y. App. Div. 1999) (TCPA damages are punitive as actual damages need not be proven to recover); see also *ESI Ergonomic Solutions, LLC v. United Artists Theatre Circuit, Inc.*, 203 Ariz. 94, 100, 50 P.3d 844, 850 (Ariz. App. Div. 1, 2002) (TCPA statutory damages provisions "designed not only to compensate for the actual damages and unquantifiable harm, but also to deter the offensive conduct."); but see *Hooters of Augusta, Inc. v. American Global Ins. Co.*, 272 F. Supp. 2d 1365, 1377 (S.D. Ga. 2003) (holding that TCPA is a remedial statute in response to insurer's argument that TCPA judgment constituted penalties not covered by insurance); *Penzer v. Transportation Ins. Co.*, 545 F.3d 1303, 1311 (11th Cir. 2008) (same).

harm suffered by Class members.[15]  And while the TCPA provides the trier of fact with discretion to award "up to $500" per violation, there is always a risk that the trier of fact will not exercise its discretion to award the full amounts potentially available.  Plaintiffs respectfully submit that the Settlement here, by requiring Chase to pay up to $9,000,000, fully serves the core purposes of the TCPA.

While compensation of the recipient of the call is not the primary purpose of TCPA statutory damages, the award also will compensate Class members for being called on their cell phones.  While the precise amount of each Class Member's monetary payment is unknown, it appears that each qualified claimant will receive a recovery of between $25.00 and $500.00, depending upon the number of claims submitted.  Plaintiffs submit that this amount adequately compensates Class members for the cell phone minutes and time they expended in listening to the automated messages. *Cf. Goodrich Mgmt. Corp.*, 2009 WL 2602200, at *5 (noting in TCPA "junk fax" case that "actual out-of-pocket monetary loss to the recipient of an unwanted fax advertisement is slight, only the cost of a few sheets of paper and ink").   Given the results achieved, the requested fee is reasonable.

**2.  THE RISK OF LITIGATION WAS HIGH.**

"It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases." *Fischel v. Equitable Life. Assur. of U.S.*, 307 F.3d 997, 1008 (9th Cir. 2008).  This litigation was taken on by Class Counsel when the risk of the litigation was high.  It is at that time that the risk is evaluated for purposes of fees.  *Florin v. Nations Bank of Georgia* (9th Cir. 1994) 34 F.3d 560, 565.  When counsel committed to take on the case, it was unknown if there were many calls made by Chase to cell phones, and it was also unknown whether, and to what extent, the affirmative defense of prior express consent, applied.  Swigart Fee Decl. ¶ 9; Campion

---

[15] See, e.g., *In re Corel Corp. Inc. Sec. Litig.*, 293 F. Supp. 2d 484, 489-490, 498 (E.D. Pa. 2003) (1/3 fee where settlement fund equaled about 15% of damages); *In re Gen. Instruments Sec. Litig.*, 209 F. Supp. 2d 423, 431, 434 (E.D. Pa. 2001) (1/3 fee where settlement fund equaled about 11% of estimated damages); *In re Medical X-Ray Film Antitrust Litig.*, 1998 WL 661515, at *5, 7-8 (E.D.N.Y. Aug. 7, 1998) (1/3 fee where recovery was 17% of damages); *In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320, 326 (E.D.N.Y. 1993) (33.8 percent fee where recovery was 10% of damages).

HYDE & SWIGART
San Diego, California

Fee Decl. ¶¶ 16, 18.  If so, Plaintiffs may have been unsuccessful in this case. Thus, there was a substantial risk in taking on this case and Class Counsel should be rewarded for that risk.

### 3.   THE SKILL REQUIRED AND THE QUALITY OF WORK WAS HIGH.

TCPA actions are litigated by very few firms across the country, due to the novel claims, the lack of established authority, and the requirement of potential commitment to huge expenses and litigation for years. Swigart Fee Decl. ¶¶ 37-40 Campion Fee Decl. ¶ 16, Kazerounian Fee Decl. ¶¶ 40, 41.  Class Counsel was willing to take on this case and commit to its litigation, with or without a settlement at a reasonably early date.  One case litigated by two of the three Class Counsel firms was only recently given preliminary approval in this Court, but was filed in February 2008.[16]  Many motions were filed and litigated, and hundreds of thousands of dollars for expert witness fees were incurred by both sides in the action, and tens of thousands of pages of documents were produced.[17]   Swigart Fee Decl., ¶ 39; Campion Fee Decl. ¶ 14.   The issue of prior express consent relevant to any TCPA case is one that is unresolved and has conflicting decisions in different circuits.    Thus, Class Counsel's skill in this field is well-known and they are among the leading TCPA practitioners in the country.  *Id*.

### 4.   THE CONTINGENT NATURE OF THE FEE AND THE FINANCIAL BURDEN.

In addition, Class Counsel have devoted substantial resources to the litigation of this case with no guarantee that counsel would ever be compensated for their time or reimbursed for their expenses. To the contrary, payment of counsel's fees and expenses has always been contingent on a successful recovery of compensation, as in any class action. Thus, there was a substantial risk of nonpayment.  Chase has also denied liability for the claims Plaintiffs have asserted.  Furthermore, the expenses of expert witnesses in evaluating the phone calls made, the number of cell phones called and the related information technology issues can be and are very expensive.   Class Counsel must pay those bills, regardless of whether any recovery is obtained.

//

---

[16] *Adams v. AllianceOne Receivables Management, Inc.*,, Case No. 08-CV-0248 JAH(WVG) (S.D. Cal.).

[17]  *Id*.

**5.   AWARDS MADE IN SIMILAR CASES ARE SIMILAR TO THAT REQUESTED HERE.**

Plaintiffs' request is in line with fees requested in similar actions. Class Counsel have requested 25% percent of the common fund, a percentage in line with that of the Ninth Circuit benchmark, and an amount which falls within the spectrum of the Ninth Circuit's previous awards. *See, e.g.*, *Craft v. County of San Bernardino*, 624 F.Supp.2d 1113 (C.D. Cal. 2008) (25% and a multiplier of 5.2); *Satterfield v. Simon & Schuster, Inc., C06-2893 CW (N.D. Cal 2010) TCPA case - $2,500,000 awarded on a $10,000,000 potential Claims Fund, or 25%), (Swigart Fee Decl., Ex. L)-Bellows v. NCO Financial Systems, Inc.*, No. 07-CV-1413 W(AJB), 2009 WL 35468, at *8 (S.D. Cal. Jan 5, 2009) (TCPA action awarding fees and costs equal to 31.6% of the potential settlement fund) and *Lemieux v. Global Credit & Collection*, 08-CV-01012-IEG-POR (S.D. Cal. 2008) (TCPA action awarding 28% of the potential total recovery); *Gutierrez, et al. v. Barclays Group, et al.*, 10-CV-1012 DMS(BGS)(awarding approximately 19% of the total settlement fund);; *see also Weinstein v. AIRIT2ME, et al.*, No. 06-CV-484 (N.D. Ill. Dec. 18, 2008) (Swigart Decl., Ex. M; fees and costs of 23% of TCPA Fund).

**6.   CLASS COUNSEL HAVE OBTAINED AN EXCELLENT EARLY RESULT ONLY AS A RESULT OF TACTICS AND NEGOTIATION.**

Class Counsel are law firms dedicated to actively and aggressively litigating consumer rights issues, especially when it comes to consumers affected on a class-wide basis.[18]   Swigart Fee Decl. ¶ 35, Campion Fee Decl., ¶¶ 11-13, 16; Kazerounian Fee Decl. ¶¶ 34, 39.   Courts in the Ninth Circuit  have repeatedly encouraged parties to achieve swift resolution of complex class actions.   *See, e.g., Pelletz v. Weyerhaeuser Co.,* 255 F.R.D. 537, 539 (W.D. Wash. 2009) (approving prompt settlement achieved after thorough pre-filing negotiations).[19]    *Pelletz* is instructive.   In *Pelletz* the parties engaged in a period of pre-filing investigation, informal discovery, and settlement discussions.   *Pelletz*, 255 F.R.D. 537, 539. The parties' investigation there included the informal exchange of "confidential, proprietary information," and Class Counsel's analysis of the allegedly defective product at issue.   *Pelletz v. Weyerhaeuser Co.*, 255 F.R.D. at 543. In reviewing the settlement there, the court found that the pre-filing investigation,

[18] Decl. Abbas Kazerounian, para 42.

[19] See also *Arenson v. Board of Trade of City of Chicago*, 372 F. Supp. 1349, 1358 (N.D. Ill. 1974)  (noting potential for far greater lodestar absent settlement, thereby justifying a lodestar multiplier of 4.0).

HYDE & SWIGART
San Diego, California

informal discovery, and settlement discussions provided "sufficient information to determine the relative strengths and weaknesses of their respective positions" such that "[b]oth sides were well-prepared to reach an adequate settlement and decide on appropriate remedies based on the strengths and weaknesses of their bargaining positions ascertained during the investigation." *Pelletz v. Weyerhaeuser Co.*, 255 F.R.D. at 543.

Here, as in *Pelletz*, before the lawsuit was filed, Class Counsel initiated thorough investigation, conducting relevant factual and legal research. Swigart Fee Decl. ¶¶ 9 and 10, Campion Fee Decl., ¶ 6; Kazerounian Fee Decl. ¶ 9.   Throughout this case Class Counsel obtained necessary information  from Chase, including relevant class parameter information and documents.   After reaching a settlement in principle, Class Counsel obtained confirmatory discovery, including participating in a telephone conference between Plaintiff's information technology expert and Chase's information technology persons to determine that the methodology and process used to determine and identify the Class Members was correct.  Campion Fee Decl., ¶ 4.  By working hard to determine the parameters of the Class early in the case, Class Counsel were able to efficiently negotiate a favorable and timely result for the Settlement Class members.

As one court has explained in calculating an appropriate fee, "counsel should be rewarded, not punished" for helping to obtain a prompt settlement without running up lodestar through needless litigation.   *Lealao v. Beneficial California, Inc.*, 82 Cal. App. 4th 19, 52-53 (2000). Moreover, the common fund doctrine "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense."  See *Wright*, 259 F.R.D. at 477 (*quoting Boeing v. Van Gemert*, 444 U.S. at 478, (1980)).   Therefore, "awarding Plaintiffs' attorneys a percentage of the total settlement amount w[ill] adequately compensate Class Counsel for the proposed settlement at an early stage in the litigation."  *Id*.  Moreover, awarding Class Counsel a reasonable percentage of the common fund promotes the public policy of encouraging timely settlements.  *Vizcaino*, 290 F.3d at 1051 (noting "it may be a relevant circumstance that counsel achieved a timely result for class members in need of immediate relief"); *see also In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378 (N.D.

HYDE & SWIGART
San Diego, California

Cal. 1989) (approving fee awards that amount to 30 percent of the common fund in part because such a benchmark "will encourage Class Counsel to move for early settlement").[20]

### E. COURTS OFTEN AWARD FEES IN COMMON FUND CASES OF MORE THAN 25%

Courts frequently award fees greater than the benchmark. *See*, *e.g.*, *Vizcaino*, 290 F.3d at 1049-50; *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 460 (9th Cir. 2000).[21] Indeed, courts have observed that, "in most common fund cases, the award exceeds that [25%] benchmark." *See, e.g., In re Omnivision Techs., Inc.*, 2007 WL 4293467 at *10 (N.D. Cal. Dec. 6, 2007). Courts in the Ninth Circuit have repeatedly awarded fees of 25% or more in cases where a common fund was created through a settlement. *Castaneda v. Burger King Corp.*, 2010 U.S. Dist. LEXIS 78299 (N.D. Cal. Jul. 12, 2010).[22] Moreover, it is not uncommon for Courts in within the Ninth Circuit to approve fees of 1/3 the common fund settlement.[23] After analyzing the amount of fees awarded in many cases, Judge Patel, in *In Re Activision Securities Litigation*, 723 F. Supp. 1373 (N.D. Cal. 1989), concluded that the average benchmark in common fund cases was approximately 30%. Similarly, courts frequently award fees in excess of the benchmark 25% when the circumstances warrant it. *See, e.g., Ingalls v. Hallmark Mktg. Corp.*, 08cv4342 VBK, Doc. No. 77, ¶ 6 (C.D. Cal. Oct. 16, 2009) (awarding 33.33% fee on a $5.6 million wage and hour class action); *Rippee v. Boston Mkt. Corp.*, Case No. 05cv1359 (BTM

---

[20] See also *In re Mego Fin. Corp. Secs. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (finding that Class Counsel's significant investigation and research supported approval of settlement, even absent extensive formal discovery); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) ("[F]ormal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement."); *In re Critical Path, Inc.*, No. C 01-00551 WHA, 2002 WL 32627559, at *7 (N.D. Cal. June 18, 2002) ("Through protracted litigation, the settlement class could conceivably extract more, but at a plausible risk of getting nothing").

[21] See also *In re Public Serv. Co. of New Mexico*, 1992 WL 278452, at *12 (S.D. Cal. July 28, 1992) (awarding one-third); *Antonopulos v. N. Am. Thoroughbreds, Inc.*, 1991 WL 427893, at *4 (S.D. Cal. May 6, 1991) (awarding one-third); *In re M.D.C. Holdings Sec. Litig.*, 1990 WL 454747, at *10 (S.D. Cal. Aug. 30, 1990) (awarding 30% in fees, plus expenses).

[22] See also, *Vizcaino*, 290 F.3d 1043; *Garner v. State Farm*, 2010 WL 1687829 (N.D. Cal. Apr. 22, 2010); *Knight v. Red Door Salons, Inc.*, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009); *In re Omnivision*, 559 F. Supp. 2d 1036; *In re Activision Sec. Litig.*, 723 F. Supp. 1373 (N.D. Cal. 1989).

[23] *See, e.g., Anderson v. Merit*, 2009 U.S. Dist. LEXIS 100681, 2009 WL 3378526 at * 3 (Dist. Ct. Colo.) ("The customary fee to class counsel in common fund settlement is approximately one-third of the economic benefit bestowed on the class."); *Lucas v. Kmart Corp*, 2006 U.S. Dist. LEXIS 51420, 2006 WL 2729260 at * 6 (Dist. Ct. Colo.) (describing the "customary fee award" is "30% of the fund under the percentage of the fund approach") (citing 4 Robert Newberg, *Newberg on Class Actions* § 14:6 at 551 (4th Ed. 2002); *Vaszlavik v. Storage Technology Corp.*, 2000 U.S. Dist. LEXIS 21140, at * 10 (D. Colo. March 9, 2000); *Cimarron Pipeline Construction, Inc., v. National Council on Compensation*, 1993 U.S. Dist. LEXIS 19969, 1993 WL 355466, at * 2 (W.D. Okla. June 8, 1993) ("Fees in the range of 30-40% of any amount recovered are common in complex and other cases taken on a contingent fee basis and attorneys' fees of 33 1/3% of the common fund are consistent with prevailing case law.

(JMA) Doc. No. 70, at 7-8 (S.D. Cal. Oct. 10, 2006) (awarding a 40% fee on a $3.75 million wage and hour class action).

Here Class Counsel are not seeking any fee in excess of the benchmark 25% of the $9,000,000 Settlement Fund.  However, if the Court is inclined to use any other lower amount than the $9,000,000 Settlement Fund as the basis of the common fund award, Class Counsel respectfully request that the amount of a common fund percentage fee be increased in an amount up to 30%, at the Court's discretion.  Such award is in line with Ninth Circuit authority and also less than the agreed-upon rate of one-third in the Agreement.

**F.   THE PROPER MEASURE OF THE COMMON FUND IS BASED UPON THE ENTIRE COMMON FUND NEGOTIATED ON BEHALF OF THE CLASS**

**1.   THE $9,000,000 MAXIMUM FUND, NOT THE $7,000,000 MINIMUM FUND, SHOULD BE UTILIZED AS THE COMMON FUND FROM WHICH TO AWARD THE FEES.**

There are minimum and maximum funds negotiated here on behalf of the Class.  At the time of filing this brief in June, Class Counsel does not know the full extent of the claims that will be filed, and does not know whether the $7,000,000 minimum payment fund will be exceeded. To exceed that minimum fund would require a sufficient number of claims being filed, and we do not know at this time how many claims will be filed.    However, that should not matter for determining the fees awarded.  Based upon Supreme Court and Ninth Circuit authority, it is clear that this Court should award the fees based upon the maximum settlement fund available to the Class Members, and not be concerned with whether the amount of claims filed is sufficient to exceed the minimum amount.  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 480 (1980) (stating that the right of absentee class members "to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel); *Williams v. MGM-Pathe Communications Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997).  In the *Williams* case, the Ninth Circuit reversed the trial court's award of attorneys' fees of only one-third of the $10,000 total amount of claims filed against the $4.5 million potential settlement fund.   The Ninth Circuit held that the percentage of the fund fee should be based upon the entire amount of the potential settlement fund available to the Class, not the lesser amount for which claims have been filed. The Court cited and relied upon *In Boeing*

HYDE & SWIGART
San Diego, California

*Co. v. Van Gemert*, 44, U.S. 472, 480-81, 100 S.Ct. 745, 750-51 (1980), stating that the Supreme Court "concluded that the attorneys for a successful class may recover a fee based on the entire common fund created for the class, even if some class members make no claims against the fund so that money remains in it that otherwise would be returned to the defendants." *Williams*, *supra*, 129 F. 3d at 1027. Thus, this Court should not be concerned with whether the amount of claims filed is sufficient to exceed the $7,000,000 minimum amount of payment. See also 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 14:6, p. 570 (4th ed. 2002) (stating that Boeing settled the issue of whether the benchmark common fund amount for fee award purposes is made up of the funds potentially available to be claimed, regardless of the amount actually claimed).

Here the facts are analogous to the *Williams* case, with the exception that in the present case, the number of claims filed will not be determinative of the amount paid, because a $7,000,000 minimum settlement fund will be established regardless of a lesser number of claims filed. Agreement, § 5.01 That protects against a result that would permit defendants in general from avoiding payment of substantial funds based on few claims filed. In *Williams*, the reversion was the entire amount of the $4.5 million except for the $10,000 in claims filed. Here, the "reversion" if characterized as such, is the difference between the $7,000,000 and $9,000,000 fund ultimately required to be paid by Chase. For example, if sufficient claims are filed to justify a payment of $8,000,000, the "reversion" is only $1,000,000. But under the *Williams* case, it does not matter if the claims are sufficient to justify a $7,000,000 payment or some other payment less than $9,000,000. It is the total amount of potential Settlement Fund for which Chase could be paying that is important.[24]

Furthermore, the *Williams* court distinguished this situation where a settlement including an attorneys' fee, was negotiated at arms' length, as here, finding that situation permissible and supporting the award of the negotiated fees, from a judgment on which attorneys' fees are then sought. *Williams, supra*, at 1027. The court held: "The Supreme Court has indicated that the

---

[24] *Williams* at 1027 (holding that the district court abused its discretion by awarding attorneys' fees as one-third of $10,000 claimed against the common fund rather than awarding fees based on the entire $4.5 million settlement fund in a case where unclaimed funds reverted to the defendant).

HYDE & SWIGART
San Diego, California

parties to a class action properly may negotiate not only the settlement of the action itself, but also the payment of attorneys' fees. *See Evans v. Jeff D.,* 475 U.S. 717, 734-35, 738 n. 30, 106 S.Ct., 1531, 1540-42, 1543 n. 30 (1986). The Defendants here knew, because it was in the settlement agreement, that the class attorneys would seek to recover fees based on the entire $4.5 million fund." Therefore, the court awarded fees based upon the entire $4.5 million fund, not on the $10,000 in claims filed.[25]

### 2.  THE LODESTAR-MULTIPLIER CROSS-CHECK CONFIRMS THE REQUESTED FEE.

As explained above, the percentage of common fund approach provides the most used basis for granting a fee request. However, a "cross-check" under the lodestar method also demonstrates that Counsel's request is reasonable. *See* MCL 4th § 14.121 (noting "[a] number of courts favor the lodestar as a backup or cross-check on the percentage method when the fees might be excessive"). But even if that lodestar method is used to "cross-check" the amount of fees awarded under the percentage method, it "does not trump the primary reliance on the percentage of common fund method." *In Re Rite Aid Corp. Securities Litigation,* 396 F.3d 294, 307 (3rd Cir. 2005). "[D]istrict courts have discretion to use risk multipliers to enhance the lodestar in common fund cases." *In re Washington Public Power Supply System Securities Litigation,* 19 F.3d 1291, 1301 (9th Cir. 1994). However, when a lodestar fee is awarded, courts have historically awarded a multiplier of the lodestar, especially in class actions. Under the common fund doctrine, courts have consistently recognized that class litigation is increasingly necessary to protect the rights of individuals whose injuries and / or damages are too small to economically justify individual representation. *See Paul, Johnson, Alston & Hunt v. Gaulty* (9th Cir. 1989) 886 F.2d 268, at 271, wherein the Ninth Circuit embraced this principle when it stated that a lawyer should share an extra reward when he achieves a common fund for his client.

Accordingly, in the determination of a reasonable common fund fee award, courts award fees to bring class actions in order to achieve increased access to the judicial system for

HYDE & SWIGART
San Diego, California

---

[25] *See also McKinnie v. JPMorgan Chase Bank, N.A.,* 678 F. Supp. 2d 806, 815 (E.D. Wis 2009); *Masters v. Wilhelmina Model Agency, Inc.,* 473 F.3d 423, 437 (2d Cir. 2007) ("The entire fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class. An allocation of fees by percentage should therefore be awarded on this basis of the total funds made available, whether claimed or not."); *Waters Int's Precious Metals Corp.,* 190 F.3d 1291, 1295-98 (11th Cir. 1999) (upholding an attorney fee award based on the entire settlement fund though a portion reverted to the defendant).

meritorious claims and to enhance deterrents to wrongdoing.   *See* A. Conte, *Attorney Fee Awards*, 2nd Ed. 1993, 104, p.6.   In this case, no one would have brought an individual action based upon the $500 / $1,500 statutory damages permitted under the TCPA.   When the Ninth Circuit held that the common fund doctrine was available in ERISA cases, the court echoed the following sentiment:

> Having determined that risk multipliers remain available in common fund cases after *Dague,* we further note that we have held, in pre-*Dague* cases, that a risk multiplier is not only available in common fund cases but mandated, if the court finds that counsel had no sure source of compensation for their services . . . Moreover, we have observed that the need for such an adjustment is particularly acute in class action suits.  The lawyers for the class receive no fee if the suit fails, so their entitlement to fees is inescapably contingent.
>
> *Florin v. Nations Bank of Georgia* (9th Cir. 1994) 34 F.3d 560, 564.

Here the lodestar of counsel is $512,370.00 for all counsel.    The requested fee is $2,250,000, 25% of $9,000,000.   That results in a multiplier of 4.39.   That multiplier is well within the range allowed in similar class action cases.  *See Craft v. County of San Bernardino*, 624 F. Supp. 2d 1113 (C.D. Cal. 2008) (5.2 multiplier);  *Vizcaino v. Microsoft Corp.*, 290 F.3d at 1051 n.6 (citing cases with multipliers ranging from 0.6 to 19.6); *Steiner v. Am. Broad. Co.*, 248 Fed. Appx. 780, 783 (9th Cir. 2007) (25% fee reasonable where effective multiplier was 6.85).[26] Upward adjustments may be appropriate based on the results obtained, the quality of representation, the complexity and novelty of the issues presented, the risk of nonpayment, and any delay in payment. *Manual for Complex Litigation* ("MCL") 4th § 14.122, at 261.

The Ninth Circuit has encouraged, but not required, courts to conduct a lodestar crosscheck when assessing the reasonableness of a percentage fee award. *See In re Bluetooth*, 654 F.3d at 944 (stating "we have also encouraged courts to guard against an unreasonable result by

---

[26] *See also, e.g., In re Merry-Go-Round Enterprises, Inc.*, 244 B.R. 327 (Bankr. D. Md. 2000) (40% award of $71.2 million fund; cross-check multiplier of 19.6); In re Rite Aid Corp. Sec. Litig., 146 F. Supp. 2d 706 (E.D. Pa. 2001) (25% award of $193 million fund; multiplier of 4.5- 8.5); *In re Rite Aid Corp. Sec. Litig.*, 362 F. Supp. 2d 587 (E.D. Pa. 2005) (25% of $126,000,000 fund; multiplier of 6.96); *In re RJR Nabisco, Inc. Sec. Litig*, 1992 WL 210138 (S.D.N.Y Aug. 24, 1992) (25% of $72.5 million; multiplier of 6).

cross-checking their calculations against a second method" of determining fees).[27]   The first step in the lodestar method is to multiply the number of hours counsel reasonably expended on the litigation by a reasonable hourly rate. *Hanlon*, 150 F.3d at 1029. At that point, "the resulting figure may be adjusted upward or downward to account for several factors including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Id*. (*citing Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)); *see also In re Bluetooth*, 654 F.3d at 942. The lodestar-multiplier method confirms the propriety of the requested fee here.[28]

### 3.   A SIGNIFICANT MULTIPLIER IS WARRANTED

The fee requested by Class Counsel reflects a multiplier of 4.39 on their total lodestar. Such a multiplier is reasonable given the outstanding result Class Counsel have achieved for the Settlement Class, and the complexity of the case, and all TCPA cases. See *MCL* 4th § 14.122, at 261.   Furthermore, Plaintiffs' requested multiplier falls well-within the range of multipliers approved in a common fund case.  In light of this, Plaintiffs' request for a multiplier of 4.39 is appropriate and should be granted.  The case at bar is a national TCPA class action.  It is widely recognized that TCPA class actions are deemed as complex litigation. Further, it is established that such litigation is deserving a multiplier due to its nature and its complexity.

Once the  lodestar figure is determined, the court may take into consideration additional factors to enhance the lodestar, including the same *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975) factors set forth above in the analysis of whether the fee is percentage of fund fee awarded is fair. *Kerr, supra,*  526 F.2d at  70 (9th Cir. 1975); *Hanlon*, 150 F.3d at 1029; *Ballen v. City of Redmond*, 466 F.3d 736, 746 (9th Cir. 2006).  The court may then "enhance the lodestar with a 'multiplier,' if necessary, to arrive at a reasonable fee."  See *Vizcaino*, 290 F.3d at 1051 n.6 (citing cases with multipliers ranging from 0.6 to 19.6); *Steiner v. Am. Broad. Co.*, 248 Fed. Appx.

---

[27] Some courts have opted not to perform a lodestar cross-check where counsel have achieved exceptional results through early settlement. *See, e.g., Glass v. UBS Fin. Servs.*, 2007 U.S. Dist. LEXIS 8476, *49 (N.D. Cal. Jan. 26, 2007) ("where the early settlement resulted in a significant benefit to the class, the Court finds no need to conduct a lodestar cross-check"); *HCL Partners Ltd. P'ship v. Leap Wireless Int'l, Inc.*, 2010 U.S. Dist. LEXIS 109829 (S.D. Cal. Oct. 15, 2010) (awarding 25% fee in settlement reached prior to decision on second motion to dismiss); *see also Craft*, 624 F. Supp. 2d at 1122 ("A lodestar cross-check is not required in this circuit, and in some cases is not a useful reference point.").

[28] Like an award based on a percentage-of-the-fund, a fee award based upon a lodestar enhanced by a multiplier may be paid from a common fund obtained for a class. See *Fischel v. Equitable Life. Assur. Soc'y,*, 307 F.3d 997, 1007-1008 (9th Cir. 2002).

HYDE & SWIGART
San Diego, California

780, 783 (9th Cir. 2007) (25% fee reasonable where effective multiplier was 6.85);[29]   Upward adjustments may be appropriate based on the results obtained, the quality of representation, the complexity and novelty of the issues presented, the risk of nonpayment, and any delay in payment. *MCL 4th § 14.122*, at 261.

Those factors have been addressed above in the section on the reasonableness of a percentage of fund award and for sake of brevity need not be repeated here but they clearly support the award of the requested multiplier here.

### 4.   CLASS COUNSEL'S LODESTAR IS REASONABLE

Since they first began investigating the claims in this case over two years ago, Class Counsel have incurred more than $512,370 in fees and expended $23,878.58 in expenses related to the prosecution of this action.[30]   Included in those lodestar numbers are approximately 50 for all Class Counsel needed, at a minimum, to see this case through its final resolution, including preparing the final approval briefs, preparing for and attending the hearing on final approval and engaging in the work necessary to see that the claims process is properly carried out.  In all, Class Counsel have devoted more than 1,009 hours to the investigation, development, and resolution of this TCPA case.[31]  This includes time spent investigating the claims of the Settlement Class Members, engaging in discovery, researching and analyzing legal issues, propounding and responding to written discovery, working with an information technology expert and engaging in settlement negotiations.[32]

By this application, and as detailed in the supporting declarations filed herewith, Plaintiffs' counsel seek an award of attorneys' fees and costs based upon the following:

HYDE & SWIGART
San Diego, California

---

[29] See also, e.g., *In re Merry-Go-Round Enterprises, Inc.*, 244 B.R. 327 (Bankr. D. Md. 2000) (40% award of $71.2 million fund; cross-check multiplier of 19.6); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706 (E.D. Pa. 2001) (25% award of $193 million fund; multiplier of 4.5- 8.5); *In re Rite Aid Corp. Sec. Litig.*, 362 F. Supp. 2d 587 (E.D. Pa. 2005) (25% of $126,000,000 fund; multiplier of 6.96); *In re RJR Nabisco, Inc. Sec. Litig*, 1992 WL 210138 (S.D.N.Y Aug. 24, 1992) (25% of $72.5 million; multiplier of 6).

[30]  The time sheets of Class Counsel are attached to their respective declarations.  Kazerounian Fee Decl,, paras 14; Swigart Fee Decl, paras  15; Decl. Campion Fee Decl, ¶ 3 , Ex. 1, ¶¶ 4 and 5.

[31] Id., paras. 15, 16 ; Decl. Swigart, paras 17; Decl. Campion, ¶ 3.

[32] Id.  In providing this general overview, Plaintiffs and Class Counsel do not waive and, in fact, specifically reserve all protections afforded by the attorney-client privilege and work product doctrine. Swigart,Fee Decl., ¶ 17.

| | Hours | Rate/Hr. | Total |
|---|---|---|---|
| **Hyde & Swigart** | 281 | $495 | $139,095 |
| **Law Offices of Douglas J. Campion** | 304.70 | $625 | $190,420 |
| **Kazerouni Law Group, APC** | 306.2 | $435 | $133,197 |
| **Lieff, Cabraser** | 117.10 | Blended | $49,658 |
| **Total Combined Lodestar** | **1,009** | | **$512,370** |
| **Total Combined Costs** | | | **$23,878.58** |

Therefore, Plaintiffs' counsel seeks fees in the amount of $2,250,000, accounting for a multiplier of 4.39 and costs totaling a $23,878.58.

Furthermore, throughout this case, Class Counsel worked on the merits of the case efficiently and effectively.  Knowing it was possible they would never be paid for their work, counsel had no incentive to act in a manner that was anything but economical.  *See Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) ("[L]awyers are not likely to spend unnecessary time on contingency cases in the hope of inflating their fees.  The payoff is too uncertain, as to both the result and the amount of the fee.").  That said, counsel took their charge seriously and endeavored to represent the interests of the class  to the greatest extent possible.

The lodestar calculations of Class Counsel are based on reasonable hourly rates.  Class Counsel set their rates for attorneys and staff members based on a variety of factors, including, among others: the experience, skill and sophistication required for the types of legal services typically performed; the rates customarily charged in the markets where legal services are typically performed; and the experience, reputation and ability of the attorneys and staff members.[33]   The hourly rates charged for attorneys working on this matter range from $435 to $625 and have been previously approved by courts.[34]  In light of the detailed breakdown provided by counsel in their respective declarations, and the arguments offered above, Class Counsel submit that their lodestar calculations are based on reasonable rates.

---

[33] Kazerounian Fee Decl. ¶ 17; Decl. Swigart, ¶ 18;  Decl. Campion, ¶ 3.

[34] Id., ¶ 18; Decl. Swigart, paras 43; Decl. Campion, ¶ 3.  *Gutierrez, et al. v. Barclays Group, et al.*, 10-CV-1012 DMS(BGS) (Hourly rate approved by Class Counsel Joshua B. Swigart) and *Lo v. Oxnard European Motors, LLC, et al.*, 11-CV-1009 JSL(MDD)(Hourly rates sought here by all Class Counsel approved by the Court).

### G. PLAINTIFFS' COUNSEL'S LODESTAR SHOULD NOT BE REDUCED DUE TO THE AMOUNT OF JUDGMENT OR THE NUMBER OF CLAIMS MADE

The Supreme Court has a rejected the argument that the fees must be proportional with the damages recovered. *City of Riverside v. Rivera*, 477 U.S. 561, 581, 106 S. Ct. 2686 (footnote omitted); *see also Johnson v. Eaton*, 80 F.3d 148 (5th Cir. 1996); *Carroll v. Wolpoff &Abramson*, 961 F.2d 459 (4th Cir. 1992), cert. denied, 505 U.S. 905(1992) ("In the absence of any indication that Congress intended to adopt a strict rule that attorney's fees under [42 U.S.C.] 1988 be proportionate to damages recovered, we decline to adopt such a rule ourselves.") Furthermore, the fact that the number of claims that were ultimately filed were less than anticipated does not have any effect on the negotiated Settlement Agreement containing the fees agreement. *Beecher v. Able*, 441 F.Supp. 426 (S.D.N.Y. 1977). At the time of filing this motion well in advance of the hearing date, Class Counsel have no idea of the total number of claims that will be filed, but if they are few in number, that should not be a factor that reduces the fees requested. *Williams v. MGM-Pathe Communications Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997).

### H. THE PAYMENT OF COSTS IS FAIR AND REASONABLE

"Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit from the settlement." *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996) (*citing Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391-392, 90 S. Ct. 616, 24 L. Ed. 2d 593 (1970)). The primary cost was that of the information technology consultant, Hansen & Levey Forensics, Inc., in the amount of $21,850.00. See Campion Fees Decl., Ex. 3 for a copy of that invoice. The modest costs Class Counsel incurred in this case were necessary to secure the resolution of this negotiation and were reasonable incurred and necessary to litigate this case. *See In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177-1178 (S.D. Cal. 2007) (finding that costs such as filing fees, photocopy costs, travel expenses, postage, telephone and fax costs, computerized legal research fees, and mediation expenses are relevant and necessary expenses in a class action litigation). Of course, Class Counsel is also seeking Court approval of the payment of the costs of notice and claims administration incurred by Gilardi. That final bill will be presented prior to the hearing on this matter. All in all, Class Counsel worked hard to bring this

case to a successful resolution in the face of a staunch defense, and the fees and costs payment provided for in the settlement is fair and reasonable.

The Class Notice informed Class Members that Class Counsel would seek a combined award of fees no greater than $3,000,000, and costs no more than $25,000.   In light of the expenses Class Counsel has had to incur to bring this case to its current settlement posture, Class Counsel's request for a total award of $225,000,000, plus costs of $23,878.58. is reasonable.

## I.   THE REQUESTED INCENTIVE AWARDS FOR THE NAMED PLAINTIFFS ARE REASONABLE.

In addition, Class Counsel ask the Court to award incentive payments to the named Plaintiffs in the amount of $5,000 in the aggregate, or $2,500 each.[35] Chase has agreed to pay these awards if approved.[36]   *Pelletz v. Weyerhaeuser Co.*, 592 F. Supp. 2d 1322, 1329 (W.D. Wash. 2009) ("The trial court has discretion to award incentives to the class representatives."); *Grays Harbor Adventist Christian School v. Carrier Corp.*, No. 05-0537 RBL, 2008 WL 1901988, at *6 (W.D. Wash. April 24, 2008) (same); *In re Mego Financial Corp. Securities Litigation*, 213 F.3d 454 (9th Cir. 2000)( as is requested here, approving of $ 5,000 incentive award to two class representatives out of total $ 1.725 million settlement).   In *Van Vranken v. Atlantic Richfield Co.* 901 F. Supp. 294 (N.D.Cal.,1995), the court set forth five factors to be reviewed in deciding whether to award an incentive payment to a class representative, and if so, in what amount. Here Plaintiffs meet that *Van Vranken* test. Plaintiffs were at risk by coming forward to serve as proposed class representatives, they were required to review volumes of documents, prepare for mediation, and took time off work to be on call during the mediation, and they will earn little for their efforts without this incentive payments, which is only $2,500 each. They each kept abreast of the litigation, assisted Class Counsel in responding to written discovery and also reviewed and approved the proposed settlement terms after reviewing them and consulting with Class Counsel.

Unlike unnamed class members, who are passive beneficiaries of the representatives' efforts on their behalf, named class representatives agree to be the subject of discovery, including

---

[35] Decl. Swigart ¶¶ 66 and 67; Settlement Agreement §6.02.

[36] Decl. Kazerounian ¶ 6; Decl. Swigart ¶ 6.

making themselves available as witnesses at deposition and trial, and subject themselves to other obligations of named parties.   Small enhancement payments promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits.

A $5,000 incentive award, in the aggregate to Plaintiff is modest under the circumstances, and in line with awards approved by other federal courts.  *See Pelletz*, 592 F. Supp. 2d at 1329-30 & n.9 (approving $7,500 incentive awards where plaintiffs assisted Class Counsel, responded to discovery, and reviewed settlement terms, and collecting decisions approving awards ranging from $5,000 to $40,000); *Grays Harbor*, 2008 WL 1901988, at *6 (approving $3,500 awards).

In light of Plaintiffs' effort and risk undertaken to obtain a meaningful result for the Class — and the fact that no Class Member has objected to the service payments — Plaintiffs request that the Court approve the payment of $5,000, in the aggregate, to the named Class Representatives.

**J.     THE CLASS RESPONSE TO DATE SUPPORTS APPROVAL OF THE REQUESTED FEE.**

To date there are no objections to the attorneys' fees and costs requested.[37]   This Motion for attorneys' fees and costs is being filed approximately six weeks before the hearing date, and posted on the Class Action website, so additional opt outs and objections may be filed, but little opposition to the fee request or to the settlement itself is expected.

**IV.   CONCLUSION.**

For the reasons stated above, Plaintiffs respectfully request that this Court award the requested class representative incentive payments and attorneys' fees and costs.

**LAW OFFICES OF DOUGLAS J. CAMPION**

Date: June 20, 2012                 By:_Douglas J. Campion_____
                                    Douglas J. Campion
                                    Attorneys for Plaintiffs

**KAZEROUNI LAW GROUP, APC**

---
[37]  Swigart Fee Decl., ¶¶ 6 and 65.

HYDE & SWIGART
San Diego, California

Date: June 20, 2012                    By:  /s Abbas Kazerounian_____
                                            Abbas Kazerounian

                                       **HYDE & SWIGART**

Date: June 20, 2012                    By:  /s Joshua B. Swigart_____
                                            Joshua B. Swigart

                                       Attorneys for the Plaintiffs and Proposed
                                       Settlement Class