Robert L. Hyde, Esq. (SBN: 227183)
bob@westcoastlitigation.com
Joshua B. Swigart, Esq. (SBN: 225557)
josh@westcoastlitigation.com
**Hyde & Swigart**
411 Camino Del Rio South, Suite 301
San Diego, CA 92108-3551
(619) 233-7770
(619) 297-1022

Douglas J. Campion (SBN: 75381)
**Law Offices of Douglas J. Campion**
409 Camino Del Rio South, Suite 303
San Diego, CA 92108
Telephone:   (619) 299-2901
Facsimile:    (619) 858-0034

Attorneys for Patricia Connor,
on behalf of herself and all others similarly situated

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **PATRICIA CONNOR, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED**<br><br>PLAINTIFFS,<br><br>V.<br><br>**JPMORGAN CHASE BANK AND FEDERAL NATIONAL MORTGAGE ASSOCIATION A/K/A FANNIE MAE,**<br><br>DEFENDANTS. | **Case No.:** 10-cv-1284 DMS (BGS)<br><br>**CLASS ACTION**<br><br>**DECLARATION OF JOSHUA B. SWIGART IN SUPPORT OF PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS AND SERVICE AWARDS TO THE NAMED PLAINTIFFS**<br><br>Date:  August 3, 2012<br>Time:  1:30 p.m.<br>Ctrm: 10<br><br>**THE HON. DANA M. SABRAW** |

I, Joshua B. Swigart, hereby competently testify to the matters herein from personal knowledge.

1. I am a partner of the law firm of Hyde & Swigart and a counsel of record for Plaintiff in this matter. I am admitted to this Court and am a member in good standing of the State Bar of California. I have been involved in every aspect of this case from inception through the present. I submit this declaration in support of Plaintiff's Motion for Fees and Costs in which Plaintiff seeks to have the Court approve attorneys' fees in the amount of 25% of the common fund along with payment of costs incurred. That agreement is set forth in the Settlement Agreement filed with the Preliminary Approval Motion (Settlement Agreement § 19.01). Such amount requested by this motion is $2,250,000 for attorneys' fees, and $23,878.58 in costs of litigation incurred, as detailed below.

## CASE HISTORY

2. There is pending in the United Stated District Court for the Southern District of California, a civil action entitled Patricia Connor v. JPMorgan Chase Bank and the Federal National Mortgage Association (jointly hereinafter "Defendants"), bearing Case No. 10-cv-01284 DMS(BGS) (the "Action").

3. For approximately one year since the Early Neutral Evaluation in this action, the Parties have engaged in settlement discussions and negotiations regarding this matter. Through this process and Parties' representations to each other, the Parties believe that they are fully apprised of the relative strengths and weaknesses of each other's claims and defenses and the potential risk to each party of pursuing further litigation in this matter.

4. On January 14, 2011, the Parties attended an Early Neutral Evaluation Conference before the Honorable Bernard G. Skomal. The Honorable Bernard G. Skomal kindly offered his services to the Parties for a second mediation on April 4, 2011. Due to the second mediation and due to some settlement discussions between the Parties after April 4, 2011, the Parties were able to reach a settlement at an early stage of the proceedings. However, due to a number of problems in attempts to put the Settlement details in writing, and in projecting the implementation of its terms, the Parties negotiated for many more months

1 before agreeing on how the Settlement details would be resolved, including how best to identify the persons in Subclass A. The Parties agreed to settle on the terms in the Settlement Agreement as set forth therein, on behalf of a Settlement Class of all persons whose names are associated with Chase's home mortgage accounts or home equity loans accounts and those called on their cell phones will receive a monetary payment. A true and correct copy of that Settlement Agreement ("Agreement") is attached hereto as Exhibit A. As part of that Agreement, Defendants will pay a maximum of $9,000,000.00 or a minimum of $7,000,000 into a Settlement Fund, from which will be paid all claims, attorneys' fees and expenses, and costs of notice and claims administration. (The Class Action Fairness Act Notice will be paid separately by Defendants.) In my opinion, the settlement merits court approval.

5. We contend that the class as so defined satisfies the requirements of Rule 23 because all persons in the Settlement Class are persons with names associated as borrowers or co-borrowers on Chase accounts that had at least one cell phone called with an autodialer or by a prerecorded voice message during the Class Periods relating to the account. Chase's records do not indicate the name of the account holder called on their cell phone, only the cell phone number called. Therefore all 1,718,866 persons associated with such accounts will get a direct mail notice explaining that at least one person on the account was called on a cell phone and that each Class Member can call or inquire online of the Claims Administrator to see if their cell phone number was the number called. If so, they are part of the 1,181,441 members of Subclass A and are entitled to a monetary payment. If not, they will still benefit from Chase's newly implemented procedures put in place because of this Action to ensure future compliance with the TCPA, and they will not receive future calls to their cell phone without prior express consent. See Agreement, §§ 5.03, 5.04.

6. Chase has stated that it does not oppose Class Counsel's application. Further, the Court has preliminarily approved the award.

7. The settlement agreement in this matter has been preliminarily approved by the Court, and it establishes a common fund, with a floor of $7,000,000.00 and a ceiling of $9,000,000.00.

8. No class member has paid Plaintiff's Counsel for its attorneys' fees or costs in this matter.

9. After the lawsuit was filed, Class Counsel obtained significant discovery from Plaintiff, and Chase. Discovery from Chase included relevant information and documents such as internal documents, which Defendant would rely upon for "prior express consent" as well as Defendant's outbound calls lists identifying the Class Members.

10. Class Counsel then spent numerous hours analyzing the documents.

11. By working hard to accomplish these tasks, and through lengthy and aggressive negotiation, Class Counsel was able to negotiate an efficient, favorable, and timely result for the Settlement Class Members.

12. Class Counsel secured timely relief in one year from the date of the Early Neutral Evaluation, to the granting of preliminary approval.

13. Class Counsel secured timely relief in one year from the date of the Early Neutral Evaluation, to the granting of preliminary approval.

14. Class Counsel are asking for a modest 25 percent of the overall settlement fund of $9,000,000, a number that falls significantly below the Ninth Circuit's 25% benchmark.

15. Since they first began investigating these claims, Class Counsel have incurred approximately $23,878.58 costs and $512,370 in attorney's fees, resulting in an overall award request of $2,273,878.58 in both attorneys' fees and litigation expenses. Out of pocket expenses incurred in this cased include the following: 1) copying, mailing and messenger expenses, 2) computer research expenses, 3) factual investigation expenses, 4) travel expenses, and 5) consultant fees.

16. I estimate Class Counsel's firms will incur approximately $24,750 in fees to see this case through its final resolution, including the work necessary to oversee that the claims process is properly carried out and attending the hearing on final approval. This amount has been factored into Class Counsel's combined lodestar.

HYDE & SWIGART
San Diego, California

Decl. of J. Swigart in Support of Motion for Attorneys' Fees and Costs   - 4 of 14 -   10-cv-1284 DMS (BGS)

17. In all, Class Counsel has devoted more than 1,009 hours to the investigation, development, litigation and resolution of this complex case. This includes time spent investigating the claims of the Settlement Class Members, conducting discovery, researching and analyzing legal issues, taking and defending depositions, opposing a dispositive motion and engaging in settlement negotiations. The discovery produced, indicates that the Class includes 1,718,866 class members at the time of preliminary approval. That number will be reduced as of the Effective Date based on any Class Member filing for bankruptcy or being recently deceased.

18. Class Counsel set its rates for attorneys and staff members based on a variety of factors, including among others: the experience, skill and sophistication required for the types of legal services typically performed; the rates customarily charged in the markets where legal services are typically performed; and the experience, reputation and ability of the attorneys and staff members.

19. Class Counsel expects to expend an additional 50 hours seeing this case through to its final resolution.

20. In agreeing to represent the Class on a contingent basis, Class Counsel risked their own resources with no guarantee of recovery.

**CLASS NOTICE**

21. Class Notice was disseminated in accordance with the notice plan developed by the parties and approved by this Court upon preliminary approval of the Settlement. See Declaration of Claims Administrator, Gilardi and Co., forthcoming concerning mailing of notice.

22. The costs of Class Notice and claims administration have been paid from the Settlement Fund, per the Settlement Agreement.

23. Since Notice of the Settlement has been disseminated, Connor Counsel has received and numerous telephone calls concerning the settlement.  Class members have generally expressed positive views about the terms of the Settlement and have been pleased that they will receive monetary recovery for making a claim.

HYDE & SWIGART
San Diego, California

Decl. of J. Swigart in Support of Motion for Attorneys' Fees and Costs   - 5 of 14 -   10-cv-1284 DMS (BGS)

24. Class counsel have answered all questions regarding the Settlement. All calls concerning the settlement have been returned within 24-hours, but usually the same business day.

25. My firm anticipates spending approximately twenty (20) additional hours on this case through its final resolution including responding to Class Member inquires, and briefing the Final Approval documents.

26. In order to receive a monetary payment form the Settlement Fund, a Class Member must be a member of Subclass A – those persons actually called on their cell phones by Chase or its predecessors, or Chase Home Finance, LLC. Based on data contained in the Notice Database which was prepared using the information in Chase's records and containing the most current addresses Chase has for the Class members, the total number of Class Members in the Settlement Class that will be getting personal direct mail Notice is 1,718,866. The number of Settlement Class members in Subclass A are those persons with unique cell phone numbers actually called by Chase or its agents and is a smaller number, 1,181,441.

27. Those numbers were confirmed by Plaintiff's information technology consultant and in confirmatory discovery responses provided by Chase. Douglas J. Campion engaged in an analysis with our technology consultant to assure the cell phone numbers in the class lists were accurate. See Declaration of Douglas J. Campion for further detail.

28. We prepared a direct mail notice and also a formal lengthy Notice in a Question & Answer format to be posted on the Settlement Website. Those notices adequately inform the Class members about the settlement and their rights to opt out or object to the Settlement. I believe the proposed notice complies with any notice requirements. Gilari & Co., the Parties' proposed Claims Administrator, used the Notice Database containing all Class Members' names and addresses, and sent out the direct mail notice. Gilardi & Co. specializes in providing administrative services in class action settlements and has decades of experience in doing so.

HYDE & SWIGART
San Diego, California

**ATTORNEYS' FEES AND CLASS REPRESENTATIVE STIPENDS**

29. At Hyde & Swigart, we maintain contemporaneous time records reflecting the time spent on this and other matters.

30. Taking into account the burdens, uncertainty and risks inherent in this litigation, Plaintiff's counsel have concluded that further prosecution of this action could be protracted, unduly burdensome, and expensive, and that it is desirable, fair, and beneficial to the class that the action now be fully and finally compromised, settled and terminated in the manner and upon the terms and conditions set forth in the Settlement Agreement.

31. The Named Plaintiffs and all of her counsel believe that the claims asserted in the Action have merit. However, taking into account the risks of continued litigation, as well as the delays and uncertainties inherent in such litigation including the risks in class certification, and any subsequent appeal, they believe that it is desirable that the Action be fully and finally compromised, settled and terminated now with prejudice, and forever barred pursuant to the terms and conditions set forth in this Settlement Agreement. They have concluded that with the Settlement Fund and with the deterrent effects of the changes in procedure that have been implemented by Chase (Agreement, §5.04), we believe the terms and conditions of this Settlement Agreement are fair, reasonable and adequate to the proposed class, and that it is in the best interests of the proposed class to settle the Action.

32. A settlement was finalized, agreed upon by all Parties and counsel and a formal Settlement Agreement was executed. The Court granted preliminary approval of the settlement class. This Unopposed Submission for Attorney's Fees followed.

33. In Class Counsel's experience and review of other similarly settled TCPA class cases reveal Class Counsel has obtained a fair, reasonable, and adequate settlement for the proposed class. Therefore, the attorneys' fees and costs being requested by this petition are more than reasonable.

**EXPERIENCE OF JOSHUA B. SWIGART AND HYDE & SWIGART**

34. I have extensive experience in consumer class action and other complex litigation. My skills in developing the factual and legal record and settling the case were essential to achieving this result.

35. Moreover, my firm's history of aggressive, successful prosecution of consumer class actions made credible their commitment to pursue this litigation until it provided a fair result for the Class. Through my skill, reputation, and ability, I was able to obtain a class settlement providing outstanding relief for the Class.

36. To date, there have been no objections filed or received by Class Counsel, submitted through the ECF system, or mailed to the Claims Administrator, as to the settlement and/or the requested payment of attorneys fees and costs.

37. I have filed and litigated many other class actions based on the Telephone Consumer Protection Act in the past four years.

38. The following is a list of other TCPA class actions which I am or have been personally involved in:
    a. *Bellows v. NCO Financial Systems, Inc.*, 07-CV-01413 W(AJB);B.
    b. *Adams v. AllianceOne, Inc.*, 08-CV-0248 JAH;
    c. *Lemieux v. Global Credit & Collection Corp.*, 08-CV-1012 IEG(POR);
    d. *Malta v. Wells Fargo Home Mortgage, et al.*, 10-CV-1290 IEG(BLM);
    e. *Robinson v. Midland Funding, LLC*, 10-CV-2261 MMA(AJB);
    f. *Arthur v. SLM Corporation*, 10-CV-00198 JLR;
    g. *Ryabyshchuk v. Citibank (South Dakota) N.A.*, 11-CV-1236 IEG(WVG);
    h. *Ridley v. Union Bank, N.A.*, 11-CV-1773 DMS(NLS);
    i. *Allen v. Wells Fargo Auto Finance, Inc.*, 10-CV-02657 W (JMA);
    j. *Gutierrez, et al. v. Barclays Group, et al.*, 10-CV-1012 DMS(BGS);
    k. *Lo v. Oxnard European Motors, LLC, et al.*, 11-CV-1009 JLS(MDD).

39. I have been appointed and approved by various courts as class counsel on similar TCPA class actions, including:
    a. *Bellows v. NCO Financial Systems, Inc.*, 07-CV-01413 W(AJB);

HYDE & SWIGART
San Diego, California

b. *Lemieux v. Global Credit & Collection Corp.*, 08-CV-1012 IEG(POR);

c. *Lo v. Oxnard European Motors, LLC, et al.*, 11-CV-1009 JLS(MDD);

d. *Gutierrez, et al. v. Barclays Group, et al.*, 10-CV-1012 DMS(BGS);

e. *Arthur v. SLM Corporation*, 10-CV-00198 JLR (Preliminarily approved, pending final approval);

f. *Adams v. AllianceOne, Inc.*, 08-CV-0248 JAH (WVG) (Preliminarily approved, pending final approval);

40. I have undergone extensive training in the area of the Fair Debt Collection Practices Act and the TCPA. The following is a list of recent training conferences I attended:

a. National Consumer Law Conference; Oakland, CA – 2003;

b. National Consumer Law Conference (FDCPA Mini-Conference);

c. Kansas City, MO – 2004;

d. National Consumer Law Conference; Boston, MA – 2004;

e. Five-day extensive one-on-one training with The Barry Law Office; San Diego, CA –2005;

f. Three-day FDCPA Mini-Conference; Minneapolis, MN – 2005;

g. Four-day extensive one-on-one training with The Barry Law Office; Minneapolis, MN – 2005;

h. Four-day National Association of Consumer Advocates Conference; Minneapolis, MN – 2005;

i. Four-day National Consumer Law Center Conference; Nashville, TN – 2008;

j. Three-day National Consumer Law Center Conference; Portland, OR - 2008;

k. Speaker at a Three-day National Consumer Law Center Conference; San Diego, CA - 2009.

l. Speaker ABA/JAG presentation to military service members and counsel; MCRD, San Diego CA – 2010;

m. Speaker ABA teleconference on defending consumer credit card debt and related issues; San Diego, CA – 2010.

HYDE & SWIGART
San Diego, California

      n.    Three-day National Consumer Law Center Conference; Seattle, WA - 2011;

      o.    Two-day FDCPA Mini-Conference; New Orleans; LA - 2012.

41.    A member in good standing of the following local and national associations:

      a.    National Association of Consumer Advocates;

      b.    Federal Bar Association;

      c.    Consumer Attorneys of California;

      d.    San Diego County Bar Association;

      e.    Riverside County Bar Association;

      f.    San Bernardino County Bar Association;

      g.    Enright Inns of Court.

42.    I have been requested to, and have made, regular presentations to community organizations regarding debt collection laws. The following are a few examples of such presentations:

      a.    California Western School of Law, 2005;

      b.    Canyon Springs High School, Moreno Valley, CA 2003-2008; Careers in the legal field.

      c.    Guest speaker on national talk radio. Topic: the passage of House Bill allowing the IRS to send past due consumer tax bills to private debt collection firms;

      d.    Regular host on 103.7 Free FM on the radio show Know The Law. Topics addressing specific collection issues. Appearances number more than ten shows;

      e.    Department of Defense; JAG Office, Naval Station San Diego (2006);

      f.    Department of Defense; JAG Office, Naval Station San Diego, relevant Fair Credit Reporting issues and the Fair Debt Collection Practices Act (2008);

      g.    American Bar Association – Legal Assistance for Military Personnel, Naval Station –North Island (2008);

      h.    National Consumer Law Center - E-Discovery issues - San Diego (2009);

      i.    National Association of Retail Collection Attorneys - Prosecuting consumer cases - San Francisco (2009);

      j.    American Bar Association - Seminar on defending consumer collection cases (2010);

k.     Military Law Committee (MCRD) - Representing military service members in consumer related issues - San Diego (2010).

43. My experience in litigating class actions and my years in practice allowed me to provide outstanding monetary relief to this class through settlement, and are more than sufficient to justify my firm's appointment as class counsel in this case. Therefore, my experience and years in practice are sufficient to justify my hourly billing rate in this case of $495 per hour. My co-counsel Kazerouni Law Group, APC and Law Offices of Douglas J. Campion are very experienced in the area of consumer law, including Telephone Consumer Protection Act cases. I work with both of those firms in a number of other Class action cases as co-counsel. I believe their requested hourly billing rates are justified based upon their experience.

44. Attached hereto as Exhibit A is a true and correct copy of my firm's billing in this matter.

45. Attached hereto as Exhibit B is a true and correct copy of the costs my firm as incurred in litigating this matter.

46. Attached hereto as Exhibit C is a true and correct copy of the invoice I received from my IT consultant in this matter.

47. Attached hereto as Exhibit D is a true and correct copy of the Order granting final approval and attorney fees in *Lemieux v. Global Credit & Collection Corp.*, 08-CV-1012 IEG(POR).

48. Attached hereto as Exhibit E is a true and correct copy of the Order approving attorneys fees in *Bellows v. NCO Financial Systems, Inc*.; 07-CV-1413 W(AJB) where my approved hourly rate was $355.

49. Attached hereto as Exhibit F is a true and correct copy of the Order approving attorneys fees in *Basinger-Lopez v. Tracy Paul & Associates, et al*.; C 08-5192 SBA where my approved hourly rate was $355.

50. Attached hereto as Exhibit G is a true and correct copy of the Order approving attorneys fees in *Dillon v. United Processing, Inc.*; 08-CV-1235 JM(NLS) where my approved hourly rate was $355 and associate attorneys at a rate of $255 per hour.

Decl. of J. Swigart in Support of Motion for Attorneys' Fees and Costs  - 11 of 14 -  10-cv-1284 DMS (BGS)

51. Attached hereto as Exhibit N is a true and correct copy of the Order granting final approval and attorney fees in *Gutierrez, et al. v. Barclays Group, et al.*, 10-CV-1012 DMS(BGS).

52. Attached hereto as Exhibit O is a true and correct copy of the Order granting final approval and attorney fees in *Lo v. Oxnard European Motors, LLC, et al.*, 11-CV-1009 JSL(MDD)

53. Attached hereto as Exhibits H is a declaration by attorney Stephen G. Recordon. His firm is engaged in individual and class actions involving consumer rights, with compensation only as awarded by the courts in his cases. He has 31 years of experience, is familiar with my work as an attorney, and familiar with comparable rates billed in this legal community. Mr. Recordon believes my hourly rate of $495 per hour is reasonable based on my legal experience and market rates in the legal community and $295 per hour for associate attorneys.

54. Attached hereto as Exhibits I is a declaration by attorney Clinton Rooney. Mr. Rooney is engaged in individual and class actions involving consumer rights, with compensation only as awarded by the courts in his cases. He has 8 years of experience, is familiar with my work as an attorney, and familiar with comparable rates billed in this legal community. Mr. Rooney believes my hourly rate of $495 per hour is reasonable based on my legal experience and market rates in the legal community and $295 per hour for associate attorneys.

55. Attached hereto as Exhibit J is a true and correct copy of the Journal of Empirical Legal Studies.

56. Attached hereto as Exhibit K is a true and correct copy of the Vanderbilt University Law School Article on Empirical Study of Class Action.

57. Therefore, my firm's experience and years in practice, taken with the current legal market rates, are sufficient to justify my hourly rate of $495.

58. As stated above, attached hereto as Exhibit A is a true and correct copy of the hours reasonably expended on this matter by my firm in the litigation of this matter. My billing records, to date show a total 281.00 hours incurred in this litigation. This does not include

1   the anticipated 20 hours I anticipate spending on the additional administration of the class,
2   as well as preparing the Final Approval Motion and supporting documentation.

3   59.   In addition to incurring the attorney's fees as set forth in the paragraph above, my firm has
4   incurred a total $1,092.07 in costs to prosecute this matter.  See Exhibit B attached to this
5   declaration for additional detail.

6   60.   At a billing rate of $495 for partners my firms total lodestar equals $139,095 based on a
7   total number of hours of 281.

8   61.   We are seeking a multiplier of only 4.39 (precisely - 4.39135780783418) based upon the
9   total fees incurred by all Class Counsel lodestars of $512,370. and the amount of fees
10  available of $2,250,000.

11  62.   This case is such a case that would not have been pursued by any counsel in the local
12  geographical area unless a multiplier would be awarded.  Such a multiplier is expected
13  because of the type or class of cases in which the Telephone Consumer Protection Act
14  ("TCPA") are.   There is no fee-shifting statute in the TCPA.   Furthermore, there is
15  absolutely no incentive for a client to hire an attorney on an hourly basis to pursue the
16  statutory damages remedy for a TCPA violation that is $500 for each negligent violation
17  and $1,500 for each intentional violation.  That would of course be non-economical for any
18  client as the attorneys' fees would far exceed any recovery.

19  63.   Furthermore, cases in which I charge an hourly rate take into account that I will likely be
20  paid for my work.  If I am not being paid, I can withdraw from the case if necessary and
21  not have to be committed to doing work for perhaps years on a case without knowing if I
22  will be paid or not.  Here, and in this class of TCPA cases, I and other counsel take these
23  cases on only because the attorneys in this local area expect to be paid a multiplier if the
24  case is successful.  Here the case was successful as is explained below.

25  64.   Based on the type of case, the fact there is not a fee shifting provision and the result
26  obtained, a multiplier of approximately 4.39 is warranted in this case.  I took this case on
27  contingency, with no guarantee of ever being paid and faced substantial risk should the
28

HYDE & SWIGART
San Diego, California

case proceed to trial. From the onset of this litigation my firm and co-counsel have expended our own resources with the risk that we would recover nothing.

65. Based on the Parties agreement and at the direction of the Court, Plaintiff's counsel employed class administrator Gilardi & Co, LLC., to provide individualized notice to each of the 1,718,866 Class Members. The latest report provided by the class administrator shows claims made in the amount of received 57,315 shows only 119 valid opt-out and no objections received by any class member.

66. As set forth in the Joint Motion for Preliminary Approval, both named class representatives are applying for incentive awards. Both named Plaintiffs have been active in this litigation and provided critical information to their counsel which made the successful litigation of this matter possible. Both named Plaintiffs were critical in the investigation of the matters surrounding the litigation, the filing of this action and the settlement process.

67. The incentive awards sought are as follows:

    a. Patricia Connor - $2,500 incentive award for her service as class representative in the form of a check.

    b. Sheri L. Bywater - $2,500 incentive award for her service as class representative in the form of a check. (Settlement Agreement ¶ 6.02);

68. Based on the amount of work and involvement by Plaintiff the incentive awards in this case are justified.

69. Class Counsel's retainer agreement with Plaintiff Patricia Connor provides that counsel "will be entitled to compensation for their services in the amount of one-third (33 1/3%) of [any] settlement proceeds."

70. I declare nothing further.

I declare under penalty of perjury under the laws of the State of California and the United States of America, that the foregoing is true and correct and that this declaration was prepared at San Diego, California, on June 20, 2012.

By: /s Joshua B. Swigart
Joshua B. Swigart