# EXHIBIT F

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| JESSICA BASINGER-LOPEZ,<br><br>  Plaintiff,<br><br>vs.<br><br>TRACY PAUL & ASSOCIATES, aka PAUL LAW OFFICES a/k/a ARCHES FINANCIAL LLC, TAWNI DOE, and SHANTEL LOWE,<br><br>  Defendant. | Case No: C 08-5192 SBA<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR JUDGMENT AND ATTORNEY'S FEES AND COSTS**<br><br>[Docket 13] |

   Plaintiff Jessica Basinger-Lopez ("Plaintiff") brings the instant action against Tracy Paul & Associates ("Defendant"), a debt collector, and two of its employees, alleging that they violated her rights under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1992o, and the California equivalent of the federal FDCPA, known as the Robbins-Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), Cal.Civ.Code §§ 1788-1788.32. Defendant failed to answer the Complaint and its default has been entered. This matter is presently before the Court on Plaintiff's unopposed Motion for Default Judgment and Attorney's Fees and Costs. (Docket 13). Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby GRANTS the motion with respect to the requests for statutory damages and for an award of attorney's fees and costs. The motion is DENIED as to the request for actual damages. The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed.R.Civ.P. 78(b).[1]

---

[1] The Clerk declined to take the defaults of the individual Defendants, and this motion does not pertain to them. Plaintiff has not indicated how she intends to proceed, if at all, as to these two Defendants.

## I. BACKGROUND

Plaintiff alleges that sometime prior to August 28, 2008, she became indebted to Chase Manhattan Bank for personal, household or family debt. (Compl. ¶ 19.) The debt was assigned to Defendant for collection. (Id. ¶ 23.) Defendants Tawni (last name unknown) and Shantel Lowe ("Shantel") are employees or agents of Defendant. (Id. ¶ 3.) On August 28, 2008, Tawni called Plaintiff by telephone and told her she was "being sued" and asked whether she wanted to settle her case that day. (Id. ¶ 24.) Plaintiff stated that it was inconvenient to discuss the matter, instructed Tawni to communicate with her in writing, and hung up. (Id. ¶ 33.) Tawni ignored Plaintiff's instructions and called back threatening to contact Plaintiff's relatives, neighbors and employers about her debt. (Id. ¶¶ 34-36.) Tawni also stated that if Plaintiff did not return her call, a civil judgment would be entered against her. (Id. ¶ 35.)

Later in the day, Plaintiff returned Tawni's call and was informed that Defendant allegedly had sent numerous warning letters to which Plaintiff had not responded. (Id. ¶ 38.) Plaintiff, however, had received no such mailings. (Id.) Tawni then told Plaintiff to "grow up and be an adult" and accused her of "stealing." (Id. ¶¶ 40-41.) Plaintiff informed Tawni that the account in question had not been used in six or seven years, and questioned the validity of the debt. (Id. ¶ 42.) Tawni nevertheless persisted in threatening to sue Plaintiff. (Id. ¶ 43.)

The following day, on August 29, 2008, Plaintiff wrote to Defendant to dispute the claimed debt and insisted that it refrain from contacting her unless or until it could validate the debt. (Id. ¶ 46.) On September 4, 2008, Shantel called Plaintiff and acknowledged receipt of her letter and falsely claimed that the FDCPA did not apply to them because they were not a collection agency. (Id. ¶ 53.) Shantel further claimed that Plaintiff had previously made "payment arrangements" which validated the debt when, in fact, no such arrangements had been made. (Id. ¶ 55.) Thereafter, on September 10, 2008, Plaintiff received a letter from Defendant again threatening to take legal action against her. (Id. ¶ 57.) On September 16, 2008, Tawni called Plaintiff and again threatened legal action if Plaintiff did not pay. (Id. ¶ 59.) On November 8, 2008, Plaintiff called Defendant to determine the status of the matter, but was given no information because the case allegedly was in litigation. (Id. ¶ 62.)

- 2 -

1   Plaintiff filed the instant action in this Court on November 17, 2008 against Defendant,
2   Tawni and Shantel, alleging two claims for relief. In Count I, she alleges that Defendants violated
3   the FDCPA, and seeks actual damages under 15 U.S.C. § 1692k(a)(1), statutory damages under 15
4   U.S.C. § 1692k(a)(2)(A), and an award of attorney's fees and costs under 15 U.S.C. § 1692k(a)(3).
5   In Count II, Plaintiff alleges that Defendants violated the Rosenthal Act and seeks the same relief
6   as her federal FDCPA claim.
7   Plaintiff served Summons and Complaint on Defendant on December 22, 2008. Tawni was
8   served on December 29, 2008. Defendants failed to file a responsive pleading. At Plaintiff's
9   request, the Clerk entered a default against Defendant on February 24, 2009. Plaintiff now seeks
10  entry of default judgment against Defendant in the following amounts: (1) $10,000 in actual
11  damages for emotional distress; (2) $2,000 in statutory damages; (3) $4,002 in attorney's fees and
12  (4) $530.52 in costs. No opposition has been filed to the motion.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 55(a), the Clerk is required to enter default when established by affidavit or otherwise. Fed.R.Civ.P. 55(a). Once a default is entered, the factual allegations of the Complaint, other than those pertaining to damages, are deemed admitted. Fed.R.Civ.P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied"); Geddes v. United Financial Group, 559 F.2d 557, 560 (9th Cir. 1977) (same).

Once the default is entered, plaintiff may then seek a default judgment. See Fed. R. Civ. P. 55(b)(1) and (2); Benny v. Pipes, 799 F.2d 489, 492 (9th Cir. 1986) ("A failure to make a timely answer to a properly served complaint will justify entry of a default judgment."), amended on other grounds, 807 F.2d 1514 (9th Cir.), cert. denied, 484 U.S. 870 (1987). The decision of whether to grant or deny a request for default judgment lies within the sound discretion of the district court. Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). In exercising its discretion, the district court is guided by consideration of the following factors:

- 3 -

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

### III. DISCUSSION

#### A. LIABILITY

"In enacting the FDCPA, Congress sought to counter the abusive, deceptive and unfair debt collection practices sometimes used by debt collectors against consumers." Turner v. Cook, 362 F.3d 1219, 1226-27 (9th Cir. 2004). An aggrieved party may thus recover actual damages, statutory damages and seek an award of attorney's fees and costs where the provisions of the FDCPA have been violated. 15 U.S.C. § 1692k(a). The Rosenthal Act is California's counterpart to the Federal FDCPA and incorporates its salient provisions. Cal.Civ.Code § 1788.17.

The Court finds that the well-pleaded allegations of the Complaint state a claim for which relief can be granted. Accepting the factual allegations of the Complaint as true, Plaintiff has demonstrated numerous violations of both the FDCPA and the Rosenthal Act.[2] Among other things:

1. Defendant violated 15 U.S.C. § 1692g(a)-(b) by failing, within five days of its initial communication with Plaintiff, to provide her with written notification of the amount of the debt, the name of the creditor, notice that the debt will be deemed valid if the consumer fails to dispute the validity of the debt within thirty days of the notice, and notice of the consumer's right to dispute the debt. See Taylor v. Heath W. Williams, L.L.C., 510 F. Supp. 2d 1206, 1212 (N.D. Ga. 2007).

2. Defendant violated 15 U.S.C. § 1692e(5), which proscribes "false, deceptive, or misleading representation or means in connection with the collection of any debt," which includes

---

[2] In addition, Plaintiff has submitted a sworn declaration in which she sets forth specific facts demonstrating Defendant's violations of the FDCPA and the Rosenthal Act. (Basinger-Lopez Decl. ¶¶ 2-10.)

- 4 -

threatening "to take any action that cannot legally be taken or that is not intended to be taken." Defendant violated these provisions by threatening to notify Plaintiff's neighbors, relatives and employer of her debt if she refused to pay, (Compl. ¶¶ 34-35), which is not permissible under the FDCPA. 15 U.S.C. § 1692b, 1692c(b); Chiverton v. Federal Financial Group, Inc., 399 F. Supp. 2d 96, 103 (D. Conn. 2005) ("By conveying information regarding the plaintiff's debt to the plaintiff's family members without her consent, the defendant violated § 1692c(b), which prohibits improper communication with third parties."). Therefore, Defendant was threatening action it had no legal right to take. Taylor, 510 F. Supp. 2d at 1215.

3. Defendant violated 15 U.S.C. § 1692d(2), which prohibits harassing communications, by repeatedly telling Plaintiff to "grow up" and accusing her of "stealing," threatening to sue and obtain a judgment against her, and threatening to tell others about her debt. (E.g., Compl. ¶¶ 34, 35, 40, 41, 43, 54.) These types of harassing comments are prohibited under the FDCPA. See Chiverton, 399 F. Supp. 2d at 103 ("The defendant's comments regarding the plaintiff's age, mental acuity and activity violated § 1692d(2), which prohibits the use of 'language the natural consequence of which is to abuse the hearer.'").

4. Defendant violated 15 U.S.C. § 1692c(c) by continuing to call and harass Plaintiff despite her express instructions not to contact her. (Compl. ¶ 51.) This conduct violates the FDCPA. Kerwin v. Remittance Assistance Corp., 559 F. Supp. 2d 1117, 1122 (D. Nev. 2008).

5. Defendant violated 15 U.S.C. § 1692e(10), which proscribes "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer," by claiming that it was not a debt collector and not subject to the FDCPA, when it was clear that this was precisely what Defendant was attempting to accomplish. (Compl. ¶ 53.)

Each of the above violations also constitutes a violation of the Rosenthal Act, which incorporates the provisions of the FDCPA. See Cal.Civ.Code § 1788.17; McGrew v. Countrywide Home Loans, Inc., --- F.Supp.2d ---, 2009 WL 1803455 at *2 n.2 (S.D. Cal. May 27, 2009) ("The Rosenthal Act incorporates provisions of the FDCPA by reference.").

- 5 -

**B. DAMAGES**

**1. Emotional Distress Damages**

Under the FDCPA, actual damages may be awarded to a plaintiff as a result of the defendant's failure to comply with its provisions. 15 U.S.C. § 1692k(a)(1). Actual damages include any out-of-pocket expenses as well as damages for personal humiliation, embarrassment, mental anguish or emotional distress. Fausto v. Credigy Servs. Corp., 598 F. Supp. 2d 1049, 1054 (N.D. Cal. 2009). Emotional distress damages may be proven in a number of ways, including through corroborating medical evidence or non-expert testimony establishing "manifestations of mental anguish [and the occurrence of] significant emotional harm." Dawson v. Wash. Mut. Bank. F.A., 390 F.3d 1139, 1149-50 (9th Cir. 2004).

Plaintiff seeks $10,000 in emotional distress damages. (Mot. at 5-7.) However, the only support offered by Plaintiff is the conclusory statement in her declaration that "Defendant's actions caused [her] to suffer damages, including emotional distress, embarrassment, humiliation, invasion of privacy, harassment, stress and anxiety, sleeplessness, and medical issues." (Bassinger-Lopez Decl. ¶ 11.) The Court finds this evidence too vague to establish that Plaintiff suffered significant emotional harm. See Dawson, 390 F.3d at 1149-50. While Plaintiff's declaration shows that she understandably suffered general anxiety resulting from Defendant's conduct, the law requires a more specific and substantial showing before emotional damages may be awarded.

For example, in Bolton v. Pentagroup Financial Servs., LLC, 2009 WL 734038 at *11 (E.D. Cal. 2009), the court rejected plaintiff's request for emotional distress damages in an action brought under the FDCPA. Plaintiff claimed that he suffered headaches and sleeplessness and felt rage as a result of the defendant's threat to disclose his debt to his commander. Though he took an over-the-counter pain reliever, he did not seek medical attention or take any prescription medication in response to the distress. The court found that "[p]laintiff's anxiety is similar to that of the plaintiffs in other debt collection cases in which the courts found no severe emotional distress as a matter of law." Id. The emotional distress claimed by Plaintiff in this case is, at best, analogous the distress which the court found insufficient in Bolton.

- 6 -

Plaintiff cites Panahaisl v. Gurney, 2007 WL 738642 at *2 (N.D. Cal. 2007) (Fogel, J.) where the district court summarily granted a motion for default judgment and awarded emotional distress damages based on a generalized showing of emotional distress damages. Although there is no Ninth Circuit authority directly on point, the Court finds that the jurisprudence of this Circuit requires a more specific showing than permitted in Panahaisl—particularly when such damages are sought by way of a motion for default judgment. See Dawson, 390 F.3d at 1149-50; e.g., Fausto, 589 F. Supp. 2d at 1055 (finding that declarations from plaintiffs and their son providing specific details of the extreme distress suffered and the medical services obtained as a result of defendant's violations of the FDCPA, were sufficient to create a triable issue of fact as to their claim for emotional distress damages). The Court thus concludes that Plaintiff has not made a sufficient showing to warrant an award of actual damages.

### 2. Statutory Damages

The FDCPA provides that a plaintiff may recover statutory damages of up to $1,000 for noncompliance. 15 U.S.C. § 1692k(a)(1)-(2)(A). The $1,000 amount is the maximum per action, not per violation. Harper v. Better Business Services, Inc., 961 F.2d 1561, 1564 (11th Cir. 1992). When considering the amount of statutory damages to award, a court may consider the nature of a defendant's noncompliance, as well as the frequency of its acts and whether the noncompliance was intentional. 15 U.S.C. § 1692k(b)(1). Under the Rosenthal Act, a plaintiff also is entitled to statutory damages, pursuant to Civil Code sections 1788.17 and 1788.30, which authorize damages from $100 to $1,000.

Here, Plaintiff requests statutory damages of $1,000 under the FDCPA, and another $1,000 under the Rosenthal Act. The Court finds these amounts to be justified. Defendant engaged in numerous violations of the FDCPA and the Rosenthal Act. Defendant made repeated threats against Plaintiff to sue her, made abusive accusations and threatened to embarrass her by disclosing the debt to her family, neighbors and employer. In addition, Defendant persisted in contacting her even after being expressly instructed not to do so, and failed to provide Plaintiff with any of the notices required by law. Defendant's conduct is precisely the type of harassing and fraudulent practices that both statutes were intended to protect against. Although the same conduct justifies

the damage award under both state and federal law, the Court finds this permissible because the Rosenthal Act envisions that "[t]he remedies provided herein are intended to be cumulative and are in addition to any other procedures, rights, or remedies under any other provision of law." Cal.Civ.Code § 1788.32.

### 3. Attorney's Fees and Costs

Both the FDCPA and the Rosenthal Act direct a court to award attorney's fees to a prevailing consumer. 15 U.S.C. 1692k(a)(3); Cal.Civ.Code 1788.30(c). The Ninth Circuit employs the lodestar approach to determining whether a fee request is reasonable. Jordan v. Multnomah County, 815 F.2d 1258, 1262-63 (9th Cir. 1987). "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." Camacho v. Bridgeport Financial, Inc., 523 F.3d 973, 978 (9th Cir. 2008) (internal quotations and citation omitted). The lodestar is deemed to be presumptively reasonable, though the district court has the discretion to consider and upward or downward adjustment. Id.

Here, the declaration of counsel and billing statements attached thereto indicate that the lodestar is $4,002.00, which is based on 15.3 hours in billable time and corresponding billing rates ranging from $225 to $355 per hour. (Swigart Decl. ¶ 16, Ex. B.) Counsel also charged Plaintiff for 1.3 hours of paralegal time billed at $125 per hour. (Id.) Given the facts presented, the Court finds that the amount of hours expended and the billable rates used are reasonable, particularly in light Plaintiff's successful prosecution of this case. The Court therefore finds that the record justifies payment of $4,002 in attorney's fees. Plaintiff's request for recovery of $530.52 in costs also is substantiated and reasonable. (Id. Ex. C.)

### C. THE EITEL FACTORS

Having decided that Plaintiff has established her right to damages under the FDCPA and the Rosenthal Act, the Court must now consider whether default judgment is appropriate under the Eitel factors. Accepting the allegations in the Complaint as true, as it must, the Court finds that these factors favor the entry of default judgment.

First, Plaintiff will be prejudiced if default judgment is not granted, as she will otherwise be denied the right to adjudicate her claims and Defendant's illegal conduct will remain unaddressed.

Second, Plaintiff's Complaint adduces sufficiently detailed facts from which the Court is able to conclude that Defendant violated both the federal and state versions of the FDCPA. Third, the sum of money sought is relatively small, which also weighs in favor of entering a default judgment. Fourth, there is nothing in the record to indicate that any of the material facts are in dispute. Fifth, Defendant's lack of response to the Complaint and the instant motion is ostensibly inexcusable. Defendant was properly served with these papers but did not file an answer or opposition. Sixth, although federal policy favors decisions on the merits, the circumstances surrounding this case indicate that default judgment under Rule 55(b) is proper. The Court concludes that, on balance, the Eitel factors weigh in favor of granting the instant motion for default judgment.

## IV. CONCLUSION

For the reasons stated above,

IT IS HEREBY ORDERED THAT Plaintiff's Motion for Default Judgment and Attorneys' Fees and Costs is GRANTED IN PART and DENIED IN PART. Plaintiff's request for an award of emotional distress damages in the amount of $10,000 is DENIED. Plaintiff's requests for statutory damages in the amount of $2,000, attorney's fees in the amount of $4,002 and costs in the amount of $530.52 are GRANTED.

IT IS FURTHER ORDERED THAT Plaintiff shall, within five (5) days of the date this Order is filed, show cause in writing why Defendants Tawni and Shantel, against whom the Clerk declined to enter a default, should not be dismissed. Alternatively, Plaintiff may discharge her obligation to respond to this Order to Show Cause by filing a notice of voluntary dismissal under Rule 41. Failure to comply with this Order will result in the dismissal with prejudice as to these Defendants and may result in the imposition of sanctions against Plaintiff.

IT IS SO ORDERED.

Dated: July 2, 2009

_Saundra B Armstrong_
Hon. Saundra Brown Armstrong
United States District Judge