Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
**Kazerouni Law Group, APC**
2700 North Main Street, Suite 1000
Santa Ana, CA 92705
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

Joshua B. Swigart, Esq. (SBN: 225557)
josh@westcoastlitigation.com
Robert L. Hyde, Esq. (SBN: 227183)
bob@westcoastlitigation.com
**Hyde & Swigart**
411 Camino Del Rio South, Suite 301
San Diego, CA 92108-3551
Telephone: (619) 233-7770
Facsimile: (619) 297-1022

Attorneys for Patricia Connor,
on behalf of herself and all others similarly situated

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICIA CONNOR, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED<br><br>PLAINTIFFS,<br><br>V.<br><br>JPMORGAN CHASE BANK AND FEDERAL NATIONAL MORTGAGE ASSOCIATION A/K/A FANNIE MAE,<br><br>DEFENDANTS. | Case No.: 10-cv-1284 DMS (BGS)<br><br>**CLASS ACTION**<br><br>**DECLARATION OF ABBAS KAZEROUNIAN IN SUPPORT OF PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS AND SERVICE AWARDS TO THE NAMED PLAINTIFFS**<br><br>Date: August 3, 2012<br>Time: 1:30 p.m.<br>Ctrm: 10<br><br>**THE HON. DANA M. SABRAW** |

I, Abbas Kazerounian, hereby competently testify to the matters herein from personal knowledge.

1. I am a partner of the law firm of Kazerouni Law group, APC and a counsel of record for Plaintiff in this matter. I am admitted to this Court and am a member in good standing of the State Bar of California. I have been involved in every aspect of this case from inception through the present. I submit this declaration in support of Plaintiff's Motion for Fees and Costs in which Plaintiff seeks to have the Court approve attorneys' fees in the amount of 25 % of the common fund along with payment of costs incurred. That agreement is set forth in the Settlement Agreement filed with the Preliminary Approval Motion (Settlement Agreement § 19.01). Such amount requested by this motion is $2,250,000.00 for attorneys' fees, and $23,878.58 in costs of litigation incurred, as detailed below.

## CASE HISTORY

2. There is pending in the United Stated District Court for the Southern District of California, a civil action entitled *Patricia Connor v. JPMorgan Chase Bank and the Federal National Mortgage Association* (jointly hereinafter "Defendants"), bearing Case No. 10-cv-01284 DMS(BGS) (the "Action").

3. For approximately one year since the Early Neutral Evaluation in this action, the Parties have engaged in settlement discussions and negotiations regarding this matter. Through this process and Parties' representations to each other, the Parties believe that they are fully apprised of the relative strengths and weaknesses of each other's claims and defenses and the potential risk to each party of pursuing further litigation in this matter.

4. On January 14, 2011, the Parties attended an Early Neutral Evaluation Conference before the Honorable Bernard G. Skomal. The Honorable Bernard G. Skomal kindly offered his services to the Parties for a second mediation on April 4, 2011. Due to the second mediation and due to some settlement discussions between the Parties after April 4, 2011, the Parties were able to reach a settlement at an early stage of the proceedings. However, due to a number of problems in attempts to put the Settlement details in writing, and in

projecting the implementation of its terms, the Parties negotiated for many more months before agreeing on how the Settlement details would be resolved, including how best to identify the persons in Subclass A. The Parties agreed to settle on the terms in the Settlement Agreement as set forth therein, on behalf of a Settlement Class of all persons whose names are associated with Chase's home mortgage accounts or home equity loans accounts and those called on their cell phones will receive a monetary payment. A true and correct copy of that Settlement Agreement ("Agreement") is attached hereto as Exhibit A. As part of that Agreement, Defendants will pay a maximum of $9,000,000.00 or a minimum of $7,000,000 into a Settlement Fund, from which will be paid all claims, attorneys' fees and expenses, and costs of notice and claims administration. (The Class Action Fairness Act Notice will be paid separately by Defendants.) In my opinion, the settlement merits court approval.

5. We contend that the class as so defined satisfies the requirements of Rule 23 because all persons in the Settlement Class are persons with names associated as borrowers or co-borrowers on Chase accounts that had at least one cell phone called with an autodialer or by a prerecorded voice message during the Class Periods relating to the account. Chase's records do not indicate the name of the account holder called on their cell phone, only the cell phone number called. Therefore all 1,718,866 persons associated with such accounts will get a direct mail notice explaining that at least one person on the account was called on a cell phone and that each Class Member can call or inquire online of the Claims Administrator to see if their cell phone number was the number called. If so, they are part of the 1,181,441 members of Subclass A and are entitled to a monetary payment. If not, they will still benefit from Chase's newly implemented procedures put in place because of this Action to ensure future compliance with the TCPA, and they will not receive future calls to their cell phone without prior express consent. See Agreement, §§ 5.03, 5.04.

6. Chase has stated that it does not oppose Class Counsel's application. Further, the Court has preliminarily approved the award.

7. The settlement agreement in this matter has been preliminarily approved by the Court, and it establishes a common fund, with a floor of $7,000,000.00 and a ceiling of $9,000,000.00.

8. No class member has paid Plaintiff's Counsel for its attorneys' fees or costs in this matter.

9. After the lawsuit was filed, Class Counsel obtained significant discovery from Plaintiff, and Chase. Discovery from Chase included relevant information and documents such as internal documents, which Defendant would rely upon for "prior express consent" as well as Defendant's outbound calls lists identifying the Class Members.

10. Class Counsel then spent numerous hours analyzing the documents.

11. By working hard to accomplish these tasks, and through lengthy and aggressive negotiation, Class Counsel was able to negotiate an efficient, favorable, and timely result for the Settlement Class Members.

12. Class Counsel secured timely relief in one year from the date of the Early Neutral Evaluation, to the granting of preliminary approval.

13. Class Counsel are asking for a modest 25% of the overall settlement fund, a number that is consistent with the Ninth Circuit's 25% benchmark.

14. Since they first began investigating these claims, Class Counsel have incurred approximately $23,878.58 costs and $512,370 in attorney's fees, resulting in an overall award request of $2,273,878.58 in both attorneys' fees and litigation expenses. Out of pocket expenses incurred in this cased include the following: 1) copying, mailing and messenger expenses, 2) computer research expenses, 3) factual investigation expenses, 4) travel expenses, and 5) consultant fees.

15. Counsel estimate they will incur approximately $24,750 in fees to see this case through its final resolution, including the work necessary to oversee that the claims process is properly carried out and attending the hearing on final approval.

16. In all, Class Counsel has devoted more than 1,009 hours to the investigation, development, litigation and resolution of this complex case. This includes time spent investigating the claims of the Settlement Class Members, conducting discovery, researching and analyzing

HYDE & SWIGART
San Diego, California

legal issues, taking and defending depositions, opposing a dispositive motion and engaging in settlement negotiations. The discovery produced, indicates that the Class includes 1,181,411 class members at the time of preliminary approval. That number will be reduced as of the Effective Date based on any Class Member filing for bankruptcy or being recently deceased.

17. Class Counsel set its rates for attorneys and staff members based on a variety of factors, including among others: the experience, skill and sophistication required for the types of legal services typically performed; the rates customarily charged in the markets where legal services are typically performed; and the experience, reputation and ability of the attorneys and staff members.

18. The rate I charge for working on this matter is $435.00, which is my hourly rate as a partner.

19. Class Counsel expects to expend an additional 20 hours seeing this case through to its final resolution.

20. In agreeing to represent the Class on a contingent basis, Class Counsel risked their own resources with no guarantee of recovery.

### CLASS NOTICE

21. Class Notice was disseminated in accordance with the notice plan developed by the parties and approved by this Court upon preliminary approval of the Settlement. See Declaration of Claims Administrator, Gilardi and Co., forthcoming concerning mailing of notice.

22. The costs of Class Notice and claims administration have been paid from the Settlement Fund, per the Settlement Agreement.

23. Since Notice of the Settlement has been disseminated, Connor Counsel has received and numerous telephone calls concerning the settlement. Class members have generally expressed positive views about the terms of the Settlement and have been pleased that they will receive monetary recovery for making a claim.

24. Class counsel have answered all questions regarding the Settlement. All calls concerning the settlement have been returned within 24-hours, but usually the same business day.

25. My firm anticipates spending approximately twenty (20) additional hours on this case through its final resolution including responding to Class Member inquires, and briefing the Final Approval documents.

26. In order to receive a monetary payment form the Settlement Fund, a Class Member must be a member of Subclass A – those persons actually called on their cell phones by Chase or its predecessors, or Chase Home Finance, LLC. Based on data contained in the Notice Database which was prepared using the information in Chase's records and containing the most current addresses Chase has for the Class members, the total number of Class Members in the Settlement Class that will be getting personal direct mail Notice is 1,718,866. The number of Settlement Class members in Subclass A are those persons with unique cell phone numbers actually called by Chase or its agents and is a smaller number, 1,181,441.

27. Those numbers were confirmed by Plaintiff's information technology consultant and in confirmatory discovery responses provided by Chase. Douglas J. Campion engaged in an analysis with our technology consultant to assure the cell phone numbers in the class lists were accurate. See Declaration of Douglas J. Campion for further detail.

28. We prepared a direct mail notice and also a formal lengthy Notice in a Question & Answer format to be posted on the Settlement Website. Those notices adequately inform the Class members about the settlement and their rights to opt out or object to the Settlement. I believe the proposed notice complies with any notice requirements. Gilari & Co., the Parties' proposed Claims Administrator, used the Notice Database containing all Class Members' names and addresses, and sent out the direct mail notice. Gilardi & Co. specializes in providing administrative services in class action settlements and has decades of experience in doing so.

### ATTORNEYS' FEES AND CLASS REPRESENTATIVE STIPENDS

29. At Kazerouni Law Group, APC, we maintain contemporaneous time records reflecting the time spent on this and other matters. According to my firm's time records, Kazerouni Law Group, APC has spent a total of 306.2 hours on this matter from the inception of this case

through June 20, 2012 for a total lodestar of $133,197. Attached hereto as Exhibit A is a true and correct of my firm's time records.

30. Taking into account the burdens, uncertainty and risks inherent in this litigation, Plaintiff's counsel have concluded that further prosecution of this action could be protracted, unduly burdensome, and expensive, and that it is desirable, fair, and beneficial to the class that the action now be fully and finally compromised, settled and terminated in the manner and upon the terms and conditions set forth in the Settlement Agreement.

31. The Named Plaintiffs and all of her counsel believe that the claims asserted in the Action have merit. However, taking into account the risks of continued litigation, as well as the delays and uncertainties inherent in such litigation including the risks in class certification, and any subsequent appeal, they believe that it is desirable that the Action be fully and finally compromised, settled and terminated now with prejudice, and forever barred pursuant to the terms and conditions set forth in this Settlement Agreement. They have concluded that with the Settlement Fund and with the deterrent effects of the changes in procedure that have been implemented by Chase (Agreement, §5.04), we believe the terms and conditions of this Settlement Agreement are fair, reasonable and adequate to the proposed class, and that it is in the best interests of the proposed class to settle the Action.

32. A settlement was finalized, agreed upon by all Parties and counsel and a formal Settlement Agreement was executed. The Court granted preliminary approval of the settlement class. This Unopposed Submission for Attorney's Fees followed.

33. In Class Counsel's experience and review of other similarly settled TCPA class cases reveal Class Counsel has obtained a fair, reasonable, and adequate settlement for the proposed class. Therefore, the attorneys' fees and costs being requested by this petition are more than reasonable.

**EXPERIENCE OF ABBAS KAZEROUNIAN AND KAZEROUNI LAW GROUP, APC**

34. I was admitted to the State Bar of California in 2007 and have been a member in good standing since that time. I am also admitted in every federal district in California and have handled federal litigation in federal districts of California. Since my admission, I have

been engaged exclusively in the area of consumer rights litigation, primarily in the area of fair debt collections, the defense of debt collection lawsuits and products liability cases. My firm, Kazerouni Law Group, APC, in which I am a principal, has litigated over 750 cases in the past five years.

35. I have litigated numerous products liability cases against internationally known companies, which have resulted in numerous confidential seven-figure settlements.

36. I am or have been co-counsel for over 70 class actions, of which over 20 were TCPA class action lawsuits. These class actions were litigated in federal courts in California, Washington and Texas. As a result I have paramount knowledge in this area of law.

37. As one of the main plaintiff litigators of consumer rights cases in the Central District of California, I have been requested to and have made regular presentations to community organizations regarding debt collection laws. The following are a few examples of such presentations:
   a. Whittier Law School – October 2010
   b. Iranian American Bar Association – June 2010
   c. Trinity School of Law – January 20
   d. Chapman Law School – November 2009
   e. Regular guest attorney on 670 AM Iranian Radio on the subject of Consumer Rights.
   f. Anchor on Time Broadcasting Television for weekly consumer legal show with specific emphasis on the FDCPA and TCPA.

38. I also a member in good standing of the following local and national associations:
   a. Consumer Attorneys Association of Los Angeles;
   b. Orange County Bar Association;
   c. Former President of the Orange County Iranian American Bar Association.

**KAZEROUNI LAW GROUP SPECIALIZES IN CONSUMER RIGHTS CLASS ACTIONS**

39. I have extensive experience prosecuting class actions related to consumer issues. Kazerouni Law Group, APC (hereinafter "KLG") has litigated over 750 individual based consumer cases and have litigated over 75 consumer class actions.

40. Specific to the issues before this court, KLG is one of the few firms in the country that has significant experience litigation TCPA class action claims on nationwide basis.

41. Though not fully approved by the Court, KLG is one of the few plaintiff firms that are responsible for the TCPA settlement of over $24M (the largest settlement in United States TCPA at the time of settlement). *Arthur v. SLM Corporation*, 10-CV-00198 JLR. Some of the cases more significant TCPA class actions that I have been involved in, include but are not limited to:

   a. *Malta v. Wells Fargo Home Mortgage, et al.*, 10-CV-1290 IEG(BLM);
   b. *Lo v. Oxnard European Motors, LLC*, et al., 10-CV-1009 JLS(MDD);
   c. *Robinson v. Midland Funding, LLC*, 10-CV-2261 MMA(AJB);
   d. *Arthur v. SLM Corporation*, 10-CV-00198 JLR;
   e. *Newman v. ER Solutions, Inc.*, 11-CV-0592H(BGS);
   f. *In Re Jiffy Lube International, Inc.*, MDL No. 2261;
   g. *In Re Portfolio Recovery Associates, LLC*, TCPA Litigation, MDL No. 2295;
   h. *Jaber v. NASCAR*, 11-CV-1783 DMS(WVG) (S.D. Cal.);
   i. *Ridley v. Union Bank, N.A.*, 11-CV-1773 DMS(NLS) (S.D. Cal.)
   j. *Ryabyshchuk v. Citibank (South Dakota) N.A., et al*, 11-CV-1236 IEG(WVG)
   k. *Stephanie Rose v. Bank of America Corporation, et al*, CV-11-02390 PSG
   l. *Sarabi v Weltman, Weinberg & Reis, Co., LPA*, et al., 10-CV-1777 BTM(NLS)
   m. *Holt v. Redbox Automated Retail*, LLC, 11-CV-3046 DMS(RBB)
   n. *Johnson v Bank of America, et al.*, 11-CV-3041 DMS(BLM)
   o. *Newman v AmeriCredit Financial Services, Inc.*, 11-CV-3041 DMS(NLS)
   p. *Allen v. Portfolio Recovery Associates, LLC*, 10-CV-2658-W-BGS
   q. *Ibey v Taco Bell Corp.*, 2CV 00583-H-WVG
   r. *Karayan v. Gamestop Corp.*, 3:12-cv-01555-P

42. Therefore, my experience in litigating class actions and my years in practice allowed me to provide outstanding monetary relief to this class through settlement, and are more than sufficient to justify my firm's appointment as class counsel in this case. Therefore, my

experience and years in practice are sufficient to justify my hourly billing rate in this case of $435 per hour. My co-counsel Hyde & Swigart and Law Offices of Douglas J. Campion are very experienced in the area of consumer law, including Telephone Consumer Protection Act cases. I work with both of those firms in a number of other Class action cases as co-counsel. I believe their requested hourly billing rates are justified based upon their experience.

43. Attached hereto as Exhibit A is a true and correct copy of my firm's billing in this matter.

44. Attached hereto as Exhibit B is a declaration by attorney Stephen G. Recordon submitted in a similar case. His firm is engaged in individual and class actions involving consumer rights, with compensation only as awarded by the courts in his cases. He has 31 years of experience, is familiar with my work as an attorney, and familiar with comparable rates billed in this legal community. Mr. Recordon believes my hourly rate of $435 per hour is reasonable based on my legal experience and market rates in the legal community.

45. Attached hereto as Exhibits C is a declaration by attorney Clinton Rooney, submitted in a similar case. Mr. Rooney is engaged in individual and class actions involving consumer rights, with compensation only as awarded by the courts in his cases. He has 9 years of experience, is familiar with my work as an attorney, and familiar with comparable rates billed in this legal community. Mr. Rooney believes my hourly rate of $435 per hour is reasonable based on my legal experience and market rates in the legal community.

46. Attached hereto as Exhibit D is a true and correct copy of the Order granting final approval and attorney fees in *Lo v. Oxnard European Motors, LLC, et al.*, 11-CV-1009 JSL(MDD), where the court approved my hourly rate of $425.00 per hour.

47. As stated above, attached hereto as Exhibit A is a true and correct copy of the hours reasonably expended on this matter by my firm in the litigation of this matter. My billing records, to date show a total 306.2 hours incurred in this litigation. That does include the anticipated 20 hours I anticipate spending on the additional administration of the class, as well as preparing the Final Approval Motion and supporting documentation, which has already been factored into this fee request.

48. I am not making a claim for costs in this matter. The costs incurred in prosecuting this case are included Class Counsel's declarations.

49. At a billing rate of $435 for partners, my firms total lodestar equals $133,197.

50. We are seeking a multiplier of approximately 4.39 based upon the total fees incurred by Class Counsel of $512,370 and the amount of fees available of $2,250,000.

51. The claims of the named Plaintiff appear to be the same as the claims of the other class members, and his claims relate to the same issues of law and fact as do the other class claims.

52. This case is such a case that would not have been pursued by any counsel in the local geographical area unless a multiplier would be awarded. Such a multiplier is expected because of the type or class of cases in which the Telephone Consumer Protection Act ("TCPA") are. There is no fee-shifting statute in the TCPA. Furthermore, there is absolutely no incentive for a client to hire an attorney on an hourly basis to pursue the statutory damages remedy for a TCPA violation that is $500 for each negligent violation and $1,500 for each intentional violation. That would of course be non-economical for any client as the attorneys' fees would far exceed any recovery.

53. Furthermore, cases in which I charge an hourly rate take into account that I will likely be paid for my work. If I am not being paid, I can withdraw from the case if necessary and not have to be committed to doing work for perhaps years on a case without knowing if I will be paid or not. Here, and in this class of TCPA cases, I and other counsel take these cases on only because the attorneys in this local area expect to be paid a multiplier if the case is successful. Here the case was successful as is explained below.

54. Based on the type of case, the fact there is not a fee shifting provision and the result obtained, a multiplier of approximately 4.39 is warranted in this case. I took this case on contingency, with no guarantee of ever being paid and faced substantial risk should the case proceed to trial. From the onset of this litigation my firm and co-counsel have expended our own resources with the risk that we would recover nothing.

55. Based on the Parties agreement and at the direction of the Court, Plaintiff's counsel employed class administrator Gilardi & Co, LLC., to provide individualized notice to each of the 1,718,866 Class Members. The latest report provided by the class administrator received 57,315 claims and shows only 119 valid opt-out and no objections received by any class member.

56. As set forth in the Joint Motion for Preliminary Approval, both named class representatives are applying for incentive awards. Both named Plaintiffs have been active in this litigation and provided critical information to their counsel which made the successful litigation of this matter possible. Both named Plaintiffs were critical in the investigation of the matters surrounding the litigation, the filing of this action and the settlement process.

57. The incentive awards sought are as follows:
   a. Patricia Connor - $2,500 incentive award for her service as class representative in the form of a check.
   b. Sheri L. Bywater - $2,500 incentive award for her service as class representative in the form of a check. (Settlement Agreement ¶ 6.02);

58. Based on the amount of work and involvement by Plaintiff the incentive awards in this case are justified.

59. I declare nothing further.

I declare under penalty of perjury under the laws of the State of California and the United States of America, that the foregoing is true and correct and that this declaration was prepared at San Diego, California, on June 20, 2012.

                                      /s Abbas Kazerounian  
                                      Abbas Kazerounian