Douglas J. Campion, Esq. (SBN: 75381)
**LAW OFFICES OF DOUGLAS J. CAMPION**
409 Camino Del Rio South, Suite 303
San Diego, CA 92108
doug@djcampion.com

Telephone: (619) 299-2091
Facsimile:  (619) 858-0034

Attorneys for Plaintiff
Patricia Connor

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| Patricia Connor, Individually and on Behalf of All Others Similarly Situated, )<br><br>Plaintiffs, )<br><br>v. )<br><br>JPMorgan Chase Bank and Federal National Mortgage Association a/k/a Fannie Mae, )<br><br>Defendants. )<br>_____ ) | **CASE NO.** Case No.: 10 CV 1284 DMS BGS<br><br>**CLASS ACTION**<br><br>**DECLARATION OF DOUGLAS J. CAMPION IN SUPPORT OF MOTION FOR ATTORNEY'S FEES AND COSTS**<br><br>Hon. Dana M. Sabraw<br><br>Hearing Date:   August 3, 2012<br>Time:                 1:30 p.m.<br>Courtroom:        10 |

I, Douglas J. Campion, declare:

1.     I am one of the attorneys for the Plaintiff Patricia Connor in this action, and named as Class Counsel for the Settlement Class in the Court's March 12, 2012     Order preliminarily approving the settlement.  I submit this declaration in support of the Motion for Attorney's Fees and Costs to be heard concurrently with the Final Approval Motion.  I am licensed to practice law before this court and all California state courts and all federal courts located in the State of California.  If called as a witness, I would competently testify to the matters herein from personal knowledge.

**Fees Incurred**

2.  Class Counsel are seeking a fee award based upon a percentage of the $9,000,000 common fund recovered for the class. That is the maximum settlement fund to be paid; the Settlement Agreement and Release ("Agreement") allows for a minimum fund of $7,000,000 and a maximum fund of $9,000,000. In the Agreement, the Parties agreed that Defendant would not oppose any fee request so long as it did not exceed one-third of the $9,000,000, i.e., $3,000,000.   We are only seeking 25% of that $9,000,000, however.

3.  Although we are seeking 25% of the common fund under the Ninth Circuit's percentage method of computing attorney's fees, I have attached hereto as Exhibit 1 true and correct copies of my time sheets which list by entry for each task the time I have incurred in litigating this case to date. I have also included at the end an entry for 20 hours for work I anticipate incurring at a minimum to finish the work necessary on this case, including overseeing the claims administration, and preparing the briefs and supporting documents for the final approval hearing and appearing at same. The total amount of attorney time I have incurred to date according to those records is 304.70 hours. I have billed my time in this case at $625 per hour, which is my current billing rate and has been my hourly rate since prior to the filing of this case.  Thus, I have a lodestar of $190,420.00, i.e., 304.70 hours times $625. The total lodestar sought for all counsel is $512,370, for 1,009 hours worked by all firms. I understand the Court may desire to use that lodestar in its analysis of determining a fair and reasonable fee.  By my computations, and after reviewing the lodestar submissions of co-counsel, I believe the fee requested results in a multiplier of 4.39.  I understand those hours incurred were all necessary to the successful litigation of this case.  In addition, my hourly rate is reasonable in the legal community among attorneys litigating class actions and is actually less than many of my co-counsel with similar backgrounds and experience.  I have set my hourly rate at or below other attorneys with 35 years of

experience charge for litigating class actions.  I have been approved at my hourly rate on different occasions but most recently in *Lo v. Oxnard European Motors, LLC, et al.*, 11-CV-1009 JSL (MDD) last month in this court.  I have attached a true and correct copy of the National Law Journal article dated December 10, 2007 as Exhibit 5 setting forth the results of their annual law firm billing survey.  It indicates that partners in California firms, or California offices of national law firms, with my experience, have billing rates in excess of the $625 hourly rate that I have billed here.  Thus, my hourly rate is within the range of other counsel doing this same type of legal work.

**Costs Incurred**

4.   The costs for which reimbursement from the Settlement Fund total $23,878.58. My firm has incurred no costs, other than the attached bill for Hansen & Levey Forensics, Inc. in the amount of $21,850.00.   That information technology firm was hired to analyze and evaluate the data provided by JPMorgan Chase ("Chase") and to assist with "asking the right questions" throughout the case.    Mr. Hansen's resume is attached hereto as Exhibit 4.  A true and correct copy of the Hansen & Levey Forensics, Inc.'s bill is attached hereto as Exhibit 3.  These TCPA cases involve the analysis and sometimes production of electronic data that contain the Defendant's outbound dial lists, and outbound dial campaigns, in which all outbound numbers called by the Defendant are provided on DVDs or CDs.  In this case Mr. Hansen reviewed the processes and methodology used by Chase to determine the Class parameters during discovery, and the Chase information technology persons participated in a conference call in which Chase's counsel and I participated.  Mr. Hansen questioned them about the processes and methodology used and was satisfied with them and the ultimate number of class members. I believe Hansen & Levey Forensics, Inc.'s charge of $21,850.00 is very reasonable for this type of work.   We seek the Court's approval of the payment of all costs incurred from the Settlement

Fund.   Those costs were reasonable and necessary for this litigation.

5. Gilardi & Co., LLC is the independent third party third Claims Administrator approved by the Court in the Preliminary Approval Order.  They have incurred costs for their services rendered in this case as well.  They originally provided a proposal that estimated a cost of $916,523.00 for their proposed services.  See a true and correct copy of that January 13, 2012 proposal attached hereto as Exhibit 2.  However, they will be providing a final bill prior to the hearing on this motion, which will be provided to the Court.  We seek the Court's approval for the payment of Gilardi for their services in that amount.

**Adequacy of Settlement**

6. Even before the case was filed, Class Counsel investigated the claims and conducted factual and legal research.  Class Counsel obtained a total payment by Chase of up to $9,000,000.00, with a minimum payment of $7,000,000, out of which Subclass A Class Members will receive pro rata monetary payments, in an amount of between $25 and $500, depending on the sliding scale payments which vary by the amount of claims made, unless so many claims are received so as to exhaust the $9,000,000 Fund.  If that occurs, the amount paid will be less than $25, but paid on a pro rata basis. The Class Members will have the 90 day claim period, from the date of the mailing of direct mail Notice, to contact the Claims Administrator either online or by telephone at a toll free number to determine if their cell phone was actually called.  Agreement, § 2.04, 10.01-10.03.  If so, they are then a member of Subclass A, and entitled to receive a monetary payment.  *Id.* Any member of the Class that is not entitled to monetary payments will benefit from this settlement via the new protocols and protections that Chase has implemented in regards to its autodialing system.  Agreement, § 5.04. Also, any funds from settlement checks that go uncashed or are returned as undeliverable will be delivered as a cy pres contribution to an appropriate cy pres recipient, to be named later if necessary.  *Id.* at § 11.02.  Thus, the results Class Counsel have achieved

1    are excellent by any measure.

2    7.    No Class member has lost any money as a result of the Defendant's actions, other

3    than their carrier's billing them for the cost of Defendant's cell phone call(s).

4    Therefore, the deterrent effect of statutory damages has been met, and the proceeds

5    will be divided among the persons called.  In other words, the Class members are not

6    getting a percentage of money they have lost; they are receiving money as statutory

7    damages for cell phone calls made to them.    Therefore, obtaining a $9,000,000

8    settlement for approximately 1.8 Million Class Members, of which approximately 1.1

9    are expected to be Subclass A members entitled to a monetary payment, is an

10   exemplary settlement. We also established a very simple claims process that only

11   required a call to an 800 telephone number or an online submission of a claim,

12   confirming that the claimant was in Subclass A – the person on the account whose

13   cellphone number was actually called – and therefore entitled to a monetary payment.

14   No declaration under penalty of perjury was required, and no mailing of a

15   cumbersome, or any, claim form was required. A pro rata award will be made based

16   upon the number of claims, and a sliding scale for making payments, depending on the

17   number of Claims made.  Agreement, §§ 5.01 – 5.02.  As a result, in my opinion,

18   based upon my thirty-four years of experience in civil litigation and twenty–three

19   years of experience in litigating class actions, and based upon the facts of this case, the

20   number of class members, and the other circumstances, I believe this settlement is fair

21   and reasonable. In my opinion, the settlement merits Court approval and also justifies

22   my request for 25% of the common fund as my fee.  Additionally, I believe this

23   result justifies the 4.39 multiplier of the lodestar requested here, if the Court is

24   inclined to use the lodestar analysis in determining or cross-checking the fee.

25   **Class Counsel's Experience**

26   11.    The Law Offices of Douglas J. Campion has been confirmed as one of several firms

27   acting as Class Counsel for purposes of this action and proceeding with the

28

1   settlement.   I am the only principal and only attorney in my law firm.  I was

2   admitted to the State Bar of California in 1977 and have been a member in good

3   standing since that time.  Since my admission, I have been engaged in litigation and I

4   have had extensive experience in business litigation prior to working in the class

5   action field.  In 1989, I joined the San Diego office of a Philadelphia law firm,

6   Barrack, Rodos & Bacine.  Our office engaged in class and derivative litigation

7   exclusively, primarily specializing in plaintiff's class action securities cases.   I

8   resigned from the firm in 1996.  Barrack, Rodos & Bacine was often co-counsel with

9   Milberg Weiss Bershad Hynes & Lerach in class actions and litigated the same types

10   of cases.

11   12.   I feel my experience both in other firms and with my own firm for the past ten years

12   supports my request for attorney's fees.

13   A few examples of the cases our firm litigated, separately or with co-counsel, and in which I

14   actively participated, are as follows:

15   a.  The Michael Milken – Drexel securities litigation, with a joint   recovery for all

16   plaintiffs of more than a billion dollars;

17   b.  The savings and loan securities and derivative litigation of the early 1990's, in which

18   I represented or litigated against California Federal, Far West Financial, Financial

19   Corporation of Santa Barbara, Imperial Savings, and others;

20   c.  Defense contractor over-billing cases, including Lockheed, General Dynamics, and

21   Rockwell International;.

22   d.   A number of health care provider cases including National Health Laboratories,

23   National Medical Enterprises, ICN Pharmaceuticals, and Pfizer;

24   e.   Cases against insurance companies including Blue Cross of California, and First

25   Executive Life and its progeny; and

26   f.   Many other class and derivative actions including L.A. Gear, Countrywide

27   Trucking, and Glen Ivy timeshares, among others.

28

Declaration of Douglas J. Campion in Support
Of Mtn for Fees & Costs                    6              Case No.: 10 CV 1284 DMS BGS

13.   I have also been lead or co-lead counsel in many other class actions or Business & Professions Code representative actions since I opened my own office about five years ago.  Most of those are consumer-related cases.  I recently participated in the TCPA case of Arthur v. SLM Corp., Case No. 10-cv-00198 JLR, Western District of Washington, in which we settled on behalf of more than 7 million class members for over $24 million and injunctive and other relief.   Some other class or 17200 representative actions in which I was lead or co-lead counsel since I opened my own office in 2001 are the following:

a.   Gonzalez, et. al., v. Science Applications International Corporation, et. al. (state court);

b.   Warner, et al. v. Computer Education Institute, et al. (state court),

c.   Smith v. Microskills (state court);

d.   Russell, et al., v. DAT, Inc. dba Laptop Training Solutions (state court);

e.   Jared Smith vs. Independent Capital Management, Inc., et al. (state court);

f.   Orttman and Opyrchal, et al., v. New York Life (federal court);

g.   Bowersox v. Laboratory Corporation of America (state court);

h.   O'Neal v. NCO Financial Systems, Inc. (federal court);

i.   McDonald v. Bonded Collectors, Inc. (federal court);

j.   In Re Brocade Derivative Litigation (state court);

k.   Kryptonite Locks Coordinated Litigation (state court);

l.   Shaw v. Tenet Healthcare Corporation, et al. (federal court);

m.   Rodriquez v. Yum Yum Donut Shops, Inc. (state court);

n.   Arnn, et al., v. West Coast Aquarium Industries, Inc. (state court);

o.   Grant v. American Agencies, Inc. (federal court);

p.   Rogers v. Whitney Education Group (state court);

q.   Khosorabi v. North Shore Agency, Inc. (federal court);

r.   Goins v. Checks Cashed for Less, Inc., et al. (state court);

1      s.   Fanciullo v. CompuCredit dba Aspire VISA (federal court);

2      t.   Kight v. Eskanos & Adler, P.C. (federal court);

3      u.   Gulzynski v. Fidelity Title (federal court);

4      v.   Kight v. CashCall (state court);

5      w.  Grannan v. Direct Electronics, Inc. (state court);

6      x.   Bellows v. NCO Financial, Inc. (federal court);

7      y.   Adams v. AllianceOne, Inc. (federal court);

8      z.   American Apparel, Inc. Derivative Litigation (federal court);

9      aa. Arthur v. Sallie Mae (federal court);

10     bb.  Connor v. JP Morgan Chase, et. al. (federal court);

11     cc. Meeks v. CreditWest, et. al. (state court);

12     dd. Shirdel v. Access Group, Inc (federal court);

13     ee. Malta v. Wells Fargo (federal court);

14     ff.  Robinson v. Midland Funding, LLC (federal court);

15     gg. Bennett v. Discover Bank (federal court);

16     hh. Dominici v. Wells Fargo (federal court);

17     ii.  Hurtado v. Progressive Financial Services (federal court);

18     jj.  Galbraith v. Resurgent (federal court);

19     kk. Rose v. Bank of America (federal court);

20     ll.  Underwood v. San Diego Flight Training, Inc. (state court);

21     mm.    In Re Jiffy Lube Multi-District Litigation (federal court);

22     nn.  Robinson v. Midland Funding, LLC, et al. (federal court).

23   **Risk of Non-Payment and Delay in Payment**

24   14.   Whenever co-counsel and I file a class action case, we face a very real risk of non-

25   payment for a number of reasons.  First, Plaintiff's counsel only recovers a fee in a

26   case in which they are successful in litigating the claims.  Second, even if successful,

27   they face a risk that the defendant will disappear or file for bankruptcy.  That has

28

happened to me personally three times in the past ten years, costing me more than $600,000 in fees that I would have otherwise been paid. And even when I don't get paid, I am still responsible for paying all of the costs I have incurred in any such action. Furthermore, because these TCPA cases are not fee shifting cases, I rely upon and expect to be paid an enhancement of my hourly rate when I litigate such a case. Also, I have been involved in a case *Adams v. AllianceOne Receivables Management, Inc.,* Case No. 08-CV-0248 JAH (WVG) (S.D. Cal.) since 2008. That case has required years of intensive litigation, many motions, hundreds of thousands of pages produced in discovery, and many discovery motions. Plaintiffs' counsel can only commit to a limited number of these TCPA cases as that result can happen at any time. We have finally only recently obtained preliminary approval of a settlement reached in that case.

15. I have not been paid anything since this litigation began in June, 2010, over two years prior to preparing this motion for fees and costs. Such delay results in paying overhead, lines of credit incurring interest charges and other expenses.

**Complexity of the Issues and Novelty of the Issues**

16. Co-counsel herein and I have been at the forefront of TCPA litigation for the past five years. Very few attorneys litigate in this area of the law. There is very little case law, especially in the Ninth Circuit. That often leads to the inability of inexperienced counsel to even recognize potential issues, and to agree on where those issues might lead. For example, because the TCPA statute permits a federal action only if the state permits it, there are some states that do not permit such cases, and some that have different statutes of limitations. In other cases, the effect of the legal issue of prior express consent is not agreed upon, both in its application and procedurally the manner in which that affirmative defense is raised. Thus, counsel must be cognizant of evolving law across the country, in different state and federal courts, just to keep up with these issues.

Declaration of Douglas J. Campion in Support
Of Mtn for Fees & Costs                    9                    Case No.: 10 CV 1284 DMS BGS

**Reaction of the Class to the Fees and Costs Request**

17.   To date, I am unaware of any objections to the fees and costs request of counsel.

**Inability to Take on Other Cases**

18.   I am essentially a sole practitioner.  I can only litigate a limited number of cases as a result, especially a limited number of class actions that require much more work and financial commitment than do other non-class cases.  By taking on this case, I was prevented from taking on other work, perhaps more financially rewarding work. Therefore, I seek the percentage of the common fund or alternatively, a multiplier of 4.39 of the lodestar to provide the same dollar amount of fees as a result.

**Disclosure of This Request for Fees and Costs to Class Members**

19.   The pending request for attorney's fees and for all costs of litigation, including the information technology costs and the costs of notice and claims administration, was disclosed to the class members and the public with the notices and on the settlement website.   The notice stated that Class Counsel would be seeking attorneys' fees of no more than $3,000,000 (one-third) of the $9,000,000 Settlement Fund, and costs not exceeding $25,000. The full notice on the settlement website also lists all such fees and costs to be sought in this motion as well. The notice also advised the Class that we would be seeking incentive payments of $5,000 in total, or $2,500 each, for each of the two class representatives.   We also advised in the Notice that we would be seeking to pay the Claims Administrator from the Settlement Fund. for notice and claims administration.   Thus, all class members have been advised of the pending request and no one has objected to either the fees or the costs requested.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 19, 2012  at San Diego, California, pursuant to the laws of the United States.

/s/ Douglas J. Campion

Douglas J. Campion

Declaration of Douglas J. Campion in Support
Of Mtn for Fees & Costs
BGS

10                Case No.: 10 CV 1284 DMS