Robert L. Hyde, Esq. (SBN: 227183)
bob@westcoastlitigation.com
Joshua B. Swigart, Esq. (SBN: 225557)
josh@westcoastlitigation.com
**HYDE & SWIGART**
411 Camino Del Rio South, Suite 301
San Diego, CA 92108-3551
Telephone: (619) 233-7770
Facsimile: (619) 297-1022

**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian Esq, (SBN: 249203)
ak@kazlg.com
2700 N. Main Street, Suite 1000
Santa Ana, CA 92705
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

Other Attorneys on Signature Page

Attorneys for the Plaintiffs and Proposed
Settlement Class

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **PATRICIA CONNOR, AND SHERI L. BYWATER, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED** <br><br> **PLAINTIFFS,** <br><br> **V.** <br><br> **JPMORGAN CHASE BANK AND FEDERAL NATIONAL MORTGAGE ASSOCIATION A/K/A FANNIE MAE,** <br><br> **DEFENDANTS.** | **Case No: 10-CV-1284 DMS(BGS)** <br><br> **CLASS ACTION** <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT** <br><br> **DATE: AUGUST 3, 2012** <br> **TIME: 1:30 P.M.** <br> **CTRM: 10** <br><br> **THE HON. DANA M. SABRAW** |

*HYDE & SWIGART*
San Diego, California

TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................1

II.   FACTS AND PROCEDURAL HISTORY ...........................................4

     A. CLASS ALLEGATIONS ................................................................4

     B. SETTLEMENT ...............................................................................4

     C. CAFA NOTICES ...........................................................................4

     D. REQUEST FOR ENTRY OF PRELIMINARY APPROVAL ORDER ...................5

     E. FAIRNESS HEARING....................................................................5

     F.  ATTORNEYS' FEES AND COSTS APPLICATION........................5

     G. PROPOSED CLASS ACTION SETTLEMENT TERMS ................5

          1.  CERTIFICATION OF A FED.R.CIV.P. 23(B)(3) SETTLEMENT CLASS. ................5
          2.  SETTLEMENT BENEFITS ...........................................................6

     H. THE NOTICE PROVISIONS HAVE BEEN FOLLOWED....................6

          1.  DIRECT MAIL NOTICE PROVIDED...........................................6

          2.  THE NOTICE WAS POSTED ON THE SETTLEMENT WEBSITE ..........................7

          3.  CLAIMS PROCEDURE AND CLAIMS FILED....................................7

          4.  EXCLUSIONS ..............................................................................8

          5.  OBJECTIONS ..............................................................................8

          6.  SETTLEMENT CHECKS ...............................................................9

          7.  CLASS REPRESENTATIVE PAYMENT .........................................9

          8.  CLASS COUNSEL'S ATTORNEY'S FEES, COSTS AND EXPENSES ...................9

     III. ARGUMENT ..................................................................................10

HYDE & SWIGART
San Diego, California

**A. The Proposed Settlement Is Fundamentally Fair, Reasonable, and Adequate** ...................................................................................10

**B. The Strength of the Lawsuit and The Risk, Expense, Complexity, and Likely Duration of Further Litigation** ...........................................11

**C. The Amount Offered in Settlement** ....................................................12

**D. The Extent of Discovery Completed** ..................................................14

**E. The Experience and Views of Class Counsel** ....................................14

**F. The Reaction of the Class Members to the Proposed Settlement** ...........15

**IV. CONCLUSION** ........................................................................................16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Hyde & Swigart**
San Diego, California

TABLE OF AUTHORITIES

## CASES

*Beecher v. Able,*

    441 F. Supp. 426 (S.D.N.Y. 1977) ................................................................10

*Berkey Photo Inc. v. Eastman Kodak Co.,*

    603 F.2d 263 (2d Cir. 1979) ...................................................................9

*Boyd v. Bechtel Corp.,*

    485 F. Supp. 610 (N.D. Cal. 1979) ........................................................11

*Detroit v. Grinnell Corp.,*

    495a g.2 448 (2d Cir. 1974). ..................................................................12

*Ellis v. Naval Air Rework Facility,*

    87 F.R.D. 15 (N.D. Cal 1980), aff-d 661 F.2d 939 (9th Cir. 1981)……………………9, 11

*Girsh v. Jepson; In re Warner Commiunications Sec. Litig.,*

    521 F.2d 153 (3d Cir. 1993). .....................................................................8

*Hanlon v. Chrysler Corp.,*

    150 F. 3d 1011, 1026 (9th Cir. 1998) ......................................................10

*Linney v. Cellular Alaska Partnership,*

    151 F.3d 1234 (9th Cir. 1998) ................................................................11

*M. Berenson Co. v. Faneuil Hall Marketplace, Inc.,*

    671 F. Supp 819 (D. Mass. 1987)........................................................9, 11

*Officers for Justice v. Civil Service Com'n of City and County of San Francisco,*

    688 F.2d 615 (9th Cir. 1982)…………………………………………………8, 9

*PaineWebber Ltd. Litig.,*

    171 F.R.D. 104, 126 (S.D. N.Y.) ...........................................................12

*Rodriguez v. West Publishing Corp,*

    563 F.3d 948 (9th Cir. 2009).................................................................11

HYDE & SWIGART
San Diego, California

*Staton v. Boeing Co.,*
 327 F.3d 938 (9th Cir.) ........................................................................ 8

*Torrisi v. Tucson Elec. Power Co.,*
 8F.3d 1370 (9th Cir. 1993) ...................................................................9

*Warner Comunications,*
 618 F. Supp at 745 ......................................................................8, 11, 12

*West Virginia v. Chas. Pfizer & Co.,*
 314 F. Supp. 710, (S.D.N.Y. 1970). ......................................................9

<span style="font-variant:small-caps">Statutes</span>

47 U.S.C § 227 (TCPA) ...........................................................................1, 4

28 U.S.C. § 1715(a)(1)(B) ...........................................................................4

<span style="font-variant:small-caps">Other Authorities</span>

*Manual for Complex Litigation*, Fourth § 30.42 ........................................14

*Newberg on Class Actions* § 11.24 (4th Ed. & Supp. 2002)...........................14

Plaintiffs Patricia Connor ("Connor") and Sheri L. Bywater ("Bywater)", collectively referred to as "Plaintiffs" or "Class Representatives"), submit this memorandum in support of their unopposed Motion for Final Approval of Class Action Settlement Agreement.   Defendants JPMorgan Chase Bank (hereinafter referred to as "JPMCB"), and Federal National Mortgage Association a/k/a Fannie Mae (hereinafter collectively referred to as "Defendants") support this motion and will be filing a statement to that effect.

## I.   INTRODUCTION

This Settlement is an excellent result which merits final approval.   The Settlement provides a substantial Settlement Fund – here the minimum payment of $7,000,000 – to provide statutory damages to persons called on their cell phones without prior consent by JPMCB allegedly in violation of the Telephone Consumer Protection Act ("TCPA").   Every Class Member was informed of and had the opportunity to call a toll free number or to go online to easily file a claim for a *pro rata* portion of the Fund. But without adequate notice, even that simple claims process would be meaningless, so this Settlement also provides that the Class Members would each receive a direct mail postcard summary notice. That way, each Class Member was informed of the Settlement, was directed to the Settlement Website to learn more about it, and could choose whether to participate.   This type of notice is a much more expensive notice than other types of notice, such as publishing information about the Settlement, but it guaranteed almost every Class Member – here over 96% of the Class – received notice.   The costs of litigating this action, including Plaintiffs' attorneys' fees and the costs of notice and claims administration, are all paid from the Fund, and the remainder divided among the claimants.   Thus, the Settlement provides participating Class Members with a monetary payment that none would be able to obtain on their own, due to the economics of individually suing for minimal statutory damages.   The Settlement also has the effect of putting an end to conduct alleged to be a violation of the TCPA.   Therefore, this is an excellent result and should be given final approval by the Court.

On June 16, 2010, Plaintiffs filed this class action lawsuit (hereinafter referred to as the "Lawsuit") against Defendants.   Plaintiffs asserted class claims against Defendants under the Telephone Consumer Protection Act, 47 U.S.C. § 227.   Specifically, Plaintiffs alleged that

1    Defendants violated the TCPA by placing telephone calls to their cellular telephones without

2    "prior express consent," using an "automatic telephone dialing system" and using an "artificial or

3    prerecorded voice." [Docket No. 1.]

4    In the following months, the Parties participated in an extensive series of arms'-length

5    negotiations.   During this process, the Parties were fortunate to have the support and assistance

6    of Magistrate Judge Bernard G. Skomal, who presided over an Early Neutral Evaluation

7    conference and follow-up conferences.   [Docket Nos. 25, 26, 28, 30, and 32.]   Even though

8    settlement was not reached at the ENE conference and negotiations before the court came to an

9    impasse, the Parties all began propounding and conducting discovery, and they still continued

10   negotiations amongst themselves for several months.   Eventually the Parties reached an

11   agreement.

12   The Parties entered into a Class Action Settlement Agreement and Release (hereinafter

13   referred to as the "Agreement"), which was filed on January 17, 2012, along with the   Motion for

14   Preliminary Approval of Class Action Settlement Agreement (hereinafter referred to as

15   "Preliminary Approval Motion").   [Docket No. 50.]   All capitalized terms used herein have the

16   meanings defined herein and/or in the Agreement.

17   On March 12, 2012, based upon the Agreement, the Preliminary Approval Motion, and the

18   record, the Court entered an Order of Preliminary Approval of Class Action Settlement

19   (hereinafter referred to as the "Preliminary Approval Order").   [Docket No. 55.]   Pursuant to the

20   Preliminary Approval Order, the Court, among other things: (i) preliminarily certified (for

21   settlement purposes only) a class of plaintiffs (hereinafter referred to as the "Class Members")

22   with respect to the claims asserted in the Lawsuit; (ii) preliminarily approved the proposed

23   settlement; (iii) appointed Plaintiffs Patricia Connor and Sheri L. Bywater as the Class

24   Representatives; (iv) appointed Hyde & Swigart, Kazerouni Law Group, APC, the Law   Offices

25   of Douglas J. Campion, Lieff Cabraser Heimann & Bernstein, LLP, and David P. Meyer &

26   Associates Co., LLP (now "Meyer Wilson") as Class Counsel; and (v) set the date and time of the

27   Final Approval Hearing (hereinafter referred to as the "Fairness Hearing") for August 3, 2012, at

28   1:30 P.M.  [Docket No. 55.]

HYDE & SWIGART
San Diego, California

1    As required by the Preliminary Approval Order, the Parties engaged a third party class

2    action administrator, Gilardi & Co, LLC, (hereinafter referred to as "Gilardi" or "Claims

3    Administrator"), to assist in administration of the class action settlement process. See Declaration

4    of Tricia M. Solorzano in Support of Motion for Final Approval of Class Action Settlement

5    ("Solorzano Decl."), ¶ 3, filed herewith.   As detailed below, Gilardi disseminated the summary

6    and full notices which advised Class Members that, in order to receive a portion of the settlement

7    funds, they needed to either call Gilardi's toll-free number, submit a claim online, or mail in a

8    claim form no later than July 10, 2012.   The summary and full notices also advised Class

9    Members that the deadline to exclude themselves from the settlement was June 10, 2012 and the

10   deadline to object to the settlement was July 20, 2012.  Solorzano Decl., ¶¶ 14, 21, Exs. B, C.

11   Gilardi was also engaged to receive and process all claims and requests for exclusion

12   ("opt outs").  Only 209 opt-outs were received out of the 1,381,406 direct mail notices sent out,

13   not including the 13 rejected opt-outs as filed late.  Solorzano Decl., ¶¶ 19-20.

14   Objections were to be filed with the Court, with copies to counsel for both sides.

15   Preliminary Approval Order at pp. 5-6, ¶¶ 9-11.   No objections have been filed with the Court to

16   date, but the deadline for objecting and filing objections is July 20, 2012, the date this brief is

17   expected to be filed.  In total, 55,872 valid claims have to date been filed with Gilardi, including 9

18   late filed claims that the Parties agree can be included. Solorzano Decl., ¶ 15.  There are currently

19   59 unresolved claims that are pending, which may result in additional valid claims.  *Id*. at ¶¶

20   16-17.  Based upon the 55,872 number of existing claims, and assuming the requested fees and

21   costs are awarded, that would allow for each claimant to receive approximately $69.97 from the

22   balance of the $7,000,000 minimum payment to be paid by Defendant.

23   Pursuant to Fed. R. Civ. P. 23(e), the Parties now seek final certification and approval of

24   the proposed class action settlement.   Specifically, the Parties request the Court enter a Final

25   Order and Judgment similar to the proposed Order submitted with this motion.

26   //

27   //

28   //

HYDE & SWIGART
San Diego, California

## II.   FACTS AND PROCEDURAL HISTORY

### A.   CLASS ALLEGATIONS

As noted, on June 16, 2010, Plaintiffs filed this class action under the TCPA against Defendants.  [Docket No. 1.]  Specifically, Plaintiffs alleged that Defendants violated the TCPA by making telephone calls to their cellular telephones without "prior express consent," using an "automatic telephone dialing system" and using an "artificial or prerecorded voice."  On behalf of themselves and others similarly situated, Plaintiffs asserted two TCPA claims against Defendants.

First, Plaintiffs alleged that Defendants committed negligent violations of the TCPA.  For this first claim, on behalf of themselves and the putative class, Plaintiffs sought $500 per violation and injunctive relief under 47 U.S.C. § 227(b)(3)(B).  Second, Plaintiffs alleged that Defendants committed knowing and/or willful violations of the TCPA.   For this second claim, Plaintiffs sought for themselves and the putative class $1,500 per violation and injunctive relief under 47 U.S.C. § 227(b)(3)(B) and § 227(b)(3)(C).   Defendants filed an Answer and deny that they violated the TCPA in any regard.

### B.   SETTLEMENT

In an earnest attempt to settle the Lawsuit and avoid the risks inherent in proceeding to trial, the Parties discussed settlement on numerous occasions.   The Parties met for an Early Neutral Evaluation conference before Magistrate Judge Bernard G. Skomal.   Counsel for the Parties also exchanged various offers and counteroffers through in–person meetings, telephone conferences, a multitude of e-mails, and no less than three telephonic Settlement Disposition Conferences.   Happily, the efforts of Counsel to reach a compromise in the form of a proposed class settlement proved fruitful; approximately nineteen months after the case was initially filed, the Parties were able to reach an understanding, the terms of which are memorialized in the Agreement.

### C.   CAFA NOTICES

JPMCB has an obligation under the Class Action Fairness Act ("CAFA") to notify the Office of the Comptroller of the Currency under 28 U.S.C. § 1715(a)(1)(B) instead of providing written notice of the proposed class settlement on the U.S. attorney general and the attorney

HYDE & SWIGART
San Diego, California

generals of each state. JPMCB's counsel has agreed to provide to the Court a declaration verifying that has been done.

**D.   REQUEST FOR ENTRY OF PRELIMINARY APPROVAL ORDER**

On January 17, 2012, the Plaintiffs filed an unopposed Motion for Preliminary Approval of Class Action Settlement.   [Docket No. 50.]   On March 12, 2012, the Court entered the Preliminary Approval Order, preliminarily certifying the proposed class and preliminarily approving the proposed class settlement.  [Docket No. 55.]

**E.   FAIRNESS HEARING**

Per the Preliminary Approval Order, the Court set the Fairness Hearing for August 3, 2012, 1:30 p.m., at the United States District Court for the Southern District of California, located at 940 Front Street, San Diego, California, 92101.  [Docket No. 55.]

**F.   ATTORNEYS' FEES AND COSTS APPLICATION**

At the Fairness Hearing, the Court will also consider Class Counsel's previously filed Motion for Attorney's Fees and Costs and Service Award to Named Plaintiff ("Fees Brief"), [Docket No. 60.]   The Parties request that the Court enter an Order similar to the Final Approval Order submitted with this motion, which also includes a provision for such requested attorneys' fees and costs.

**G.   PROPOSED CLASS ACTION SETTLEMENT TERMS**

The significant terms of the proposed settlement are the following:

**1.   CERTIFICATION OF A FED.R.CIV.P. 23(B)(2) AND (B)(3) SETTLEMENT CLASS**

The Preliminary Approval Order confirmed the following persons are in the Settlement Class:

> "All present or former borrowers or co-borrowers as identified in JPMCB's records whose residential mortgage loan or home equity line of credit is or was serviced by JPMCB or Chase Home Finance LLC and either the borrower, co-borrower or both, were contacted on their cellular telephone(s) by JPMCB through the use of an automated dialer system and/or an artificial or pre-recorded voice during the Class Period. Subclass A of the Settlement Class consists of those persons whose cell phones were actually called by JPMCB or Chase Home Finance LLC during the Class Period, and are thus entitled to a monetary payment.

1   Excluded from the Settlement Class are Defendants, their parent
2   companies, affiliates or subsidiaries, or any employees thereof, and any
    entities in which any of such companies has a controlling interest, the
3   Judge or Magistrate Judge to whom the Action is assigned and any
4   member of those Judges' staffs and immediate families, as well as all
    persons who validly request exclusion from the Settlement Class."

5   Preliminary Approval Order, p. 2-3, ¶ 2.

6   **2.   SETTLEMENT BENEFITS**

7      The Settlement requires payment of a minimum of $7,000,000 and a maximum of

8   $9,000,000, dependent upon the number of claims filed.   It appears the number of claims filed

9   (55,872) will not cause the minimum Settlement amount of $7,000,000 to be exceeded, as

10  discussed below.   Declaration of Douglas J. Campion in Support of Final Approval of Class

11  Action Settlement ("Campion Decl."), ¶ 9. The members of Subclass A, *i.e.*, those that were

12  actually called on their cell phones by JPMCB, will receive a monetary payment. The other

13  members of the Class consist of those co-borrowers on the same accounts that were not actually

14  called on their cell phones to date but were included in the Class because JPMCB's records did

15  not separate out which of the borrowers owned the cell phones called. *Id*. at ¶ 16. Those persons

16  not in Subclass A and not called could not file a claim for a monetary payment but will also

17  benefit from the Settlement.   That is because JPMCB admittedly put in place as a result of this

18  action newly implemented procedures designed to prohibit the calling of a cell phone unless the

19  Settlement Class Member's mortgage loan servicing record is systematically coded to reflect the

20  borrower's prior express consent to receive calls on his or her cell phone.   Agreement, §§ 5.03,

21  5.04.

22  **H.   THE NOTICE PROVISIONS HAVE BEEN FOLLOWED**

23  **1.   DIRECT MAIL NOTICE PROVIDED**

24     Gilardi complied with the notice procedure set forth in the Preliminary Approval Order, p.

25  4, ¶ 6. As required by the Preliminary Approval Order, Gilardi mailed individual postcard  notices

26  by direct mail to the Settlement Class members that included   a summary of the Settlement's

27  terms, instructions for making a claim, and information regarding a website address

28  www.ConnorTCPAsettlement.com (hereinafter referred to as the "Settlement Website") and the

**HYDE & SWIGART**
San Diego, California

---

Claims Administrator's  toll-free telephone number to both receive calls regarding the Settlement and to file claims. Solorzano Decl., ¶¶ 5-11.

After removing duplicate names and addresses, and otherwise cleaning up the original Class List of 1,718,866 Class Members, Gilardi mailed the summary notice of the proposed class settlement to the 1,381,406 persons on the final mailing list.   Solorzano Decl., ¶¶ 6,7.   Also, Gilardi received returned mail from the U.S. Postal Service for 194,362 persons.   *Id.* at ¶ 13. After searching for new addresses for those persons, Gilardi subsequently mailed out summary notice to 143,838 of those persons.  *Id.*    Thus, 1,330,082  --  over 96% -- of the Class Members received direct mail notice of the Settlement.

### 2.   THE NOTICE WAS POSTED ON THE SETTLEMENT WEBSITE

In compliance with the Preliminary Approval Order, Gilardi also posted on the Settlement Website the detailed and full notice in a question and answer format explaining the case, the proposed settlement, and each Class Member's options, in the form attached to the Solorzano Decl. as Ex. A.  That website also contains the Settlement Agreement, the Preliminary Approval Order, the direct mail notice.  It also contains the Fees Brief and supporting documents.  Campion Decl., ¶ 14.

### 3.   CLAIMS PROCEDURE AND CLAIMS FILED

The Class Members were provided no less than 90 days to make a claim for a settlement check, submit an exclusion, or file an objection.  The procedure was made as easy as possible – no claim form was necessary unless someone wanted to use regular U.S. Mail to submit a claim form downloaded from the Settlement Website. Campion Decl., ¶ 16. All that was required to file a claim was a call to a toll–free number or an on-line submission to determine if the claimant's cell phone number was called and if so, a claim was then filed. The deadline to submit a claim was July 10, 2012. Solorzano Decl., ¶ 14.  In total, 55,872 valid claims were filed (including 9 late claims which both sides agree can be paid, as they included circumstances such as a firefighter tied up on fire-fighting duty prior to the deadline).   All of these claims were validated by Gilardi. *Id.*  1,044 of the claims attempted were not permitted because their cell phone numbers were not in Subclass A, *i.e.*, they were not on the list of cell phone numbers called by JPMCB. *Id.* at ¶ 15.  6,782 claims were denied because another claim had been previously filed for the

HYDE & SWIGART
San Diego, California

1   same cell phone number. *Id.* There were also 742 duplicate claims that were denied. *Id.* In addition, there

2   are 59 unresolved claims, timely filed but to whom deficiency letters were sent asking for additional

3   curing information. *Id.*, ¶¶ 16, 17.   Based upon the present number of claims in the amount of 55,872,

4   each claimant will receive approximately $69.97 if the Court awards the Settlement Costs as requested, as

5   discussed below.  Gilardi will be distributing the settlement checks with payment made on a *pro rata* basis

6   after final approval, and after the final numbers relating to Settlement Costs awarded and valid claims are

7   known. *Id.* at ¶ 18.

8       **4.   EXCLUSIONS**

9       Gilardi was also engaged to receive and process all claims and requests for exclusion

10  ("opt outs").  The Preliminary Approval Order required the Class Members  to send their written

11  requests for exclusion to Gilardi 90 days from the entry of the Preliminary Approval Order, by

12  June 10, 2012.  A relatively small percentage of requests for exclusion were received, 145 timely,

13  and 13 late, out of 1,381,406 Class Members who received notice. There were also an additional

14  64 opt-out requests in several blanket requests for exclusion submitted by five different

15  Bankruptcy Trustees.[1]  The timely opt-outs thus total 209. Solorzano Decl., ¶¶ 19-20.

16      **5.   OBJECTIONS**

17      The deadline for filing an objection to the Settlement is July 20, 2012, ten days after the

18  end of the claims period.   Preliminary Approval Order, p. 6, ¶ 11.a. - b.   The Preliminary

19  Approval Order requires any objections to be filed with the Court and also served on counsel by

20  that date.  "Any Class Member who fails to comply with these provision shall waive and forfeit

21  any and all rights the Class Member may have to appear separately and/or to object, and shall be

22  bound by all the terms of this Stipulation of Settlement and the Settlement, and by all the

23  proceedings, orders, and judgments in the Litigation." *Id* at (c).   No objections have been filed

24  with the Court to date, but the deadline for objecting and filing objections hasn't passed yet, and

25  is the date this brief is expected to be filed.  Thus, there are no valid objections to the Settlement.

26  _____

27  [1]   Two of those trustees, V. John Brook and Angela W. Esposito, filed with the Court documents entitled "Notice of Opt-Out from Class Settlement", Docket Nos. 58 and 59, respectively.  In addition, those two and three additional

28  trustees sent a package of exclusion requests to the Claims Administrator naming the 52 persons / bankruptcy estates requested to be excluded, who will be submitting them to the Court.  *See* Solorzano Decl. ¶ 20; Ex. E.

HYDE & SWIGART
San Diego, California

However, six letters purporting to "object" to the settlement were received by the Claims Administrator, who has attached them to her declaration.  Solorzano Decl., ¶ 21, Ex. F.  None of those "objections" set forth any reasons for objecting to the settlement, other than one Class Member complaining about the conduct of Defendant harassing the Class Member surrounding a foreclosure.  Thus, there are no valid objections to the Settlement.

**6.   SETTLEMENT CHECKS**

The Settlement Fund in the Agreement was to consist of a minimum of $7,000,000 and a maximum of $9,000,000. Based upon the number of claims submitted, it appears the minimum payment of $7,000,000 will not be exceeded.  Per the Agreement, the amounts remaining after Settlement Costs are deducted, including attorneys' fees and costs, costs of notice and claims administration,  and after any incentive payments awarded by the Court are also deducted, the amount remaining will be divided on a sliding scale between $25.00 and $500.00, but on a *pro rata* basis among the valid claims. If the requested Settlement Costs are awarded, including $2,250,000 in attorneys' fees, costs in the amount of $835,616.97, including the $811,738.39 incurred for costs of notice and claims administration, and the requested incentive payments of $5,000, totaling $3,090,616.97, the amount remaining for paying claims will be approximately $3,909,383.03. Therefore, based upon 55,872 claims, each claimant will receive a settlement check in the amount of approximately $69.97.   Campion Decl., ¶ 17.

**7.   CLASS REPRESENTATIVE PAYMENT**

Pursuant to the Agreement, § 6.01, and subject to Court approval, Defendants agree each Plaintiff may be paid from the Fund an incentive award of $2,500, totaling $5,000, in recognition of their service as the Class Representatives.   Class Counsel has previously submitted briefing on that issue in Plaintiffs' Fees Brief.  Docket No. 60.

**8.   CLASS COUNSEL'S ATTORNEYS' FEES, COSTS, AND EXPENSES**

Notwithstanding the Agreement provision that permits Class Counsel to file an application for attorneys' fees, costs, and expenses in an amount not to exceed one-third (1/3) of the common fund (¶19.01), Class Counsel is seeking less than that amount, only 25% of the maximum $9,000,000 common fund in attorneys' fees, or $2,250,000.00, and $835,616.97 as costs of

litigation, including $811,738.39 for costs of notice and claims administration.   Campion Decl. ¶ 9.c.; Ex. 1 (invoice). *See* Class Counsel's previously filed Fees Brief, Docket No. 60.  The Parties and their counsel further represent and agree that allowance or disallowance by the Court of the agreed-upon amount of $3,085,616.97  in attorneys' fees, costs, and expenses may be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the settlement, and any order or proceedings relating to the fees, costs, and/or expenses owed Class Counsel, or any appeal from any order relating thereto, or reversal, or modification thereof, shall not operate to terminate or cancel the Agreement, or affect or delay the finality of the proposed Final Approval Order approving the Agreement and the settlement of the Lawsuit. (As set forth above, with the two $2,500 incentive payments added to the amount to be deducted from the Settlement Fund in order to determine the remainder for claims, the total is $3,090,616.97, leaving approximately  $3,909,383.03 for claims.)  Campion Decl. ¶ 9.

## III. ARGUMENT

The Rule 23(a) and (b) factors were previously analyzed and applied by the Parties in their Motion for Preliminary Approval.   See Docket No. 50.   As the Court ruled in its Preliminary Approval Order, this case satisfies the Rule 23 requirements.  See Docket No. 55.

### A. THE PROPOSED SETTLEMENT IS FUNDAMENTALLY FAIR, REASONABLE, AND ADEQUATE

"Unlike the settlement of most private civil actions, class actions may be settled only with the approval of the district court." *Officers for Justice v. Civil Service Com'n of City and County of San Francisco,* 688 F.2d 615, 623 (9th Cir. 1982). "The court may approve a settlement . . . that would bind class members only after a hearing and on finding that the settlement . . . is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(C).  The Court has broad discretion to grant such approval and should do so where the proposed settlement is "fair, adequate, reasonable, and not a product of collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).  "To determine whether a settlement agreement meets these standards, a district court must consider a number of factors, including: 'the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial;

the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.'" *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003). "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice*, 688 F.2d at 625. To determine whether the proposed settlement is fair, reasonable and adequate, the Court must balance against the continuing risks of litigation and the immediacy and certainty of a substantial recovery. *See Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *In re Warner Communications Sec. Litig.,* 618 F. Supp. 735, 741 (S.D. N.Y. 1985).

The Ninth Circuit has long supported settlements reached by capable opponents in arms' length negotiations.   In *Rodriguez v. West Publishing Corp*., 563 F.3d 948 (9th Cir. 2009), the Ninth Circuit expressed the opinion that courts should defer to the "private consensual decision of the [settling] parties." *Id*. at 965, citing *Hanlon, supra,* 150 F.3d at 1027 (9th Cir. 1998).

The district court must exercise "sound discretion" in approving a settlement. *See Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1375 (9th Cir. 1993); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd* 661 F.2d 939 (9th Cir. 1981). However, "where, as here, a proposed class settlement has been reached after meaningful discovery, after arm's length negotiation conducted by capable counsel, it is presumptively fair." *M. Berenson Co. v. Faneuil Hall Marketplace, Inc*., 671 F. Supp. 819, 822 (D. Mass. 1987).

Application of the relevant factors here confirms that the proposed settlement should be finally approved.

**B.   THE STRENGTH OF THE LAWSUIT AND THE RISK, EXPENSE, COMPLEXITY, AND LIKELY DURATION OF FURTHER LITIGATION**

Defendants have raised numerous defenses to the class claims.   Many of these defenses are set forth at length in Defendant's Answer, which was filed with the Court.  See Docket No. 23. Defendants aver that its defenses have merit and would defeat the claims of the putative class. However, settlement eliminates any further risk and expense for the Parties.   Considering the

potential risks and expenses associated with continued prosecution of the Lawsuit, the probability of appeals, the certainty of delay, and the ultimate uncertainty of recovery through continued litigation, the proposed settlement is fair, reasonable, and adequate. As the Ninth Circuit has made clear, the very essence of a settlement agreement is compromise, "a yielding of absolutes and an abandoning of highest hopes." *Officers for Justice*, 688 F.2d at 624. "Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation . . . ." *Id.*

While Class Counsel believe strongly in the merits of their claims brought on behalf of the class, they also recognize that any case encompasses risks and that settlements of contested cases are preferred in this circuit. Moreover, even if Plaintiffs were to prevail at trial, risks to the class remain. *See West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D. N.Y. 1970) ("[i]t is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced"), *aff'd*, 440 F.2d 1079 (2d Cir. 1971); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) (reversing $87 million judgment after trial).

## C.   THE AMOUNT OFFERED IN SETTLEMENT

The Agreement requires Defendants to establish a settlement fund ranging from a minimum of $7,000,000 to a maximum of $9,000,000, from which Class Members have the right to make a claim to receive a settlement check. If the requested amounts are awarded for attorneys' fees, costs, and notice and claims costs, and an incentive payment are awarded, that leaves $69.97 for each of the 55,872 claimants. Campion Decl. ¶ 17. That is a settlement check in an amount equal to or greater than obtained in many other TCPA settlements, and warrants final approval.[2]

_____

[2] *Bellows v. NCO Financial Systems, Inc.*, 07-CV-01413 W(AJB)(S.D. Cal.)($70 per claimant awarded); *Lemieux v. Global Credit & Collection Corp.*, 08-CV-1012 IEG(POR)(S.D. Cal.)($70 per claimant awarded); *Adams v. AllianceOne Receivables Management, Inc.*, 08-CV-0248 JAH(WVG)(S.D. Cal)(Class members to receive a maximum of $40 per claim. Action preliminarily approved, pending final approval); *Arthur v. Sallie Mae, Inc.*, C10-0198 JLR(W.D. Wash)(Class members are to receive between $20 and $40 dollars per claim. Action preliminarily approved, pending final approval).

HYDE & SWIGART
San Diego, California

1    Here there were a total of no more than 1,181,441 persons in Subclass A that were actually

2    called on their cell phones and entitled to file claims.    Campion Decl., ¶ 17.[3]  Here the fact that

3    there were only a little less than 5% --  .04729 % [4] -- of the eligible claimants filing claims should

4    not deter the Court from approving the settlement.   This is a consumer case and consequently

5    subject to lower claims rates than other types of cases.    Class Counsel used direct mail notice to

6    ensure every potential Class Member was notified (over 96% received that notice).   Campion

7    Decl., ¶ 14.  Furthermore, there could not be an easier claims process for any claimant to file a

8    claim by allowing the filing through a toll-free telephone call or submitting a claim online.   No

9    claim form was required, no declaration under penalty of perjury was required, only a

10   confirmation of the class member's name and address on the notice. Campion Decl., ¶ 16.  Thus,

11   the fact that the number of claims actually filed was less than hoped for does not affect the

12   underlying fairness of the settlement. As the court held in *Beecher v. Able*, 441 F. Supp. 426, 429

13   (S.D. N.Y. 1977), where a much smaller number of claims was made in a class action than

14   expected, "[i]n such circumstances, the settlement agreement should not lightly be set aside

15   merely because subsequent developments have indicated that the bargain is more beneficial to

16   one side than to the other."    In that case, the defendant urged the court to set aside the non-

17   reversionary settlement agreement because the total settlement amounts would be paid not back to

18   defendant but to a much smaller group of claimants than the parties expected.   The court refused

19   to set aside the agreement, especially since the parties had built contingencies into the agreement

20   in the event of high or low number of claims, as was done in the present case, and thus any

21   mistakes were only a matter of degree, not to the heart of the matter. *Id.* at 430.

22   Here, there is a minimum payment of $7,000,000 by the Defendants.   Regardless of the

23   number of claims, either potential or submitted, the Defendants are required to pay at least the

24   entire minimum amount of $7,000,000 into the common fund.    In the context of the facts

_____

26   [3]   There may have been less than that number because when the mailing list for the entire Class was cleaned up and duplicate names eliminated, that number of Class Members dropped from  1,718,866 to 1,381,406, a reduction of 337.316 duplicate records..  Solorzano Decl., ¶ ¶ 6,7.   No such analysis was done for the Subclass A list.  Campion Decl. ¶ 17.

28   [4]   That percentage is actually .0472914009248028, slightly under 5%.

surrounding this Lawsuit, such an amount represents a significant sum of money.  This payment is likely to discourage any future behavior that could potentially violate the TCPA; in fact, it will encourage compliance with the law.

Ultimately, the common fund established by the Agreement here will serve both intended purposes of compensating the Class Members for their injuries and deterring future wrongful conduct.  Thus, the amount offered in settlement should be approved by the Court as fair and reasonable.

### D.   THE EXTENT OF DISCOVERY COMPLETED

Since this case settled not long after the Early Neutral Evaluation Conference, Class Counsel conducted both formal and informal discovery as well as confirmatory discovery.  The important information needed in these cases is how many cell phones were called during the Class Period and to whom were the calls made.  This information was obtained through informal and confirmatory discovery and the numbers confirmed by and through Class Counsel's information technology consultant.  *See* the prior Campion Declaration, ¶ 7 and Hansen Declaration, ¶¶ 4-5, both filed with the Preliminary Approval Motion.  Thus, the litigation had reached the stage where "the parties certainly have a clear view of the strengths and weaknesses of their cases." *Warner Communications*, 618 F.Supp. at 745.   Further, considering that the disputed issues between the Parties are legal, and not factual, in nature, the Parties have exchanged sufficient information to make an informed decision about settlement.  *See Linney v. Cellular Alaska Partnership,* 151 F.3d 1234, 1239 (9th Cir. 1998).

### E.   THE EXPERIENCE AND VIEWS OF CLASS COUNSEL

Moreover, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.,* 485 F. Supp. 610, 622 (N.D. Cal. 1979).   The presumption of reasonableness in this action is fully warranted because the settlement is the product of arm's length negotiations conducted by capable, experienced counsel.  *See M. Berenson Co*., 671 F.Supp. at 822; *Ellis*, 87 F.R.D. at 18 ("the fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight"); 2 *Newberg on Class Actions* § 11.24 (4th Ed. & Supp. 2002); *Manual for*

1  *Complex Litigation*, Fourth § 30.42.

2  Here, it is the considered judgment of experienced counsel that this settlement is a fair,

3  reasonable and adequate settlement of the litigation.  As set forth in the declarations attached to

4  the   Motion for Preliminary Approval and in support of their Fees Brief, Class Counsel are

5  experienced consumer class action lawyers.   [See Docket Nos. 50 & 60.]   This settlement was

6  negotiated at arms'-length by experienced and capable Class Counsel who now recommend its

7  approval.   Given their experience and expertise, Class Counsel are well-qualified to not only

8  assess the prospects of a case, but also to negotiate a favorable resolution for the class.   Class

9  Counsel have achieved such a result here, and unequivocally assert that the proposed settlement

10  should receive final approval.   Campion Decl., ¶¶ 11, 20;   Declaration of Joshua B. Swigart in

11  Support of  Motion for Final Approval of Class Action Settlement ("Swigart Decl.")  ¶¶ 10-14;

12  Declaration of Abbas Kazerounian in Support of  Motion for Final Approval of Class Action

13  Settlement, ¶¶ 10-14; Declaration of Jonathan D. Selbin in Support of Plaintiff's Motion for Final

14  Approval of Class Action Settlement, ¶ 10 (filed on June 20, 2012 with Fees and Costs motion,

15  Docket No. 60, Ex. No. 29).

16  **F.   THE REACTION OF THE CLASS MEMBERS TO THE PROPOSED SETTLEMENT**

17  The absence of any objection, at least to the date of filing this brief, by a Class Member is

18  an important factor in evaluating the fairness, reasonableness and adequacy of the settlement and

19  supports approval of the settlement. *See Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir.

20  1974); *Warner Communications*, 618 F. Supp. at 746.   In fact, the lack of objections may well

21  evidence the fairness of the settlement.  *See In re PaineWebber Ltd. Litig.*, 171 F.R.D. 104, 126

22  (S.D. N.Y.), aff'd, 117 F.3d 721 (2d Cir. 1997).   Here, there has been no resistance to the

23  proposed settlement, and 55,872 Class Members have filed claims.  No Class Members have filed

24  any objections.   It is also worth noting that only 209 Class Members timely requested exclusion

25  from the class, out of 1,381,406 notices, a minuscule amount. Solorzano Decl., ¶¶ 19, 20.

26  Furthermore, the absence of objections from Class Members reinforces the notion that the

27  proposed settlement is worthy of approval. Both Class Representatives support this motion.  *See*

28  Declaration of Patricia Connor in Support of Final Approval of Class Action Settlement, ¶ 2, filed

herewith, and the Declaration of Sheri L. Bywater in Support of the Final Approval of Class Action Settlement, ¶ 2, filed in support of Fees and Costs motion, on June 20, 2012, Docket No., 60, Exhibit No. 29.

**IV.   CONCLUSION**

The Parties have reached this Settlement following extensive arms' length negotiations. The Settlement is fair and reasonable. For the foregoing reasons, Plaintiffs respectfully request that the Court:

1.   Grant approval of the proposed settlement;

2.   Order payment from the settlement proceeds to the Claims Administrator in compliance with the Court's Preliminary Approval Order and the Agreement;

3.   Grant the motion for fees and costs scheduled to be heard the same date as this motion;

4.   Enter the proposed Final Approval Order submitted herewith; and

5.   Retain continuing jurisdiction over the implementation, interpretation, administration and consummation of the Settlement.

Respectfully submitted,

Dated: July 20, 2012          **LAW OFFICES OF DOUGLAS J. CAMPION**

/s/ Douglas J. Campion____
Douglas J. Campion, Esq.

**HYDE & SWIGART**

/s/ Joshua B. Swigart_____
Joshua B. Swigart, Esq.

**KAZEROUNI LAW GROUP, PC**

/s/ Abbas Kazerounian_____
Abbas Kazerounian

**LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP**

/s/ Jonathan D. Selbin____
Jonathan D. Selbin
Class Counsel