Abbas Kazerounian Esq, (SBN: 249203)
ak@kazlg.com
**Kazerouni Law Group, APC**
2700 N. Main Street, Suite 1000
Santa Ana, CA 92705
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

Robert L. Hyde, Esq. (SBN: 227183)
bob@westcoastlitigation.com
Joshua B. Swigart, Esq. (SBN: 225557)
josh@westcoastlitigation.com
**Hyde & Swigart**
411 Camino Del Rio South, Suite 301
San Diego, CA 92108-3551
Telephone: (619) 233-7770
Facsimile: (619) 297-1022

Attorneys for the Plaintiffs and
Settlement Class

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICIA CONNOR, AND SHERI L. BYWATER, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED<br><br>PLAINTIFFS,<br><br>V.<br><br>JPMORGAN CHASE BANK AND FEDERAL NATIONAL MORTGAGE ASSOCIATION A/K/A FANNIE MAE,<br><br>DEFENDANTS. | Case No: 10-CV-1284 DMS(BGS)<br><br>CLASS ACTION<br><br>DECLARATION OF DOUGLAS J. CAMPION IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT<br><br>DATE: AUGUST 3, 2012<br>TIME: 1:30 P.M.<br>CTRM: 10<br><br>THE HON. DANA M. SABRAW |

HYDE & SWIGART
San Diego, California

1.   I, Douglas J. Campion, hereby declare I am one of the attorneys for the Plaintiffs in this action, and named as Class Counsel for the Settlement Class in the Court's March 12, 2012 Order preliminarily approving the settlement. I submit this declaration in support of the Plaintiffs' Motion for Final Approval of the Class Action Settlement.   I am licensed to practice law before this court and all California state courts and all federal courts located in the State of California. If called as a witness, I would competently testify to the matters herein from personal knowledge.

2.   I am the owner  of the Law Offices of Douglas J. Campion and a counsel of record for Plaintiffs in this matter, appointed as Class Counsel in the Court's Preliminary Approval Order.  I am admitted to this Court and have been  a member in good standing of the State Bar of California for the past 35 years, since 1977.

### SUMMARY OF CASE HISTORY AND SETTLEMENT

3.   I have been involved in every aspect of this case from inception through the present.  I submit this declaration in support of the Plaintiffs' Motion for Final Approval of Class Action Settlement in which Plaintiffs seeks to have the Court approve the agreed-upon settlement payment of a maximum amount of $9,000,000.00 and a minimum amount of $7,000,000.00 ("common fund").   It appears that based upon the number of claims received, approximately 55,872,   that the minimum payment of $7,000,000 will not be exceeded. This common fund will be used to compensate Class Members.  It will also be used to pay attorneys' fees and litigation costs to Class Counsel, provide an incentive payment to the named Class Representatives, and recoup the costs of notice and claims administration, collectively the "Settlement Costs".   Class Counsel are seeking in the previously filed  motion for fees and costs  attorneys' fees of only 25% of the $9,000,000 common fund, not the  1/3 of the common fund as set forth in the Settlement Agreement, which this Court has already preliminarily approved.   Thus, Class Counsel is seeking $2,250,000 as fees, and  $835,616.97 in costs, including $23,878.58 in litigation costs and $811,738.39 in notice and claims administration costs for Gilardi & Co., LLP, ("Gilardi"),

HYDE & SWIGART
San Diego, California

1    the Claims Administrator. A total of $5,000 in incentive payments is also sought for the

2    Class Representatives.

3  4.   This matter was brought to the attention of Class Counsel by Patricia Connor, and a

4    Complaint was filed in this Court on June 16, 2010 and an Amended Complaint was filed

5    in this Court on September 10, 2010. Thereafter, Class Counsel initiated a thorough

6    investigation, and conducted relevant factual and legal research. The information learned

7    through this investigation was invaluable during settlement negotiations.  Sheri L. Bywater

8    filed a separate case at about the time this case was settled, and it was consolidated with

9    this case for settlement, and her counsel were also made Class Counsel.

10  5.   After filing this action, Class Counsel and JPMorgan Chase Bank ("JPMCB" or

11    "Defendant") engaged in extensive negotiations including an exchange of letters, emails,

12    and telephone conversations that thoroughly analyzed the relevant legal, social, and factual

13    issues at issue, and explored the parties' respective positions on the merits of the action and

14    viability of class certification.

15  6.   Subsequently, both parties exchanged correspondence, including the exchange of relevant

16    information and documents, lists of phone numbers that received the calls to their cell

17    phones, off-site data used during the class period, and argued their respective positions.

18    Discovery was drafted and the case was settled just as depositions by both sides were

19    scheduled to commence around the country.

20  7.   This case was settled fairly early in the litigation process, a few months after an Early

21    Neutral Evaluation Conference conducted by U.S. Magistrate Judge Skomal.   It was

22    learned that that number of number of cell phone numbers called was large, creating a class

23    of 1,718,866 persons. It turned out that after cleaning the Class Member list of duplicates

24    and other matters related to account borrowers and co-borrowers, only 1,381,406 separate

25    persons were in the larger Class that received the direct mail notice. However, of those

26    class members, only those whose cell phone numbers were actually called will receive

27    monetary compensation, a total of 1,181,441 persons.  A Memorandum of Understanding

28

HYDE & SWIGART
San Diego, California

1    was entered and a Settlement Agreement was then negotiated. At all times, these activities

2    were non-collusive, and conducted at arm's length.

3    8.    Class Counsel and Defendant propounded discovery, prepared responses, and Class

4    Counsel prepared and reviewed confirmatory discovery responses which satisfactorily

5    confirmed the parameters of the Class, the damages agreed upon, and other information

6    informally exchanged prior to, during and following the mediation process.   Class Counsel

7    was able to reaffirm the adequacy, appropriateness, and reasonableness of the settlement.

8    In addition, Class Counsel hired an information technology consultant, Hansen & Levey

9    Forensics, Inc. to assist in the evaluation of the data production and discovery requests and

10   responses.   Mr. Hansen reviewed the data, participated in telephone communications with

11   opposing counsel and their information technology persons, and confirmed the accuracy of

12   the processes used and the numbers provided by Chase. *See* the previously filed

13   Declaration of Jeff Hansen in Support of Preliminary Approval,  ¶¶ 4-5.  The Parties filed

14   their Motion for Preliminary Approval of Class Action Settlement on January 17, 2012,

15   and the Court granted preliminary approval in an order dated March 12, 2012.

16   9.    The settlement consists of the following:

17   a.    Defendants shall establish a settlement fund with the maximum amount of

18   $9,000,000.00 and a minimum amount of $7,000,000.00 ("Settlement Fund").  Any of

19   the 1,181,441  Subclass A Members that make a timely claim within the time period

20   provided in the notice to Class Members each shall share, pro rata, in the Settlement

21   Fund up to a maximum of $500 and a minimum of $25, after deducting the Settlement

22   Costs: 1) reasonable attorney's fees ($2,250,000) and litigation costs ($23,878.58) as

23   approved and awarded by the Court; 2) the costs of notice and claims administration

24   of $811,738.39; and 3) the proposed Incentive Award of $5,000.00 to be divided

25   evenly between the two Plaintiffs for their efforts in litigating this case. After

26   deducting those Settlement Costs totaling $3,090,616.97, the remaining fund based

27   upon the $7,000,000 payment is $3,909,383.03.  Assuming valid claims of 55,872, ,

28   each claimant will receive a pro rata payment of approximately $69.97.

HYDE & SWIGART
San Diego, California

b.   Plaintiffs Patricia Connor and Sheri L. Bywater have applied to the Court by separate motion for an incentive award of $5,000.00, to be divided evenly, for their service as Class Representatives in this action. Any incentive awards approved by the Court will be paid from within the Settlement Fund.

c.   The costs of notice by mail and claims administration will be deducted from the Settlement Fund. Those costs have recently been calculated to be $811,738.39 for all Gilardi's costs necessary to see the case through the end of claims administration. A true and correct copy of that invoice is attached hereto as Exhibit 1. Gilardi's costs were originally estimated to be $916,523, which is the amount of the invoice attached to my previously filed declaration in support of fees and costs.

d.   Class Counsel has previously filed a motion to be heard at the same time as the Final Approval hearing for an award of reasonable attorney's fees and costs, in an amount of 25% of the maximum Settlement Fund as attorneys' fees, $2,250,000, and for $23,878.58 in litigation costs, other than the Gilardi costs.

10.   Taking into account the burdens, uncertainty and risks inherent in this litigation, the Parties have concluded that further prosecution and defense of this action could be protracted, unduly burdensome, and expensive, and that it is desirable, fair, and beneficial to the class that the action now be fully and finally compromised, settled and terminated in the manner and upon the terms and conditions set forth in the Settlement Agreement.

11.   The Named Plaintiffs and all of their counsel believe that the claims asserted in the Action have merit. However, taking into account the risks of continued litigation, as well as the delays and uncertainties inherent in such litigation and any subsequent appeal, we believe that it is desirable that the Action be fully and finally compromised, settled and terminated now with prejudice, and forever barred pursuant to the terms and conditions set forth in this Settlement Agreement. We have concluded that the terms and conditions of this Settlement Agreement are fair, reasonable and adequate to the proposed class, and that it is in the best interests of the proposed class to settle the Action. I strongly believe, as does each Plaintiff's attorney, that the Settlement should be given final approval.

HYDE & SWIGART
San Diego, California

12.   Therefore, Class Counsel is requesting that the Court grant Final Approval of the Settlement.

### THE CLASS DEFINITION:

13.   The Class definition as approved in the Preliminary Approval order is as follows: "All present or former borrowers or co-borrowers as identified in JPMCB's records whose residential mortgage loan or home equity line of credit is or was serviced by JPMCB or Chase Home Finance LLC and either the borrower, co-borrower or both, were contacted on their cellular telephone(s) by JPMCB through the use of an automated dialer system and/or an artificial or pre-recorded voice during the Class Period. Subclass A of the Settlement Class consists of those persons whose cell phones were actually called by JPMCB or Chase Home Finance LLC during the Class Period, and are thus entitled to a monetary payment. Excluded from the Settlement Class are Defendants, their parent companies, affiliates or subsidiaries, or any employees thereof, and any entities in which any of such companies has a controlling interest, the Judge or Magistrate Judge to whom the Action is assigned and any member of those Judges' staffs and immediate families, as well as all persons who validly request exclusion from the Settlement Class."

### NOTICE GIVEN:

14.   For the details involved in giving the notice, and administering the claims procedure, and the claims received, see the Declaration of Tricia Solorzano in Support of Motion for Final Approval of Class Action Settlement of Gilardi & Co., LLC ("Solorzano Decl.") filed herewith. As stated therein, and in compliance with the Preliminary Approval Order, the Claims Administrator mailed the summary notice of the proposed class settlement to the 1,381,406 persons listed in the final mailing list. *Id.*   The Claims Administrator received returned mail from the U.S. Postal Service for 194,033 persons. *Id.*   After searching for new addresses for those persons, the Claims Administrator subsequently again mailed out summary notices to 143,838 of those persons.   *Id.*   That means over 96% of the Class Members were mailed direct mail notice. The summary notice  instructed all persons how to submit a claim with the Claims Administrator by either calling the toll-free number, going online to make a claim, or submitting a written claim by traditional mail.   The summary notice also directed Class Members to the Settlement Website to obtain complete

HYDE & SWIGART
San Diego, California

HYDE & SWIGART
San Diego, California

1   information regarding the case and class settlement.   That Settlement Website contained

2   the notices, the Agreement, the Preliminary Approval Order, and all the papers supporting

3   Class Counsel's motion for fees and costs.

4   15.   In compliance with the Preliminary Approval Order, the Claims Administrator  also posted

5   on the Settlement Website a detailed and full notice explaining the case, proposed

6   settlement, and each Class Member's options.

7   ### CLAIMS PROCEDURE:

8   16.   The Claims Administrator put in place a simple, easily followed claims procedure agreed

9   upon in the Settlement Agreement that permitted the Class Member to first, determine if

10   they were a member of Subclass A (called by Chase on their cell phone) and if so, then to

11   file a claim.   JPMCB did not separate out in their records which of the borrowers and co-

12   borrowers on   any given account owned the cell phone called, therefore all the potential

13   claimants were included in the Class and Subclass A consists of only those persons whose

14   numbers were called.   Class Members could do so by telephone or online, without the

15   necessity of mailing a claim form. The intent was to make submitting a claim as easy as

16   possible to encourage the filing of claims. If the claimant so desired, they also had the

17   option of filing a claim form by mail. Class Counsel worked in close consultation with the

18   Settlement Administrator throughout this process, which included preparing and mailing

19   Notice to Class Members, creating the settlement website, and reviewing any submitted

20   claims.

21   ### CLAIMS FILED AND PAYMENT TO BE MADE::

22   17.   Despite the simple procedures put in place, only 55,872 of the 1,181,441 persons on the list

23   of Subclass A members have filed claims to date. Solorzano Decl., ¶ 15.      Dividing

24   $3,909,383.03 by 55,872 claims to date    results in an approximate payment to each

25   claimant of $69.97, assuming the Court awards the Settlement Costs as requested.   In

26   addition, the Claims Administrator has informed me that there are approximately 49

27   persons that have filed claims missing certain information and to whom deficiency letters

28   have been mailed, asking them to correct the submitted claims.   Some or all of those may

be corrected and if so, will result in that number of additional valid claims.   That would have a minimal effect but would reduce the pro rata amount each claimant would receive. Also, I understand that two persons, Dayna Crumley and Simspon Hunt, filed both requests for exclusion and claims, which is not permitted.   The Claims Administrator has asked them to choose one or the other but has not yet heard back from either of them.   If we do not hear from them we will treat them as opt outs and advise the Court at the time of the hearing. However, with the amount of claims filed, the claims rate is a little under 5%, which based upon my experience is typical  in consumer cases, which do not generate a high claims rate. However, even though the larger Class mailing list was reduced when cleaned up for mailing and 337,316 duplicate entries were removed, there was never a need to compare the Subclass A list for duplicates.   Therefore, we do not know if the total of Subclass A members was in fact less than 1,181,441 persons.  I have been told by Gilardi that review cannot be made at this time.    In any event, if the number is in fact less, the claims rate would increase from the .04729 it is now.

## OPT OUTS:

18.   There have been 145 "typical"  requests for exclusion from the settlement and 13 late opt-outs.   Those persons will be set forth on an Exhibit to the Solorzano Decl. to be filed with this motion, as per the Preliminary Approval Order. There are also five different bankruptcy trustees that have filed what seem to be blanket requests for exclusion for 52 additional persons.   Two of those trustees, V. John Brook and Angela W. Esposito, filed with the Court documents entitled "Notice of Opt-Out from Class Settlement", Docket Nos. 58 and 59, respectively.   In addition, those two plus three additional trustees sent a package of exclusion requests to the Claims Administrator, who will be submitting them to the Court. Those opt-outs appear to comply with the requirements of the Court's Preliminary Approval Order and are accepted by the Parties. Thus, there are 197 opt-outs, which does not include the 13 late filed opt-outs.

## OBJECTIONS:

HYDE & SWIGART
San Diego, California

19.    There have been no objections to the settlement filed or received to date by Class Counsel as required.  However, the deadline for filing such objections is on or about the date of filing this brief, July 20, 2012.  If any are received after this filing, we will so advise the Court at the hearing and respond accordingly.

### ADEQUACY OF SETTLEMENT:

20.    This is a statutory damages case. No Class member has lost any money as a result of the Defendants' actions, other than their carrier's billing them for the cost of Defendants' one confirmatory text messages. Therefore, the deterrent effect of statutory damages has been met, and the proceeds will be divided among the persons called. In other words, the Class members are not getting a percentage of money they have expended; they are receiving money as statutory damages for cell phone calls made. Therefore, obtaining a $9,000,000 or a minimum $7,000,000 settlement for the Class to divide is an exemplary settlement. Each of the 55,872 claimants will get approximately $69.97, totaling approximately $3,909,383.03.  As a result, in my opinion, based upon my thirty-five years of experience in civil litigation and twenty-three years of experience in litigating class actions,    and based upon the facts of this case, the number of class members, and the other circumstances, I believe this settlement is fair and reasonable. Therefore, I believe the settlement merits Court approval.

### CLASS COUNSEL EXPERIENCE:

21.    I have outlined my experience in the Declaration of Douglas J. Campion in Support of Motion for Award of Attorney's Fees and Costs to be heard at the same time as this motion, and I am not repeating it here, for sake of brevity, if the Court is inclined to review my credentials relating to the Final Approval issues.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 19, 2012 at San Diego, California, pursuant to the laws of the United States.

/s/ Douglas J. Campion
Douglas J. Campion

HYDE & SWIGART
San Diego, California

1.      I, Douglas J. Campion, hereby declare I am one of the attorneys for the Plaintiffs in this action, and named as Class Counsel for the Settlement Class in the Court's March 12, 2012 Order preliminarily approving the settlement. I submit this declaration in support of the Plaintiffs' Motion for Final Approval of the Class Action Settlement. I am licensed to practice law before this court and all California state courts and all federal courts located in the State of California. If called as a witness, I would competently testify to the matters herein from personal knowledge.

2.      I am the owner of the Law Offices of Douglas J. Campion and a counsel of record for Plaintiffs in this matter, appointed as Class Counsel in the Court's Preliminary Approval Order. I am admitted to this Court and have been a member in good standing of the State Bar of California for the past 35 years, since 1977.

## SUMMARY OF CASE HISTORY AND SETTLEMENT

3.      I have been involved in every aspect of this case from inception through the present. I submit this declaration in support of the Plaintiffs' Motion for Final Approval of Class Action Settlement in which Plaintiffs seeks to have the Court approve the agreed-upon settlement payment of a maximum amount of $9,000,000.00 and a minimum amount of $7,000,000.00 ("common fund"). It appears that based upon the number of claims received, approximately 55,872, that the minimum payment of $7,000,000 will not be exceeded. This common fund will be used to compensate Class Members. It will also be used to pay attorneys' fees and litigation costs to Class Counsel, provide an incentive payment to the named Class Representatives, and recoup the costs of notice and claims administration, collectively the "Settlement Costs". Class Counsel are seeking in the previously filed motion for fees and costs attorneys' fees of only 25% of the $9,000,000 common fund, not the 1/3 of the common fund as set forth in the Settlement Agreement, which this Court has already preliminarily approved. Thus, Class Counsel is seeking $2,250,000 as fees, and $835,616.97 in costs, including $23,878.58 in litigation costs and $811,738.39 in notice and claims administration costs for Gilardi & Co., LLP, ("Gilardi"),

1   the Claims Administrator. A total of $5,000 in incentive payments is also sought for the

2   Class Representatives.

3   4.        This matter was brought to the attention of Class Counsel by Patricia

4   Connor, and a Complaint was filed in this Court on June 16, 2010 and an Amended

5   Complaint was filed in this Court on September 10, 2010. Thereafter, Class Counsel

6   initiated a thorough investigation, and conducted relevant factual and legal research. The

7   information learned through this investigation was invaluable during settlement

8   negotiations. Sheri L. Bywater filed a separate case at about the time this case was settled,

9   and it was consolidated with this case for settlement, and her counsel were also made

10  Class Counsel.

11  5.        After filing this action, Class Counsel and JPMorgan Chase Bank

12  ("JPMCB" or "Defendant") engaged in extensive negotiations including an exchange of

13  letters, emails, and telephone conversations that thoroughly analyzed the relevant legal,

14  social, and factual issues at issue, and explored the parties' respective positions on the

15  merits of the action and viability of class certification.

16  6.        Subsequently, both parties exchanged correspondence, including the

17  exchange of relevant information and documents, lists of phone numbers that received the

18  calls to their cell phones, off-site data used during the class period, and argued their

19  respective positions. Discovery was drafted and the case was settled just as depositions by

20  both sides were scheduled to commence around the country.

21  7.        This case was settled fairly early in the litigation process, a few months after

22  an Early Neutral Evaluation Conference conducted by U.S. Magistrate Judge Skomal. It

23  was learned that that number of number of cell phone numbers called was large, creating a

24  class of 1,718,866 persons. It turned out that after cleaning the Class Member list of

25  duplicates and other matters related to account borrowers and co-borrowers, only

26  1,381,406 separate persons were in the larger Class that received the direct mail notice.

27  However, of those class members, only those whose cell phone numbers were actually

28  called will receive monetary compensation, a total of 1,181,441 persons. A Memorandum

1    of Understanding was entered and a Settlement Agreement was then negotiated. At all

2    times, these activities were non-collusive, and conducted at arm's length.

3    8.           Class Counsel and Defendant propounded discovery, prepared responses,

4    and Class Counsel prepared and reviewed confirmatory discovery responses which

5    satisfactorily confirmed the parameters of the Class, the damages agreed upon, and other

6    information informally exchanged prior to, during and following the mediation process.

7    Class Counsel was able to reaffirm the adequacy, appropriateness, and reasonableness of

8    the settlement.  In addition, Class Counsel hired an information technology consultant,

9    Hansen & Levey Forensics, Inc. to assist in the evaluation of the data production and

10   discovery requests and responses.   Mr. Hansen reviewed the data, participated in

11   telephone communications with opposing counsel and their information technology

12   persons, and confirmed the accuracy of the processes used and the numbers provided by

13   Chase. *See* the previously filed Declaration of Jeff Hansen in Support of Preliminary

14   Approval, ¶¶ 4-5. The Parties filed their Motion for Preliminary Approval of Class Action

15   Settlement on January 17, 2012, and the Court granted preliminary approval in an order

16   dated March 12, 2012.

17   9.           The settlement consists of the following:

18           a.   Defendants shall establish a settlement fund with the maximum amount of

19   $9,000,000.00 and a minimum amount of $7,000,000.00 ("Settlement Fund").  Any of

20   the 1,181,441  Subclass A Members that make a timely claim within the time period

21   provided in the notice to Class Members each shall share, pro rata, in the Settlement

22   Fund up to a maximum of $500 and a minimum of $25, after deducting the

23   Settlement Costs: 1) reasonable attorney's fees ($2,250,000) and litigation costs

24   ($23,878.58) as approved and awarded by the Court; 2) the costs of notice and claims

25   administration of $811,738.39; and 3) the proposed Incentive Award of $5,000.00 to

26   be divided  evenly between the two Plaintiffs for their efforts in litigating this case.

27   After deducting those Settlement Costs totaling $3,090,616.97, the remaining fund

28

1  based upon the $7,000,000 payment is $3,909,383.03. Assuming valid claims of

2  55,872, each claimant will receive a pro rata payment of approximately $69.97.

3  b. Plaintiffs Patricia Connor and Sheri L. Bywater have applied to the Court by

4  separate motion for an incentive award of $5,000.00, to be divided evenly, for their

5  service as Class Representatives in this action. Any incentive awards approved by the

6  Court will be paid from within the Settlement Fund.

7  c. The costs of notice by mail and claims administration will be deducted from the

8  Settlement Fund. Those costs have recently been calculated to be $811,738.39 for all

9  Gilardi's costs necessary to see the case through the end of claims administration. A

10  true and correct copy of that invoice is attached hereto as Exhibit 1. Gilardi's costs

11  were originally estimated to be $916,523, which is the amount of the invoice attached

12  to my previously filed declaration in support of fees and costs.

13  d. Class Counsel has previously filed a motion to be heard at the same time as the

14  Final Approval hearing for an award of reasonable attorney's fees and costs, in an

15  amount of 25% of the maximum Settlement Fund as attorneys' fees, $2,250,000, and

16  for $23,878.58 in litigation costs, other than the Gilardi costs.

17  10.  Taking into account the burdens, uncertainty and risks inherent in this

18  litigation, the Parties have concluded that further prosecution and defense of this action

19  could be protracted, unduly burdensome, and expensive, and that it is desirable, fair, and

20  beneficial to the class that the action now be fully and finally compromised, settled and

21  terminated in the manner and upon the terms and conditions set forth in the Settlement

22  Agreement.

23  11.  The Named Plaintiffs and all of their counsel believe that the claims

24  asserted in the Action have merit. However, taking into account the risks of continued

25  litigation, as well as the delays and uncertainties inherent in such litigation and any

26  subsequent appeal, we believe that it is desirable that the Action be fully and finally

27  compromised, settled and terminated now with prejudice, and forever barred pursuant to

28  the terms and conditions set forth in this Settlement Agreement. We have concluded that

1   the terms and conditions of this Settlement Agreement are fair, reasonable and adequate to

2   the proposed class, and that it is in the best interests of the proposed class to settle the

3   Action. I strongly believe, as does each Plaintiff's attorney, that the Settlement should be

4   given final approval.

5   12.        Therefore, Class Counsel is requesting that the Court grant Final Approval

6   of the Settlement.

7                          **THE CLASS DEFINITION:**

8   13.        The Class definition as approved in the Preliminary Approval order is as

9   follows:

> "All present or former borrowers or co-borrowers as identified in
> JPMCB's records whose residential mortgage loan or home equity line of
> credit is or was serviced by JPMCB or Chase Home Finance LLC and
> either the borrower, co-borrower or both, were contacted on their cellular
> telephone(s) by JPMCB through the use of an automated dialer system
> and/or an artificial or pre-recorded voice during the Class Period.
> Subclass A of the Settlement Class consists of those persons whose cell
> phones were actually called by JPMCB or Chase Home Finance LLC
> during the Class Period, and are thus entitled to a monetary payment.
> Excluded from the Settlement Class are Defendants, their parent
> companies, affiliates or subsidiaries, or any employees thereof, and any
> entities in which any of such companies has a controlling interest, the
> Judge or Magistrate Judge to whom the Action is assigned and any
> member of those Judges' staffs and immediate families, as well as all
> persons who validly request exclusion from the Settlement Class."

19

20                          **NOTICE GIVEN:**

21   14.        For the details involved in giving the notice, and administering the claims

22   procedure, and the claims received, see the Declaration of Tricia Solorzano in Support of

23   Motion for Final Approval of Class Action Settlement of Gilardi & Co., LLC ("Solorzano

24   Decl.") filed herewith. As stated therein, and in compliance with the Preliminary Approval

25   Order, the Claims Administrator mailed the summary notice of the proposed class

26   settlement to the 1,381,406 persons listed in the final mailing list. *Id.*    The Claims

27   Administrator received returned mail from the U.S. Postal Service for 194,033 persons. *Id.*

28   After searching for new addresses for those persons, the Claims Administrator

subsequently again mailed out summary notices to 143,838 of those persons. *Id.*    That

1    means over 96% of the Class Members were mailed direct mail notice. The summary

2    notice  instructed all persons how to submit a claim with the Claims Administrator by

3    either calling the toll-free number, going online to make a claim, or submitting a written

4    claim by traditional mail.   The summary notice also directed Class Members to the

5    Settlement Website to obtain complete information regarding the case and class

6    settlement.    That Settlement Website contained the notices, the Agreement, the

7    Preliminary Approval Order, and all the papers supporting Class Counsel's motion for

8    fees and costs.

9    15.          In compliance with the Preliminary Approval Order, the Claims

10   Administrator also posted on the Settlement Website a detailed and full notice explaining

11   the case, proposed settlement, and each Class Member's options.

12                          **CLAIMS PROCEDURE:**

13   16.          The Claims Administrator put in place a simple, easily followed claims

14   procedure agreed upon in the Settlement Agreement that permitted the Class Member to

15   first, determine if they were a member of Subclass A (called by Chase on their cell phone)

16   and if so, then to file a claim.   JPMCB did not separate out in their records which of the

17   borrowers and co-borrowers on  any given account owned the cell phone called, therefore

18   all the potential claimants were included in the Class and Subclass A consists of only

19   those persons whose numbers were called.   Class Members could do so by telephone or

20   online, without the necessity of mailing a claim form. The intent was to make submitting a

21   claim as easy as possible to encourage the filing of claims. If the claimant so desired, they

22   also had the option of filing a claim form by mail. Class Counsel worked in close

23   consultation with the Settlement Administrator throughout this process, which included

24   preparing and mailing Notice to Class Members, creating the settlement website, and

25   reviewing any submitted claims.

26                  **CLAIMS FILED AND PAYMENT TO BE MADE:**

27   17.          Despite the simple procedures put in place, only 55,872 of the 1,181,441

28   persons on the list of Subclass A members have filed claims to date. Solorzano Decl., ¶

15.    Dividing $3,909,383.03 by 55,872 claims to date results in an approximate payment to each claimant of $69.97, assuming the Court awards the Settlement Costs as requested. In addition, the Claims Administrator has informed me that there are approximately 49 persons that have filed claims missing certain information and to whom deficiency letters have been mailed, asking them to correct the submitted claims.   Some or all of those may be corrected and if so, will result in that number of additional valid claims.  That would have a minimal effect but would reduce the *pro rata* amount each claimant would receive. Also, I understand that two persons, Dayna Crumley and Simspon Hunt, filed both requests for exclusion and claims, which is not permitted.  The Claims Administrator has asked them to choose one or the other but has not yet heard back from either of them.  If we do not hear from them we will treat them as opt outs and advise the Court at the time of the hearing. However, with the amount of claims filed, the claims rate is a little under 5%, which based upon my experience is not unusual in consumer cases, which do not generate a high claims rate. However, even though the larger Class mailing list was reduced when cleaned up for mailing and 337,316 duplicate entries were removed, there was never a need to compare the Subclass A list for duplicates.  Therefore, we do not know if the total of Subclass A members was in fact less than 1,181,441 persons.  I have been told by Gilardi that review cannot be made at this time.   In any event, if the number is in fact less, the claims rate would increase from the .04729 it is now.

## OPT OUTS :

18.             There have been 145 "typical"  requests for exclusion from the settlement and 13 late opt-outs.  Those persons will be set forth on an Exhibit to the Solorzano Decl. to be filed with this motion, as per the Preliminary Approval Order. There are also five different bankruptcy trustees that have filed what seem to be blanket requests for exclusion for 64 additional persons.  Two of those trustees, V. John Brook and Angela W. Esposito, filed with the Court documents entitled "Notice of Opt-Out from Class Settlement", Docket Nos. 58 and 59, respectively.  In addition, those two plus three additional trustees sent a package of exclusion requests to the Claims Administrator, who

1    will be submitting them to the Court. Those opt-outs appear to comply with the

2    requirements of the Court's Preliminary Approval Order and are accepted by the Parties.

3    Thus, there are 209 opt-outs, which does not include the 13 late filed opt-outs.

4                                          OBJECTIONS:

5    19.            There have been no objections to the settlement filed or received to date by

6    Class Counsel as required.  However, the deadline for filing such objections is on or about

7    the date of filing this brief, July 20, 2012.  If any are received after this filing, we will so

8    advise the Court at the hearing and respond accordingly.

9                                   ADEQUACY OF SETTLEMENT:

10   20.            This is a statutory damages case. No Class member has lost any money as a

11   result of the Defendants' actions, other than their carrier's billing them for the cost of

12   Defendants' one confirmatory text messages. Therefore, the deterrent effect of statutory

13   damages has been met, and the proceeds will be divided among the persons called. In

14   other words, the Class members are not getting a percentage of money they have

15   expended; they are receiving money as statutory damages for cell phone calls made.

16   Therefore, obtaining a $9,000,000 or a minimum $7,000,000 settlement for the Class to

17   divide is an exemplary settlement. Each of the 55,872 claimants will get approximately

18   $69.97, totaling approximately $3,909,383.03.  As a result, in my opinion, based upon my

19   thirty-five years of experience in civil litigation and twenty-three years of experience in

20   litigating class actions,    and based upon the facts of this case, the number of class

21   members, and the other circumstances, I believe this settlement is fair and reasonable.

22   Therefore, I believe the settlement merits Court approval.

23                                 CLASS COUNSEL EXPERIENCE:

24   21.            I have outlined my experience in the Declaration of Douglas J. Campion in

25   Support of Motion for Award of Attorney's Fees and Costs to be heard at the same time as

26   this motion, and I am not repeating it here, for sake of brevity, if the Court is inclined to

27

28

1     review my credentials relating to the Final Approval issues.

2          I declare under penalty of perjury that the foregoing is true and correct.

3          Executed on July 19, 2012 at San Diego, California, pursuant to the laws of the United

4     States.

5

6                                                  /s/ Douglas J. Campion

7                                                  Douglas J. Campion

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28