John W. Davis
john@johnwdavis.com
501 W. Broadway, Suite 800
San Diego, CA 92101
Telephone: (619) 400-4870
Facsimile: (619) 342-7170

*In Propria Persona*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Patricia Connor, Shari L. Bywater, individually, and on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>vs.<br><br>JPMorgan Chase Bank and Federal National Mortgage Association a/k/a Fannie Mae,<br><br>    Defendants. | Case No. 10 CV 1284 DMS BGS<br><br>**OBJECTION TO PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR**<br><br>Date:    August 3, 2012<br>Time:    1:30 p.m.<br>Judge:   Hon. Dana M. Sabraw<br>Courtroom: 10 |

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................... 1

II. THE RELIEF OFFERED IS INADEQUATE IN LIGHT OF AVAILABLE
STATUTORY DAMAGES ........................................................................................... 2

III. REQUESTED ATTORNEYS' FEES ARE EXCESSIVE ........................................... 5

  A.   NO PERSUASIVE REASON EXISTS FOR ABANDONING THE LODESTAR
ANALYSIS IN FAVOR OF THE PERCENTAGE METHOD. ............................ 6

    1.   NO SINGLE METHOD OF FEE CALCULATION IS APPROPRIATE IN ALL
CASES .................................................................................................................. 6

  B.   IT IS NOT AN ABUSE OF DISCRETION FOR THIS COURT TO APPLY THE
LODESTAR METHOD SIMPLY BECAUSE CLASS COUNSEL PREFER
THAT THE COURT FOLLOW THE PERCENTAGE OF RECOVERY
APPROACH. ....................................................................................................... 7

IV. THE RELEASE IS OVERLY BROAD ...................................................................... 7

V. DEFICIENCIES WITH THE NOTICE, CLAIMS ADMINISTRATION, AND
CLASS MEMBER IDENTIFICATION ...................................................................... 9

VI. THE *CY PRES* COMPONENT OF THE
PROPOSED SETTLEMENT IS IMPROPER .......................................................... 11

VII. THE MERE RIGHT FOR CLASS MEMBERS TO REQUEST EXCLUSION
DOES NOT MITIGATE THE INADEQUATE RELIEF OFFERED TO
CLASS MEMBERS ................................................................................................... 12

VIII. ADDITIONAL OBJECTIONS ............................................................................... 13

IX. CONCLUSION ........................................................................................................... 13

# TABLE OF AUTHORITIES

**Cases**

*Ace Heating & Plumbing Company v. Crane Company*, 453 F.2d 30 (3d Cir. 1971) ........ 12

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) .......................................................... 1

*Class Plaintiffs v. Seattle,* 955 F.2d 1268 (9th Cir. 1992) ....................................................... 1

*Dennis v. Kellogg Co.*, __ F.3d __, 2012 WL 2870128 (9th Cir. 2012) ......................... 5, 12

*Grunin v. Intl. House of Pancakes*, 513 F.2d 114 (8th Cir. 1975) ........................................ 7

*Hanlon v. Chrysler Corp.,* 150 F.3d 1011 (9th Cir. 1998) ................................................. 1, 6

*Hesse v. Sprint Corp.*, 598 F.3d 581 (9th Cir. 2010) ............................................................. 9

*Howard v. Am. Online, Inc.,* 208 F.3d 741 (9th Cir. 2000) .................................................... 9

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) .......................... 1

*In re Cendant Corp., Derivative Action Litigation,* 232 F. Supp. 2d 327 (D.N.J. 2002) ...... 2

*In re Community Bank of Northern Virginia*, 418 F.3d 277 (3rd Cir. 2005) .................. 8, 11

*In re Coordinated Pretrial Proc. in Petroleum Antitrust Litig.*, 109 F.3d 602 (1997) ......... 6

*In re Facebook, Inc., PPC Advertising Litigation*,__F. Supp. 2d__ 2012 WL 1253182
   (N.D. Cal. 2012) ............................................................................................................... 9

*In re Superior Beverage/Glass Container*, 133 F.R.D. 119 (N.D. Ill. 1990) ........................ 7

*In re Wash. Pub. Power Supp. Sys. Sec. Litig.*, 19 F.3d 1291 (9th Cir. 1994) ...................... 6

*Molski v. Gleich*, 318 F.3d 937 (2003) .................................................................................. 7

*Nachshin v. AOL, LLC*, 663 F.3d 1034 (9th Cir. 2011) ....................................................... 12

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) ................................................................. 12

*Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989) ............................. 6

*Planned Parenthood of the Columbia/Willamette Inc. v. Am. Coal. of Life Activists*, 422
   F.3d 949 (9th Cir. 2005) .................................................................................................. 3

*Plummer v. Chem. Bank,* 668 F.2d 654 (2d Cir. 1982) ....................................................... 11

*Powers v. Eichen*, 229 F.3d 1249 (9th Cir. 2000) ................................................................. 7

*Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301 (9th Cir.1990) ............... 6, 12

*State of Florida v. Dunne*, 915 F.2d 542 (9th Cir. 1990) ...................................................... 6

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) .............................................................. 5

*Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995) ......................... 7

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ..................................................... 11

**Statutes**

47 U.S.C. 227(a) ................................................................................................................ 2, 3

**Rules**

Fed. R. Civ P. 23 ............................................................................................................ 1, 2, 12

**Treatises**

Wright & Miller, Federal Practice and Procedure (3d ed.), Civil § 1797 ............................. 2

**PLEASE TAKE NOTICE** that class member John W. Davis ("Objector"), intends to appear and be heard at the fairness hearing on August 3, 2012 at 1:30 p.m. in Department 10 of the United States District Court for the Southern District of California, located at 940 Front Street, San Diego, California 92101, to discuss the following objections:

## I. INTRODUCTION

Class action settlements require court approval for the protection of those class members whose rights may not have been given due regard by the negotiating parties. Federal Rule of Civil Procedure 23(e) requires court approval for the settlement of any class action. A settlement should be approved only if "it is fundamentally fair, adequate and reasonable." *Class Plaintiffs v. Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992), *cert. denied,* 506 U.S. 953 (1992).

Particularly close scrutiny is required under Rule 23(e) when the proposed settlement has been negotiated prior to class certification. *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir. 1998); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620-21 (1997) (holding that the rights of absent class members "demand undiluted, even heightened, attention in the settlement context"). Where, as here, class counsel negotiates a settlement agreement before the class is even certified, courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).

As guardian of absent class members, the Court should independently evaluate the evidence in finding that the proposed Amended Settlement Agreement and Release ("Settlement Agreement") is "fair, adequate and reasonable." Fed. R. Civ P. 23(e)(2); see also Fed. R. Civ. P. 23 advisory committee's notes (2003 Amendments) ("Subdivision (e) is amended to strengthen the process of reviewing proposed class action settlements . . . . [C]ourt review and approval are essential to assure adequate representation of class members who have not participated in shaping the settlement."). The parties seeking approval bear the burden of demonstrating the settlement's fairness. Wright & Miller, Federal Practice and Procedure (3d ed.), Civil § 1797. *See also In re Cendant Corp., Derivative Action Litigation,* 232 F. Supp. 2d 327 (D.N.J. 2002). They have failed to meet this burden.

## II. THE RELIEF OFFERED IS INADEQUATE IN LIGHT OF AVAILABLE STATUTORY DAMAGES

Lead plaintiffs Patricia Connor and Shari L. Bywater (collectively "Plaintiffs") assert that the total potential damages equal approximately $600,000,000.00, calculated as $500 multiplied by the 1,181,411 different cell phones called. Motion for Preliminary Approval, Doc. 50 at ECF p. 20. However, the Telephone Consumer Privacy Act ("TCPA" or "Act") provides for recovery of actual monetary loss from violation of the Act, or $500 in damages *for each violation*, whichever is greater. 47 U.S.C. 227(a)(3)(B). Additionally, the Act provides that if the Court finds that the defendant(s) knowingly violated the statute, the Court may, in its discretion, award up to three times the aforementioned damages. 47 U.S.C. 227(a)(3). Accordingly, the measure of damages in

this case is $500 - $1500 *per call*.

Even if we assume each class member received only one phone call, which is all he or she can receive compensation for under the Settlement Agreement anyway, the total available statutory damages fall in a range of $590,720,500.00 – $1,772,161,500.00. This settlement value is based on Plaintiffs' submission that 1,181,441 unique cell phone numbers belonging to class members were called by defendant JP Morgan Chase Bank ("Chase") using an auto-dialer or similar prohibited modality.[1]

Plaintiffs' discussion of the risks of proceeding does not shed any light on the adequacy of the relief. Plaintiffs Preliminary Approval Motion merely alludes to the possibility that Chase and the Federal National Mortgage Association (collectively "Defendants") would oppose class certification, and then suggests that "additional substantive challenges to the claims might be raised." Doc. 50 at ECF p. 18-19. It does not comment upon whether Chase actually has significant arguments against class certification. It does not identify or discuss a single defense on the merits or the "significant challenges" Plaintiffs would face in litigating the case. It contains no specific assessment of the risks Plaintiffs faced ***in this case***, as opposed to any other.

On the contrary, determining the existence and extent of liability in this case would seem much less difficult than in other cases typically maintained as class actions. Damages are statutory, and are expressly not dependent upon class members showing actual damages. 47 U.S.C. 227(a)(3)(B); *see also Planned Parenthood of the Columbia/Willamette Inc. v. Am. Coal. of Life Activists*, 422 F.3d 949, 963 n.7 (9th Cir.

---

[1] Declaration of Jeff Hansen in Support of Request for Preliminary Approval, ¶ 6

2005) ("Statutory damages are meant to compensate victims when actual loss is hard to prove."). The basic issues are whether Chase made the prohibited calls and, for treble damages, whether it knew the calls were in violation of the statute.

Plaintiffs make much of the "new procedures" that Chase has employed to prevent statutory violations in the future. But the settlement does not specify or require the procedures, and it does not impose any sanction for failing to implement or abide by them. Any benefit they provide is therefore incidental; the procedures will necessarily benefit all Chase customers subject to them, whether or not they are members of the class in this case.

More fundamentally, there is substantial reason to question whether Plaintiffs are even responsible for the additional procedures. Plaintiffs repeatedly claim that the new procedures were "largely developed and implemented" and "largely put in place" after the case was filed. Preliminary Approval Motion, Doc. 50 at ECF p. 11, 13 and 20. But Defendants did not concede, and Plaintiffs are careful not to assert, that the procedures were developed ***because of*** the filing of the complaint in this case, or that the procedures were in any way influenced by the work of the lawyers in the case.

When we view the proposed $9,000,000.00 common fund in that context, the inadequacy of relief is clear – particularly considering that attorneys' fees, costs, and the lead plaintiffs' "incentive awards" will be deducted from the fund prior to any distribution to the class. Such a result is not fair, adequate, or reasonable, and certainly does not justify the 4.39 multiplier sought by class counsel. The disparity between the aggregate value of class claims and the value of the common fund suggests, at best, that class counsel did not fully investigate the class size and attendant claims and; at worst, suggests collusion and

that the proposed settlement is an example of the named plaintiffs and their counsel putting self-interests ahead of the absent class members they purport to represent.

### III. REQUESTED ATTORNEYS' FEES ARE EXCESSIVE

The class relief is inadequate in light of class counsel's requested fee. The amount of requested attorneys' fees is an important factor in assessing the reasonableness of the class relief, since every dollar that goes to class counsel is a dollar less that is available to compensate class members. Greater suspicions about the adequacy of the class relief are raised to the extent the parties agreed upon a fee. The negotiation of a "clear sailing provision," whereby defendants agree not to challenge class counsel's request for attorneys' fees[2], triggers heightened scrutiny of the settlement's fairness because of the risk that class counsel may have bargained away valuable relief for the class in exchange for red carpet treatment on fees. *Staton v. Boeing Co.*, 327 F.3d 938, 979 (9th Cir. 2003).

Class counsel are requesting a lodestar multiplier of approximately 4.39. This is on the high end of multipliers awarded in class action cases and should be reserved for extraordinary cases with extraordinary risk. *Dennis v. Kellogg Co.*, __ F.3d __, 2012 WL 2870128, 9 (9th Cir. 2012) (holding that "a lodestar multiplier of 4.3 is quite high, particularly in a case that was not heavily litigated"). The case at bar concerns statutory damages. It is not overly complex, difficult, or risky. Counsel conducted only "confirmatory" discovery[3] which, as explained further below, is likely insufficient. Given that class members are only being compensated for a small fraction of statutory damages,

---
[2] Settlement Agreement and Release, § 6.01
[3] Settlement Agreement and Release, § 15.01

it is entirely unfair that their counsel should receive such a mammoth windfall.

**A.   NO PERSUASIVE REASON EXISTS FOR ABANDONING THE LODESTAR ANALYSIS IN FAVOR OF THE PERCENTAGE METHOD.**

**1.   NO SINGLE METHOD OF FEE CALCULATION IS APPROPRIATE IN ALL CASES**

"Reasonableness is the goal, and mechanical or formulaic application of either method, where it yields an unreasonable result, can be an abuse of discretion." *In re Coordinated Pretrial Proc. in Petroleum Antitrust Litig.*, 109 F.3d 602, 607 (1997) .

The Ninth Circuit has explicitly and repeatedly refused to mandate the use of the percentage of recovery method in common fund cases.[4] *In re Wash. Pub. Power Supp. Sys. Sec. Litig.*, 19 F.3d 1291, 1295-96 (9th Cir. 1994) (reaffirming the Ninth Circuit's "settled rule that either the lodestar or the percentage method 'may have its place in determining what would be reasonable compensation for creating a common fund'.") ("*WPPSS*"); see also *Hanlon*, 150 F.3d at 1029 ("In 'common fund' cases . . . the district court has discretion to use either a percentage or lodestar method."); *State of Florida v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990) ("Despite the recent ground swell of support for mandating a percentage-of-the-fund approach in common fund cases, however, we require only that fee awards in common fund cases be reasonable under the circumstances.").

Indeed, the Ninth Circuit has also refused to apply even a presumption in favor of one method or the other. Under "the law of the [Ninth Circuit], in common fund cases, no presumption in favor of either the percentage or the lodestar method encumbers the district

---

[4] *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir.1990); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989).

court's discretion to choose one or the other." *WPPSS* at 1296; *see also Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000) (authorizing use of either method "as long as the fee award is reasonable and the district court adequately explains its determination by written order or in open court."); *see also Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 296 (N.D. Cal. 1995) ("The Ninth Circuit has not expressed any explicit preference for either method so long as the ultimate fee award is reasonable under the circumstances.").

**B. IT IS NOT AN ABUSE OF DISCRETION FOR THIS COURT TO APPLY THE LODESTAR METHOD SIMPLY BECAUSE CLASS COUNSEL PREFER THAT THE COURT FOLLOW THE PERCENTAGE OF RECOVERY APPROACH.**

The only fee award that could be considered reasonable under the circumstances is one that compensates class counsel for work that benefitted the class without negating such benefit in the process or creating a windfall for counsel. *In re Superior Beverage/Glass Container*, 133 F.R.D. 119, 126 (N.D. Ill. 1990) (in no case should a fee award consume an untoward portion of the class recovery; what is left for the class after fees have been awarded is always of paramount consideration); *see also Grunin v. Intl. House of Pancakes*, 513 F.2d 114, 127 (8th Cir. 1975), *cert. denied*, 423 U.S. 864 (1975) (the primary concern is to ensure that such awards reasonably compensate the attorneys for their services, and are not excessive, arbitrary or detrimental to the class).

### IV. <u>THE RELEASE IS OVERLY BROAD</u>

The relief offered to class members must be commensurate with released claims, particularly in light of broad release provisions. *Molski v. Gleich*, 318 F.3d 937, 942 (2003). Accordingly, given the broad release provided by the proposed Settlement Agreement, the Court should carefully scrutinize released claims and the compensation (or

Objection to Proposed Settlement                                                  10 CV 1284 DMS BGS

Page 7

lack thereof) provided to class members for releasing these claims.

Significantly, the Settlement Class includes at least 1,718,866 persons who were either called on their mobile phones, *or were co-borrowers on the account with the individuals receiving the call*. Of the estimated 1,718,866 class members, Plaintiffs estimate that approximately 600,000 persons are "co-borrowers" who were not actually contacted on their mobile phones and, accordingly, are not entitled to monetary compensation.[5] Nevertheless, these persons are still designated as members of the Settlement Class who will be bound by an expansive release encompassing not just TCPA claims, but also including *inter alia*, "any claim under federal or state unfair and deceptive practices acts (including but not limited to, the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.*), invasion of privacy, conversion, breach of contract, unjust enrichment, specific performance and/or promissory estoppels."[6] This release language is overly broad even for Subclass A[7] members who stand to receive monetary compensation given that the sole cause of action in the operative complaint is violation of the TCPA.[8] *In re Community Bank of Northern Virginia*, 418 F.3d 277, 307-308 (3rd Cir. 2005) (inclusion of unasserted claims in class settlement release raised question "whether the absent class members' interests were sufficiently pursued by class counsel" and suggested that "class counsel subrogated their duty to the class in favor of the enormous class-action fee offered by defendants.")

Objector is aware of authority referencing release of claims which "could have been

---

[5] Unopposed Motion for Preliminary Approval of Settlement (Dkt. 50, 4:19 – 5:15)
[6] Settlement Agreement 16.01(A)
[7] Unopposed Motion for Preliminary Approval of Settlement (Dkt. 50, 4:23 – 5:15)
[8] First Amended Complaint (Dkt. 17)

brought." *See, e.g., Howard v. Am. Online, Inc.,* 208 F.3d 741, 747 (9th Cir. 2000). There is little doubt that the settling parties will cite this line of cases in responding to objections. However, even under the "could have been brought" analysis, the release sought by Defendants is extraordinarily broad where it should be narrowly tailored. Indeed, class members who were not contacted by Defendants (non-"Subclass A" class members) could not have brought any claim for such conduct yet are being asked for a substantial release. The proposed release is overly broad because it applies to all class members whether or not they are entitled to relief under the settlement, and in that it reaches beyond the factual predicate of the issue in controversy. *Hesse v. Sprint Corp.*, 598 F.3d 581, 587 (9th Cir. 2010). This concern is acutely manifest with regard to class members not in "Subclass A."

Finally, many of the causes of action being released (such as breach of contract) could not have been brought in this case. These claims could not have been pursued because they likely could not have been certified as part of this litigation. *In re Facebook, Inc., PPC Advertising Litigation*, __F. Supp. 2d__ 2012 WL 1253182, 15 (N.D. Cal. 2012) Accordingly, uncertifiable claims not articulated in the operative complaint should not be released under the proposed Settlement Agreement. This point is significant and affects all members of the Settlement Class.

## V. <u>DEFICIENCIES WITH THE NOTICE, CLAIMS ADMINISTRATION, AND CLASS MEMBER IDENTIFICATION</u>

Plaintiffs state, "To submit a claim for monetary payment, a Settlement Class member must simply contact the Claims Administrator to determine if Chase's records indicate the claimant's cell phone was called and they are in Subclass A." Objector called

Objection to Proposed Settlement 10 CV 1284 DMS BGS

Page 9

the Claims Administrator on or before July 10, 2012 to determine if the administrator had a record of calls to any of Objector's mobile numbers. Declaration of John W. Davis in Support of Objection to Proposed Settlement ("Davis Decl."), ¶ 8. The Claims Administrator was unable to respond to Objector's inquiry and indicated that the Administrator could provide no information until a claim form had been received, thereby begging the question. Plaintiffs ask class members to contact the Claims Administrator to determine which numbers were called, and the Claims Administrator asks class members to submit a claim in order to provide telephone numbers to class members.

The confusion occasioned by the claims process is likely the result of Plaintiffs' failure to conduct comprehensive discovery and ascertain all numbers which were improperly called by Defendants. Rather than discuss discovery actually taken, Plaintiffs discuss the discovery that they evidently did not take before settling. Plaintiffs explain they settled just prior to Chase's response to formal discovery and the depositions of its personnel: "The case settled just as responses to formal discovery was [sic] due from both sides to the other, and as many depositions of Chase's personnel were to take place." Preliminary Approval Motion, Doc. 50 at ECF p. 21. What discovery Plaintiffs did take was, puzzlingly, deferred until after a settlement was reached: "Chase was to produce discovery responses, including interrogatory answers and documents at the time a settlement was finally reached." *Id*.

It is not clear whether Chase actually did produce the anticipated post-settlement discovery. To the extent that it did, Objector would seek access to Defendants' responses to assist in analyzing the fairness of the settlement. Objector also seeks access to records

of the evidence, analyses, and deliberations of the parties' "technology consultants" concerning the identification of class members and accounts subject to the settlement, and information – if any – relating to the number of times each cell phone was called. *See, e.g.*, Preliminary Approval Motion, Doc. 50 at ECF p. 20-21 (recounting efforts to determine the methodology for defining the "parameters of the Settlement Class").

In any event, Plaintiffs should undertake more than mere "confirmatory discovery" to assess the strength of the case and to identify and provide notice to all class members. This lack of formal discovery should cause the Court to carefully examine this settlement. *See, e.g., Plummer v. Chem. Bank,* 668 F.2d 654, 658 (2d Cir. 1982) (noting that, due to the lack of formal pretrial discovery, the district court was required to carefully analyze the proposed settlement; *In re Community Bank of Northern Virginia*, 418 F.3d 277, 307-308 (3rd Cir. 2005) (expressing concern that reliance solely on informal discovery did not permit "adequate exploration of the absent class members' potential claims" and rendered it "questionable whether class counsel could have negotiated in their best interests").

In addition, as it appears that class members cannot reliably be identified without relying on Defendants' representations, Plaintiffs should undertake a more comprehensive publication notice to adequately notify all persons affected by this settlement. Absent class members are entitled to receive the best notice that is practicable. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2558 (2011). The notice campaign undertaken by the settling parties does not meet that standard.

### VI. THE *CY PRES* COMPONENT OF THE PROPOSED SETTLEMENT IS IMPROPER

The settling parties have failed to show that there is a reasonable certainty that any

class member will benefit from the *Cy Pres* fund.[9] To avoid the "many nascent dangers to the fairness of the distribution process," there must be "a driving nexus between the plaintiff class and the *cy pres* beneficiaries." *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038 (9th Cir. 2011). The proposed settlement fails to satisfy the standard set forth in *Nachsin*. *See also Dennis v. Kellogg Co.*, __ F.3d __, 2012 WL 2870128, 7 (9th Cir. 2012).

*Cy Pres* distribution is inappropriate where there is "no reasonable certainty" that any class member would benefit from it. *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1308 (9th Cir.1990). Here, the settling parties have not only failed to demonstrate a nexus between the Settlement Class and the *cy pres* beneficiaries, the parties have not identified any *cy pres* recipient at all.

## VII. THE MERE RIGHT FOR CLASS MEMBERS TO REQUEST EXCLUSION DOES NOT MITIGATE THE INADEQUATE RELIEF OFFERED TO CLASS MEMBERS

As representatives of the class, class counsel have a fiduciary duty to protect the interests of *all* class members at *all* stages of the case - but especially during settlement negotiations. *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 856 (1999). The opportunity to exclude oneself from the class cannot cure inadequate representation at any point. Nor does it permit a court to overlook such inadequacies when passing on the fairness of a proposed settlement. Notwithstanding the right to opt out, courts must carefully scrutinize class settlements to ensure that absent class members' rights are not lost, prejudiced, or sold out too cheaply through inadequate representation. *Ace Heating & Plumbing Company v. Crane Company*, 453 F.2d 30, 33 (3d Cir. 1971) ("[Fed.] Rule [Civ. Proc.] 23

---
[9] Settlement Agreement ¶ 5.02

1 recognizes the fact that many small claimants frequently have no litigable claims unless
2 aggregated. So, without court approval and a subsequent right to ask for review, such
3 claimants would be faced with equally unpalatable alternatives – accept either nothing at
4 all or a possibly unfair settlement.")

## VIII.  ADDITIONAL OBJECTIONS

Objector hereby adopts and incorporates by reference all *bona fide* objections filed by other objectors in this case not adverse to the positions expressed herein.

## IX.  CONCLUSION

For the foregoing reasons, Objector respectfully requests that the Court withdraw its conditional approval of the proposed settlement and enter orders requiring further proceedings so as to effect substantial justice in this cause between the parties and the absent class members. Objector hereby reserves the right to amend and refine his objections as more information is made available.

Respectfully submitted this 20th day of July, 2012.

                                          s/ John W. Davis
                                          John W. Davis
                                          501 W. Broadway, Ste. 800
                                          San Diego, CA  92101
                                          (619) 400-4870