Joshua B. Swigart, Esq. (SBN: 225557)
josh@westcoastlitigation.com
Robert L. Hyde, Esq. (SBN: 227183)
bob@westcoastlitigation.com
**HYDE & SWIGART**
411 Camino Del Rio South, Suite 301
San Diego, CA 92108-3551
Telephone:   (619) 233-7770
Facsimile:   (619) 297-1022

Abbas S. Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
**Kazerouni Law Group, APC**
2700 North Main Street, Ste. 1050
Santa Ana, CA 92866
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

Other Attorneys on Signature Page

Attorneys for Plaintiffs and the Proposed Class



FILED MAY 1 5 2014 CLERK U.S. DISTRICT COURT SOUTHERN DISTRICT OF CALIFORNIA BY DEPUTY

NUNC PRO TUNC

MAR 1 2 2012

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Patricia Connor and Sheri L. Bywater, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br>v.<br><br>JPMorgan Chase Bank, N.A., Chase Bank USA, N.A., and Federal National Mortgage Association a/k/a Fannie Mae,<br><br>Defendants. | Case Number: 10 CV 1284 DMS BGS<br><br>**CLASS ACTION**<br><br>Second Amended Complaint for Damages and Injunctive Relief Pursuant To The Telephone Consumer Protection Act, 47 U.S.C § 227 et seq.<br><br>Jury Trial Demanded |

## INTRODUCTION

1. Patricia Connor and Sheri L. Bywater ("Plaintiffs") bring this class action for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the allegedly illegal actions of JPMorgan Chase Bank, N.A., and Chase Bank USA, N.A., and their present, former, and/or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or related entities, subsidiaries and agents ("Chase") and Federal National Mortgage Association a/k/a Fannie Mae ("Fannie Mae") or collectively as "Defendants", in negligently and/or willfully contacting Plaintiffs on Plaintiffs' cellular telephone without their prior express consent, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, ("TCPA"). Plaintiffs allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including the investigation conducted by their attorneys.

## JURISDICTION AND VENUE

2. Jurisdiction is proper under 28 U.S.C. § 1332(d)(2) because Plaintiffs seek relief on behalf of a national class, which will result in at least one class member belonging to a different state than that of Defendants. Plaintiffs also seek up to $1,500 in damages for each call in violation of the TCPA, which, when aggregated among a proposed class number in the tens of thousands, exceeds the $5,000,000 threshold for federal court jurisdiction. Therefore, both diversity jurisdiction and the damages threshold under the Class Action Fairness Act of 2005 ("CAFA") are present, and this Court has jurisdiction.

3. Venue is proper in the United States District Court for the Southern District of California pursuant to 18 U.S.C. § 1391(b)-(c) and 1441(a) because Defendants do business within the State of California and the County of San Diego.

## PARTIES

4. Plaintiff Patricia Connor is, and at all times mentioned herein was, an individual citizen and resident of the State of California.

5. Plaintiff Sheri L. Bywater is, and at all times mentioned herein was, an individual citizen and resident of the State of California.

6. Plaintiffs are, and at all times mentioned herein were, "persons" as defined by 47 U.S.C. § 153 (10).

7. Plaintiffs are informed and believed, and thereon allege, that JP Morgan Chase & Co. is, and at all times mentioned herein was, a Delaware corporation whose principal executive offices are at 270 Park Avenue, New York, NY 10017. JP Morgan Chase & Co. is a financial holding company and was incorporated under Delaware law in 1968. JP Morgan Chase's principal wholly-owned bank subsidiaries are Defendant JP Morgan Chase Bank, N.A. and Defendant Chase Bank U.S.A., N.A.

8. On information and belief, Plaintiffs allege that Defendant JPMorgan Chase Bank, N.A. is, and at all times mentioned herein was, a national banking association with its primary business address in the State of Ohio, and does business throughout the country, including this District.

9. On information and belief, Plaintiffs allege that Defendant Chase Bank USA, N.A. is, and at all times mentioned herein was, a national banking association with its primary business address in the State of Delaware, and does business throughout the country, including this District.

10. On information and belief, Chase is one of the country's largest home mortgage providers and loan servicing agencies, including providing loan modifications to borrowers caught in the recent home loan crisis and real estate valuation crisis. Chase's home loans were insured by government agencies, including Fannie Mae, in the amounts of $1.4 billion for 2007, $3.5 billion for 2008, and $9.7 billion for 2009. Chase services loans for third-parties as part of its core business, generating substantial revenues, and included over $1 billion dollars in mortgage loans in 2009 that were serviced for third-parties, including Fannie Mae, with Chase's percentage of third-party loan servicing revenue increasing in 2009 over the prior two years.

11. Fannie Mae's primary corporate address is 3900 Wisconsin Avenue NW, Washington, DC 20016. Fannie Mae is a government-sponsored enterprise established by Congress in 1938 and chartered by Congress in 1968 as a private shareholder-owned corporation. Its stock is traded on the Over the Counter market. Fannie Mae assists homebuyers by providing capital for funding mortgage loans and operates in the U.S. secondary mortgage market. Rather than making home loans directly to consumers, Fannie Mae works with mortgage bankers, brokers and other primary mortgage market partners to help ensure they have funds to lend to home buyers at affordable rates. Fannie Mae funds its mortgage investments primarily by issuing debt securities in the domestic and international capital markets.

12. On information and belief, Fannie Mae relies upon other lenders, such as Chase, to service its mortgages and to engage in collection practices when the borrowers fall behind in their payments.

## FACTUAL ALLEGATIONS

### Plaintiff Connor's Allegations

13. Plaintiff Connor obtained home mortgages in the late 2005 – early 2006 time-frame for her real property through Chase's home financing entity Defendant Chase Bank USA, N.A. Those included loan no. 1096734380.

14. On information and belief, once the loan had closed, Chase sold Plaintiff Connor's mortgages to Fannie Mae. Plaintiff Connor's loan has been owned by Fannie Mae and serviced by Chase for Fannie Mae for all of the relevant time period. The Fannie Mae website responds to an inquiry as to whether Plaintiff Connor's loan is a Fannie Mae loan in the affirmative. Plaintiff Connor was told directly by Chase employee "Lynn", employee number 6745695, in approximately October, 2008, that her loan was in fact owned by Fannie Mae during the relevant time period Plaintiff Connor received the calls complained of herein.

15. Even though Plaintiff Connor's mortgage loans were owned by Defendant Fannie Mae, Chase has serviced the loan throughout the relevant time period, engaged in collection

efforts and while doing so, and committed the TCPA violations while acting in such capacity for Defendant Fannie Mae.

16. Here Chase had direct communication with Plaintiff Connor in the commission of the TCPA violations alleged herein. However, in engaging in such violations, Chase was acting on behalf of the creditor Fannie Mae, who communicated with Plaintiff Connor only through Chase, without Fannie Mae's direct involvement with Plaintiff Connor. Chase never specifically advised Plaintiff Connor about the sale of her loans to Fannie Mae and the resulting Chase loan servicing agreement with Fannie Mae for several years, until approximately October, 2008 when Chase employee "Lynn", employee number 6745695, informed Plaintiff Connor that her loan had been sold by Chase to Fannie Mae and owned all along by Fannie Mae.

17. On multiple occasions beginning in approximately May, 2007 when Plaintiff Connor experienced financial difficulties, and continuing on many occasions over the following 10 to 12 months, Chase contacted Plaintiff Connor on her cellular telephone via an "automatic telephone dialing system," as defined by 47 U.S.C. § 227 (a)(1) and used "an artificial or prerecorded voice" as prohibited by 47 U.S.C. § 227 (b)(1)(A). Such calls requested that Plaintiff Connor make payments on her home mortgages and bring her accounts current, and such calls were made repeatedly to her cell phone in that 10 to 12 month time period. Those calls by Chase were received by Plaintiff Connor on her cell phone at least several times a week, in the May, 2007 time-frame, and much more frequently in the next 10 to 12 months. At a minimum, Plaintiff Connor received dozens of calls to her cell phone from May, 2007 through April, 2008 made by Chase or its related entities, subsidiaries or agents.

18. On information and belief, Chase made such calls to Plaintiff Connor's cellular telephone pursuant to its agreement with Fannie Mae to service and collect Plaintiff Connor's loan payments and arrearages for Fannie Mae, and in carrying out its duties as the loan servicing agency working on behalf of Defendant Fannie Mae, the entity that owned Plaintiff Connor's home mortgages. On information and belief, such calls were made by

Chase on behalf of and for the benefit of Defendant Fannie Mae, as well as for Chase's own financial benefit as the loan servicing agency for Fannie Mae.

19. Some of the numbers from which Chase and its agents called Plaintiff Connor are as follows: 866-998-2500; 210-614-1167; 888-609-2379; 800-723-3004; 909-484-2356; and 877-881-2182.

20. Due to renewed and continuing financial difficulties, Plaintiff Connor fell behind in making the payments for the original adjustable rate loans and in 2008 sought to modify the original loans obtained through Chase. For over six months in 2008 Plaintiff Connor sought to modify her loans with Chase and in or about January, 2009, new agreements were put in place to modify Plaintiff Connor's original loan payments. However, Plaintiff Connor had further problems in making timely payments on those modified mortgage obligations serviced by Chase. As a result, again Chase, on behalf of creditor Defendant Fannie Mae, made additional calls to Plaintiff Connor's cell phone beginning again in March, 2009 via an "automatic telephone dialing system," as defined by 47 U.S.C. § 227 (a)(1) and/or by a prerecorded voice message during the relevant period, and continuing thereafter. At a minimum, Plaintiff Connor received dozens of calls after March, 2009 made to her cell phone from Chase.

### Plaintiff Bywater's Allegations

21. On or around March 17, 2004, Plaintiff Bywater took out a mortgage to cover the purchase of a home.

22. In Plaintiff Bywater's Uniform Residential Loan Application, she did not list any cellular telephone number.

23. Plaintiff Bywater did not list a cellular phone number in or on any other documents to Chase, nor did she verbally provide Chase with a cellular phone number at any time.

24. Notwithstanding the fact Plaintiff Bywater did not provide Chase with her cellular number at any time, Chase repeatedly contacted Plaintiff Bywater on Plaintiff Bywater's cellular telephone. Plaintiff Bywater received repeated, harassing calls at all hours of the day.

Because these calls were prerecorded, Plaintiff Bywater had no ability to request that the calls end or to voice her complaints to a real person.

25. All telephone contact by Chase to Plaintiff Bywater on her cellular telephone occurred via an "automatic telephone dialing system," as defined by 47 U.S.C. § 227(a)(1), and all calls that are the subject of this Complaint occurred within four years of the filing of this Complaint.

**Plaintiffs' Joint Allegations against Chase**

26. Defendants are, and at all times mentioned herein were, corporations and "persons," as defined by 47 U.S.C. § 153 (10). Plaintiffs are informed and believe, and on the basis of that information and belief allege, that at all times mentioned in this Complaint, Defendants were the agents and employees of their codefendants, and in doing the things alleged in this Complaint, were acting within the course and scope of that agency and employment.

27. At all times relevant, Plaintiffs were individuals residing within the State of California.

28. Plaintiffs are, and at all times mentioned herein were, "persons" as defined by 47 U.S.C. § 153 (10).

29. This lawsuit seeks statutory damages for the TCPA violations committed by Chase.

30. As alleged herein, Chase repeatedly violated the TCPA, 47 U.S.C. § 227 *et seq.*, by negligently and/or willfully contacting Plaintiffs on Plaintiffs' cellular telephone.

31. During these telephone calls Chase used "an artificial or prerecorded voice" as prohibited by 47 U.S.C. § 227 (b)(1)(A).

32. The telephone numbers on which Chase called Plaintiffs with a "prerecorded voice" made by an "automatic telephone dialing system" was assigned to a cellular telephone service for which Plaintiffs incur a charge for incoming calls pursuant to 47 U.S.C. § 227 (b)(1).

33. These telephone calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227 (b)(1)(A)(i).

34. Plaintiffs did not provide prior express consent at any time to Chase to receive calls made to them cell phone with an autodialer and/or with prerecorded voice messages, pursuant to 47 U.S.C. § 227 (b)(1)(A).

35. These telephone calls by Chase to Plaintiffs' cellular phones utilizing an "artificial or prerecorded voice" or placed by an "automatic telephone dialing system" for non-emergency purposes and in the absence of Plaintiffs' prior express consent violated 47 U.S.C. § 227(b)(1).

36. Under the TCPA and pursuant to the FCC's January 2008 Declaratory Ruling, the burden is on Chase to demonstrate that Plaintiffs provided express consent within the meaning of the statute.[1]

**Plaintiff Connor's Allegations Against Defendant Fannie Mae**

37. Plaintiff Connor seeks statutory damages for the TCPA violations committed by Chase, both from Chase and from the creditor Defendant Fannie Mae, for violations made by Chase while servicing Chase and Fannie Mae loans.

38. In addition to servicing Plaintiff Connor's loans, through agreements with Fannie Mae, Chase services many thousands, or tens of thousands, of mortgages for and on behalf of Fannie Mae, including loans not originally placed by Chase but placed by other lenders but serviced by Chase for Fannie Mae. Chase also services mortgages originally placed by Chase but sold by Chase to Fannie Mae, including Plaintiff Connor's mortgages. Thus, Chase has or had loan servicing agreements for many thousands of borrowers whose loans are or were owned by Fannie Mae loans during the relevant period whereby Fannie Mae is the creditor or owner of the loan and Chase is the entity servicing the loans for Fannie Mae. In that capacity, for all the Fannie Mae loans it services, Chase collects payments and engages in collection efforts when the borrowers are behind in their payments.

39. Chase also made calls to other proposed Class members' cell phones while servicing their loans on behalf of creditor Fannie Mae during the relevant time period, all while

---

[1] *See FCC Declaratory Ruling*, 23 F.C.C.R. at 565 (¶ 10).

performing Fannie Mae's loan servicing on behalf of and for the benefit of the creditor Defendant Fannie Mae.

40. Plaintiff Connor did not provide prior express consent at any time to Fannie Mae to receive calls made to her cell phone with an autodialer and/or with prerecorded voice messages, pursuant to 47 U.S.C. § 227 (b)(1)(A).

41. Pursuant to the Federal Communication Commission's Declaratory Ruling FCC 07-232 (December 28, 2007) ("FCC Ruling") promulgated pursuant to the instructions of Congress to make such rules as necessary to implement the TCPA, the creditor – here Fannie Mae – is also responsible for the TCPA violations committed by its agents – here Chase – collecting on the account for the creditor. That FCC Ruling states: ". . . a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules. Calls made by a third party collector in behalf of that creditor are treated as if the creditor itself placed the call." *Id.* at ¶ 10. Thus, both under that FCC Ruling, and pursuant to agency theories of liability and *respondeat superior*, Defendant Fannie Mae is also liable to Plaintiff Connor and the Class for the TCPA violations alleged herein.

42. Fannie Mae is liable for TCPA violations, pursuant to both agency theories and the Federal Communication Commission's Declaratory Ruling FCC 07-232 (December 28, 2007) ("FCC Ruling") holding a creditor to be liable for the TCPA violations of its agent.

### CLASS ACTION ALLEGATIONS

43. Plaintiffs bring this action on behalf of themselves and on behalf of all others similarly situated ("The Class").

44. Plaintiffs represent, and are members of, The Class defined as follows and subject to amendment as appropriate: "All persons within the United States who received any telephone call from Chase, regarding a mortgage owned and/or serviced by Chase or Fannie Mae, to that person's cellular telephone made through the use of any automatic telephone dialing system or an artificial or prerecorded voice, and without the called party giving prior express consent to be called in that manner."

45. Defendants, and entities in which Defendants hold a controlling interest, their employees and agents, the Judge to whom this action is assigned and any member of the Judge's staff and immediate family, and claims for personal injury, wrongful death, and/or emotional distress are excluded from The Class.

46. Plaintiffs do not know the number of members in The Class, but believe the Class Members number in the tens of thousands, if not more. This Class size includes consumers holding mortgages owned and/or serviced by Chase and/or Fannie Mae and all other persons who Chase (mis)dialed regarding a mortgage owned and/or serviced by Chase or Fannie Mae. Thus, this matter should be certified as a Class action to assist in the expeditious litigation of this matter.

47. Plaintiffs and members of The Class were harmed by the acts of Defendants in at least the following ways: Chase illegally contacted Plaintiffs and The Class members via their cellular telephones for a number of reasons, including in order to request and pressure such Class members to bring current the mortgage payments on their mortgages. As a result, Plaintiffs and The Class members incurred certain cellular telephone charges or reduce cellular telephone time for which Plaintiffs and The Class members previously paid, by having to retrieve or administer messages left by Chase during those illegal calls, and invading the privacy of said Plaintiffs and The Class members. Plaintiffs and The Class were damaged thereby.

48. This suit seeks monetary damages and injunctive relief on behalf of The Class and it expressly is not intended to request any recovery for personal injury, wrongful death, and/ or emotional distress, and claims related thereto. Plaintiffs reserve the right to expand The Class definition to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

49. The joinder of The Class members is impractical and the disposition of their claims in the Class action will provide substantial benefits both to the parties and to the court. The Class can be identified through Defendants' records.

Second Amended Class Action Complaint
for Damages                                    - 10 of 16 -                    10 CV 1284 DMS BGS

50. There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. The questions of law and fact to The Class predominate over questions which may affect individual Class members, including the following:

   a. Whether, within the four years prior to the filing of the original Complaint in this action, Defendants made any call (other than a call made for emergency purposes or made with the prior express consent of the called party) to a Class member using any automatic telephone dialing system or an artificial or prerecorded voice to any telephone number assigned to a cellular telephone service.

   b. Whether Defendants' conduct was knowing and/or willful;

   c. Whether Defendants are liable for damages for violations of the TCPA, and the amount of such damages;; and

   d. Whether Defendants should be enjoined from engaging in such conduct in the future.

51. Plaintiffs are asserting claims that are typical of The Class because they are persons who received numerous calls from Defendants using an automatic telephone dialing system or an artificial or prerecorded voice, and without their prior express consent before receiving such calls. Plaintiffs will fairly and adequately represent and protect the interests of The Class in that Plaintiffs have no interests antagonistic to any member of The Class.

52. Plaintiffs have retained counsel experienced in handling class action claims and claims involving violations of the Telephone Consumer Protection Act.

53. A class action is a superior method for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce Defendants to comply with federal and California law. The interest of Class members in individually controlling the prosecution of separate claims against Defendants is small because the maximum statutory damages in an individual action for violation of privacy are minimal. Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

54. Defendants have acted on grounds generally applicable to The Class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the Class as a whole. On information and belief, Plaintiffs allege that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## First Cause Of Action
### Negligent Violations Of The Telephone Consumer Protection Act
### 47 U.S.C. § 227 Et Seq.

55. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

56. The foregoing acts and omissions of Chase in making the calls to the cell phones of Plaintiffs and The Class, constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227 *et seq.*

57. Chase serviced and collected on some loans on behalf of Defendant Fannie Mae, the creditor that owned some Class members' loans, and Fannie Mae as creditor hired Chase to act as its agent in servicing and collecting on its loans, and Fannie Mae participated in, consented to, and accepted funds from, the efforts of its agent Chase in collecting on such Fannie Mae loans. As a result, Defendant Fannie Mae is also liable for the TCPA violations alleged herein, by Chase in making the calls to the cell phones of Plaintiffs and The Class, under the Federal Communication Commission's Declaratory Ruling, FCC 07-232 (December 28, 2007) and 47 U.S.C. § 227 *et seq.*

58. As a result of Defendants' negligent violations of 47 U.S.C. § 227 *et seq.*, Plaintiffs and The Class are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

59. Plaintiffs and The Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

60. Plaintiffs and Class members are also entitled to an award of attorneys' fees and costs.

## SECOND CAUSE OF ACTION
### KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT 47 U.S.C. § 227 ET SEQ.

61. Plaintiffs incorporate by reference the above paragraphs 1 through 54, inclusive, of this Complaint as though fully stated herein.

62. The foregoing acts and omissions of Chase in making the calls to the cell phones of Plaintiffs and The Class, constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227 *et seq.*

63. Chase serviced and collected on some loans on behalf of Defendant Fannie Mae, the creditor that owned some Class members' loans, and Fannie Mae as creditor hired Chase to act as its agent in servicing and collecting on its loans, and Fannie Mae participated in, consented to, and accepted funds from, the efforts of its agent Chase in collecting on such Fannie Mae loans. As a result, Defendant Fannie Mae is also liable for the TCPA violations alleged herein, by Chase in making the calls to the cell phones of Plaintiffs and The Class, under the Federal Communication Commission's Declaratory Ruling, FCC 07-232 (December 28, 2007) and 47 U.S.C. § 227 *et seq.*

64. As a result of Defendants' knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Plaintiffs and The Class are entitled to treble damages, as provided by statute, up to $1,500.00, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

65. Plaintiffs and The Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

66. 54. Plaintiffs and Class members are also entitled to an award of attorneys' fees and costs.

### PRAYER FOR RELIEF

Wherefore, Plaintiffs respectfully request the Court grant Plaintiffs and The Class members the following relief against Defendants, and each of them:

# FIRST CAUSE OF ACTION FOR NEGLIGENT VIOLATION OF
# THE TCPA, 47 U.S.C. § 227 ET SEQ.

- As a result of Defendants' negligent violations of 47 U.S.C. § 227(b)(1), Plaintiffs seek for themselves and for each Class member $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).
- Pursuant to 47 U.S.C. § 227(b)(3)(A), injunctive relief prohibiting such conduct in the future.
- An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class and any Subclasses the Court deems appropriate, finding that Plaintiffs are proper representatives of the Class, and appointing the lawyers and law firms representing Plaintiffs as counsel for the Class
- An award of attorneys' fees and costs to counsel for Plaintiffs and the Class.
- Any other relief the Court may deem just and proper.

# SECOND CAUSE OF ACTION FOR KNOWING AND/OR WILLFUL VIOLATION
# OF THE TCPA, 47 U.S.C. § 227 ET SEQ.

- As a result of Defendants' willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiffs seeks for themselves and each Class member treble damages, as provided by statute, up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).
- Pursuant to 47 U.S.C. § 227(b)(3)(A), injunctive relief prohibiting such conduct in the future.
- An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class and any Subclasses the Court deems appropriate, finding that Plaintiffs are proper representatives of the Class, and appointing the lawyers and law firms representing Plaintiffs as counsel for the Class
- An award of attorneys' fees and costs to counsel for Plaintiffs and the Class.
- Any other relief the Court may deem just and proper.

TRIAL BY JURY

Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiffs are entitled to, and demand, a trial by jury.

Date: January 12, 2012

**Law Offices of Douglas J. Campion**

By: _/s Douglas J. Campion_
    Douglas J. Campion (SBN: 75381)
    409 Camino Del Rio South, Suite 303
    San Diego, CA 92108
    Telephone: (619) 299-2091
    Facsimile: (619) 858-0034

**HYDE & SWIGART**

By: _/s Joshua B. Swigart_
    Joshua B. Swigart

**Kazerouni Law Group, APC**

By: _/s Abbas Kazerouni_
    Abbas S. Kazerouni

Attorneys for Plaintiff Connor

By: _/s/ Jonathan D. Selbin_
    Jonathan D. Selbin

**LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP**
Jonathan D. Selbin (SBN: 170222)
Email: jselbin@lchb.com
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

**LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP**

Daniel M. Hutchinson (SBN: 239458)
Email: dhutchinson@lchb.com
Alison Stocking
Email: astocking@lchb.com
Embarcadero Center West
275 Battery Street
San Francisco, California 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

**MEYER WILSON CO., LPA**
David P. Meyer (0065205)
Email: dmeyer@meyerwilson.com
Matthew R. Wilson (0072925)
Email: mwilson@meyerwilson.com
1320 Dublin Road, Suite 100
Columbus, OH 43215
Telephone: (614) 224-6000
Facsimile: (614) 224-6066

Attorneys for Plaintiff Bywater