Joshua B. Swigart, Esq. (SBN: 225557)
josh@westcoastlitigation.com
**HYDE & SWIGART**
2221 Camino Del Rio, Suite 101
San Diego, CA 92108-3551
Telephone: (619) 233-7770
Facsimile: (619) 297-1022

**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian Esq, (SBN: 249203)
ak@kazlg.com
245 Fischer Avenue, Suite D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

Other Attorneys on Signature Page

Attorneys for the Plaintiffs and Proposed Settlement Class

HYDE & SWIGART
San Diego, California

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **PATRICIA CONNOR, AND SHERI L. BYWATER, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED**<br><br>**PLAINTIFFS,**<br>**V.**<br><br>**JPMORGAN CHASE BANK AND FEDERAL NATIONAL MORTGAGE ASSOCIATION A/K/A FANNIE MAE,**<br><br>**DEFENDANTS.** | **Case No: 10-CV-1284 GPC (BGS)**<br><br>**CLASS ACTION**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>**DATE: DECEMBER 4, 2014**<br>**TIME: 1:30 P.M.**<br><br>**HON. GONZALO P. CURIEL** |

# Table Of Contents

I. Introduction ....................1
II. Facts and Procedural History ....................2
III. The Class Settlement ....................5
A. Class Allegations ....................5
B. Certification of a Fed. R. Civ. P. 23(b)(2) and (b)(3) Settlement Class....................5
C. Key Settlement Terms ....................6
1. Original Group 1 Settlement ....................6
2. Group 2 Settlement ....................6
3. Estimated Claiming Class Member Compensation ....................7
D. Consistent with the Settlement Reached Payment to Group 1 and Group 2 Class Members Will be Equal....................8
E. Attorneys' Fees and Costs Application....................8
IV. Notice ....................9
A. Fairness Hearing ....................9
B. CAFA Notices....................10
C. Direct Mail Notice Provided ....................10
D. The Notice was Posted on the Settlement Website....................11
V. Claims Procedure and Claims Filed ....................11
A. Exclusions ....................12
B. Objections....................13
C. Settlement Checks ....................14
D. Class Representative Payment....................14
E. Class Counsel's Attorneys' Fees, Costs, and Expenses ....................14
1. Attorneys' Fees and Litigation Costs ....................14
2. Administration and Notice Costs ....................15
VI. Argument Supporting Final Approval ....................15

A. The Proposed Settlement is Fundamentally Fair, Reasonable, and Adequate ....16
B. The Strength of the Lawsuit and the Risk, Expense, Complexity, and Likely Duration of Further Litigation ....17
C. The Amount Offered in Settlement ....18
D. The Extent of Discovery Completed ....20
E. The Experience and Views of Class Counsel ....21
F. The Reaction of the Class Members to the Proposed Settlement ....21
VII. Conclusion ....22

HYDE & SWIGART
San Diego, California

# Table Of Authorities

## Cases

*Adams v. AllianceOne Receivables Management, Inc.*,
Case No. 08 CV 0248 JAH WVG ....................18

*Beecher v. Able*,
441 F.Supp. 426 (S.D.N.Y. 1977) ....................19

*Bellows v. NCO Fin. Sys.*,
2 2008 U.S. Dist. LEXIS 103525 (S.D. Cal. 2008) ....................18

*Berkey Photo, Inc. v. Eastman Kodak Co.*,
603 F.2d 263 (2d Cir. 1979) ....................18

*Boyd v. Bechtel Corp.*,
485 F. Supp. 610, 622 (N.D. Cal. 1979) ....................21

*Detroit v. Grinnell Corp.*,
495 F.2d 448, 463 (2d Cir. 1974) ....................22

*Ellis v. Naval Air Rework Facility*,
87 F.R.D. 15, 18 (N.D. Cal. 1980), aff'd 661 F.2d 939 (9th Cir. 1981) .......17, 21

*Girsh v. Jepson*,
521 F.2d 153, 157 (3d Cir. 1975) ....................16

*In re Warner Communications Sec. Litig.*,
618 F. Supp. 735, 741 (S.D. N.Y. 1985) ....................16, 20, 22

*Lemieux v. Global Credit & Collection*,
08-CV-01012-IEG-POR (S.D. Cal. 2008) ....................18

*Linney v. Cellular Alaska P'ship*,
151 F.3d 1234, 1242 (9th Cir. 1998) ....................20

*M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*,
671 F. Supp. 819, 822 (D. Mass. 1987) ....................17, 21

*Malta v. Wells Fargo*,
Case No. 10-CV-1290-BEN (NLS) ....................18

HYDE & SWIGART
San Diego, California

## Table Of Authorities
## (continued)

*Officers for Justice v. Civil Service Com'n of City and County of San Francisco,*
688 F.2d 615, 623 (9th Cir. 1982) ....................16, 17

*Rodriguez v. West Publishing Corp.,*
563 F.3d 948 (9th Cir. 2009) ....................16

*Staton v. Boeing Co.,*
327 F. 3d 938 (9th Cir. 2003)....................16

*Torrisi v.Tucson Elec. Power Co.*
8 F.3d 1370, 1376 (9th Cir. 1993) ....................17

*West Virginia v. Chas. Pfizer & Co.,*
314 F. Supp. 710, 743-44 (S.D. N.Y. 1970) aff'd, 440 F.2d 1079 (2d Cir. 1971) ....................18

## Statutes

28 U.S.C. § 1715....................10

28 U.S.C. § 1715(a)(1)(B) ....................10

47 U.S.C § 227 ....................2,

47 U.S.C. § 227(b)(3)(B)....................5

47 U.S.C. § 227(b)(3)(C)....................5

## Rules

Fed. R. Civ. P. 23(a)....................15

Fed. R. Civ. P. 23(b) ....................15

Fed. R. Civ. P. 23(b)(2) ....................5

Fed. R. Civ. P. 23(b)(3) ....................5

Fed. R. Civ. P. 23(e)....................4

Fed. R. Civ. P. 23(e)(1)(C)....................16

## Table Of Authorities

## (Rules continued)

Fed. R. Civ. P. 30(b)(6) ........................................................................................20

## Other

H. Newberg, *2 Newberg on Class Actions* §11.24 (4th ed. & Supp. 2002) .............21

Manual For Complex Litigation, § 30.42 (4th Ed.) .................................................21

HYDE & SWIGART
San Diego, California

Plaintiffs Patricia Connor ("Connor") and Sheri L. Bywater ("Bywater)", collectively referred to as "Plaintiffs" or "Class Representatives"), submit this memorandum in support of their unopposed Motion for Final Approval of Class Action Settlement. This motion is unopposed by Defendants JPMorgan Chase Bank (hereinafter referred to as "Chase"), and Federal National Mortgage Association ("Fannie Mae") (hereinafter collectively referred to as "Defendants").

## I. INTRODUCTION

This Settlement is an excellent result which merits final approval. The Settlement provides a substantial Settlement Fund and additional amounts – here a potential maximum payment by Chase of $11,973,558 – to provide statutory damages to persons called on their cell phones without prior consent by Chase allegedly in violation of the Telephone Consumer Protection Act ("TCPA"). Of that amount, based on the number of claims submitted and other Settlement Costs, Chase will pay $11,665,592.09. Every approved claim will be paid approximately $69.97. All costs of notice and claim administration will be either paid from the Settlement Fund or for Group 2, will be paid by Chase separate from the Fund. Attorneys' fees will be paid from that Settlement Fund, and Chase agreed to add an additional $125,000 to assist specifically with additional Group 2 attorneys' fees and costs. Every Class Member was informed of and had the opportunity to call a toll free number or to go online to easily file a claim for a *pro rata* portion of the Fund. But without adequate notice, even that simple claims process would be meaningless, so this Settlement also provides that the Class Members would each receive a direct mail postcard summary notice. That way, each Class Member was informed of the Settlement, was directed to the Settlement Website to learn more about the settlement, and could choose whether to participate. This type of notice is a much more expensive notice than other types, such as publishing information about the Settlement, but it guaranteed almost every Class Member – here over

HYDE & SWIGART
San Diego, California

97% of the Class – received notice.[1] The costs of litigating this action, including Plaintiffs' attorneys' fees and the costs of notice and claims administration, are being paid from the Fund, and the remainder divided among the claimants, with the exception of the additional notice costs of $850,500 for Group 2 and $125,000 to be paid by Chase toward the Class Counsel's additional attorneys' fees and costs incurred for Group 2 investigation, litigation and negotiation. (It is unclear whether that $125,000 will be paid through the Fund or outside the Fund but Chase has agreed to pay it in addition to the original Fund amount.) See Plaintiffs' Unopposed Motion for Attorneys' Fees and Costs; Memorandum of Points and Authorities in Support Thereof ("Fee Brief") filed herewith. Thus, the Settlement provides participating Class Members with a monetary payment that which would be difficult to obtain on their own, due to the economics of individually suing for minimal statutory damages. The Settlement also has the effect of putting an end to conduct alleged to be a violation of the TCPA. Therefore, this is an excellent result and should be given final approval by the Court.

## II. FACTS AND PROCEDURAL HISTORY

On June 16, 2010, Plaintiffs filed this class action lawsuit (hereinafter referred to as the "Lawsuit") against Defendants. Plaintiffs asserted class claims against Defendants under the Telephone Consumer Protection Act, 47 U.S.C. § 227. Specifically, Plaintiffs alleged that Defendants violated the TCPA by placing telephone calls to their cellular telephones without "prior express consent," using an "automatic telephone dialing system" and using an "artificial or prerecorded voice." [Dkt No. 1.]

In the following months, the Parties participated in an extensive series of arms'-length negotiations. During this process, the Parties were fortunate to have the support and assistance of Magistrate Judge Bernard G. Skomal, who presided

[1] This includes 95.7% combined for both Group 1 and Group 2. See Declaration of Kenneth Jue in Support of Motion for Final Approval of Class Action Settlement ("Jue Decl."), ¶ 12, filed herewith.

over an Early Neutral Evaluation conference and follow-up conferences. [Dkt Nos. 25, 26, 28, 30, and 32.] Even though settlement was not reached at the ENE conference and negotiations before the court came to an impasse, the Parties all began propounding and conducting discovery, and they still continued negotiations amongst themselves for several months. Eventually the Parties reached an agreement to resolve this action on a class wide basis.

The Parties entered into a Class Action Settlement Agreement and Release (hereinafter referred to as the "Group 1 Agreement"), which was filed on January 17, 2012, along with the Motion for Preliminary Approval of Class Action Settlement Agreement (hereinafter referred to as "Preliminary Approval Motion"). [Dkt No. 50.][2] The Settlement is set forth in the Settlement Agreement or "Agreement", previously filed as Exhibit 1 to the Declaration of Douglas J. Campion, Dkt. No. 50; and Amendment, Dkt. No. 100-5. Agreement § 5.01.

On March 12, 2012, based upon the Agreement, the Preliminary Approval Motion, and the record, the Court entered an Order of Preliminary Approval of Class Action Settlement (hereinafter referred to as the "Preliminary Approval Order for Group 1"). [Dkt No. 55.] Pursuant to the Preliminary Approval Order, the Court, among other things: (i) preliminarily certified (for settlement purposes only) a class of plaintiffs (hereinafter referred to as the "Class Members") with respect to the claims asserted in the Lawsuit; (ii) preliminarily approved the proposed settlement; (iii) appointed Plaintiffs Patricia Connor and Sheri L. Bywater as the Class Representatives; (iv) appointed Hyde & Swigart, Kazerouni Law Group, APC, the Law Offices of Douglas J. Campion, APC, Lieff Cabraser Heimann & Bernstein, LLP, and David P. Meyer & Associates Co., LLP (now "Meyer Wilson") as Class Counsel; and (v) set the date and time of the Final Approval Hearing

[2] All capitalized terms used herein have the meanings defined herein and/or in the Group 1 Agreement.

(hereinafter referred to as the "Fairness Hearing") for August 3, 2012, at 1:30 P.M. [Dkt No. 55.]

After the case was originally preliminarily approved by the Court, and after Group 1 was provided notice, but prior to a Final Approval hearing, the Parties learned that notice was not provided to all persons that should have been included in the Settlement Class. The Parties then withdrew their pending motion for Final Approval until it could be determined whether all Class Members had been properly identified and noticed.

After an investigation by Defendant Chase, it was determined that not all Class Members had been identified and given notice of the Settlement. Consequently, a lengthy investigation and data retrieval process was conducted. This process took over a year before it was determined that a substantial number of persons, the Group 2 Settlement Class, was not identified. Group 2 consisted of an additional 1,653,559 individuals, of which 1,303,112 were entitled to make a claim. Those Class members resided in 1,169,049 households to whom direct mail notice was provided.

Subsequently, the parties engaged in an additional mediation session before the Hon. Edward A. Infante (Ret.), to resolve the issue of additional compensation for the Group 2 Settlement Class. An agreement was reached, which is detailed below.

The Parties then entered into an "Amendment to Settlement Agreement and Release" ("Amendment") [Dkt. No. 100-5] (hereinafter referred to as the "Group 2 Agreement"). On March 20, 2014, Plaintiffs filed a Motion for Preliminary Approval for Group 2 (hereinafter referred to as the "Preliminary Approval Motion for Group 2") which was approved on May 30, 2014, by this Court. [Docket Nos. 100, 113]. Notice was then sent out to Group 2 and claims received.

Pursuant to Fed. R. Civ. P. 23(e), the Parties now seek final certification and approval of the proposed class action settlement. Specifically, the Parties request

HYDE & SWIGART
San Diego, California

the Court enter a Final Order and Judgment similar to the proposed Order submitted with this motion.

## III. THE CLASS SETTLEMENT

### A. CLASS ALLEGATIONS

As noted, on June 16, 2010, Plaintiffs filed this class action under the TCPA against Defendants. [Dkt No. 1.] Specifically, Plaintiffs alleged that Defendants violated the TCPA by making telephone calls to their cellular telephones without "prior express consent," using an "automatic telephone dialing system" and using an "artificial or prerecorded voice." On behalf of themselves and others similarly situated, Plaintiffs asserted two TCPA claims against Defendants under 47 U.S.C. § 227(b)(3)(B) and (C), one for negligently and one for willfully making calls, imposing statutory damages of $500 and $1,500 per call, respectively. Defendants filed an Answer and deny that they violated the TCPA in any manner.

### B. CERTIFICATION OF A FED.R.CIV.P. 23(B)(2) AND (B)(3) SETTLEMENT CLASS

The Preliminary Approval Order defining the class for both settlement groups is as follows:

> "All present or former borrowers or co-borrowers as identified in JPMCB's records whose residential mortgage loan or home equity line of credit is or was serviced by JPMCB or Chase Home Finance LLC and either the borrower, co-borrower or both, were contacted on their cellular telephone(s) by JPMCB through the use of an automated dialer system and/or an artificial or pre-recorded voice during the Class Period. Subclass A of the Settlement Class consists of those persons whose cell phones were actually called by JPMCB or Chase Home Finance LLC during the Class Period, and are thus entitled to a monetary payment. Excluded from the Settlement Class are Defendants, their parent companies, affiliates or subsidiaries, or any employees thereof, and any entities in which any of such companies has a controlling interest, the Judge or Magistrate Judge to whom the Action is assigned and any member of those Judges' staffs and immediate families, as

well as all persons who validly request exclusion from the Settlement Class."

Preliminary Approval Order for Group 1, pp. 2-3, ¶ 2.[Dkt. No. 55]; Preliminary Approval Order for Group 2, pp. 3, ¶ 2. [Dkt. No. 113].

### C. KEY SETTLEMENT TERMS

In an earnest attempt to settle this action and avoid the risks inherent in proceeding to trial, the Parties reached the following class settlement.

#### 1. ORIGINAL GROUP 1 SETTLEMENT

The original Group 1 settlement consisted of the following key settlement terms. Defendants agreed to provide a settlement fund in the minimum amount of $7,000,000, with a maximum amount set at $9,000,000. See Agreement. From that fund, notice and administration costs, estimated at approximately $811,738.39 were to be paid. Swigart Decl. ¶19. Attorneys' fees and litigation costs, not to exceed $3,000,000 (one-third of the $9,000,000 fund) as well as an incentive awards to both named class representatives in an combined amount of $5,000 were also to be paid. Agreement §§ 6.01 and 6.02. Based on historical claims rates, notice was provide to Group 1 that claiming class members of those 1,381,406 class members would receive an anticipated pro rata distribution ranging from $25 to $500. Agreement § 5.02.

After the claims period ended for Group 1, a total of 55,629 valid and timely claims were received, resulting in an anticipated pro rata distribution of $69.97. Swigart Decl. ¶ 9.

#### 2. GROUP 2 SETTLEMENT

As a result of an objection filed by John W. Davis claiming he was a Class member and did not receive notice, Class Counsel withdrew the prior Final Approval papers and vacated the scheduled hearing date. Counsel made an inquiry of Chase about the adequacy of the identification of the Class members. As a result, a lengthy investigation ensued. Consequently, Chase identified an additional 1,653,559 additional class members who did not receive notice in the Group 1

HYDE & SWIGART
San Diego, California

settlement. Of those 1,653,559 additional class members, only 1,303,112 were called on their cellphones and thus were in "Subclass A" and eligible to make claims for monetary recovery. The amendment to the original settlement agreement provided that the maximum recovery for claims would be increased to $11,268,058 and would provide $69.97 added to the settlement fund for each claiming class member of Group 2, up to 60,998 claims. 56,597 Group 2 claims have been received so Chase will have to pay $3,960,092.09 for those claims.

Of the 1,381,406 number of Class Members receiving notice in Group 1, only 1,181,441 were potential claimants in "Subclass A" having received calls on their cellphones. Of that number, 55,629 valid claims were received. Jue Decl. ¶ 14. As a result, Group 1 Class Members are expected to receive approximately $3,892,361.13. Subsequently, notice was provided to Group 2, which included 1,169,049 households with 1,653,559 Class Members. *Id.* at ¶ 7. Of those receiving notice in Group 2, only 1,303,112 were potential claimants in "Subclass A", having been called on their cellphones. Of those, 56,597 made claims resulting in Defendants having to pay Group 2 claimants $3,960,092.09. Thus, the total amount paid for all claims is approximately $7,852,453.22.[3] Once all claims for both Group 1 and Group 2 are calculated, if a further adjustment is necessary as to any final pro rata payment, Class Counsel will so advise the Court. Currently, Class Counsel anticipates that amount at approximately $69.97 per class member.

### 3. Estimated Claiming Class Member Compensation

Consistent with the settlement reached, payment to Group 1 and Group 2 class members will be equal. Based on the 112,226 claims received for both Group 1 and Group 2, the anticipated estimated pro rata distribution is $69.97 per class

[3] That total amount paid for claims represents the number of claims made by Groups 1 and 2 multiplied by the agreed amount of $69.97.



HYDE & SWIGART
San Diego, California

member.[4] Decl. J. Swigart, ¶ 14. That results in a combined payout of $7,852,453.22 to the combined groups.

### D. CONSISTENT WITH THE SETTLEMENT REACHED PAYMENT TO GROUP 1 AND GROUP 2 CLASS MEMBERS WILL BE EQUAL.

Of the 1,381,406 number of Class Members receiving notice in Group 1, only 1,181,441 were potential claimants in "Subclass A" having received calls on their cellphones. Of that number, 55,629 valid claims were received. Jue Decl. ¶ 14. As a result, Group 1 Class Members are expected to receive approximately $3,892,361.13.[5] Subsequently, notice was provided to Group 2, which included 1,169,049 households with 1,653,559 Class Members. *Id*. at ¶7. Of those receiving notice in Group 2, only 1,303,112 were potential claimants in "Subclass A", having been called on their cellphones. Of those, 56,597 made claims resulting in Defendants having to pay Group 2 claimants $3,960,092.09. Thus, the total amount paid for all claims is approximately $7,852,453.22. Once all claims for both Group 1 and Group 2 are calculated, if a further adjustment is necessary as to any final pro rata payment, Class Counsel will so advise the Court. Currently, Class Counsel anticipates that amount at approximately $70.12 per Claimant.

### E. ATTORNEYS' FEES AND COSTS APPLICATION

At the Fairness Hearing, the Court will also consider Class Counsel's request for fees and costs, "Plaintiffs' Unopposed Motion for Attorneys' Fees and Costs and Incentive Payments; Memorandum of Points and Authorities in Support Thereof",

---

[4] Gilardi originally calculated the number of valid claims for Group 1 at 55,872, but since that time 243 duplicate claims were identified, leaving only 55,629 valid claims. However, the computation of $69.97 was based on that earlier number of 55,872 and the Group 2 negotiations were based upon that number. But even with the 243 fewer Group 1 claims, the end result is that the payment amount is modified by no more than 10 to 15 cents. Thus the $69.97 payout is retained for all claimants, barring other factors that may modify that number.

[5] That total amount paid for claims represents the number of claims made by Groups 1 and 2 multiplied by the agreed amount of $69.97.

filed concurrently with this Motion. The Parties request that the Court enter an Order similar to the Final Approval Order submitted with this motion, which also includes a provision for such requested attorneys' fees and costs. As discussed in detail in the Fee Brief, Class Counsel is seeking a percentage of the recovery of approximately 20%, which is lower than the Ninth Circuit 25% benchmark, even when the additional $125,000 paid by Chase for Class Counsel's Group 2 fees and costs incurred are included. That total request is for $2,250,000 from the Settlement Fund and $114,441.26 in fees of the $125,000 added by Chase for Group 2 fees and costs. Class Counsel is also seeking $23,878.58 in litigation costs for Group 1 efforts from the Settlement Fund and $10,558.74 for Group 2 litigation costs from the $125,000 Chase added for Group 2 fees and costs. The combined request for attorneys' fees is $2,364,441.26 and litigation costs is $34,417.32. In addition, the cost of notice and claims administration by Gilardi & Co. LLC is $1,291,738.39, of which $811,738,39 is to be paid from the Settlement Fund for Group 1 efforts and $850,500 is to be paid separately by Chase to Gilardi for Group 2 efforts. *See Fee Brief.*

## IV. NOTICE

### A. FAIRNESS HEARING

In the Preliminary Approval Order for Group 2, the Court set the Fairness Hearing for November 14, 2014, which was continued to December 4, 2014, 1:30 p.m., at the United States District Court for the Southern District of California, located at 940 Front Street, San Diego, California, 92101. [Dkt Nos. 113, 119]. Notice was provided to Group 1 and 2 that a fairness hearing would be held. Group 2 received direct mail notice of the date and time of the hearing. After Group 1 received notice of the first fairness hearing, the continued date was posted on the class settlement website. Swigart Decl., ¶ 18.

//

//

### B. CAFA NOTICES

Chase has an obligation under the Class Action Fairness Act ("CAFA") to notify the Office of the Comptroller of the Currency under 28 U.S.C. § 1715(a)(1)(B) instead of providing written notice of the proposed class settlement on the U.S. attorney general and the attorney generals of each state. Chase's counsel filed such declaration of service for Group 1 prior to the original Final Approval Hearing in2012. See "Compliance with 28 USC § 1715", Dkt. No. 62. Chase will provide the Court with a similar declaration, but the prior declaration explains why no such CAFA notice is required here.

### C. DIRECT MAIL NOTICE PROVIDED

Gilardi complied with the notice procedure set forth in the Preliminary Approval Order for Group 1, p. 4, ¶ 6 and the additional class notice for Group 2 set forth in the Preliminary Approval Order for Group 2, p. 5, ¶ 6. Jue Decl. at ¶ 5. As required by the Preliminary Approval Orders, Gilardi mailed individual postcard notices by direct mail to the Group 1 and Group 2 Settlement Class members that included a summary of the Settlement's terms, instructions for making a claim, and information regarding a website address www.ConnorTCPAsettlement.com (hereinafter referred to as the "Settlement Website") and the Claims Administrator's toll-free telephone number to both receive calls regarding the Settlement and to file claims. Jue Decl., ¶¶ 8 and 10.

After removing duplicate names and addresses, and otherwise cleaning up the Group 1 original Class List of 1,718,866 Class Members, Gilardi mailed the summary notice of the proposed class settlement to the 1,381,406 persons on the final mailing list. Jue Decl., ¶ 6. Gilardi received 4,481,332 Group 2 records from Defendants. Jue Decl., ¶ 7. After removing records that were noticed in Group 1, duplicate names and addresses, and incomplete addresses, they determined there were records for 1,653,559 Class members in 1,169,049 households. *Id.* Gilardi then mailed 1,169,049 postcard notices to those households. *Id.*

HYDE & SWIGART
San Diego, California

After Gilardi received returned mail from the U.S. Postal Service for 367,089 persons,they searched for new addresses for those persons, then Gilardi subsequently re-mailed direct mail notice to 299,232 new address for those persons. *Id*. at ¶ 12. Thus, 2,482,598 of the Group 1 and Group 2 Class Members – over 95.7% - received direct mail notice of the Settlement. Jue Decl. ¶ 12.

### D. THE NOTICE WAS POSTED ON THE SETTLEMENT WEBSITE

Gilardi fully complied with the Preliminary Approval Order in carrying out the notice and claims procedures. Jue Decl. *Generally*. Gilardi posted on the Settlement Website the detailed and full notice in a question and answer format explaining the case, the proposed settlement, and each Class Member's options, in the form attached to the Jue Decl. as Ex. A. That website also contains the Settlement Agreement, the Preliminary Approval Order, the direct mail notice. It also contains the Fee Brief and supporting documents. Campion Decl, ¶ 16.

## V. CLAIMS PROCEDURE AND CLAIMS FILED

The Class Members for Group 1 and Group 2 were provided no less than 90 days to make a claim for a settlement check, submit a request for exclusion, or file an objection. [Long Form Notice Filed, Dkt. 50-1, pp. 41-43; Dkt. 100-7]. The procedure was made as easy as possible – no claim form was necessary unless someone wanted to use regular U.S. Mail to submit a claim form downloaded from the Settlement Website. Campion Decl., ¶ 16. All that was required to file a claim was a call to a toll–free number or file an on-line submission to determine if the claimant's cell phone number was called and if so, a claim was then filed. *Id.*

For Group 1, the deadline to submit a claim was July 10, 2012, and August 28, 2014, for Group 2. Jue Decl., ¶¶ 15, 17. In total, 55,629 valid claims were filed for Group 1 (including 9 late claims which both sides agree can be paid, as they included circumstances such as a firefighter tied up on fire-fighting duty prior to the deadline). In addition, 56,597 valid claims have been received for Group 2. Jue Decl. ¶ 14. A number of the claims were not permitted for a number of reasons,

HYDE & SWIGART
San Diego, California

including they were duplicate claims, the cellphone number on the claim was not on the called list, etc. Jue Decl. at ¶14. In addition, there are 59 unresolved claims, timely filed but to whom deficiency letters were sent asking for additional curing information. Jue. Decl. at ¶ 14. Based upon the present number of claims in the amount of 55,629 for Group 1, and 56,597 for Group 2, each claimant will receive approximately $69.97, if the Court awards the Settlement Costs as requested. Gilardi will be distributing the settlement checks with payment made on a *pro rata* basis to both Groups 1 and 2 after final approval, and only modified from the $69.97 figure if required after the final numbers relating to Settlement Costs awarded and valid claims are known.

### A. EXCLUSIONS

Gilardi was also engaged to receive and process all claims and requests for exclusion ("opt outs"). The Preliminary Approval Orders required the Class Members to send their written requests for exclusion to Gilardi 90 days from the entry of the Preliminary Approval Order, by June 10, 2012 for Group 1 and August 28, 2014 for Group 2. A small percentage of requests for exclusion were received. For Group 1, 146 timely, and 15 late opt outs, but no more than 209, out of 1,381,406 Class Members were received. Jue Decl. ¶ 15. For Group 2, only 56 timely requests for exclusion were received. *Id* at ¶ 17. There were also an additional 64 opt-out requests in several blanket requests for exclusion submitted by five different Bankruptcy Trustees.[6] The timely opt-outs total 209 for Group 1 and 56 for Group 2. Jue Decl., ¶¶ 15-17.

---

[6] Two of those trustees, V. John Brook and Angela W. Esposito, filed with the Court documents entitled "Notice of Opt-Out from Class Settlement", Docket Nos. 58 and 59, respectively. In addition, those two and three additional trustees sent a package of exclusion requests to the Claims Administrator naming the 52 persons / bankruptcy estates requested to be excluded, who will be submitting them to the Court. *See* Jue Decl. ¶ 16; Ex. E.

**B. OBJECTIONS**

The deadline for filing an objection to the Settlement for Group 1 was July 20, 2012, ten days after the end of the claims period. [Preliminary Approval Order, p. 6, ¶ 11.a. – b, Dkt. No. 55]. The deadline for filing any objection for the settlement of Group 2 is October 15, 2014, 30 days before the originally scheduled hearing date of November 14, 2014. [Group 2] Preliminary Approval Order, at § 9, Dkt No. 113.

The Preliminary Approval Orders require any objections to be filed with the Court and also served on counsel by that date.[7] A small number of objections, 6, have been filed with the Court for Group 1 and only 2 to date for Group 2. Jue Decl., ¶ 18. Class Counsel will address each of these objections in further briefing once the objection period has completely run after October 15, 2014. With the exception of the objection filed by John W. Davis, none of those "objections" set forth any reasons for objecting to the settlement, but seem to be directed at problems the objectors had with Chase's foreclosure practices. Thus, there are no valid objections to the Settlement, other than perhaps the objection filed by John W. Davis.

With regard to the objection filed by John W. Davis which resulted in the discovery of an additional 1,653,559 potential class members, that objection has been resolved. It is anticipated that Davis will file with the court a notice of withdrawing his objection, as the missing class members have been identified, sent notice and will be compensated.

//

//

//

[7] "Any Class Member who fails to comply with these provision shall waive and forfeit any and all rights the Class Member may have to appear separately and/or to object, and shall be bound by all the terms of this Stipulation of Settlement and the Settlement, and by all the proceedings, orders, and judgments in the Litigation." [Dkt. Nos. 55 and 113].

HYDE & SWIGART
San Diego, California

### C. SETTLEMENT CHECKS

The Settlement Fund in the Agreement and the Amendment is to consist of a minimum of $7,000,000 and a maximum of $11,268,058, with an additional $850,500 notice costs and $125,000 fees and costs to be paid outside the Fund.

If the requested Settlement Costs are awarded, including $2,250,000 in attorneys' fees from the fund, costs in the amount of $835,616.97, including the $811,738.39 incurred for costs of notice and claims administration, and the requested incentive payments of $5,000, totaling $3,090,616.97, the amount remaining for paying claims will be approximately $$7,852,453.22.[8] Therefore, based upon 112,226 claims for Groups 1 and 2, each claimant will receive a settlement check in the amount of approximately $69.97. Campion Decl., ¶ 19.

### D. CLASS REPRESENTATIVE PAYMENT

Pursuant to the Group 1 Agreement, § 6.01, and subject to Court approval, Defendants agree each Plaintiff may be paid from the Fund an incentive award of $2,500, totaling $5,000, in recognition of their service as the Class Representatives. Class Counsel has concurrently submitted briefing on that issue in Plaintiffs' Fee Brief.

### E. CLASS COUNSEL'S ATTORNEYS' FEES, COSTS, AND EXPENSES

#### 1. ATTORNEYS' FEES AND LITIGATION COSTS

Notwithstanding the Agreement provision that permits Class Counsel to file an application for attorneys' fees, costs, and expenses in an amount not to exceed one-third (1/3) of the common fund (¶19.01), Class Counsel is seeking less than that amount, only approximately 20% of the maximum $11,973,558of the common fund in attorneys' fees, made up of $2,250,000.00 from the settlement fund and an

[8] The additional amount of attorneys' fees and litigation costs in the amount of $125,000 and $850,500 in additional notice costs are not included in the calculation above, as they are being paid by Chase in addition to the original Settlement Fund.

additional $125,000 towards Group 2 fees and costs (of which $114,441 is fees, and the remainder costs) paid directly by Chase.

### 2. Administration and Notice Costs

Class Counsel seek $811,738.39 as administration and notice costs to be paid from the settlement fund, as well as counsel's Group 1 litigation costs of $23,878.58. Campion Decl. ¶ 11.c.; Ex. 1 (invoice). *See* Fee Brief. They also seek approval of the additional $850,500 costs for Gilardi's Group 2 notice and claims administration, to be paid outside the fund. *Id*. The Parties and their counsel further represent and agree that allowance or disallowance by the Court of the agreed-upon amount of attorneys' fees, costs, and expenses may be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the settlement, and any order or proceedings relating to the fees, costs, and/or expenses owed Class Counsel, or any appeal from any order relating thereto, or reversal, or modification thereof, shall not operate to terminate or cancel the Agreement, or affect or delay the finality of the proposed Final Approval Order approving the Agreement and the settlement of the Lawsuit.

As set forth above, with the two $2,500 incentive payments added to the amount to be deducted from the Settlement Fund in order to determine the remainder for claims, the total is $3,090,616.97, leaving approximately $7.869,475.10 for payment of claims.) Campion Decl. ¶ 9.

## VI. Argument Supporting Final Approval

The Rule 23(a) and (b) factors were previously analyzed and applied by the Parties in their Motion for Preliminary Approval for both Group 1 and Group 2. See Docket No. 50 and 100. As the Court ruled in its Preliminary Approval Order, this case satisfies the Rule 23 requirements. See Docket No. 55 and 113.

//

//

Hyde & Swigart
San Diego, California

### A. THE PROPOSED SETTLEMENT IS FUNDAMENTALLY FAIR, REASONABLE, AND ADEQUATE

"Unlike the settlement of most private civil actions, class actions may be settled only with the approval of the district court." *Officers for Justice v. Civil Service Com'n of City and County of San Francisco,* 688 F.2d 615, 623 (9th Cir. 1982). "The court may approve a settlement . . . that would bind class members only after a hearing and on finding that the settlement . . . is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(C). The Court has broad discretion to grant such approval and should do so where the proposed settlement is "fair, adequate, reasonable, and not a product of collusion." *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1026 (9th Cir. 1998). "To determine whether a settlement agreement meets these standards, a district court must consider a number of factors, including: 'the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.'" *Staton v. Boeing Co*., 327 F.3d 938, 959 (9th Cir. 2003). "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice*, 688 F.2d at 625. To determine whether the proposed settlement is fair, reasonable and adequate, the Court must balance against the continuing risks of litigation and the immediacy and certainty of a substantial recovery. *See Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *In re Warner Communications Sec. Litig.,* 618 F. Supp. 735, 741 (S.D. N.Y. 1985).

The Ninth Circuit has long supported settlements reached by capable opponents in arms' length negotiations. In *Rodriguez v. West Publishing Corp*., 563

HYDE & SWIGART
San Diego, California

F.3d 948 (9th Cir. 2009), the Ninth Circuit expressed the opinion that courts should defer to the "private consensual decision of the [settling] parties." *Id*. at 965, citing *Hanlon, supra,* 150 F.3d at 1027 (9th Cir. 1998).

The district court must exercise "sound discretion" in approving a settlement. *See Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1375 (9th Cir. 1993); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd* 661 F.2d 939 (9th Cir. 1981). However, "where, as here, a proposed class settlement has been reached after meaningful discovery, after arm's length negotiation conducted by capable counsel, it is presumptively fair." *M. Berenson Co. v. Faneuil Hall Marketplace, Inc*., 671 F. Supp. 819, 822 (D. Mass. 1987).

Application of the relevant factors here confirms that the proposed settlement should be finally approved.



### B. THE STRENGTH OF THE LAWSUIT AND THE RISK, EXPENSE, COMPLEXITY, AND LIKELY DURATION OF FURTHER LITIGATION

Defendants have raised numerous defenses to the class claims. Many of these defenses are set forth at length in Defendant's Answer, which was filed with the Court. See Docket No. 23. Defendants aver that its defenses have merit and would defeat the claims of the putative class. However, settlement eliminates any further risk and expense for the Parties. Considering the potential risks and expenses associated with continued prosecution of the Lawsuit, the probability of appeals, the certainty of delay, and the ultimate uncertainty of recovery through continued litigation, the proposed settlement is fair, reasonable, and adequate. As the Ninth Circuit has made clear, the very essence of a settlement agreement is compromise, "a yielding of absolutes and an abandoning of highest hopes." *Officers for Justice*, 688 F.2d at 624. "Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation . . . ." *Id.*

While Class Counsel believe strongly in the merits of their claims brought on behalf of the class, they also recognize that any case encompasses risks and that settlements of contested cases are preferred in this circuit. Moreover, even if Plaintiffs were to prevail at trial, risks to the class remain. *See West Virginia v. Chas. Pfizer & Co*., 314 F. Supp. 710, 743-44 (S.D. N.Y. 1970) ("[i]t is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced"), *aff'd*, 440 F.2d 1079 (2d Cir. 1971); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) (reversing $87 million judgment after trial).

### C. The Amount Offered In Settlement

The combined Agreement and Addendum requires Defendants to establish a settlement fund ranging from a minimum of $7,000,000 to a maximum of $11,973,558 from which Class Members have the right to make a claim to receive a settlement check. If the requested amounts are awarded for attorneys' fees, costs, and notice and claims costs, and a incentive payments are awarded, that leaves approximately $69.97 as a pro rata distribution for the 112,226 claimants. Swigart Decl. ¶¶ 9, 14. That $69.97 is a settlement amount in an amount equal to or greater than obtained in many other TCPA settlements, and warrants final approval.[9]

Here there were a total of no more than a combined 2,484,553 persons in Group 1 and Group 2 Subclass A that were actually called on their cell phones and entitled to file claims. Campion Decl., ¶ 11a. Here the fact that there were only a little less than 5% -- .04729 % in Group 1 an d 4.34% in Group 2 -- of the eligible claimants filing claims should not deter the Court from approving the settlement.

[9] *Bellows v. NCO Financial Systems, Inc.*, 07-CV-01413 W(AJB)(S.D. Cal.)($70 per claimant awarded); *Lemieux v. Global Credit & Collection Corp*., 08-CV-1012 IEG(POR)(S.D. Cal.)($70 per claimant awarded); *Adams v. AllianceOne Receivables Management, Inc.*, 08-CV-0248 JAH(WVG)(S.D. Cal)(Class members to receive a maximum of $40 per claim. Action preliminarily approved, pending final approval); *Malta v. Wells Fargo*, Case No. 10-CV-1290-BEN (NLS) (Class members received $84 each).

HYDE & SWIGART
San Diego, California

This is a consumer case and consequently subject to lower claims rates than other types of cases. Class Counsel used direct mail notice to ensure every potential Class Member was notified (over 95.7% received that notice). Jue Decl. ¶ 12. Furthermore, there could not be an easier claims process for any claimant to file a claim by allowing the filing through a toll-free telephone call or submitting a claim online. On the claim form no declaration under penalty of perjury was required, only a confirmation of the class member's name and address on the notice. Campion Decl., ¶ 16. Thus, the fact that the number of claims actually filed was less than hoped for does not affect the underlying fairness of the settlement. As the court held in *Beecher v. Able*, 441 F. Supp. 426, 429 (S.D. N.Y. 1977), where a much smaller number of claims was made in a class action than expected, "[i]n such circumstances, the settlement agreement should not lightly be set aside merely because subsequent developments have indicated that the bargain is more beneficial to one side than to the other." In that case, the defendant urged the court to set aside the non-reversionary settlement agreement because the total settlement amounts would be paid not back to defendant but to a much smaller group of claimants than the parties expected. The court refused to set aside the agreement, especially since the parties had built contingencies into the agreement in the event of high or low number of claims, as was done in the present case, and thus any mistakes were only a matter of degree, not to the heart of the matter. *Id.* at 430.

Here, Chase is obligated to pay at least $11,665,592.09 for settlement, including claims, notice costs, attorneys' fees and incentive payments. In the context of the facts surrounding this Lawsuit, such an amount represents a significant sum of money. This payment is likely to discourage any future behavior that could potentially violate the TCPA; in fact, it will encourage compliance with the law.

Ultimately, the common fund established by the combined Agreements here will serve both intended purposes of compensating the Class Members for their

injuries and deterring future wrongful conduct. Thus, the amount offered in settlement should be approved by the Court as fair and reasonable.

### D. The Extent of Discovery Completed

Since this case settled not long after the Early Neutral Evaluation Conference, Class Counsel conducted both formal and informal discovery as well as confirmatory discovery, as it related to Group 1. The important information needed in these cases is how many cell phones were called during the Class Period and to whom were the calls made. This information was obtained through informal and confirmatory discovery and the numbers confirmed by and through Class Counsel's information technology consultant. *See* the prior Campion Declaration, ¶ 7, Dkt. No. 50 and Hansen Declaration, ¶¶ 4-5, Dkt. No. 50, both filed with the original Preliminary Approval Motion. Thus, the litigation had reached the stage where "the parties certainly have a clear view of the strengths and weaknesses of their cases." *Warner Communications*, 618 F. Supp. at 745. Further, considering that the disputed issues between the Parties are legal, and not factual, in nature, the Parties have exchanged sufficient information to make an informed decision about settlement. *See Linney v. Cellular Alaska Partnership,* 151 F.3d 1234, 1239 (9th Cir. 1998).

After an objection was filed by Objector Davis, Defendant spent considerable time analyzing the data to identify potentially missing class members. Once this data was discovered, Class Counsel engaged in additional discovery to verify the accuracy of these results. Discovery included both interrogatories, request for production of documents, as well as a deposition of Defendant Chase's representative designated under F.R.C.P. 30(b)(6) who testified under oath as to the methodology of the data compiled and the accuracy of those results. The objector has since agreed to withdraw his objection prior to this hearing.

//

//

### E. THE EXPERIENCE AND VIEWS OF CLASS COUNSEL

Moreover, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.,* 485 F. Supp. 610, 622 (N.D. Cal. 1979). The presumption of reasonableness in this action is fully warranted because the settlement is the product of arm's length negotiations conducted by capable, experienced counsel. *See M. Berenson Co*., 671 F.Supp. at 822; *Ellis*, 87 F.R.D. at 18 ("the fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight"); 2 *Newberg on Class Actions* § 11.24 (4th Ed. & Supp. 2002); *Manual for Complex Litigation*, Fourth § 30.42.

Here, it is the considered judgment of experienced counsel that this settlement is a fair, reasonable and adequate settlement of the litigation. As set forth in the declarations attached to both Motions for Preliminary Approval and in support of their Fees Brief, Class Counsel are experienced consumer class action lawyers. [See Dkt Nos. 50, 60, and 121.] This settlement was negotiated at arms'-length by experienced and capable Class Counsel who now recommend its approval. Given their experience and expertise, Class Counsel are well-qualified to not only assess the prospects of a case, but also to negotiate a favorable resolution for the class. Class Counsel have achieved such a result here, and unequivocally assert that the proposed settlement should receive final approval. Campion Decl., ¶ 22; Swigart Decl. ¶¶ 10-14; and Kazerounian Decl. in Support of Motion for Final Approval of Class Action Settlement, ¶ 6;

### F. THE REACTION OF THE CLASS MEMBERS TO THE PROPOSED SETTLEMENT

The fact that only six (6) objections have been filed for Group 1 and 2for Group 2, (at least to the date of filing this brief), by Class Members is an important factor in evaluating the fairness, reasonableness and adequacy of the settlement and supports approval of the settlement. *See Detroit v. Grinnell Corp*., 495 F.2d 448, 463 (2d Cir. 1974); *Warner Communications*, 618 F. Supp. at 746. In fact, the lack

HYDE & SWIGART
San Diego, California

of objections may well evidence the fairness of the settlement. *See In re PaineWebber Ltd. Litig.*, 171 F.R.D. 104, 126 (S.D. N.Y.), aff'd, 117 F.3d 721 (2d Cir. 1997). Here, there has been minimal resistance to the proposed settlement, and 112,226 Class Members have filed claims. It is also worth noting that only at most 256 Class Members timely and not timely requested exclusion from the class, out of the combined Group 1 and Group 2 noticed settlement class, a minuscule amount. Jue Decl., ¶¶ 15-17. Both Class Representatives support this motion. *See* Declaration of Patricia Connor in Support of Final Approval of Class Action Settlement, ¶ 2, filed herewith, and the Declaration of Sheri L. Bywater in Support of the Final Approval of Class Action Settlement, ¶ 2, filed herewith.

## VII. CONCLUSION

The Parties have reached this Settlement following extensive arms' length negotiations. The Settlement is fair and reasonable. For the foregoing reasons, Plaintiffs respectfully request that the Court:

1. Grant final approval of the proposed settlement;
2. Order payment from the settlement proceeds to the Claims Administrator in compliance with the Court's Preliminary Approval Orders and the Agreement;
3. Grant the motion for fees and costs scheduled to be heard the same date as this motion;
4. Enter the proposed Final Approval Order submitted herewith; and

//

//

//

//

//

//

//

5. Retain continuing jurisdiction over the implementation, interpretation, administration and consummation of the Settlement.

Respectfully submitted,

Dated: September 30, 2014

**LAW OFFICES OF DOUGLAS J. CAMPION**

/s/ Douglas J. Campion____
Douglas J. Campion, Esq.

**HYDE & SWIGART**

/s/ Joshua B. Swigart______
Joshua B. Swigart, Esq.

**KAZEROUNI LAW GROUP, PC**

/s/ Abbas Kazerounian_________
Abbas Kazerounian