1  Douglas J. Campion (SBN: 75381)
   **Law Offices of Douglas J. Campion**
2  409 Camino Del Rio South, Suite 303
3  San Diego, CA 92108
   Telephone:   (619) 299-2901
4  Facsimile:   (619) 858-0034

5
   Joshua B. Swigart, Esq. (SBN: 225557)
6  josh@westcoastlitigation.com
   Robert L. Hyde, Esq. (SBN: 227183)
7  bob@westcoastlitigation.com
8  **Hyde & Swigart**
9  2221 Camino Del Rio South, Suite 101
   San Diego, CA 92108
10 Telephone:   (619) 233-7770
   Facsimile:   (619) 297-1022
11

12 Attorneys for Plaintiff,
13 Patricia Connor

14          **UNITED STATES DISTRICT COURT**
15          **SOUTHERN DISTRICT OF CALIFORNIA**

16

17

18 | **PATRICIA CONNOR,** | **Case No.:** 10-cv-1284 DMS (BGS) |
   | **Individually and on Behalf of All** | **Class Action** |
19 | **Others Similarly Situated** | |
20 | | **DECLARATION OF DOUGLAS J.** |
   | **Plaintiffs,** | **CAMPION IN SUPPORT OF** |
21 | | **MOTION FOR FINAL** |
   | | **APPROVAL OF CLASS ACTION** |
22 | **v.** | **SETTLEMENT** |
23 | | |
   | | Date:   **December 4, 2014** |
24 | **JPMorgan Chase Bank and** | Time:   **1:30 p.m.** |
   | **Federal National Mortgage** | Ctrm:   **2D** |
25 | **Association a/k/a Fannie Mae,** | |
26 | | **HON. GONZALO P. CURIEL** |
27 | **Defendants.** | |

28

_Declaration of Douglas J. Campion in Support of_     Case No. 10-cv-1284 DMS (BGS)
_Motion for Final Approval_     **- 1 of 12 -**

**HYDE & SWIGART**
San Diego, California

1.   I, Douglas J. Campion, hereby declare I am one of the attorneys for the Plaintiffs in this action, and named as Class Counsel for the Settlement Class in the Court's March 12, 2012 Order preliminarily approving the settlement. I submit this declaration in support of the Plaintiffs' Motion for Final Approval of the Class Action Settlement.  I am licensed to practice law before this court and all California state courts and all federal courts located in the State of California. If called as a witness, I would competently testify to the matters herein from personal knowledge.

2.   I am the owner of the Law Offices of Douglas J. Campion, APC and one of the counsel of record for Plaintiffs in this matter.  I am admitted to this Court and have been a member in good standing of the State Bar of California for the past 37 years, since 1977.

### SUMMARY OF CASE HISTORY AND SETTLEMENT

3.    I have been involved in every aspect of this case from inception through the present, both in the Group 1 and Group 2 phases.  I submit this declaration in support of the Plaintiffs' Motion for Final Approval of Class Action Settlement in which Plaintiffs seek to have the Court approve the agreed-upon settlement. The Settlement here obtained for the Class involves a potential maximum payment by Chase of $11,973,558  to provide statutory damages to persons called on their cell phones without prior consent.   Based on the number of claims filed, we know that Chase will likely pay close to that amount,  $11,665,592.09.     Even after all costs of notice and claims administration, attorneys' fees and litigation costs are paid, and incentive payments ot the named Class representatives (collectively the "Settlement Costs"), the Settlement Fund will pay all 112,226 claimants approximately $69.97. The original Agreement required a minimum payment of $7,000,000 but that minimum has far been surpassed in the Group 2 claims process.

4. Class Counsel are seeking in the motion for fees and costs filed concurrently titled "Plaintiffs' Unopposed Motion for Attorneys' Fees and Costs and Incentive Payments; Memorandum of Points and Authorities in Support Thereof" ("Fee Brief") an award of attorneys' fees of only approximately 20% of the $11,665,592.09 common fund, and is not seeking the 1/3 of the common fund permitted by the Settlement Agreement and set forth in the Notice to the Class. Thus, Class Counsel are seeking $2,250,000 as fees from the Settlement Fund, and also asking for approval of $114,441.26 in fees from the $125,000 payment Chase agreed to add separately to the Settlement. That $125,000 is being paid specifically to pay a portion of the attorneys' fees and costs incurred by Class Counsel in litigating the Group 2 issues. The related Group 2 costs equal the remainder of the $125,000, which is $10,558.74. Class Counsel also seek Court approval of the cost of notice and claims administration by Gilardi & Co. LLC is $1,391,738.39, of which $811,738,39 is to be paid from the Settlement Fund for Group 1 efforts and $850,500 is to be paid separately by Chase to Gilardi for Group 2 efforts. Class Counsel also seek approval of payment from the Settlement Fund their Group 1 litigation costs of $23,878.58, primarily for their information technology expert Hansen & Levey Forensics, Inc. A total of $5,000 in incentive payments is also sought for the Class Representatives.

5. This matter was brought to the attention of Class Counsel by Patricia Connor, and a Complaint was filed in this Court on June 16, 2010 and an Amended Complaint was filed in this Court on September 10, 2010. Thereafter, Class Counsel initiated a thorough investigation, and conducted relevant factual and legal research. The information learned through this investigation was invaluable during settlement negotiations. Sheri L. Bywater filed a separate case at about the time this case was settled, and it was consolidated with this case for settlement, and her counsel were also made Class Counsel.

**HYDE & SWIGART**
San Diego, California

6.   After filing this action, Class Counsel and JPMorgan Chase Bank ("JPMCB" or "Defendant") engaged in extensive negotiations including an exchange of letters, emails, and telephone conversations that thoroughly analyzed the relevant legal, social, and factual issues at issue, and explored the parties' respective positions on the merits of the action and viability of class certification.

7.   Subsequently, both parties exchanged correspondence, including the exchange of relevant information and documents, lists of phone numbers that received the calls to their cell phones, off-site data used during the class period, and argued their respective positions.   Discovery was drafted and the case was settled just as depositions by both sides were scheduled to commence around the country.

8.   This Group 1 phase of the case was settled fairly in the litigation process, a few months after an Early Neutral Evaluation Conference conducted by U.S. Magistrate Judge Skomal.   It was learned that the number of number of cell phone numbers called was  large, creating a class of what was thought at that time to be 1,718,866 persons. It turned out that after cleaning the Class Member list of duplicates and other matters related to account borrowers and co-borrowers, only 1,381,406 separate persons were in the larger Class that received the direct mail notice. However, of those class members, only those whose cell phone numbers were actually called will receive monetary compensation, a total of 1,181,441 persons. A Memorandum of Understanding was entered and a Settlement Agreement was then negotiated. At all times, these activities were non-collusive, and conducted at arm's length.

9.   Class Counsel and Defendant propounded discovery, prepared responses, and Class Counsel prepared and reviewed confirmatory discovery responses which satisfactorily confirmed the parameters of the Class, the damages

HYDE & SWIGART
San Diego, California

HYDE & SWIGART
San Diego, California

agreed upon, and other information informally exchanged prior to, during and following the mediation process. Class Counsel was able to reaffirm the adequacy, appropriateness, and reasonableness of the settlement.  In addition, Class Counsel hired an information technology consultant, Hansen & Levey Forensics, Inc. to assist in the evaluation of the data production and discovery requests and responses. Mr. Hansen reviewed the data, participated in telephone communications with opposing counsel and their information technology persons, and confirmed the accuracy of the processes used and the numbers provided by Chase. *See* the previously filed Declaration of Jeff Hansen in Support of Preliminary Approval,  ¶¶ 4-5, Dkt No. 50-5.   The Parties filed their Motion for Preliminary Approval of Class Action Settlement on January 17, 2012, and the Court granted preliminary approval in an order dated March 12, 2012.

10.   The Group 2 Settlement was not so easy.  After notice was sent to the Group 1 Class members, an objector, John W. Davis, filed an objection prior to the previously scheduled August, 2012 Final Approval hearing claiming he was in the Class and was not provided notice. The then pending Final Approval hearing was taken off calendar so the matter could be investigated.  It turned out that Mr. Davis was right, that a substantial number of Class members had not been identified in the original Class list.  An investigation took over a year to complete and it was finally determined that the Class also included an additional 1,653,559 persons, of which there were 1,303,112 Subclass A members whose cellphones had been called and were eligible to file a claim. Confirmatory discovery was taken and Class Counsel is satisfied that Chase believes they have now located all Class members.   Once that number was obtained, the parties entered into further settlement negotiations and participated in a mediation session with the Hon. Edward Infante, (Ret.) of JAMS.  During that session the parties were able to reach a settlement as set

forth in the Amendment to the Settlement Agreement and Release, Dkt. No. 100-5.  It was very important that both the Group 1 and the Group 2 Class members be treated equally.  As a result, we determined that based upon the prior claims process, each Group 1 claimant would receive approximately $69.97.  Therefore, our goal was to obtain a similar result for the Group 2 claimants.   That was accomplished with the Group 2 Settlement, and the number of claims submitted will allow that result, with all claimants – both Group 1 and Group 2 – to receive the same payment of approximately $69.97.  That number could possibly change somewhat depending on certain factors, such as the amount Settlement Costs awarded, whether a large number of the recently filed claims are for some reason deemed invalid, etc. But in all likelihood, all claimants will receive approximately $69.97.

11.   The current pending Settlement consists of the following:

A. Defendants agree to pay a minimum of $7,000,000 (already surpassed by the number of claims filed) and a maximum of $11,973,558 to pay claims and Settlement Costs, including some costs outside the fund, such as Group 2 notice and claims administration costs and additional attorneys' fees and costs to help compensate Class Counsel for the Group 2 litigation. There are 3,034,965 Class members, of which there are 2,484,553 eligible Subclass A members able to file a claim for payment because their cellphones were called by Chase.  Any of those 2,484,553 Class members that make a timely claim within the time period provided in the notice to Class Members shall each receive a payment in the approximate amount of $69.97, determined from the number of claimants filing claims in Group 1.   That same amount was used as the basis for negotiating the Group 2 settlement, in order to ensure all the Class members would be treated equally.  There have been 112,226 claims filed.

HYDE & SWIGART
San Diego, California

B. The Settlement Costs sought to be paid from both within and outside the Settlement Fund are as follows: 1) reasonable attorney's fees ($2,250,000 from the Fund and $114,441.26 for fees out of the $125,000 paid for Group 2 fees and costs); 2) Group 1 litigation costs ($23,878.58) as approved and awarded by the Court; 2) the costs of notice and claims administration of $1,391,738.39, of which $811,738.39 was for Group 1 and to be paid from the Fund, and the $850,500 for Group 2 is to be paid outside the Fund directly by Chase;  3) the proposed Incentive Award of $5,000.00 to be divided  evenly between the two Plaintiffs for their efforts in litigating this case. After deducting those Settlement Costs totaling $3,444,535.94, the remaining fund based upon the $7,000,000 payment is $3,555,464.06.   Assuming valid claims of 112,226, each claimant will receive a pro rata payment of $62.83.   b.  Plaintiffs Patricia Connor and Sheri L. Bywater have  applied to the Court by separate motion for an incentive award of  $5,000.00, to be divided  evenly, for their service as Class Representatives in this action.  Any incentive awards approved by the Court will be paid from within the Settlement Fund.

C. The costs of notice by mail and claims administration will be deducted from the Settlement Fund. Those costs have recently been calculated to be $1,391,738.39 for all Gilardi's costs necessary to see the case through the end of claims administration.  See Declaration of Kenneth Jue in Support of Motion for Final Approval of Class Action Settlement ("Jue Decl.") filed concurrently with this motion. Gilardi's costs and fees were originally estimated to be $811,738.39 but that was for only the Group 1 notice and claims administration costs. *Id.*  Chase agreed to pay the Group 2 Gilardi fees and cost outside the fund, in an amount of $850,500. See Amendment.

**H**YDE **&** **S**WIGART
San Diego, California

D. Class Counsel has previously filed a motion to be heard at the same time as the Final Approval hearing for an award of reasonable attorney's fees and costs, in an amount of approximately 20% of the maximum Settlement Fund of $11,973,558 as attorneys' fees, $2,250,000, and for $23,878.58 in Group 1 litigation costs, other than the Gilardi costs, and for Group 2 costs of $10,558.74, to be paid from the separate $125,000 to be paid by Chase in addition to the original Settlement. See Amendment.

12. Taking into account the burdens, uncertainty and risks inherent in this litigation, the Parties have concluded that further prosecution and defense of this action could be protracted, unduly burdensome, and expensive, and that it is desirable, fair, and beneficial to the class that the action now be fully and finally compromised, settled and terminated in the manner and upon the terms and conditions set forth in the Settlement Agreement.

13. The Named Plaintiffs and all of their counsel believe that the claims asserted in the Action have merit. However, taking into account the risks of continued litigation, as well as the delays and uncertainties inherent in such litigation and any subsequent appeal, we believe that it is desirable that the Action be fully and finally compromised, settled and terminated now with prejudice, and forever barred pursuant to the terms and conditions set forth in this Settlement Agreement. We have concluded that the terms and conditions of this Settlement Agreement are fair, reasonable and adequate to the proposed class, and that it is in the best interests of the proposed class to settle the Action. I strongly believe, as does each Plaintiff's attorney, that the Settlement should be given final approval.

14. Therefore, Class Counsel is requesting that the Court grant Final Approval of the Settlement.

//

//

HYDE & SWIGART
San Diego, California

## THE CLASS DEFINITION:

13. The Class definition as approved in the Preliminary Approval order is as follows:

> "All present or former borrowers or co-borrowers as identified in JPMCB's records whose residential mortgage loan or home equity line of credit is or was serviced by JPMCB or Chase Home Finance LLC and either the borrower, co-borrower or both, were contacted on their cellular telephone(s) by JPMCB through the use of an automated dialer system and/or an artificial or pre-recorded voice during the Class Period. Subclass A of the Settlement Class consists of those persons whose cell phones were actually called by JPMCB or Chase Home Finance LLC during the Class Period, and are thus entitled to a monetary payment. Excluded from the Settlement Class are Defendants, their parent companies, affiliates or subsidiaries, or any employees thereof, and any entities in which any of such companies has a controlling interest, the Judge or Magistrate Judge to whom the Action is assigned and any member of those Judges' staffs and immediate families, as well as all persons who validly request exclusion from the Settlement Class."

## NOTICE GIVEN:

14. Gilardi & Co. LLC complied with the Preliminary Approval Order in providing notice and handling the claims administration. For the details involved in giving the notice, and administering the claims procedure, and the claims received, see the Jue Decl. filed herewith. As stated therein, and in compliance with the Preliminary Approval Order, the Claims Administrator mailed the summary notice of the proposed class settlement to both Group 1 and Group 2. The Claims Administrator received returned mail from the U.S. Postal Service and did searches for current addresses, resulting in about 97% of the Class receiving the direct mail notice. *Id.* The summary notice instructed all persons how to submit a claim with the Claims Administrator by either calling the toll-free number, going online to make a claim, or

HYDE & SWIGART
San Diego, California

submitting a written claim by traditional mail.   The summary notice also directed Class Members to the Settlement Website (the website also contains the Settlement Agreement, the Preliminary Approval Order, the direct mail notice.   It also contains the Fee Brief and supporting documents) to obtain complete information regarding the case and class settlement. On the claim form no declaration under penalty of perjury was required, only a confirmation of the class member's name and address on the notice.

15.   In compliance with the Preliminary Approval Order, the Claims Administrator also posted on the Settlement Website a detailed and full notice explaining the case, proposed settlement, and each Class Member's options.

### CLAIMS PROCEDURE:

16.   The Claims Administrator put in place a simple, easily followed claims procedure agreed upon in the Settlement Agreement that permitted the Class Member to first, determine if they were a member of Subclass A (called by Chase on their cell phone) and if so, then to file a claim.   They could do so by telephone or online, without the necessity of mailing a claim form. The intent was to make submitting a claim as easy as possible to encourage the filing of claims. If the claimant so desired, they also had the option of  filing a claim form by mail. Class Counsel worked in close consultation with the Settlement Administrator throughout this process, which included preparing and mailing Notice to Class Members, creating the settlement website, and reviewing any submitted claims.

### CLAIMS FILED AND PAYMENT TO BE MADE:

17.    Despite the simple procedures put in place, only 112,226 persons have filed claims to date. Jue Decl. That results in an approximate payment to each claimant of $69.97, assuming the Court awards the Settlement Costs as requested.   In addition, the Claims Administrator has rejected certain claims as deficient or invalid, as detailed in the Jue Decl.

HYDE & SWIGART
San Diego, California

**OPT OUTS :**

18.    There have been what appears to be approximately 246 requests for exclusion from the settlement.   Jue Decl. Those persons will be set forth on the Claims Administrator's list to be filed no later than 10 days before the hearing, as per the Preliminary Approval Order. There are also five different bankruptcy trustees that have filed what seem to be blanket requests for exclusions for 52 additional persons.   Two of those trustees, V. John Brook and Angela W. Esposito, filed with the Court documents entitled "Notice of Opt-Out from Class Settlement", Docket Nos. 58 and 59, respectively.   In addition,  those two and three additional trustees sent a package of exclusion requests to the Claims Administrator, who will be submitting them to the Court.    However, the Settlement Agreement provides that Class Members may "exclude themselves" from the Settlement; here the Bankruptcy Trustee has requested to exclude the bankruptcy estates of 52 persons. Plaintiff's counsel have no objection to including these persons in the final list of excluded persons. In any event, the number of opt outs is minimal, given the size of the Class, and supports the conclusion that the Settlement is fair and reasonable.

**OBJECTIONS:**

19.    There have been 6 objections to the Group 1 settlement and only 2 objections to date to the Group 2 Settlement, but the deadline for objecting is several weeks away, on October 15, 2014, so there could be more objections submitted. It appears that most objections have to do with Chase's foreclosure procedures and not the Settlement herein.    However, Class Counsel will respond to all objections at the appropriate time as required by the Preliminary Approval Order. If any further objections are received after this filing, we will so advise the Court at the hearing and respond accordingly.

//

//

**HYDE & SWIGART**
San Diego, California

**HYDE & SWIGART**
San Diego, California

**ADEQUACY OF SETTLEMENT:**

20.  This is a statutory damages case. No Class member has lost any money as a result of the Defendants' actions, other than their carrier's billing them for the cost of Defendants' one confirmatory text messages. Therefore, the deterrent effect of statutory damages has been met, and the proceeds will be divided among the persons called. In other words, the Class members are not getting a percentage of money they have expended; they are receiving money as statutory damages for cell phone calls made. Therefore, obtaining a Settlement we achieved for the Class is an exemplary settlement. Each of the 112,226 claimants will get approximately $69.97, totaling approximately $7,852,453.22. As a result, in my opinion, based upon my thirty-seven years of experience in civil litigation and twenty-five years of experience in litigating class actions,   and based upon the facts of this case, the number of class members, and the other circumstances, I believe this settlement is fair and reasonable. Therefore, I believe the settlement merits Court approval.

**CLASS COUNSEL EXPERIENCE:**

21.   I have outlined my experience in the Declaration of Douglas J. Campion in Support of Motion for Award of Attorney's Fees and Costs of Litigation to be heard at the same time as this motion, and I am not repeating it here, for sake of brevity, if the Court is inclined to review my credentials relating to the Final Approval issues.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 30, 2014 at San Diego, California, pursuant to the laws of the United States.

/s/ Douglas J. Campion
Douglas J. Campion