1  Joshua B. Swigart, Esq. (SBN: 225557)
   josh@westcoastlitigation.com
2  **HYDE & SWIGART**
3  2221 Camino Del Rio South, Suite 101
   San Diego, CA 92108
4  Telephone:   (619) 233-7770
   Facsimile:   (619) 297-1022
5

6  Abbas Kazerounian Esq, (SBN: 249203)
7  ak@kazlg.com
8  **KAZEROUNI LAW GROUP, APC**
   245 Fischer Avenue, Suite D1
9  Costa Mesa, CA 92626
   Telephone:   (800) 400-6808
10 Facsimile:   (800) 520-5523
11

12 Other Attorneys on Signature Page

13 Attorneys for the Plaintiffs and Proposed
   Settlement Class
14

15             **UNITED STATES DISTRICT COURT**
16             **SOUTHERN DISTRICT OF CALIFORNIA**

17

| | |
|---|---|
| 18 **PATRICIA CONNOR, AND SHERI L. BYWATER, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED** | **Case No: 10-CV-1284 GPC (BGS)** |
| 19 | **CLASS ACTION** |
| 20 | **PLAINTIFFS' OPPOSITION TO OBJECTIONS TO CLASS ACTION SETTLEMENT** |
| 21     **PLAINTIFFS,** | |
| 22 **V.** | **DATE: DECEMBER 4, 2014** |
| 23 **JPMORGAN CHASE BANK AND FEDERAL NATIONAL MORTGAGE ASSOCIATION A/K/A FANNIE MAE,** | **TIME: 1:30 P.M.** |
| 24 | **THE HON. GONZALO P. CURIEL** |
| 25 | |
| 26 | |
| 27     **DEFENDANTS.** | |
| 28 | |

# Table Of Contents

I.      Introduction ..................................................................................................................1

II.     The Legal Standard for Evaluating a Class Action Settlement ...............................2

III.    Argument ...................................................................................................................3

    A. The Responses of the Settlement Class is an Indication That The Proposed Settlement is Fair, Adequate and Reasonable .....................................................................................3

    B. The Davis Objections Are Satisfied ..........................................................................4

    C. The Camarista Objections have Been Withdrawn ......................................................4

    D. Kron's Objections are Prepared by Professional Objector Counsel and Should Be Overruled ....................................................................................................................4

        1. Attorney Scott Kron's Objections Prepared for His Parents Should Be Dismissed As An Attempt to extort Money From The Settlement Fund.............................................5

        2. Objector Stephen Kron's Testimony Shows He Has Not Knowledge of This Case, The Settlement or The Basis For His "Objections".....................................................6

        3. Kron Has No Knowledge of Why He Is Objecting..................................................7

        4. Objector Kron's Character and Motives Are In Question ........................................8

    E. All Untimely Objections Should Be Overruled .........................................................9

        1. Thomas Berry's Objection Is Untimely and Should Be Overruled .........................9

        2. Objector and Federal Inmate Michener's Objection Should Be Overruled...............10

    F. General, Nondescript Objections Should Be Overruled ...........................................11

        1. General Objections, Without Any Further Legal or Factual Support, Should Be Overruled ..............................................................................................................11

        2. Objections To The Notice Procedures Are Meritless And Should Be Overruled ......12

        3. The Objection of Berry To The Class Notice Should Be Overruled .........................13

        4. Kron's Objection To Class Notice Should Be Overruled .........................................15

        5. Kron's Objections To The Claims Deadline Should be Overruled............................16

    G. The Objections To The Monetary Compensation Of The Class Should Be Overruled ...17

    H. The Objections To The Attorneys' Fees Should Be Overruled........................................20

I.   The Objections To The *Cy Pres* Component Should be Overruled ...............................22

   1.   A *Cy Pres* Will Only Exist If There Are Unclaimed Funds As All Settlement

      Proceeds Will Be Distrubuted To The Class...............................................................23

J.   The Objections To The Release Provision Should Be Overruled ...................................24

IV.   Conclusion ..................................................................................................................25

**Table Of Authorities**

**Cases**

*Adams v. AllianceOne Receivables Management, Inc.,*
Case No. 08-CV-0248-JAH-WVG (S.D. Cal. Sept. 28, 2012)...............................................21

*Barnes v. Fleetboston Fin. Corp.,*
No. CA 01-10395-NG, 2006 WL 6916834 (D. Mass. Aug. 22, 2006) .....................................4

*Bryan v. Pittsburgh Plate Glass Co.,*
494 F.2d 799 (3d Cir. 1975)...........................................................................................3

*Churchill Vill., LLC v. Gen. Elec.,*
361 F.3d 566, 575 (9th Cir. 2004)..................................................................................12

*Class Plaintiffs v. City of Seattle,*
955 F.2d 1268 (9th Cir. 1992)......................................................................................2, 3

*Cont'l Ill. Sec. 25 Litig.,*
962 F.2d 566 (7th Cir. 1992)..........................................................................................20

*Cotton v. Hinton,*
559 F.2d 1326,1333 (5th Cir. 1977).................................................................................3

*Dennis v. Kellogg Co.,*
697 F.3d 858, 865 (9th Cir. 2012)...................................................................................22

*Fulford v. Logitech, Inc.,*
Case No. No. 08-cv-02041 MMC, 2010 U.S. Dist. LEXIS 29042.............................................2

*Graham et al. v. Overland Solutions, Inc.,*
No. 10-CV-00672-BEN-BLM (S.D. Cal. Jan. 30, 2013).......................................................21

*Gutierrez v. Barclays Group,*
No. 10-CV-01012-DMS-BGS (S.D. Cal. March 12, 2012).....................................................21

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir. Cal. 1988)............................................................................2, 3, 20

*In re Cendant Corp. Sec. Litig.,*
404 F.3d 173 (3d Cir. 2005)...........................................................................................20

*In re Domestic Air Transp. Antitrust Litig.,*

148 F.R.D. 297 (N.D. Ga. 1993) ...................................................................20

*In re Enron Corp. Secs., Derivative & ERISA Litig.,*

586 F. Supp. 2d 732 (S.D. Tex. 2008)..............................................12, 16, 17, 25

*In re Heritage Bond Litig.,*

No. 02-ML-1475, 2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10, 2005).........................19

*In re Mego Fin. Corp. Sec. Litig.,*

213 F.3d 454 (9th Cir. 2000) .................................................................3, 19, 21

*In re Metro. Life Ins. Co. Sales Practices Litig.,*

1999 U.S. Dist. LEXIS 22688 (W.D. Pa. Dec. 28, 1999) ...................................13

*In re Microstrategy, Inc. Sec. Litig.,*

172 F. Supp. 2d 178 (E.D. Va. 2001) ...................................................................20

*In re Omnivision Techs., Inc.,*

2007 WL 4293467 at *10 (N.D. Cal. Dec. 6, 2007) ...................................21

*In re Prudential,*

962 F. Supp. at 528...................................................................13

*In re Rite Aid Sec. Litig.,*

396 F.3d 294, 305 (3d Cir. 2005) ...................................................................22

*In re Visa Check/Mastermoney Antitrust Litig.,*

297 F. Supp. 2d 503 (E.D.N.Y. 2003) ...................................................................3

*In re VMS Ltd. Pshp. Sec. Litig.,*

No. 90 C 2412, 1995 U.S. Dist. LEXIS 8079 (N.D. Ill. 1995)...............................9

*In re WorldCom, Inc. Sec. Litig.,*

388 F. Supp. 2d 319 (S.D.N.Y. 2005) ...................................................................20

*Jones v. Dominion Res. Servs., Inc.,*

601 F. Supp. 2d 756 (S.D. W. Va. 2009) ...................................................................20

**Table Of Authorities**

**(continued)**

*Langille v. EMC Corporation, Inc.,*

    No. 07-CV-0651 (S.D. Cal. July 9, 2008) ................................................21

*Linney v. Cellular Alaska P'ship,*

    151 F.3d 1234 (9th Cir. 1998) ....................................................2, 19

*Mendoza v. Tucson Sch. Dist. No. 1,*

    623 F.2d 1338, 1352 (9th Cir.1980) ..............................................12

*Officers for Justice v. Civil Service Comm'n of the City and County of San Francisco,*

    688 F.2d 615 (9th Cir. 1982) ..............................2, 9, 10, 18, 19

    *cert denied* 459 U.S. 1217 (1983) ..............................................9, 10

*Paul, Johnson, Alston & Hunt v. Graulty,*

    886 F.2d 268, 272 (9th Cir. 1989) ..................................................21

*Rodriguez v. West Publ'g Corp.,*

    563 F.3d 948 (9th Cir. 2009) ............................................12, 14, 23, 24

*Six Mexican Workers v. Ariz. Citrus Growers,*

    904 F.2d 1301 (9th Cir. 1990) ....................................................21, 22, 23

*Staton v. Boeing Co.,*

    327 F. 3d 938 (9th Cir. 2003) ....................................................20, 21

*Torrisi v.Tucson Elec. Power Co.*

    8 F.3d 1370 (9th Cir. 1993) ......................................................2, 21, 22

*TBK Partners, Ltd. V. W. Union Corp.,*

    675 F.2d 456 (2d Cir. 1982) ..........................................................3

*UAW v. Gen. Motors Corp.,*

    No. 05-CV-73991-DT, 2006 WL 891151 (E.D. Mich. Mar. 31, 2006) ....................12

*Vizcaino v. Microsoft Corp.,*

    290 F.3d 1043, 1048–49 (9th Cir. 2002) ....................................20, 21

*Wal-Mart Stores, Inc. v. Visa USA, Inc.,*

    396 F.3d 96 (2d Cir. 2005) ............................................................................3

*White v. Experian Information Solutions, Inc.,*

    Case No. SACV-05-1070 DOC (MLGx), 2011 WL 2972054 (C.D. Cal. July 15, 2011)..........2

*Williams v. MGM-Pathe Communications Co.,*

    129 F.3d 1026 (9th Cir. 1997) .......................................................................21

**Statutes**

47 U.S.C. § 227(b)(1)(A)(iii) ......................................................................11, 18

**Rules**

Fed. R. Civ. P. 6............................................................................................9

Fed. R. Civ. P. 23(e)(1)...............................................................................12

**Other**

Barbara J. Rothstein & Thomas E. Willging, *Managing Class Action Litigation: A Pocket Guide for Judges* (Federal Judicial Center 2005) ........................................................5

Manual For Complex Litigation, § 30.42 (2004) ..........................................................2

# I.    INTRODUCTION

The Class Members overwhelmingly approved this Class Action Settlement ("Settlement"). Out of 2,550,455, Class Members[1] who received direct mail notice, there were only 16 objectors, three of which have already withdrawn and another will be withdraw shortly.[2] More specifically, there were 10 objectors in the settlement Group 1 ("Group 1") and 6 objectors in the settlement Group 2 ("Group 2"). Moreover, only 265 persons opted out of the Settlement.[3] These are powerful indications that the settlement is fair, reasonable, and adequate and that it deserves final approval.

In summary, the pending objections, which have not been resolved, raise issues regarding the following seven categories: (1) General Objections to the Settlement, without an explanation, (2) Notice to Class Members, (3) Claims Deadline, (4) Monetary Compensation to Class Members, (5) Attorneys' Fees, (6) *Cy Pres*, and (7) The Release Provision; however, all of these objections are meritless.    Given the nature of this Settlement and the positive response of the Class, this Settlement should be finally approved as fair, reasonable and adequate. For the reasons stated herein, the Court should overrule the objections and approve the Settlement.

//

//

//

---

[1] 1,381,406 Class Members received direct mail notice in Group 1 and 1,169,049 Class Members in Group 2.  *See* Declaration of Kenneth Jue in Support of Motion for Final Approval ("Decl. of Jue") at ¶¶6 and 7.

[2] Cheryl Kron and the Camaristas have withdrawn their objections.  *See* Dkt. Nos. 133, 134 and 135, respectively.  It has also been represented to Class Counsel via Davis' counsel that his only objection was related to the missing class members, which was addressed.  *See* Declaration of Douglas J. Campion in Support of Opposition to Objections to Class Action Settlement ("Decl. of Campion") Decl. of Campion ¶ 4.

[3] There were 209 Class Members in Group 1 and 56 Class Members in Group 2 who opted-out.  *See* Motion for Final Approval, Dkt. No. 122.

HYDE & SWIGART
San Diego, California

## II.    THE LEGAL STANDARD FOR EVALUATING A CLASS ACTION SETTLEMENT

Assessing a settlement proposal requires the district court to balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; … and the reaction of the class members to the proposed settlement. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), *citing Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1375 (9th Cir.1993), *quoting Officers for Justice,* 688 F.2d 615, 625 (9th Cir.1982).

It must be noted that there is a strong judicial policy in favor of settlement in the class action context. *Fulford v. Logitech, Inc.*, No. 08-cv-02041 MMC, 2010 U.S. Dist. LEXIS 29042, at *5 (citing Manual for Compl. Litig., Fourth, §30.42 (2004) ("[T]he interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued.") The very nature of a settlement is compromise in the interest of expeditious and cost- effective conclusion of the litigation.  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992); *See*, e.g., *White v. Experian Information Solutions, Inc.*, No. SACV-05-1070 DOC (MLGx), 2011 WL 2972054, at *8 (C.D. Cal. July 15, 2011) ("Courts . . . should tread cautiously when comparing the amount of a settlement to speculative figures regarding what damages 'might have been won" had [plaintiffs] prevailed at trial'").

In any event, what should not happen here is that the Court review the merits of the case based upon an objection challenging its sufficiency. *See Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). ("[T]he settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits.") Such objections regarding the sufficiency of the Settlement Fund "offer nothing more than speculation about what damages 'might have been' won had they prevailed at trial." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th

settlement is fundamentally fair, adequate, and reasonable." *Hanlon,* 150 F.3d 1011,
1026 (9th Cir. 1998), citing *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276
(9th Cir.1992).

## III.   ARGUMENT

### A.   THE RESPONSES OF THE SETTLEMENT CLASS IS AN INDICATION THAT THE PROPOSED SETTLEMENT IS FAIR, ADEQUATE AND REASONABLE

The courts have repeatedly found that a low number of objectors to a
proposed class action settlement is a clear indication that the proposed settlement is
fair, adequate, and reasonable. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459
(9th Cir. 2000) (finding that a low number of objections supports a finding that the
proposed settlement was fair, adequate and reasonable); *see also In re Visa Check/
Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 511 (E.D.N.Y. 2003) (finding
that a mere 18 objectors out of approximately 5 million Class members heavily
favors approval of the proposed settlement); *Wal-Mart Stores, Inc. v. Visa USA,
Inc.,* 396 F.3d 96, 118 (2d Cir. 2005); *Bryan v. Pittsburgh Plate Glass Co.,* 494 F.2d
799, 803-04 (3d Cir. 1975) (approving class settlement even though more than 20%
of class objected); (settlement where objectors represented fewer than 4% of
class).[4] "[A] certain number of objections are to be expected in a class action with
an extensive notice campaign and a potentially large number of class members." *In
re Visa Check,* 297 F. Supp. 2d 503, 511 (E.D.N.Y. 2003). If only a small number of
objections are received, that fact can be viewed as indicative of the adequacy of the
settlement. *Id.*

In *In Re Visa*, *supra,* the court found that "the extremely small number of
objectors—a mere 18 out of approximately five million Class members—heavily
favors approval." *Id.* Similarly to *In Re Visa*, out of the 2,550,455 Class Members
who received direct mail notice only 16 objected. However, although there were 16

---

[4] Courts frequently approve settlements where the percentage of objections is many
times greater than in this case. *See, e.g., TBK Partners, Ltd. V. W. Union Corp.*, 675
F.2d 456, 458, 462 (2d Cir. 1982) (approving settlement despite objections of
approximately 56% of class); *Cotton v. Hinton*, 559 F.2d 1326,1333 (5th Cir. 1977)
(approving settlement over objections of counsel purporting to represent almost
50% of class).

HYDE & SWIGART
San Diego, California

objectors, in reality there were only 12 independent objections made, as related objectors, likely living in the same household, made the same or duplicate objections. *See* Decl. of Jue ¶¶ 6 and 7. Accordingly, the fact that there were objections from only 16 claimants, which represents 0.0000063 percent of the total Class who received direct mail notice, confirms the adequacy of the Settlement here.

### B.  THE DAVIS OBJECTIONS ARE SATISFIED

After Objector Davis assisted in discovering a portion of missing class data omitted from Group 1, Class Counsel addressed this objection, amending the settlement and providing notice to the Group 2 class members.  As a result of the settlement amendment, the Davis objections have been addressed and will no longer be asserted.  Class Counsel and counsel for Davis have conferred and it was represented to Class Counsel that Davis will be filing a supplemental memorandum advising the Court his objections have been satisfied, and if viewed as still pending, are withdrawn. Decl. of Campion ¶ 4.

### C.  THE CAMARISTA OBJECTIONS HAVE BEEN WITHDRAWN

Objectors' counsel, Darrell Palmer filed two objections on behalf of Janiley and Glenice Camarista.  Class Counsel worked though any claimed issues raised by Objectors' Counsel.   Based on his satisfaction, a request to withdraw those objections was filed on October 28, 2014 and was granted by the Court a day later. [Dkt Nos. 134 and 135].

### D.  KRON'S OBJECTIONS ARE PREPARED BY PROFESSIONAL OBJECTOR COUNSEL AND SHOULD BE OVERRULED

Class Counsel recognize that at times, objectors provide genuine assistance to the parties and the court in identifying weaknesses in a proposed settlement, as was the case with Davis, *supra*.   At other times, however, "serial" or "professional" objectors file objections merely to extract payments from parties or counsel in litigation as additional compensation to avoid years of delay associated with unmeritorious settlement objections. *Barnes v. Fleetboston Fin. Corp.*, No. CA 01-10395-NG, 2006 WL 6916834, at *1 (D. Mass. Aug. 22, 2006). In *Barnes,* the court acknowledged that: "repeat objectors to class action settlements can make a living simply by filing frivolous appeals and thereby slowing down the execution of settlements" *Id.*

1   Judges are cautioned to "[w]atch out...for canned objections filed by

2   professional objectors who seek out class actions to simply extract a fee by lodging

3   generic, unhelpful protests." *Managing Class Action Litigation: A Pocket Guide for*

4   *Judges*, by Barbara J. Rothstein & Thomas E. Willging, Federal Judicial Center, p.

5   11 (2005), accessed on June 11, 2013 from the public website accessible at

6   www.fjc.gov/public/pdf.nsf/lookup/classgde.pdf/$file/classgde.pdf (internal

    quotations omitted).

7       In this case, Scott Kron ("Scott"), attorney for the Krons, filed their

8   objections on the last possible day to file an objection (October 15, 2014),

9   suggesting that they wished to provide Class Counsel with as little time as possible

10  to respond to such objections. Plaintiffs request an evidentiary hearing regarding

11  the objections filed by Kron, as their objections indicate an intent not to assist this

12  Court in improving the result for the class, but to hijack the case to obtain a

13  payment by preserving their ability to file a meritless appeal.[5]

14  **1.   ATTORNEY SCOTT KRON'S OBJECTIONS PREPARED FOR HIS PARENTS
        SHOULD BE DISMISSED AS AN ATTEMPT TO EXTORT MONEY FROM
15      THE SETTLEMENT FUND**

16      Attorney Scott Kron, who is the son of objectors Cheryl and Stephen Kron,

    prepared the Kron's objections without any real involvement from the objectors

17  themselves, and arguably for ulterior motives.   *See* Kron's Objection To The

18  Proposed Settlement, attached as Exhibit 9, 4:16-18; *see also* Deposition of Stephen

19  Kron attached hereto as Exhibit 14.  As a preliminary matter, it is important to note

20  that objector Cheryl Kron withdrew her objections after she was served with a

21  subpoena to attend a deposition in response to her objections. Exhibit 14, Kron

22  Transcript; 73:1-4. If Cheryl Kron truly believed in her objections, which are not

23  supported by any legal authority and contain only scarce factual support, she would

24  have arguably attended the deposition and defended her objections. However, she

25  did not and instead chose to withdraw her objections. Dkt. No. 133.

26  //

27  _____

    [5] The Krons initially filed two objections, one on behalf of Stephen Kron and one

28  on behalf of Cheryl Kron.  After Class Counsel noticed both depositions, Cheryl's
    objection was withdrawn.

### 2. OBJECTOR STEPHEN KRON'S TESTIMONY SHOWS HE HAS NO KNOWLEDGE OF THIS CASE, THE SETTLEMENT OR THE BASIS FOR HIS "OBJECTIONS"

Objector Stephen Kron ("Kron") was similarly unable to defend his objections at his deposition. First, Objector Kron lacks general information about the Settlement and therefore also lacks an understanding of its terms and purpose. Exhibit 14, Kron Transcript; 25:21-26:8. As a matter of fact, Kron was unable to identify the general nature of this Settlement, other than that it involved JPMorgan, Chase and laws regarding phone calls. Exhibit 14; Kron Transcript; 25:21-26:2. Among other things, Kron is unaware of the discovery that has taken place in case and has never requested to see any documents from Class Counsel (*Id.* at 28:5-29:11). Moreover, although initially Kron testified that he also did not recall whether he has ever reviewed the Settlement Agreement, the long form notice or any documents on the Settlement website (Id. at 75:9-17), Kron amended his deposition and now claims that he has reviewed the Settlement Agreement (Id. at 75:11). In fact, before he signed the legal document containing his objections he merely reviewed the post card notice and nothing else (*Id.* at 52:9-53:3)

Despite not knowing what this case or settlement is about, Kron is not aware of, nor does not understand, currently and before he filed his objections, the general duties of an objector [6] (*Id.* at 55:23-6). In fact, he can only recall 3 objections, despite making 5 major objections with other minor objections buried among them (*Id.* 79:16-80:4). Before obtaining the post card notice, he never considered making a claim against Defendant and never felt that Defendant caused him any wrongs (*Id.* at 45:16). Kron is unaware of or cannot recall any of his past or present properties that are mortgaged through Defendant (*Id.* at 32:18-19 and 39:23-9); he cannot even recall if Defendant has ever called him (*Id.* at 43:16-18). Kron testified that he is unaware of the damages available to the Class if they pursue their own cases (*Id.* at 26:9-13) and does not even know whether Defendant actually violated any laws (*Id.* 105:12-14). Kron testified that he does not even know what a claim is for the

---

[6] Kron's attorney, Scott, insisted the Kron not answer this question as he claimed it was privileged.

HYDE & SWIGART
San Diego, California

purposes of the settlement (*Id.* at 51:18-20). Despite all this lack of information and a fundamental lack of understanding of the Settlement, Kron objected to the settlement and continues to support his objections.

### 3. KRON HAS NO KNOWLEDGE OF WHY HE IS OBJECTING

In his deposition, Kron continued to support his objections despite lacking a basic understanding of the basis of his objections or even what exactly he is objecting to.    *Id*. at 81:9-100:3.  Kron admits that despite only reviewing the post card notice, he signed off on the objections prepared by <u>his son</u> and attorney Scott Kron. *Id.* at 52:9-53:3. As stated above, Kron could only recall 3 objections, despite making several. *Id.* 79:16-80:4.  In summary, Kron objected to: 1) the notice/claims procedure, 2) the inappropriate claims deadline, 3) the scope of the release, 4) the attorneys' fees and 5) the *cy pres* component. *See* Exhibit 11. In general, when asked about specifics regarding his objections, Kron was unresponsive, or simply stated that that the "document (i.e., his objections) speaks for its self" and that his reasoning for objecting is simply his own opinion. *Id* at 80:7-99:16.

When asked about any issues he had with the notice procedures, Kron testified that he would prefer Class Counsel  subpoena to all Class Members instead of a post card notice (*Id.* at 81:9-12) or otherwise to leave his attorney (son) to decided what is appropriate (*Id.* at 82:16-18). Furthermore, Kron testified that he would have been happy with the notice if 100% of the claimants filed claims, which is simply unreasonable. *Id.* at 83:7-9. When asked why his objection regarding why he believed the Group 2 notice should also be distributed to Group 1, Kron simply testified that it was fair and "just because", despite being informed that Group 1 received notice and that both groups would receive the same payouts. (*Id.* at 86:17-88:17.  This is obviously nonsensical and shows a basic misunderstanding of the settlement and notice procedure.

When asked about his objection regarding his reasoning for requesting that Group 1 receive extra time to opt out, object or submit a claim, Kron could not provide a reason.  Rather, he attempted to explain that he lacked an understanding of this issue, despite having an objection filed on his behalf *Id.* at 88:18-90:16.

Questions were asked about what issues Kron had with regard to the release in the settlement as it related to a definitive class period (i.e., that the release provision lacks a time period). In response, Kron testified that he would object to the release provision even if it did include a time period, which was the reason for his objection in the first place. *Id*. at 93:18-94:9. This is more evidence that the totality of the Kron objections are to merely obstruct the class action settlement process and extract some type of settlement to the detriment of the participating class members.

When asked about his objections regarding his objection to the attorneys' fees requested, specifically the fee brief being filed allegedly after the claim period, Kron testified that he cannot recall whether he has read or reviewed Class Counsel's fee briefs, although the original Group 1 fee brief was filed and posted on the settlement website for over two years. *Id*. at 90:17-93:7. When questioned as to why he believes Class Counsel is only entitled to 20% of what he considers to be the actual value[7], Kron simply states that this is his personal opinion and this seems fair, despite Class Counsel informing Kron that the benchmark in the Ninth Circuit is 25%. *Id*. at 99:3-12. As to Kron's responses as to inquiry into his objections concerning any *cy pres* component of the Settlement, Kron had no knowledge as to what a *cy pres* award was and testified that the reason for his objection was his "personal opinion". *Id*. at 99:23-100:3.

### 4. OBJECTOR KRON'S CHARACTER AND MOTIVES ARE IN QUESTION

Kron's character should be questioned as he refused to answer many questions in the deposition or simply stating that he does not recall rudimentary questions. At one point, Kron refused to answer simple questions and simply stated that he did not recall. *See Id*. at 75-79. When asked about his criminal past, Kron simply stated that he had one, but refused to discuss anything further. *Id*. at 60:21-62:25. When questioned about prior lawsuits, Kron testified that he had been sued not once, but twice, for breach of fiduciary duty. *See Id*. at 58:19-59:14.

---

[7] Kron valued the case at roughly $8 million in his objection (*See* Exhibit 9), but is not valuing the case at $11-12 million, its true value. Exhibit 14, Kron Transcript 94:13-95:12.

As the above examples of Kron's testimony and character demonstrates, Kron lacks any information or basic understanding about this settlement or even his objections. It is apparent that Kron merely filed his objections after prodded by his son with no real basis for objecting.

### E. ALL UNTIMELY OBJECTIONS SHOULD BE OVERRULED

Generally, untimely objections must be accompanied by a showing of excusable neglect and the objector must seek permission from the court to make the objection. *See* Fed. R. Civ. Proc. 6 (permitting extension of time by which an act may be done only "on a motion made after the time has expired if the party failed to act because of excusable neglect"). *See also In re VMS Ltd. Pshp. Sec. Litig.,* No. 90 C 2412, 1995 U.S. Dist. LEXIS 8079, at *7-8 (N.D. Ill. 1995) (fact that class member never received notice of settlement due to defendant's failure to update address did not constitute "excusable neglect" sufficient to permit late opt-out).

#### 1. THOMAS BERRY'S OBJECTION IS UNTIMELY AND SHOULD BE OVERRULED

Objector Thomas Berry ("Berry") objects to the notice provided by the settlement and the monetary compensation to the Class. *See* Memorandum of Points and Authorities In Support Of Motion To Opt Out Or, Alternatively, Objection To Motion For Final Approval Of Class Settlement, attached hereto as Exhibit 7 (Dkt. No. 124). Berry's objection, as a Class Member of Group 1, was not timely made and should be overruled on this factor alone. *See, supra,* Fed. R. Civ. Proc. 6. Berry is a Group 1 class member and received direct mail notice mailed on April 11, 2012. Decl. of Jue ¶ 6. Group 1 objections were due by July 20, 2012 (*see* Postcard Notice to Group 1 attached hereto as Exhibit 12); however, Berry objected on October 7, 2014, 2 years 2 months late. (*see* Exhibit 7 at 19:12-13).

In *Officers For Justice v. Civil Service Com'n,* the named plaintiff, who was given opportunity to exclude himself from a class action but did not, and whose rights were protected by class action rule - which provides for approval by district court after notice to class and fairness hearing as well as review on appeal, did not have due process right to a second opportunity to opt out after the terms of settlement were disclosed to the class. *Officers For Justice v. Civil Service Com'n,*

HYDE & SWIGART
San Diego, California

688 F.2d 615, 634-35 (9th Cir. 1982), *cert. denied,* 459 U.S. 1217 (1983). The court found that to hold that due process requires a second opportunity to opt out after the terms of the settlement have been disclosed to the class would impede the settlement process so favored in the law." *Id.*

Similarly, Berry, as a Class Member of Group 1, does not have a due process right to a second opportunity to opt out after the terms of the Settlement were disclosed to him and Group 1 Class Members, by receiving direct mail notice. Decl. of Jue ¶ 6. To provide Berry with a second opportunity to opt out would "impede the settlement process so favored in the law." *Id.* However, despite Berry's inability to object, Class Counsel does not oppose Berry's memorandum, in so far as Berry is seeking to opt out of the settlement. However, if Berry's memorandum is an objection, then it should be overruled, as it is both untimely and meritless.

### 2. OBJECTOR AND FEDERAL INMATE MICHENER'S OBJECTION SHOULD BE OVERRULED

Michener complains about conduct not contemplated in this settlement. In his objection, Michener requests the Court move the Fairness Hearing for 60 days so that he can review the case and decided whether to participate in the settlement. *See* Michener's Objection attached hereto as exhibit 10 at p. 1-2. Michener explains that as a result of his incarceration, he received the Settlement notice late and was unable to properly review the terms of the Settlement. *Id.* Michener objections stem from his belief that the Class might not be representative of his individual case. *Id.* at p. 3-5. Michener believes that his case could be "significantly more severe than the class average." *Id.* at p. 3. Michener believes this because: 1) the calls he received were also made in connection with mortgage solicitations; 2) Defendant's conduct allegedly harassed and caused him anxiety; and, 3) Defendant allegedly ignored Michener's letter to stop calling him. *Id.* at p. 2.

Here, it seems Michener is asking to be given more time to review the Settlement. Due to Michener's circumstances, Class Counsel does not oppose his request in so far as if it is to only make a claim after the deadline has passed. Since Class Counsel was unsure of Michener's intentions (i.e., whether Michener wanted to withdraw his objection and participate in the Settlement, or not), Class Counsel

reached out to Michener in federal prison to clarify his objections. Michener's response was essentially extortion. *See* Michener's Response Letter To Class Counsel Regarding Objections - dated October 23, 2014 and attached hereto as Exhibit 11 ("Exhibit 11"). Specifically, Michener states, "I would only be willing to withdraw my objection/ request for continuance/ request for discovery if, and only if, given explicit contractual assurance that my settlement portion would be no less than eight thousand dollars." *Id.* Accordingly, Michener is not interested in conferring any benefit to the Class; rather, Michener is interested in exploiting his position as a Class Member to his benefit and the detriment of the Class.

Additionally, this settlement is about TCPA violations in connection with debt collection efforts; it is not about solicitation, harassment and anxiety, which seems to be the basis for Michener's objections. The relevant section of the TCPA is content-neutral and applies regardless of the purpose of the call, unless it is for an emergency purpose (*see* 47 U.S.C. § 227(b)(1)(A)(iii)). This Court has already certified the Class and approved the proposed settlement in the Preliminary Approval order (Dkt. Nos. 55 and 113); hence, in so far as Michener is in fact objecting, his objections should be overruled as meritless and as an attempt to extort money from the Settlement Fund.

## F. GENERAL, NONDESCRIPT OBJECTIONS SHOULD BE OVERRULED

### i. GENERAL OBJECTIONS, WITHOUT ANY FURTHER LEGAL OR FACTUAL SUPPORT, SHOULD BE OVERRULED

The following Class Members have objected to the proposed Settlement, but have not provided the reason(s) for objecting: Group 1 Class Members; Ivory Blaney, attached hereto as Exhibit 1; Jose and Adriana Herrera, attached hereto as Exhibit 2; Carmen Vara, attached hereto as Exhibit 3; and Shabina Debbie, attached hereto as Exhibit 4. Group 2 Class Members; James and Glenda S. Norman (hereinafter jointly referred to as "the Normans"), are attached hereto as Exhibit 5.

Without more information provided by these objectors as to what exact issue they take with the class settlement, it is impossible for Class Counsel to address these objections. Further, this Court has already considered and approved the proposed Settlement in the Preliminary Approval order, finding it fair, adequate and

reasonable. *See* Preliminary Approval Order, Dkt. Nos. 55 and 113. Such unfounded objections are not a valid basis for denying final approval of a class action settlement, since general dissatisfaction with the outcome of a case, without factual or legal substantiation, should carry little weight in assessing the fairness and adequacy of the settlement. *See In re Enron Corp. Secs., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 804 (S.D. Tex. 2008) (declining to address objections that are non- specific and unsupported by evidence or authority). Thus, an unsupported objection to the merits of this action is not a sufficient ground to withhold any recovery to the remainder of class members. *In re Enron Corp.*, 586 F. Supp. 2d at 804. Accordingly, these general objections should be overruled, as they are meritless.

### 2. OBJECTIONS TO THE NOTICE PROCEDURES ARE MERITLESS AND SHOULD BE OVERRULED

Objectors Berry and Kron assert that the notice plan and procedures submitted by Class Counsel and approved by the Court in its two preliminary approval orders is somehow deficient.

"The court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed.R.Civ.P. 23(e)(1); *Rodriguez v. W. Publ'g Corp.,* 563 F.3d 948, 962 (9th Cir. 2009). "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Rodriguez,* 563 F.3d at 962 (noting that objectors demanded that the content of objections be included in notice); citing *Churchill Vill., LLC v. Gen. Elec.,* 361 F.3d 566, 575 (9th Cir.2004) (quoting *Mendoza v. Tucson Sch. Dist. No. 1,* 623 F.2d 1338, 1352 (9th Cir.1980)). Although there is a wide range of possible notices, each of which would strike an appropriate balance between inclusiveness and brevity, in general, "[s]ettlement notices are supposed to present information about a proposed settlement neutrally, simply, and understandably." *Rodriguez,* 563 F.3d at 962.

"A summary, by its nature, cannot discuss every term of the [settlement] agreement." *See UAW v. Gen. Motors Corp.*, No. 05-CV-73991-DT, 2006 WL 891151, at *33 (E.D. Mich. Mar. 31, 2006). It is for this reason that the form and

content of the notice is within the discretion of the trial court and must be approved by the court before it is issued. *In re Prudential*, 962 F. Supp. at 528; *see In re Metro. Life Ins. Co. Sales Practices Litig.*, 1999 U.S. Dist. LEXIS 22688, at *52 (W.D. Pa. Dec. 28, 1999) (noting that some objectors demanded more detail while others argued notice was already too complex "demonstrated that the Class Notice Package strikes a proper balance and provides sufficient information in as clear and concise a manner as possible given the nature of the proposed settlement").

Therefore, an objection to the notice, which has already been approved by this Court in its discretion, is not an appropriate basis for objecting to final approval of the class action settlement. It is not practicable or even desirable to include every detail about the class action in the notice to Class Members, as the purpose of the notice is to apprise Class Members of the nature of the proposed settlement and provide a reasonable opportunity to be heard, which was achieved in this case.

### 3. THE OBJECTION OF BERRY TO THE CLASS NOTICE SHOULD BE OVERRULED

Berry objects to the proposed Settlement, because "[t]he Notice to Class members is deficient and misleading since it does not disclose in plain, easily-understood language that the Class Members are releasing claims for TCPA calls that are still occurring." *See* Exhibit 7 at 1:6-9. In other words, Berry argues that the notice does not, "in plain, easily understood language," indicated that the "Settlement releases claims for events that occurred after the Class Period." *Id.* at 7:5-6. Berry supports this argument by claiming that: 1) the notice gives no indication of the scope of the release; 2) the scope of the release does not track the complaint; and 3) the ineffective notice deprives Class Members of the due process and informed choice. *Id.* at 8:1-12:4. Lastly, Berry maintains that the remedy is either a new notice or to limit the release to the class period. *Id.* at 12:5-17.

First and as a general matter, the notice in this case has already been reviewed and approved by this Court in its entirety; the Court found the notice to be compliant with due process, as it generally describes "the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come

forward and be heard,"[8] and therefore ordered them sent.  *See* Dkt. No. 55 and 113. Thus, objections to the Class notice, which has already been approved by this Court in its discretion, is not an appropriate basis for objecting to final approval of the class action settlement

Second, the scope of the release can easily and plainly be understood by means of the Settlement notice. The notice clearly identifies and indicates where the proposed Settlement can be located, which holds the relevant language Berry's alleges is missing. See Exhibit 12. Among other things, the notice unambiguously informs and advices the reader to go to the settlement website (i.e. www.connorTCPAsettlement.com) to obtain more information about the Settlement, including the specific terms of the Settlement Agreement and Release ("Agreement" and/or "Agr."). See Exhibit 12. This Agreement, which is easily accessible on the settlement website, describes the scope of release in plain and easily understood language. See Agr.  § 16.01.

More specifically, the release provision unambiguously states that, "[p]laintiff and each Settlement Class Member… hereby releases… each and all of the Released Parties – (i.e., Defendant and its affiliates (*Id*. at § 2.15)) - from each of the Released Claims. *Id*. at § 16.01. The release provision further explains the definition and scope of "Released Claims" and timing of the Final Approval Hearing *Id*.  §§ 2.09 and 2.10.  Thus, the settlement clearly identifies that Plaintiff and Class Members release Defendant, and its affiliates, from all claims related to the use of an ATDS and/or prerecorded voice message that occur until the date of the Final Approval Order. If that is not enough, the settlement website, which is clearly identified on the postcard notice mailed to Class Members, also unambiguously identifies the date for the Final Approval Hearing as November 14, 2014. See  www.connorTCPAsettlement.com.

Third, since the post card notice, sent by direct mail, has already been approved by this Court and also clearly identifies the settlement agreement, which explains the scope of the release in plain and easily understood language, it cannot

HYDE & SWIGART
San Diego, California

---

[8] *See Rodriguez,* 563 F.3d at 962.

deprive Class Members of due process and informed choice, as Berry alleges. Hence, Berry's argument that the ineffective notice deprives Class Members of the due process and informed choice is meritless.

As it is now, it does not seem that Berry's objection is really about the content of the notice, since he has received the notice and understood what to do about it (i.e., make a claim, opt out, or object); rather, the only issue here is that Berry decided to ignore his rights for 2 ½ years and is now trying to come back and either object or opt out. Berry's lack of diligence should not be held against the Class Members whom overwhelmingly approved the settlement and deserve to get paid under the Settlement. Accordingly, Berry's objections regarding the notice to Class Members, including the notice of release, should be overruled, as they are meritless.

### 4.  KRON'S OBJECTION TO CLASS NOTICE SHOULD BE OVERRULED

As stated above, objector Cheryl Kron has withdrawn her objection.  (*See* Dkt. No. 133).   Stephen Kron maintains his various objections, including an objection as to the notice procedure.  *See* The Krons' Objections To Proposed Class Action Settlement attached hereto as Exhibit 11 ("Exhibit 11"). Among others, Kron objects to the Settlement notice, arguing that the number of claims filed was too low (*Id.* at 2:15-16) and that therefore the notice was not adequate. *Id.* at 2:14-15.

First, Kron incorrectly states that only 9% of eligible claimants filed claims.[9] *Id.* at 2:12-13. Second, for the same reasons stated above, the notice was proper. Class Members' decisions to file a claim or not is their own choice, and should not be a reflection of the Settlement notice, which was previously approved by this Court in the Preliminary Approval order.  Dkt. Nos. 55 and 113.

Kron also argues that notice of the Group 2 Settlement should have been provided to Group 1, and that Group 1 should have been afforded an opportunity to either submit a claim, opt-out, or object to that Settlement. Exhibit 11 at 2:16-19. However, without any further explanation, or any factual or legal support, this

_____

[9] In reality, it was about 4.5% for each group; so, in the aggregate it was only about 4.5%.

statement carries little weight. *See In re Enron Corp. Secs., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 804 (S.D. Tex. 2008) (declining to address objections that are non- specific and unsupported by evidence or authority). Moreover, it would serve no purpose to notify Group 1 of the Group 2 settlement, as Group 1's rights were not affected.[10] In fact, after the discovery of Group 2, Class Counsel successfully negotiated with Defendant to provide Group 2 the same payout that Class Members in Group 1 were entitled to before the discovery of Group 2. This actually resulted in the increase of the maximum total Settlement Fund from a maximum of $9,000,000 to $11,268,058. Furthermore, providing such notice would actually be detrimental to Class Members since it would decrease the payout each Class Member would be entitled to, as more money would be needed for administration and notice expenses. Lastly, as explained in detail above, Kron would only accept "proper notice" to the class if every Class Member received an individual subpoena, clearly absurd. Thus, Kron's objection as to this matter should be overruled.

### 5. KRON'S OBJECTIONS TO THE CLAIMS DEADLINE SHOULD BE OVERRULED

Kron also argues that because Class Counsel's Fee Motion was filed five days after the Claims Deadline – as ordered by the Court - Group 2 Class Members were forced to decide whether or not to submit a claim without the opportunity of reviewing the Fee Motion. Exhibit 9 at 2:21-23. Kron argues this information could have affected the Class Members' decision to submit a claim, object or opt-out. *Id* at 2:24-26. However, the terms of the Settlement Agreement clearly identifies the amount of money Class Counsel would be requesting.[11] See Agr. at § 6.01. Furthermore, Class Counsel had already filed its initial fee petition for the work performed for the Group 1 Settlement over 2 years ago. Dkt. No. 60. The same amount was sought this time around, with the addition of $125,000 that was paid

---

[10] Group 1 would still have the same rights under the settlement and the same payout, as Defendant increased the settlement fund from $7,000,000 to $11, 268,058 to accommodate for the Group 2 Class Members.

[11] Section 6.01 of the Agreement states that "Class Counsel will be making a request for attorneys' fees totaling $3,000,000 or less.., plus costs."

outside the Settlement Fund directly by Defendant. Addendum to Settlement Agreement and Release ("Addendum") § 6.03.   In fact, Class Counsel successfully negotiated that the newly identified Group 2 receive the same payout that Group 1 Class Members were entitled to before the discovery of Group 2. Thus, there was no dilution in the amount that Group 2 recovered, as only the fees for the Group 1 work was taken from the Settlement Fund and which was disclosed in the initial fee brief.  Dkt. No. 60; *see also* Addendum § 6.03.  Accordingly, there is no new reason for someone to object to the fees sought, as they have not increased to the detriment of the settlement class.

Kron also argues that the Claims Deadline is improper because the Objection Deadline is several weeks later than the Claims Deadline, "which forces the [C]lass [M]ember to make a claim before fully evaluating the settlement with respect to an objection." Exhibit 11 at 2:27-3:1. However, this is simply not true. A Class Member may choose to make a claim and then, at a later date and after "evaluating the settlement," may withdraw their claim and file an objection before the end of the Objection Deadline. Therefore, Kron's objection with respect to the Claims Deadline should be overruled.

### G.   THE OBJECTIONS TO THE MONETARY COMPENSATION OF THE CLASS SHOULD BE OVERRULED

Objectors Rodriquez, Williams and Berry (Exhibits 8, 6, and 7, respectively) object to the monetary amount each claiming class member will receive, $69.97.

Although Rodriquez makes specific objections, she does not provide any valid support, legal or otherwise, for these arguments. Rodriquez simply mentions that Defendant has phoned her several times over the years and that they made it very difficult for her to communicate to Defendant's representatives. *Id.* As stated above, such unfounded objections are not valid basis for denying final approval of a class action settlement. *See In re Enron*, 586 F. Supp. at 804.

Objector Curtis Williams ("Williams") objects to the compensation offered by the settlement because "the amount is just not enough money." *See* Williams's Objection Letter attached here to Exhibit 6. Williams believes that he "deserves much, much more money for [his] claim" because Chase bank harassed him via the phone calls they placed and lied to him about the date his home was being sold. *Id.*

Although Williams believes that the settlement does should compensate him for the "harassment" and "lies" allegedly committed by Chase, this class action settlement is not a harassment or fraud case; this case is about automated telephone calls that allegedly violated the TCPA, regardless of whether they constitute harassment or fraud. Indeed, the relevant section of the TCPA is content-neutral and applies regardless of the purpose of the call, unless it is for an emergency purpose (*see* 47 U.S.C. § 227(b)(1)(A)(iii)). Thus, even if Williams's allegations are true, these unrelated experiences with Chase are not a valid basis to object to the adequacy of the settlement. Accordingly, the Court should overrule this objection as meritless. If Williams believes that he suffered more damages which he can actually prove, he could have opted out and proven his damages.

Berry objects to the proposed Settlement, because "the value of the claims being released so far outweighs the value of this Class Settlement," which "renders the Settlement unfair, inadequate, and unreasonable." *See* Exhibit 7 at 12:19-21. Berry supports this argument by claiming: 1) that his violations alone are worth 70% of the settlement fund, 2) by assuming that all Class members have similar damages and 3) by assuming that Plaintiff's case is strong and not complex. *Id.* at 13:18-17:7.

As stated above and in Plaintiff's Motion for Final Approval, this action was highly contested by Defendant and the Settlement was reached as a result arm's-length negotiations. *See* Dkt. No. 50; Decl. of Swigart at ¶ 7, attached to Motion for Final Approval; Dkt. No. 122. Furthermore, as Plaintiff explained in the Motion for Final Approval, this case is complex. *See* Dkt. No. 122. This alone should be sufficient to overrule Berry's objection as to the Class compensation. Nevertheless, it is highly unlikely that Berry's alleged violations amount to 70% of the settlement fund and that all or most other Class Members have similar damages. If that were the case, many more Class Members would have requested to be excluded or would have objected to the settlement.[12] However, as it stands now there are only 265 exclusions and only 16 objectors out of 2,550,455 Class Members who received

---

[12] Even Berry must not have truly valued his case at that value, or he would have timely opted out of the settlement, not 2 ½ years late.

direct mail notice. This is a very small percentage, which indicates that most Class Members are satisfied with the Settlement.  Additionally, 101,273 number of claims were received when combining Group 1 and Group 2.   Decl. of Jue, ¶ 14.   A substantial number of class members believe the settlement to be a fair benefit, as evidenced by their participation.

"It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery [does] not per se render the settlement inadequate or unfair." *Officers for Justice v. Civil Serv. Comm'n of the City and County of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982); *see also In re Mego Fin. Corp. Secs. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000); *In re Heritage Bond Litig.*, No. 02-ML-1475, 2005 U.S. Dist. LEXIS 13555, at *29 (C.D. Cal. June 10, 2005). Objections regarding the sufficiency of the Settlement Fund "offer nothing more than speculation about what damages might have been won had they prevailed at trial." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982)). The amount of the settlement results from reasonable compromise among the parties, and is well in line with other TCPA settlements approved by other courts.

It is important to remember that all settlements are a compromise; and, the $11,268,058 Settlement Fund here is certainly fair, reasonable and adequate. All Class Members would unquestionably want to recover more money for their claims; that is only human nature. But, this Settlement was reached through an extensive series of arm's-length negotiations over the course of two years, which included the support and assistance of Magistrate Judge Bernard G. Skomal, who presided over and Early Neutral Evaluation conference and follow-up conferences (Dkt. Nos. 25, 26, 28, 30 and 32), and former Chief Magistrate Judge Edward A. Infante. The parties also engaged and conducted confirmatory discovery, and continued to negotiation amongst themselves for several more months. Decl. of Swigart, attached to Motion for Final Approval, Dkt. No. 122. Accordingly, the settlement represents the compromise of two sides that vigorously support their respective positions.  Therefore, the compensation to the Class Members is fair and adequate, and these objections should be overruled.

## H. THE OBJECTIONS TO THE ATTORNEYS' FEES SHOULD BE OVERRULED

Objectors Rodriquez and Kron both object to the amount of attorney's fees sought (Exs. 8 and 9, respectively).

As a general principle, encouraging objections to class counsel fees runs counter to the settled policy of using reasonable fee awards to incentivize class counsel to bring risky litigation, such as this TCPA case, in the public interest. *See, e.g.*, *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 193 (3d Cir. 2005) (recognizing the need for fee structures negotiated under PSLRA to "provid[e] counsel with incentives to perform excellent work").[13] When counsel for a class seek fees from a common fund, courts use one of two methods to determine whether the request is reasonable: "percentage-of-the-fund" or "lodestar/multiplier". *Staton v. Boeing Co.*, 327 F.3d 938, 963-64 (9th Cir. 2003); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048–49 (9th Cir. 2002); *Hanlon v. Chrysler Group*, 150 F.3d 1011, 1029 (9th Cir. 1998). Regardless of which method is applied, the fundamental requirement is that the resulting fee is fair and reasonable. *Staton*, 327 F.3d at 963-64.

Similarly, the Krons argue that Class Counsel's fee should be tied to the "actual recovery, not the [entire] Settlement Amount." Exhibit 9 at 3:15-16. The Krons value the actual recovery to the Class at approximately $8,468,609 (*Id.* at 3:16-17) and believe that we are entitled to only 20% (Id. at 3:21-22). However, the Krons provide no support for their argument.

//

_____

[13] *See also Florin v. Nationsbank of Ga.*, 60 F.3d 1245, 1247 (7th Cir. 1995) ("[T]he court must also be careful to sustain the incentive for attorneys to continue to represent such clients on an 'inescapably contingent' basis." (quoting *Cont'l Ill. Sec. 25 Litig.*, 962 F.2d 566, 569 (7th Cir. 1992))); *Jones v. Dominion Res. Servs., Inc.*, 601 F. Supp. 2d 756, 765 (S.D. W. Va. 2009) (recognizing public policy in favor of sufficient fees to ensure that competent counsel will take on "'the often risky and arduous task of representing a class'" (quoting *In re Microstrategy, Inc. Sec. Litig.*,172 F. Supp. 2d 178, 188 (E.D. Va. 2001)); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 359 (S.D.N.Y. 2005); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 306 (N.D. Ga. 1993) (discussing "the financial incentive necessary to induce experienced and well-qualified counsel to take on complex and time- consuming cases for the benefit of the public and for which they may never be paid or even reimbursed for considerable out-of-pocket expenses").

First, the Ninth Circuit permits the percentage of the attorneys' fees to be computed on the total amount that was available to the Class in the Settlement Fund, here $11,268,058. *See Williams v. MGM-Pathe Communications Co.*, 129 F. 3d 1026, 1027 (9th Cir. 1997). Second, although the objectors complain that the attorneys' fees and costs are improper, the requested fees are below the 25% benchmark the Ninth Circuit has previously established.[14] *See Staton v. Boeing Co.*, 327 F.3d 938, 968 (9th Cir. 2003); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993); *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989). In fact, courts have frequently award fees greater than the benchmark. *See, e.g.*, *Vizcaino*, 290 F.3d at 1049-50; *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 460 (9th Cir. 2000)." Indeed, courts have observed that, "in most common fund cases, the award exceeds that [25%] benchmark." See, e.g., *In re Omnivision Techs., Inc.*, 2007 WL 4293467 at *10 (N.D. Cal. Dec. 6, 2007). Other courts in the Southern District have also awarded 25%, or in some cases even higher, of the total Settlement Fund as attorneys' fees. *See Gutierrez v. Barclays Group*, No. 10-CV-01012-DMS-BGS (S.D. Cal. March 12, 2012) (Judge Sabraw awarded attorneys' fees in a TCPA class action in the amount of $1,580,000, representing the 25% benchmark); *see also Langille v. EMC Corporation, Inc.*, No. 07-CV-0651 (S.D. Cal. July 9, 2008) (Judge Huff awarded 25% percent of settlement fund); *see also Graham et al. v. Overland Solutions, Inc.*, No. 10-CV-00672-BEN-BLM (S.D. Cal. Jan. 30, 2013) (Judge Benitez awarded 30% in attorney's fees); *Adams v. AllianceOne Receivables Management, Inc.*, Case No. 08-CV-0248- JAH-WVG (S.D. Cal. Sept. 28, 2012) (Judge Houston awarded 30% in attorneys' fees).

Additionally and contrary to what the objectors claim, the settlement administration and notice expenses are not only a benefit to the class, but a necessity. A settlement or payout to Class Members would be meaningless without

---

[14] Section 6.01 of the Agreement allows a higher fee not requested here; it states that "Class Counsel will be making a request for attorneys' fees totaling $3,000,000 or less.., plus costs."

some entity to manage the payout and notice to the Class Members. As a result of these expenses, Class Members become informed of the nature of the Settlement, the specific terms of the Settlement, and, more importantly, of their rights regarding Defendant's alleged violation. This is true even if the Class Members choose to object or to opt out.

The minuscule number of objections to the requested fee also support Plaintiffs' request.[15] *See Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1378 (9th Cir. 1993); *see also In re Rite Aid Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005) (finding that district court did not abuse its discretion by finding that the absence of substantial objections by class members to fee request weigh in favor of approval). Lastly, this Court has already approved the terms of the settlement, including how the administration and notice expenses will be paid and how the attorneys' fees will be calculated, in the Preliminary Approval order. *See* Dkt. Nos. 55 and 113. Thus, the objections to the attorneys' fees should be overruled.

## I. THE OBJECTIONS TO THE *CY PRES* COMPONENT SHOULD BE OVERRULED

Objectors Williams and Kron object to the inclusion of a *cy pres* provision in the settlement (Exs. 6 and 9, respectively).

The doctrine of *cy pres* is frequently applied in the settlement of class actions where the proof of individual claims would be burdensome or <u>distribution of damages costly</u>. *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012), (quoting *Six Mexican Workers v. Ariz. Citrus Growers,* 904 F.2d 1301, 1305 (9th Cir.1990)). Used in lieu of direct distribution of damages, the doctrine of *cy pres* is an alternative for settlement of class actions that allows for aggregate calculation of damages, the use of summary claim procedures, and distribution of unclaimed funds to indirectly benefit the entire class. *Id.* To ensure that a class action settlement retains some connection to the plaintiff class and the underlying claims, a *cy pres* award must qualify as the next best distribution to giving the funds directly to class members. *Id.* To avoid the many nascent dangers to the fairness of the distribution process, there must be a driving nexus between the plaintiff class

---

[15] In this case, there are only 3 independent objections regarding attorneys' fees.

and the *cy pres* beneficiaries. *Id.*  A *cy pres* award in a class action settlement must be guided by (1) the objectives of the underlying statutes, and (2) the interests of the silent class members. *Id.*

However, the issue of *cy pres* distribution is premature until it is determined that there are unclaimed funds. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009) (finding *cy pres* distribution "becomes ripe only if entire settlement fund is not distributed to class members" and, since "the fund in this case may well be depleted before *cy pres* kicks in[,] [w]e… decline to consider the propriety of *cy pres* at this time."), citing *Six Mexican Workers,* 904 F.2d  at 1305. Following this logic, the issue of *cy pres* distribution is premature, or even entirely unnecessary, if there will not be any unclaimed funds. The alternatives to a *cy pres* recipient would be: 1) a second round of distribution to class members, 2) the money escheats to the state, or 3) the money reverts to defendant. *See Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1307 (9th Cir. 1990).

### 1. A *CY PRES* WILL ONLY EXIST IF THERE ARE UNCLAIMED FUNDS AS ALL SETTLEMENT PROCEEDS WILL BE DISTRIBUTED TO THE CLASS

Here, the *cy pres* provision was meant only to provide some finality to the settlement process, if there are uncashed checks by Class Members.  Although the Settlement Agreement provides that any unclaimed funds will be distributed to a *cy pres* recipient as determined by the Parties and approved by the Court (*see* Agr. §§ 5.02 and 11.02), in this case, there is no need for a *cy pres* recipient, as the $11,268,058 settlement fund ("Settlement Fund") will be completely exhausted. Decl. of Swigart at ¶ 8, attached to Motion for Final Approval; Dkt. No. 122.  After the discovery of the Group 2 Class Members, the maximum total Settlement Fund was increased from $9,000,000 to $11,268,058. Addendum § 5.05. The Settlement Fund was increased so that all Class Members, including Group 1 and Group 2 members, whom submitted valid claim forms receive a settlement check of about $69.97. *Id.* at § 5.06. After all Class Members cash their settlement checks and all

HYDE & SWIGART
San Diego, California

Settlement Costs[16] are deducted, the $11,268,058 Settlement Fund will be exhausted. It is reasonable to assume that Class Members who took the time to file a timely claim will put forth the effort to cash their settlement check, ensuring that there will be no need for a *cy pres* recipient. If, however, there are some Class Members that do not cash their settlement checks, Plaintiff has made the most economically sensible choice here, in choosing to use a *cy pres* recipient to be agreed upon by the parties and approved by the Court when and if the need arises. Accordingly, all the objections addressing the *cy pres* component are unfounded as there will likely not be a need for the *cy pres* component in this case.

Kron objects to the *cy pres* provision because the parties have not selected a proposed *cy pres* recipient, nor have they determined the proposed use of the *cy pres* fund. Exhibit 9 at 4:2-4. Kron further testified in his deposition that "[i]f the settlement fund is not exhausted, the court should: (a) increase the payments to those who filed claims or provide additional notice to the class and extend the claims period; or, (b) require clarification with regards to the *cy pres* distribution." *Id*. at 4:6-9.

As stated above, the issue of *cy pres* distribution is premature until it is determined that there are unclaimed funds (there may not be). *Rodriguez*, 563 F.3d at 966. Hence, any objections to the *cy pres* provision should be overruled as meritless.

**J.    THE OBJECTIONS TO THE RELEASE PROVISION SHOULD BE OVERRULED**

Only Objector Kron takes issue with the release alleging it is overbroad because it releases "claims that arise out of or relate in any way to the use of an 'automatic telephone dialing system' or an 'artificial or prerecorded voice'." Exhibit 9 at 3:7-8. This, Kron maintains, is unfair and unreasonable since the Class

---

[16] Settlement Costs means all costs incurred in the litigation by the Class and their attorneys, including but not limited to Plaintiff's attorneys' fees, their costs of suit, Plaintiff's expert or consultant fees, incentive payments paid to Connor and Bywater, notice costs, costs of claims administration and all other costs of administering the settlement. Agr. § 2.18.

has not been adequately compensated for such an expansive release. *Id.* at 3:12. However, the release merely releases claims related to Defendant's use of an ATDS and/or prerecorded voice messages from the time of the commencement of the Class Period to July 2011. *See* Agr. § 16.01(A). Furthermore, this Court has already approved the settlement, including the release provision, in the Preliminary Approval order. Dkt. Nos. 55 and 113. Thus, the Court should overrule Kron's objection to the release provision, especially in the absence of any legal authority to support this argument. *See In re Enron Corp.*, 586 F. Supp. 2d at 804.

## IV. CONCLUSION

The objectors present no grounds for why this settlement is not adequate, fair and reasonable. For the foregoing reasons, the objections should be overruled and final approval of the settlement granted.

Respectfully submitted,

Dated: November 4, 2014

**KAZEROUNI LAW GROUP, APC**

By:  /s/ Abbas Kazerounian
     ABBAS KAZEROUNIAN, ESQ.


**HYDE & SWIGART**


By:  /s/ Joshua Swigart
     JOSHUA B. SWIGART, ESQ.


**LAW OFFICES OF DOUGLAS J. CAMPION, APC**


By:  /s/ Douglas J. Campion
     DOUGLAS J. CAMPION, ESQ.


Douglas J. Campion (SBN: 75381)
Law Offices of Douglas J. Campion, A.P.C.
409 Camino Del Rio South, Suite 303
San Diego, CA 92108
Telephone:  (619) 299-2901
Facsimile:  (619) 858-0034