1  STROOCK & STROOCK & LAVAN LLP
   JULIA B. STRICKLAND (State Bar No. 083013)
2  LISA M. SIMONETTI (State Bar No. 165996)
   ARJUN P. RAO (State Bar No. 265347)
3  JULIETA STEPANYAN (State Bar No. 280691)
   2029 Century Park East, Suite 1600
4  Los Angeles, California  900637-3086
   Telephone: 310-556-5800
5  Facsimile: 310-556-5959
   Email: *lacalendar@stroock.com*
6
   Attorneys for Defendant
7    JPMORGAN CHASE BANK, N.A.

8
                    **UNITED STATES DISTRICT COURT**
9
                  **SOUTHERN DISTRICT OF CALIFORNIA**
10

11  PATRICIA CONNOR AND SHERI L.          )   Case No. 3:10-cv-01284-GPC-BGS
12  BYWATER, individually and on behalf   )
    of all others similarly situated,     )   **DEFENDANT JPMORGAN CHASE**
13                                         )   **BANK, N.A.'S OPPOSITION TO**
                                           )   **OBJECTIONS TO FINAL**
14               Plaintiffs,               )   **APPROVAL OF SETTLEMENT**
                                           )
15          v.                             )
                                           )   Date:  December 4, 2014
16  JPMORGAN CHASE BANK, N.A.,             )   Time:  1:30 p.m.
17  CHASE BANK USA, N.A., AND              )   Place:  Courtroom 2D
    FEDERAL NATIONAL MORTGAGE              )
18  ASSOCIATION a/k/a/ FANNIE MAE,         )   [Request for Judicial Notice and
                                           )   Declaration of Julieta Stepanyan filed
19               Defendants.               )   concurrently]
                                           )
20  ─────────────────────────────────────

21

22

23

24

25

26

27

28

DEFENDANT JPMORGAN CHASE BANK, N.A.'S OPPOSITION TO
OBJECTIONS TO FINAL APPROVAL OF SETTLEMENT
CASE NO. 3:10-cv-01284-GPC-BGS

LA 51806833

# TABLE OF CONTENTS

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067–3086

**Page**

I.    INTRODUCTION ................................................................. 1

II.   RELEVANT PROCEDURAL BACKGROUND ............................................. 2

      A.   Group 1 Settlement And Preliminary Approval ........................ 2

      B.   Group 1 Notice And Notice To Berry ................................. 3

      C.   Group 2 Settlement ................................................. 4

      D.   Group 2 Preliminary Approval ....................................... 5

III.  ARGUMENT .................................................................... 6

      A.   Berry's Objection Is Untimely And Should Be Stricken ............... 6

      B.   The Objections Each Fail On The Merits ............................. 8

           1.   The Settlement Is Fair, Adequate and Reasonable ............... 8

                a)   This Case Is Complex And Litigation Would Be
                     Risky And Expensive ..................................... 9

                b)   The Settlement Amount Is The Result Of
                     Compromise By The Parties And Is Appropriate For
                     This Case .............................................. 11

           2.   The Notice Program Was Adequate And The Best
                Practicable Under The Circumstances ......................... 13

           3.   The Scope Of The Release Is Appropriate ..................... 17

           4.   Any Objections Regarding Future Cy Pres Distribution Are
                Premature ................................................... 18

      C.   Berry's Opt Out Request Also Is Untimely And Should Be
           Rejected .......................................................... 19

IV.   CONCLUSION ................................................................. 22

LA 51806833

1

2

3

**Cases**

4

5

Adams v. AllianceOne Receivables Mgmt., Inc.,
   S.D. Cal., Case No. 08-cv-0248-JAH-WVG ...................................................... 12

6

7

Am. Int'l. Grp., Inc. v. Am. Int'l. Bank,
   926 F.2d 829 (9th Cir. 1991) .................................................................................. 7

8

9

Arthur v. Sallie Mae, Inc.,
   No. 10-CV-00198-JLR, 2012 WL 4075238 (W.D. Wash. Sept. 17,
   2012) ............................................................................................................. 10, 18

10

11

Bowman v. UBS Fin. Servs., Inc.,
   No. C 04 3525 MMC, 2007 WL 1456037 (N.D. Cal. May 17, 2007) .................. 20

12

13

Bratton v. Bethlehem Steel Corp.,
   649 F.2d 658 (9th Cir. 1980) .................................................................................. 7

14

15

In re Checking Account Overdraft Litig.,
   830 F. Supp. 2d 1330 (S.D. Fla. 2011) ................................................................ 19

16

17

Churchill Vill., LLC v. Gen. Elec.,
   361 F.3d 566 (9th Cir. 2004) .................................................................................. 8

18

19

Class Plaintiffs v. Seattle,
   955 F.2d 1268 (9th Cir. 1992) ................................................................................ 8

20

Cohorst v. BRE Props., Inc.,
   No. 10CV2666 JM BGS, 2012 WL 153754 (S.D. Cal. Jan. 18, 2012) .................. 6

21

22

Costello v. United States,
   365 U.S. 265 (1961) ................................................................................................ 7

23

24

25

Dent v. ITC Serv. Grp., Inc.,
   No. 2:12-CV-00009-JCM, 2013 WL 5437331 (D. Nev. Sept. 27,
   2013) ...................................................................................................................... 18

26

Desai v. ADT Sec. Servs., Inc.,
   N.D. Ill., Case No. 1:11-cv-1925 .......................................................................... 12

27

28

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067–3086

LA 51806833

Emanuel v. L.A. Lakers, Inc.,
    No. CV 12-9936-GW, 2013 WL 1719035 (C.D. Cal. Apr. 18, 2013) ................. 10

Fields v. Mobile Messengers Am., Inc.,
    No. C 12-05160 WHA, 2013 WL 6073426 (N.D. Cal. Nov. 18,
    2013) ...................................................................................................... 10

Franco v. Ruiz Food Prods., Inc.,
    No. 1:10-CV-02354-SKO, 2012 WL 5941801 (E.D. Cal. Nov. 27,
    2012) ...................................................................................................... 18

Georgine v. Amchem Prods., Inc.,
    1995 WL 251402 (E.D.Pa.1995) .............................................................. 21

In re Gypsum Antitrust Cases,
    565 F.2d 1123 (9th Cir.1977) ................................................................... 21

Hanlon v. Chrysler Corp.,
    150 F.3d 1011 (9th Cir. 1998) ................................................................... 8

In re Heritage Bond Litig.,
    No. CV 02-382 DT, 2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June
    10, 2005) ................................................................................................. 6

Jamison v. First Credit Servs., Inc.,
    290 F.R.D. 92 (N.D. Ill. 2013) .................................................................. 10

Jarrow Formulas, Inc. v. Nutrition Now, Inc.,
    304 F.3d 829 (9th Cir. 2002) ................................................................... 7

Kaufman v. Am. Express Travel Related Svcs.,
    No. 07 C 1707, 2010 WL 3365921 (N.D. Ill. Aug. 19, 2010) ........................... 15

Kevin Lemiuex v. Global Credit & Collection Corp.,
    S.D. Cal., Case No. 3:08-cv-01012-IEG-POR ...................................... 12

Laguna v. Coverall N. Am., Inc.,
    753 F. 3d 918 (9th Cir. 2014) ................................................................... 7

Lambert v. Buth-Na-Bodhaige, Inc.,
    No. 2:14-cv-00514-MCE-KJN, 2014 U.S. Dist. LEXIS 116817 (E.D.
    Cal. Aug. 20, 2014) .................................................................................. 9

DEFENDANT JPMORGAN CHASE BANK, N.A.'S OPPOSITION TO
OBJECTIONS TO FINAL APPROVAL OF SETTLEMENT
CASE NO. 3:10-cv-01284-GPC-BGS

LA 51806833

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067–3086

Maria Agne v. Papa John's Int'l, Inc.,
    W.D. Wash., Case No. 2:10-cv-01139 .................................................. 12

Moore v. Verizon Commc'ns Inc.,
    No. C 09-1823 SBA, 2013 WL 4610764 (N.D. Cal. Aug. 28, 2013) .................... 6

Officers for Justice v. Civil Serv. Comm'n,
    688 F.2d 615 (9th Cir. 1982) cert. denied, 459 U.S. 1217 (1983) ........ 8, 11, 12, 19

Pinkard v. Wal-Mart Stores, Inc.,
    No. 3:12-cv-02902-CLS, 2012 WL 5511039 (N.D. Ala. Nov. 9,
    2012) .............................................................................................. 11

Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship.,
    507 U.S. 380 (1993).......................................................................... 20, 21

In re Prudential Secs. Inc. Ltd. P'ships Litig.,
    164 F.R.D. 362 (S.D.N.Y. 1996) .............................................................. 20

Robbins v. Coca-Cola-Co.,
    No. 13-CV-132-IEG NLS, 2013 WL 2252646 (S.D. Cal. May 22,
    2013) ................................................................................................. 9

Rose v. Bank of Am. Corp.,
    No. 5:11-CV-02390-EJD, 2014 WL 4273358 (N.D. Cal. Aug. 29,
    2014) ................................................................................ 9, 10, 11, 12

Sarabi v. Weltman, Weinberg & Reis Co., L.P.A.,
    S.D. Cal., Case No. 3:10-cv-01777-AJB-NLS, Dkt. No. 42 (Feb. 15,
    2013) ................................................................................................ 12

Saunders v. NCO Fin. Sys.,
    No. 12-CV-1750, 2012 WL 6644278 (E.D.N.Y. Dec. 19, 2012) ...................... 11

Silber v. Mabon,
    18 F.3d 1449 (9th Cir. 1994) .................................................................. 19

Smith v. Microsoft Corp.,
    297 F.R.D. 464 (S.D. Cal. 2014) ............................................................... 9

Speiser, Krause & Madole P.C. v. Ortiz,
    271 F.3d 884 (9th Cir. 2001) ................................................................... 21

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

LA 51806833

Steinfeld, et al. v. Discover Fin. Servs.,
    N.D. Cal., Case No. 3:12-cv-1118 .................................................................... 12

In re TFT-LCD (Flat Panel) Antitrust Litig.,
    No. MDL 3:07-MD-1827 SI, 2011 WL 7575004 (N.D. Cal. Dec. 27,
    2011) ........................................................................................................................ 6

Walter v. Hughes Comms., Inc.,
    N.D. Cal., Case No. 09–2136 SC ................................................................... 17

Walter v. Hughes Comms., Inc.,
    No. 09–2136 SC, 2011 WL 2650711 (N.D. Cal. July 6, 2011) ..................... 16, 17

White v. Experian Info., Inc.,
    No. SACV-05-1070 DOC, 2011 WL 2972054 (C.D. Cal. July 15,
    2011) ...................................................................................................................... 12

**Statutes**

47 U.S.C. § 227 (b)(1)(A) .......................................................................................... 9

**Other Authorities**

Fed. R. Civ. Proc 23(e) .............................................................................................. 8

Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d,
    § 1797 at p. 376 ...................................................................................................... 19

DEFENDANT JPMORGAN CHASE BANK, N.A.'S OPPOSITION TO
OBJECTIONS TO FINAL APPROVAL OF SETTLEMENT
CASE NO. 3:10-cv-01284-GPC-BGS

LA 51806833

# I.    INTRODUCTION

Defendant JPMorgan Chase Bank, N.A. ("Chase") respectfully submits that the Court should overrule the Objections to the Settlement Agreement[1] filed in connection with the pending Motion for Final Approval of Class Action Settlement ("First Motion for Final Approval").  (See Dkt. No. 122.)  Despite the fact that direct mailed notice ("Postcard Notice") was delivered to 95.7% of the over 3 million class members identified through Chase's available records, only 56 persons timely opted out of the Settlement and only three substantive Objections[2] remain outstanding.[3] (See Declaration of Kenneth Jue, Dkt. No. 122-8 at ¶ 12.)  In addition, 112,467 claims were submitted by Settlement Class Members for payments of $69.97,

---

[1] Capitalized terms are defined in the Settlement Agreement and Release and the Amendment to Settlement Agreement and Release (together, the "Settlement Agreement"), unless otherwise indicated.

[2] The three substantive objections were filed by Thomas Berry ("Berry"), a Group 1 Settlement Class Member; Stephen A. Kron ("Kron" and together with Berry, the "Objectors"), a Group 2 Settlement Class Member; and Robert J. Michener, a Group 2 Settlement Class Member.  This Opposition responds only to the objections of Berry and Kron, as Plaintiffs' Opposition to Objections to Final Approval of Settlement sufficiently responds to Mr. Michener's Objection.  Six additional Group 1 "objections" and one Group 2 "objection" were sent to the Claims Administrator, but were not filed with the Court, and one additional Group 2 "objection" was filed with the Court, but none of them state any coherent grounds for denying final approval.  Specifically: (1) Ivory M. Jenkins-Blaney (Group 1), Jose Herrera (Group 1), Adriana Herrera (Group 1), Carmen Vara (Group 1), Debbie S. Shabina (Group 1), James Norman (Group 2) and Glenda Smith Norman (Group 2) state only that they are objecting to the Settlement, without providing any grounds; and (2) Curtis Williams (Group 1) and Tammy Renee Rodriguez (Group 2) appear to be dissatisfied with Chase in matters unrelated to the subject matter of this litigation and additionally appear to be dissatisfied with the amount of recovery by each Settlement Class Member.  To the extent that objections relate to the recovery by Settlement Class Members, this point is addressed in Section III.B.2., below.  Mr. Williams also appears to be dissatisfied with any cy pres distribution, which is addressed in Section III.B.4, below.  Plaintiffs' Opposition to Objections to Final Approval of Settlement addresses all objections to Class Counsel's fee awards.

[3] Cheryl Kron (See Dkt. No. 125) and Glenice May and Janiley Lynne Camarista (See Dkt. No. 127) have withdrawn their Objections.  Additionally, Class Counsel has informed Chase that John W. Davis (See Dkt. No. 63) will be withdrawing his Objection, and therefore Chase does not provide a response here.

- 1 -

DEFENDANT JPMORGAN CHASE BANK, N.A.'S OPPOSITION TO
OBJECTIONS TO FINAL APPROVAL OF SETTLEMENT
CASE NO. 3:10-cv-01284-GPC-BGS

LA 51806833

showing further support for the Settlement. As amply demonstrated below, the Objections present no serious basis for disrupting this Settlement.

Initially, Berry's objection, <u>which is over two years late</u> and violates this Court's May 30, 2014 Order preliminarily approving the Group 2 Settlement, should be disregarded as untimely. Moreover, on the merits, Objectors' challenges to the Settlement all fail. Contrary to these Objectors' contentions, the Postcard Notice specifically sets forth the process for opting out of or objecting to the Settlement and directs Settlement Class Members to the settlement website for more detailed information regarding what claims are released, including a detailed long form notice (the "Website Notice"). The notice program, which this Court previously found to be "the best practicable under the circumstances," and the contents of the Postcard Notice and Website Notice are reasonably calculated to apprise all Settlement Class Members of the terms of the Settlement, consistent with Due Process requirements. Additionally, the Settlement, including the Release, is fair, adequate and reasonable, and provides substantial value to Settlement Class Members in resolution of their uncertain claims.

Accordingly, Chase respectfully requests the Court to overrule the Objections and grant final approval to the Settlement.

## II.    RELEVANT PROCEDURAL BACKGROUND

### A.    Group 1 Settlement And Preliminary Approval.

Plaintiff Patricia Connor filed this action in June 2010.[4] After six settlement conferences with Magistrate Judge Bernard Skomal and preliminary discovery, in January 2012, the parties entered into the Settlement. On March 12, 2012, the Honorable Dana Sabraw preliminarily approved the Settlement ("Group 1

---

[4] On May 15, 2015, the Court ordered that the Second Amended Complaint, the operative complaint on behalf of Patricia Connor and Sheri L. Bywater, be filed <u>nunc pro tunc</u> to March 12, 2012.

- 2 -

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

LA 51806833

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

Preliminary Approval Order"). (<u>See</u> Dkt. No. 55.) In approving the Settlement, Judge Sabraw reviewed the terms of the notice program as well as the draft proposed notices and held "that the foregoing program of Class Notice and the manner of its dissemination is the best practicable notice under the circumstances and is reasonably calculated to apprise Settlement Class Members of the pendency of this Action and their right to object to or exclude themselves from the Settlement Class." (<u>Id.</u> at ¶ 8.)

With respect to opt out requests, Judge Sabraw ordered any person who wished to be excluded from the Settlement to send "a written request to a designated address within ninety (90) days after entry of this Order." (<u>Id.</u> at ¶ 10(a).) Judge Sabraw further ordered that any Settlement Class Member who failed to comply with the Order "will be bound by all determinations and judgments in the Action." (<u>Id.</u>) As to objections, Judge Sabraw ordered that a Settlement Class Member "must make any objection in writing and file it with the Court not later than ten (10) [days] after the end of the Claims Period." (<u>Id.</u> at ¶ 11(b).) Again, Judge Sabraw ordered that "[a]ny Class Member who fails to comply with these provisions shall waive and forfeit any and all rights the Class Member may have to appear separately and/or to object, and shall be bound by all the terms of this Stipulation of Settlement and the Settlement, and by all proceedings, orders, and judgments in the Litigation." (<u>Id.</u>)

## B. Group 1 Notice And Notice To Berry.

Pursuant to the terms of the Group 1 Preliminary Approval Order, direct mail notice to Group 1 was sent on April 11, 2012. (<u>See</u> Dkt. No. 66 at ¶ 7.) Direct mail notice was provided to Berry to his address of record in Tampa, Florida. (<u>See</u> Request for Judicial Notice ("RJN"), Ex. A.) Pursuant to the express terms of the Group 1 Preliminary Approval Order, the opt out deadline for Group 1 was July 10, 2012 and the objection deadline was July 20, 2012. (<u>See</u> Dkt. No. 66 at ¶¶ 19, 21.) These deadlines were included in the Group 1 Postcard Notices mailed to each

LA 51806833

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

Settlement Class Member, including Berry, on April 11, 2012.  (See Dkt. No. 66 at ¶¶ 5, 7.)

### C. Group 2 Settlement.

The First Motion for Final Approval of the Settlement was filed on July 20, 2012 and the hearing was scheduled for August 3, 2012.  While that Motion was pending, the Parties learned that the class list may be incomplete.  On the Parties' joint motion, the final approval hearing was therefore continued.

Thereafter, Chase determined that the Group 1 class list in fact did not include all persons who met the Settlement Class definition.  Chase thoroughly reviewed its processes to ensure that it identified each Settlement Class Member.  Through this review, additional Settlement Class Members were identified, as addressed in the Amendment to Settlement Agreement and Release, collectively referred to as the "Group 2 Settlement Class Members."  Substantial time, effort and expense went into the identification of all Settlement Class Members, including working with a third party consultant to validate Chase's methodology.

On July 31, 2013, the Parties participated in another mediation and ongoing negotiations with a private mediator (Judge Edward A. Infante (Ret.) of JAMS) to address inclusion of Group 2 Settlement Class Members in the Settlement.  As a result of these negotiations, the Parties agreed upon a settlement structure that built upon the initial Settlement Agreement and Release, which culminated in the Parties' signing the Amendment to the Settlement Agreement and Release in or about March 2014.  Specifically, the Parties agreed that Group 2 Settlement Class Members would be entitled to make a claim on the same bases as set forth in the Settlement Agreement and Release, and each Group 2 claimant would recover $69.97 per claim, which was the amount estimated to be recovered by Group 1 Settlement Class Members based upon the number of previously submitted claims for Group 1.  (See Dkt. No. 100-5, at ¶ 5.06.)

- 4 -

DEFENDANT JPMORGAN CHASE BANK, N.A.'S OPPOSITION TO
OBJECTIONS TO FINAL APPROVAL OF SETTLEMENT
CASE NO. 3:10-cv-01284-GPC-BGS

LA 51806833

Additionally, the Parties agreed that the Claims Administrator would send Postcard Notices to all Group 2 Settlement Class Members (i.e., only to persons who did not previously receive notice of the Settlement) using the same methods described in the Settlement Agreement and Release for Group 1 as well as update and maintain the settlement website. (Id. at ¶ 9.06.) Put simply, the Parties agreed that Group 2 Settlement Class Members would be treated exactly the same way as Group 1 Settlement Class Members.

### D. Group 2 Preliminary Approval.

On March 20, 2014, Plaintiffs filed their Unopposed Motion for Preliminary Approval of Class Action Settlement and Certification of Settlement Class for Settlement Class Members in Group 2. (See Dkt. No. 100.) On May 30, 2014, this Court entered its Order granting that Motion ("Group 2 Preliminary Approval Order"). (See Dkt. No. 113.) Importantly, with respect to opt out requests, this Court ordered that "Settlement Class Members previously provided notice as part of the Group 1 Settlement Class Member Notice program and an opportunity to opt out shall not be provided an additional opportunity to opt out." (Id. at ¶ 10(d).) This Court set the hearing for Final Approval of the Settlement for November 14, 2014. (See Dkt. No. 113.) That date, as well as the continued December 4, 2014 hearing date, were promptly posted to the settlement website.

On September 30, 2014, after Postcard Notices had been disseminated to all Group 1 and Group 2 Settlement Class Members pursuant to the Court's Orders and each of them had been given an opportunity to opt out of or object to the Settlement, Plaintiffs filed their Motion in Support of Final Approval of Class Action Settlement ("Second Motion for Final Approval"), seeking approval of the Settlement. (See Dkt. No. 122, 122-8.)

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

LA 51806833

## A.   Berry's Objection Is Untimely And Should Be Stricken.[5]

First, and fatally, Berry's objection and attempt to opt out are untimely – by more than two years – as he is a Group 1 Settlement Class Member.  Courts within the Ninth Circuit routinely overrule objections on the sole basis that they are untimely.  See, e.g., In re TFT-LCD (Flat Panel) Antitrust Litig., No. MDL 3:07-MD-1827 SI, 2011 WL 7575004, at *3 (N.D. Cal. Dec. 27, 2011) (overruling objection that was late by only a few days, and notwithstanding that the objection was mailed on the due date, solely on the basis of being untimely); Moore v. Verizon Commc'ns Inc., No. C 09-1823 SBA, 2013 WL 4610764, at *12 (N.D. Cal. Aug. 28, 2013) (overruling objections solely on the basis of untimeliness); Cohorst v. BRE Props., Inc., No. 10CV2666 JM BGS, 2012 WL 153754, at *2 (S.D. Cal. Jan. 18, 2012) (adopting report and recommendation's finding that objection was untimely when filed two months after the objection deadline); In re Heritage Bond Litig., No. CV 02-382 DT, 2005 U.S. Dist. LEXIS 13555, at *8-9 (C.D. Cal. June 10, 2005) ("This Court received an untimely objection via mail by K. Martin on May 25, 2005, ten days after the filing deadline for oppositions.  [. . .]  [T]he Court does not consider K. Martin's letter in its analysis.").

Here, Berry concedes that he is a member of Group 1 and does not contest that he received direct mail notice to his address of record in April 2012, over two years prior to submitting his opt out request on June 30, 2014 and filing his objection on October 7, 2014.  (See Dkt. No. 124-1 at 17:9-12.)  As a result, pursuant to the Group 1 Preliminary Approval Order, Berry's deadline to opt out was July 10, 2012 and his deadline to object was July 20, 2012.  (See Dkt. No. 55 at ¶¶ 10, 11.)  Berry's June 30, 2014 opt out and October 7, 2014 objection are plainly untimely.  Moreover,

---

[5] Berry's untimely opt out is specifically addressed below in Section III.C.

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

1   Berry's request directly violates this Court's May 30, 2014 Order which explicitly

2   prevents Group 1 Settlement Class Members from opting out or objecting to the

3   Settlement after the dates specified by Judge Sabraw.  (See Dkt. No. 113 at ¶ 10(d).)

4       Berry tellingly cites no authority supporting his position that his extreme delay

5   should be excused.  Instead, the sole case cited by Berry, Laguna v. Coverall N. Am.,

6   Inc., 753 F. 3d 918 (9th Cir. 2014), supports only the general proposition that a

7   district court may exercise discretion in considering an objection and/or opt out

8   request filed shortly after the deadline.[6]  Notably, the objection in Laguna was filed

9   only three weeks after the court mandated deadline.  See Laguna, 753 F. 3d at 921.

10  Berry does not cite, and Chase has not located, any opinion wherein an objection

11  filed over two years past the deadline was considered.

12      The doctrine of laches further confirms that this Court must reject Berry's

13  objection.  "The fundamental premise of laches is that those who sleep on their rights

14  surrender them; if you snooze, you lose."  Am. Int'l. Grp., Inc. v. Am. Int'l. Bank,

15  926 F.2d 829, 835 (9th Cir. 1991).  Laches applies under the following

16  circumstances, both present here: "(1) lack of diligence by the party against whom

17  the defense is asserted, and (2) prejudice to the party asserting the defense."  Bratton

18  v. Bethlehem Steel Corp., 649 F.2d 658, 666 (9th Cir. 1980) (quoting Costello v.

19  United States, 365 U.S. 265, 282 (1961)).  As the Ninth Circuit has held, "one who

20  seeks the help of a court of equity must not sleep on his rights."  Jarrow Formulas,

21  Inc. v. Nutrition Now, Inc., 304 F.3d 829, 835 (9th Cir. 2002) (internal citations and

22  quotation marks omitted).  Berry's lack of diligence, and the prejudice to Chase from

23  not achieving the finality for which it bargained, defeat Berry's belated submissions.

24  The prejudice to Chase is underscored by the fact that the changes to the Settlement

25  ────────────────────

26  [6] Berry states that a review of proposed notice is subject to de novo appellate review.
    While such a broad statement is correct as a matter of law, it does not address the
27  issue here, which is whether Berry's untimely request to opt out and/or object should
    be considered.

28

- 7 -

LA 51806833

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

1 proposed by Berry would require re-notice to the Settlement Class at substantial

2 expense. To raise these issues <u>after</u> the expense of notice to Group 2 Settlement

3 Class Members, when his objections were due long before the Group 2 Settlement

4 was even before this Court, should not be indulged.

5   For all these reasons, Chase respectfully requests that the Court strike and/or

6 deny Berry's belated objection and opt out request.

7   **B.**   **The Objections Each Fail On The Merits.**

8     **1.**   **The Settlement Is Fair, Adequate and Reasonable.**

9   As a matter of public policy, settlement of litigation short of trial is strongly

10 favored, particularly where complex class actions are concerned. <u>See, e.g.,</u> <u>Class</u>

11 <u>Plaintiffs v. Seattle</u>, 955 F.2d 1268, 1276 (9th Cir. 1992). With respect to a class

12 action settlement, the court's task is to "reach a reasoned judgment that the

13 agreement is not the product of fraud or overreaching by, or collusion between, the

14 negotiating parties, and that the settlement, <u>taken as a whole</u>, is fair, reasonable and

15 adequate to all concerned." <u>Officers for Justice v. Civil Serv. Comm'n</u>, 688 F.2d

16 615, 625 (9th Cir. 1982) <u>cert. denied</u>, 459 U.S. 1217 (1983) (emphasis added). A

17 trial court has broad discretion in making its "reasoned judgment" as to whether a

18 settlement is fair, adequate and reasonable. <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d

19 1011, 1026-27 (9th Cir. 1998). In this regard, the Ninth Circuit has enumerated a

20 number of factors that the Court must balance in evaluating a proposed settlement

21 under Fed. R. Civ. Proc. 23(e) (the "<u>Churchill</u> factors"), including: (1) the strength of

22 the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further

23 litigation; (3) the risk of maintaining class action status throughout trial; (4) the

24 amount offered in settlement; (5) the extent of discovery completed; (6) the

25 experience and views of counsel; (7) the presence of a governmental participant; and

26 (8) the reaction of the class members to the proposed settlement. <u>Churchill Vill.,</u>

27 <u>LLC v. Gen. Elec.</u>, 361 F.3d 566, 575 (9th Cir. 2004); <u>see also</u> <u>Officers for Justice,</u>

28

LA 51806833

688 F.2d at 625; <u>Rose v. Bank of Am. Corp.</u>, No. 5:11-CV-02390-EJD, 2014 WL 4273358, at *4 (N.D. Cal. Aug. 29, 2014). The Objections here, which relate to certain (but not all) of these factors, are flawed in their analysis, as shown below.

      **a)     This Case Is Complex And Litigation Would Be Risky And Expensive.**

Berry erroneously (and belatedly) states that his "claims are strong and would not require much evidence because the elements of a TCPA claim are few and readily provable." Contrary to Berry's unsubstantiated assertions, the claims here are not strong and, if litigated, there is a significant likelihood that Chase would defeat class certification and/or prevail on the merits.

The TCPA prohibits a call placed to a cellular telephone through the use of an automatic telephone dialing system ("ATDS") or a prerecorded and/or artificial voice, <u>unless</u> the call is made for an emergency purpose or with the prior express consent of the called party. <u>See</u> 47 U.S.C. § 227 (b)(1)(A). The definition of an ATDS is far from settled. See <u>Lambert v. Buth-Na-Bodhaige, Inc.</u>, No. 2:14-cv-00514-MCE-KJN, 2014 U.S. Dist. LEXIS 116817, at *7-8 (E.D. Cal. Aug. 20, 2014) (staying case pending petitions to the FCC, including petitions regarding clarification of the definition of an ATDS). Equally important, the burden of establishing whether the call was made with prior express consent is in dispute in the Ninth Circuit. <u>Compare</u> <u>Smith v. Microsoft Corp.</u>, 297 F.R.D. 464, 471 (S.D. Cal. 2014) ("The absence of express prior consent, however, is one of the three elements of a TCPA claim, which Plaintiff bears the burden of satisfactorily establishing for the Court."), <u>with</u> <u>Robbins v. Coca-Cola-Co.</u>, No. 13-CV-132-IEG NLS, 2013 WL 2252646, at *2 (S.D. Cal. May 22, 2013) ("Whether Plaintiffs gave the required prior express consent is an affirmative defense to be raised and proved by a TCPA defendant, however, and is not an element of Plaintiffs' TCPA claim."). As a result, proving a TCPA claim is not "readily provable" as Berry would have the Court believe. To the

- 9 -

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067–3086

LA 51806833

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067–3086

contrary, courts have repeatedly found that TCPA claims are complex. See, e.g., Rose, 2014 WL 4273358, at *4 (finding that TCPA claims and interpretations of "prior express consent" under the TCPA are complex); Arthur v. Sallie Mae, Inc., No. 10-CV-00198-JLR, 2012 WL 4075238, at *1 (W.D. Wash. Sept. 17, 2012) (finding that "the relevant Churchill factors [including complexity of the litigation] weigh in favor of approving the [TCPA] Settlement"). Moreover, the issue of consent routinely is found to defeat class certification in TCPA cases, as relevant to the third Churchill factor (maintenance of class action status). See, e.g., Fields v. Mobile Messengers Am., Inc., No. C 12-05160 WHA, 2013 WL 6073426, at *4 (N.D. Cal. Nov. 18, 2013) (denying certification because plaintiff could not establish that consent issue was appropriate for class treatment); Jamison v. First Credit Servs., Inc., 290 F.R.D. 92, 102-09 (N.D. Ill. 2013) (denying certification because the issue of consent was not appropriate for class treatment).

A review of Berry's own claims confirms the complexity and individual issues here. To recover, Berry must establish both that the calls were made by an ATDS and not made with consent. As noted above, the issue of what constitutes an ATDS is open. Moreover, wholly failing to address the issue of consent, Berry simply asserts that all calls allegedly made to him by Chase violated the TCPA and thus would permit him to recover nearly $8,000,000.[7] (See Dkt. No. 124-1 at ¶ 15.) If Berry provided his telephone number to Chase or otherwise consented to be called, he could not prove a TCPA claim. See, e.g., Emanuel v. L.A. Lakers, Inc., No. CV 12-9936-GW (SHx), 2013 WL 1719035, at *3 (C.D. Cal. Apr. 18, 2013) ("'[T]he authorities are almost unanimous that voluntarily furnishing a cellphone number to a vendor or other contractual counterparty constitutes express consent.'") (quoting

---

[7] Berry's assertion that he was called over 5,000 times is unsupported by any facts. Even if such calls were placed by Chase, which Chase denies, they would only be actionable if placed without the requisite consent, which they were not.

- 10 -

LA 51806833

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

Saunders v. NCO Fin. Sys., No. 12-CV-1750, 2012 WL 6644278, at *3 (E.D.N.Y. Dec. 19, 2012)); Pinkard v. Wal-Mart Stores, Inc., No. 3:12-cv-02902-CLS, 2012 WL 5511039, at *5 (N.D. Ala. Nov. 9, 2012) ("[D]istributing one's telephone number is an invitation to be called, especially when the number is given at another's request.").

The recent decision in Rose, finally approving a TCPA settlement with Bank of America, is instructive. Just two months ago, the Northern District of California considered the complexity of the very same issues as those before the Court here. Granting final approval, Judge Davila explained: "[h]aving reviewed the parties' statements regarding their dispute and the relevant authorities, the Court [found] that both parties have legitimate and material positions." Rose, 2014 WL 4273358, at *4. The Court further reasoned that "even if Plaintiffs prevailed at trial, the sheer size of the award against Defendants, who could be liable for $500 or $1,500 per violation for potentially millions of violations, would likely raise significant post-trial concerns. Such an award would almost certainly be appealed, potentially reversed, and litigation would not be resolved for a significant amount of time." Id. Consequently, the Court found that the first and second Churchill factors (the strength of plaintiff's case and the complexity of the action) weighed in favor of settlement. These same factors also favor the Settlement here.

> b) **The Settlement Amount Is The Result Of Compromise By The Parties And Is Appropriate For This Case.**

The fourth Churchill factor (the settlement amount) also supports final approval of the Settlement. The recovery of $69.97 by each Settlement Class Member who submitted a claim is fair, as confirmed by the low number of opt out requests and large number of claiming Settlement Class Members. "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." Officers for Justice, 688 F.2d

- 11 -

DEFENDANT JPMORGAN CHASE BANK, N.A.'S OPPOSITION TO
OBJECTIONS TO FINAL APPROVAL OF SETTLEMENT
CASE NO. 3:10-cv-01284-GPC-BGS

LA 51806833

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

at 628. "This is particularly true in cases . . . where monetary relief is but one form of the relief requested by the plaintiffs. It is the complete package <u>taken as a whole</u>, rather than the individual component parts, that must be examined for overall fairness." <u>Id.</u> (emphasis added). Additionally, "Courts . . . [should] tread cautiously when comparing the amount of a settlement to speculative figures regarding 'what damages 'might have been won' had [plaintiffs] prevailed at trial.'" <u>White v. Experian Info., Inc.</u>, No. SACV-05-1070 DOC (MLGx), 2011 WL 2972054, at *8 (C.D. Cal. July 15, 2011).

Other district courts, including those within the Ninth Circuit, have granted final approval of TCPA settlements with similar, or even lesser, recoveries for each class member. <u>See, e.g.</u>, <u>Rose</u> (granting final approval of TCPA settlement where each claimant was expected to recover $20-40); <u>Adams v. AllianceOne Receivables Mgmt., Inc.</u>, S.D. Cal., Case No. 08-cv-0248-JAH-WVG, Dkt. No. 137 (Sept. 8, 2012) (granting final approval of TCPA settlement with a maximum recovery amount of $40 per person); <u>Steinfeld, et al. v. Discover Fin. Servs.</u>, N.D. Cal., Case No. 3:12-cv-1118, Dkt. No. 97 (March 31, 2013) (same); <u>Maria Agne v. Papa John's Int'l, Inc.</u>, W.D. Wash., Case No. 2:10-cv-01139, Dkt. No. 389 (Oct. 22, 2013) (granting final approval of TCPA settlement where each class member would automatically receive a merchandise certificate enabling him/her to order a free Papa John's pizza and each claimant would receive a $50 payment); <u>Sarabi v. Weltman, Weinberg & Reis Co., L.P.A.</u>, S.D. Cal., Case No. 3:10-cv-01777-AJB-NLS, Dkt. No. 42 (Feb. 15, 2013) (granting final approval of TCPA settlement where each class member would receive $70 or pro rata share of amount remaining in the settlement fund); <u>Kevin Lemiuex v. Global Credit & Collection Corp.</u>, S.D. Cal., Case No. 3:08-cv-01012-IEG-POR, Dkt. No. 46 (Sept. 20, 2011) (same); <u>Desai v. ADT Sec. Servs., Inc.</u>, N.D. Ill., Case No. 1:11-cv-1925, Dkt. No. 243 (June 21, 2013) (granting final approval of TCPA settlement where each claimant was expected to

- 12 -

DEFENDANT JPMORGAN CHASE BANK, N.A.'S OPPOSITION TO
OBJECTIONS TO FINAL APPROVAL OF SETTLEMENT
CASE NO. 3:10-cv-01284-GPC-BGS

LA 51806833

recover between \$50 and \$100).  Thus, the compensation to be received by each validly claiming Settlement Class Member is fair.

In addition to the monetary recovery, there is also a non-monetary benefit conferred on the Settlement Class.  As an additional benefit to all Settlement Class Members, Chase developed enhancements to its servicing system designed to prohibit calling a cell phone unless the Settlement Class Member's mortgage loan servicing record is systematically coded to reflect the borrower's prior express consent to call his/her cell phone.  These procedures were largely developed and implemented after this action was filed in June 2010.

## 2. The Notice Program Was Adequate And The Best Practicable Under The Circumstances.

The notice program for Group 2 was the same as for Group 1: the Claims Administrator mailed to each Group 2 Settlement Class Member a Postcard Notice, explaining his/her rights to submit a claim, opt out or object to the Settlement, and including the deadlines for each option.  (See Dkt. No. 100-5 at ¶ 9.06, 122-9 at ¶ 7.) The Postcard Notice also provided clear directions for submitting a claim online, by calling a toll-free number or by mail, and directed Settlement Class Members to the settlement website for additional information.  (See Dkt. No. 122-10.)

The Objectors incorrectly assert that the notice program and Claims procedures were inadequate.  Kron essentially argues that, notwithstanding that Group 1 Settlement Class Members already had notice and an opportunity to submit a claim, opt out or object, they should have been provided additional notice and a second opportunity to submit a claim, opt out or object to the Settlement.  Not surprisingly, he fails to cite any case law to support re-notice to Group 1 Settlement Class Members.[8]  Kron further challenges the claims rate.  However, when asked at

---

[8] There also is a substantial question as to whether Kron has standing to advance this argument since he is not a Group 1 Settlement Class Member.

deposition what kind of notice he would have liked and what he believed the claims

rate should be, Kron's responses made little sense:

> Q [Mr. Kazerounian]: [. . .] I have your objection, but you
> don't have a remedy. So in order as Class counsel for me
> to take what you are telling me onboard, I want to know
> what you would have preferred.
> [Objection]
> [A]: That would be up to my attorney to decide.
> Q: Not you?
> A: Answered -- I answered your question.
> Q: So it's not up to you. It's up to your attorney? Is that
> what you are suggesting?
> A: That's what I said.
>
> […]
>
> Q: Okay. So you think [the claims rate is] not satisfactory;
> correct?
> A: That's correct.
> Q: What would you have preferred it to be for it to be
> satisfactory?
> A: 100 percent.

(Declaration of J. Stepanyan in Support of Defendant JPMorgan Chase Bank, N.A.'s

Opposition to Objections to Final Approval of Settlement ("Stepanyan Decl."), Ex. A

[Deposition of Stephen A. Kron 82:5-18, 83:4-9, Oct. 27, 2014]). Kron's objection

has <u>no</u> basis and should be overruled.[9]

 Berry also asserts (again belatedly) that the Website Notice was inadequate.

Berry claims principally that "the notice gives no indication of the scope of the

---

[9] Kron's lack of understanding of the Settlement is also highlighted by his recent
filing of a Motion for Leave to File a Claim, as he is under the impression that he had
to "opt-in in order to object." (<u>See</u> Dkt. No. 137-1.) Additionally, Kron directly
contradicts himself. He states, in his declaration signed under penalty of perjury, that
"[a]fter filing [his] objections, [he] learned that [he] needed to have submitted a
claim as well[,]" yet his Objection actually states that he "will be filing a Motion for
Leave to File a Late Claim." (<u>Cf.</u> Dkt. No. 137-2 <u>with</u> Dkt. No. 125.)

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

Release." Simply put, a review of the Website Notice reveals that Berry is wrong. The Website Notice clearly states:

> By staying in the Settlement Class, you agree to <u>release the "Released Claims," including claims known and unknown</u>. The full text of the Release of Claims sections, including descriptions of the "Released Claims" and "Released Parties," of the Settlement Agreement that applies to both Group 1 and Group 2 is available at www.connorTCPAsettlement.com and <u>is set forth in the Appendix at the end of this notice</u>.

(<u>See</u> Dkt. No. 100-7) (emphases added). The referenced Appendix (included with the Website Notice) sets forth the full text of the Release, which clearly defines "Released Claims" as "any and all claims, causes of action, suits, [. . .] <u>as of the date of the Final Approval Order</u> that arise out of or relate in any way to the use of an 'automatic telephone dialing system' or an 'artificial or prerecorded voice' [. . .]." The Settlement Agreement and Release further explains that "'Final Approval Order' means the Court's Order entered in connection with the Final Approval Hearing" and explains that "'Final Approval Hearing' means the hearing held by the Court to determine whether to approve the Settlement [. . .]." The Settlement Website clearly identified the date of the Final Approval Hearing first as August 3, 2012 and then as November 14, 2014 (and continued to December 4, 2014). There could be no question regarding the end date of the Release Period.

Neither of the cases cited by Berry supports his argument. First, while the Court in <u>Kaufman v. Am. Express Travel Related Svcs.</u>, No. 07 C 1707, 2010 WL 3365921, at *2 (N.D. Ill. Aug. 19, 2010), ordered that "a clear, concise summary of no more than one paragraph of the release should be included in the notice," what Berry fails to disclose is that the final form of class notice in that case, which was

LA 51806833

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

approved by a Court-appointed notice expert and disseminated to the class, reads almost identically to the Website Notice here: [10]

> What rights am I giving up?
>
> If the settlement is approved and becomes effective, all the Court's orders will apply to and legally bind all Class Members, including gift card purchasers, recipients, users and holders. Basically, you will give up any and all claims against American Express that are similar to those in the lawsuit. <u>The specific rights which Class Members are giving up are called Released Claims. The Released Claims are described in detail in the Settlement Agreement available at www.KaufmanClassActionSettlement.com</u>.

(<u>See</u> <u>id.</u>, Dkt. No. 449, approving proposed order filed at Dkt. No. 440-9 (emphasis added)).  Moreover, while the <u>Kaufman</u> class notice directs class members to the settlement agreement for a description of "Released Claims," the Website Notice in this case <u>actually includes</u> the relevant Release provision from the Settlement Agreement.

The second case cited by Berry is equally unpersuasive.  In <u>Walter v. Hughes Comms., Inc.</u>, No. 09–2136 SC, 2011 WL 2650711, at *12 (N.D. Cal. July 6, 2011), the Court denied the proposed notice because it was "obtusely written."  However, the Court's issue with the release language was that it was too broad in including certain <u>types</u> of claims not covered by the settlement:

---

[10] A motion for final approval of the settlement is currently pending.

LA 51806833

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> If one accepts the accuracy of the Long Form's summary of
> the release, all claims relating to [defendant's] charging of
> ETFs, its FAP, its advertising, and the speed of its service
> would be released. This is a particularly broad release, and
> while it does not render the settlement unfair, its <u>breadth</u>
> should be considered in evaluating the fairness of the
> settlement.

<u>Id.</u> (emphasis added). What Berry fails to mention is that the release in <u>Walter</u>, like the Release here, extended to claims through the date of the Final Approval, and the Court there found no issue with that aspect of the release or notice. See <u>Walter v. Hughes Comms., Inc.</u>, N.D. Cal., Case No. 09–2136 SC, Dkt. No. 132 (Nov. 16, 2012).

### 3. The Scope Of The Release Is Appropriate.

The Objectors' assertion that the Release extends for too long a time also should be rejected. The following exchange during Kron's recent deposition – wherein he states that his objection would not be resolved even with a "finite" end – demonstrates that his objection is frivolous:

> Q [by Mr. Kazerounian]: Okay. Now, in your objection in
> Exhibit 3, you -- I think you stated earlier you believe the
> release is too broad; is that correct?
>
> A [ By Mr. Kron]: That's correct.
>
> Q: And your main issue with it is it has no time period?
>
> A: That's correct.
>
> Q:. Okay. If I told you it had a definite end period, would
> that change your mind --
>
> A: No.
>
> Q: -- on your objection?
>
> A: No.
>
> Q: So even if it had a finite time period on the release, your
> objection still -- would still stand; correct?

- 17 -

DEFENDANT JPMORGAN CHASE BANK, N.A.'S OPPOSITION TO
OBJECTIONS TO FINAL APPROVAL OF SETTLEMENT
CASE NO. 3:10-cv-01284-GPC-BGS

LA 51806833

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

1    A: Correct.

2    (Kron Dep. 93:18-25, 94:1-8, Oct. 27, 2014).

3    No doubt recognizing that defendants seek finality as to issues they have

4    bargained to settle, courts routinely approve settlements where the release period

5    extends through the date of entry of final approval of the settlement.  See, e.g.,

6    Arthur, 2012 WL 4075238, at *1 (approving TCPA settlement where the end of the

7    release period, which extended through date of final approval of the settlement,

8    notwithstanding that it was two years after the end of the class period); Franco v.

9    Ruiz Food Prods., Inc., No. 1:10-CV-02354-SKO, 2012 WL 5941801, at *3 (E.D.

10   Cal. Nov. 27, 2012) (granting final approval of settlement with a class comprised of

11   all current or former employees of the defendant between December 15, 2006, and

12   the date of the preliminary approval, but releasing claims through the date of the final

13   approval order); Dent v. ITC Serv. Grp., Inc., No. 2:12-CV-00009-JCM, 2013 WL

14   5437331, at*2 (D. Nev. Sept. 27, 2013) (granting final approval to settlement

15   including claims arising through the date of entry of final approval order).

16   Berry's argument (again belated) that the "scope of the Release does not track

17   the Complaint" incorrectly confuses the definition of the Class Period and the

18   definition of the Release Period.  Neither the Federal Rules of Civil Procedure nor

19   case law require that these two definitions be identical, and it is unclear what point

20   Berry is making.  As explained above, the release period of a class action settlement

21   frequently extends long after the class period, since the class period must be limited

22   in order to provide notice to class members of the pending class action settlement.

23   Berry's argument fails.

24        **4.    Any Objections Regarding Future Cy Pres Distribution Are
25             Premature.**

26   There currently is no cy pres recipient and no need to designate a cy pres

27   recipient, as the total Approved Claims and Settlement Costs exceed $7,000,000.

28

- 18 -

LA 51806833

1  (See Settlement Agreement and Release, ¶ 5.01.)  Should a <u>cy pres</u> payment be

2  necessary as a result of returned or un-cashed checks, any such payment must be

3  approved by the Court.[11]  Kron's objection cites no authority wherein the Court

4  denied final approval of a class action settlement because a <u>cy pres</u> recipient had not

5  been determined.  Courts plainly have "the discretion to approve <u>cy pres</u> provisions

6  of the Settlement [. . .] in the interests of facilitating a settlement in a hard-fought,

7  complex class action."  <u>In re Checking Account Overdraft Litig.</u>, 830 F. Supp. 2d

8  1330, 1355 (S.D. Fla. 2011).

9  **C.    Berry's Opt Out Request Also Is Untimely And Should Be Rejected.**

10  Finally, Berry asks this Court to permit him to opt out of the Settlement two

11  years after the deadline.  As explained by the Ninth Circuit, "to hold that due process

12  requires a second opportunity to opt out after the terms of the settlement have been

13  disclosed to the class would impede the settlement process so favored in the law."

14  <u>Officers For Justice</u>, 688 F.2d at 634-35; <u>see also</u> Wright, Miller & Kane, <u>Federal</u>

15  <u>Practice and Procedure: Civil 2d</u>, § 1797 at p. 376 ("Since plaintiff was given notice

16  and an opportunity to opt out at an earlier stage due process does not require that a

17  second opportunity be given after the settlement terms are disclosed.  At that point

18  the parties' interests are protected by the Rule 23(e) requirements of court approval

19  of the settlement with notice and a fairness hearing at which dissenters can voice

20  their objections").

21  The Court's "discretion to extend a class member's time to opt out" should

22  only be exercised where the class member makes a showing of "'excusable neglect'

23  or good cause for the belated request."  <u>Silber v. Mabon</u>, 18 F.3d 1449, 1454-55 (9th

24  Cir. 1994).  The Supreme Court has outlined four factors in determining whether a

25  ─────────────────

[11]  The Settlement Agreement and Release clearly states that "if [the Parties] cannot
26  agree [regarding the <u>cy pres</u>], the Court shall decide the recipient(s).  If the Parties
are able to agree, the Court shall approve of such recipients prior to any <u>cy pres</u>
27  payments."  (<u>See</u> <u>id.</u> at ¶ 5.02.)

28
- 19 -

DEFENDANT JPMORGAN CHASE BANK, N.A.'S OPPOSITION TO
OBJECTIONS TO FINAL APPROVAL OF SETTLEMENT
CASE NO. 3:10-cv-01284-GPC-BGS

LA 51806833

movant has shown excusable neglect in submitting an untimely opt out request: (1) the danger of prejudice to the nonmoving parties, (2) the length of delay, (3) the reason for the delay, and (4) whether the movant acted in good faith (the "Pioneer factors"). Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship., 507 U.S. 380, 395 (1993). Application of these four factors confirms that Berry's request should be denied.

The second and third Pioneer factors require little discussion, since there is no doubt that Berry's attempted opt out is untimely, as discussed above. (See also RJN, Ex. B.) Fatally, Berry provides no explanation for his two-year delay. Accordingly, these two factors conclusively support a finding that Berry's neglect is not excusable.

The first Pioneer factor (prejudice to Chase) also favors denying Berry's belated request. Chase will be greatly prejudiced if Berry is allowed to opt out, since it will be forced to defend a litigation initiated long after the opt out period closed and when Chase reasonably should have been able to rely on the certainty of settlement. The decision in Bowman v. UBS Fin. Servs., Inc., No. C 04 3525 MMC, 2007 WL 1456037, at *3 (N.D. Cal. May 17, 2007) is instructive here. In that case, the Northern District of California denied movants' untimely request to opt out of a class action settlement, concluding:

> Although there is no showing that [the movants] acted in bad faith by failing to file an exclusion form, and no suggestion that the class settlement would be affected if [the movants] were permitted to opt out, defendants nonetheless would be prejudiced were the Court to permit [the movants] to opt out at this late date, because [the defendant] will have to expend resources defending against claims that it reasonably understood were foreclosed.

(emphases added); see also In re Prudential Secs. Inc. Ltd. P'ships Litig., 164 F.R.D. 362, 370-71 (S.D.N.Y. 1996) (denying leave for extension of time to opt out of class

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

LA 51806833

settlement, rejecting contention that class notice did not adequately inform movants that their claims were released by settlement and finding defendant would suffer "severe prejudice" if extension were granted); Georgine v. Amchem Prods., Inc., 1995 WL 251402 at *7-8 (E.D.Pa.1995) (denying motion to extend opt out deadline where movants timely received notice of opt out deadline and defendants would be prejudiced because "financial certainty" they sought to achieve by entering into settlement would be undermined by having to litigate additional claims).

The fourth and final Pioneer factor (whether Berry acted in good faith) also defeats Berry's request. The undisputed facts are that Berry received direct mail notice in April 2012 and failed to timely file his objection or request to be excluded by the deadlines set by Judge Sabraw. (See also RJN, Ex. B.) Almost two years later, on May 27, 2014, Berry filed a complaint against Chase in the Middle District of Florida for alleged TCPA violations beginning in May 2010. (See Dkt. No. 124-1 at ¶ 15.) Because he cannot dispute that he received direct notice, Berry now tries instead to argue that the Website Notice was somehow misleading, as it would lead an average reader to believe that only calls placed through June/July 2011 were included in the scope of the Release (Id. at 7:6-10; 8:23-24). Yet Berry himself sought relief in his newly-filed complaint for calls beginning in 2010, confirming that he simply did not act timely (i.e., if Berry was somehow confused by the Postcard Notice or the Website Notice and thought only his calls through mid-2011 were included in the scope of this Settlement, he would not have sought relief for calls made in 2010). Very simply, Berry slept on his rights. Ninth Circuit authority compels that Berry's request be denied. See also Speiser, Krause & Madole P.C. v. Ortiz, 271 F.3d 884, 886-87 (9th Cir. 2001) (holding failure to comprehend clear court order not excusable neglect); In re Gypsum Antitrust Cases, 565 F.2d 1123, 1126 and n. 1 (9th Cir.1977) (finding failure to submit timely claim not excusable where class notice was clear).

- 21 -

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

LA 51806833

## IV.   CONCLUSION

For the foregoing reasons, Chase respectfully requests that the Court overrule the Objections in their entirety, reject Berry's untimely opt out request, and enter an Order finally approving the Settlement.

Dated:  November 4, 2014                    Respectfully submitted,

                                            STROOCK & STROOCK & LAVAN LLP
                                            JULIA B. STRICKLAND
                                            LISA M. SIMONETTI
                                            ARJUN P. RAO
                                            JULIETA STEPANYAN


                                            By:  _____*/s/ Julia B. Strickland*_____
                                                      Julia B. Strickland

                                            Attorneys for Defendant
                                              JPMORGAN CHASE BANK, N.A.

LA 51806833

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067–3086

1

## CERTIFICATE OF SERVICE

I hereby certify that on November 4, 2014, a copy of the foregoing **DEFENDANT JPMORGAN CHASE BANK, N.A.'S OPPOSITION TO OBJECTIONS TO FINAL APPROVAL OF SETTLEMENT** was filed electronically and served by U.S. Mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's EM/ECF System.

*/s/ Julia B. Strickland*
Julia B. Strickland

DEFENDANT JPMORGAN CHASE BANK, N.A.'S OPPOSITION TO
OBJECTIONS TO FINAL APPROVAL OF SETTLEMENT
CASE NO. 3:10-cv-01284-GPC-BGS

LA 51806833