C. Benjamin Nutley (177431)
nutley@zenlaw.com
1055 E. Colorado Blvd., 5th Floor
Pasadena, California 91106
Telephone: (626) 204-4060
Facsimile: (626) 204-4061

*Attorney for Objector John W. Davis*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Patricia Connor, Shari L. Bywater, individually, and on behalf of themselves and all others similarly situated,<br><br>       Plaintiffs,<br><br>   vs.<br><br>JPMorgan Chase Bank and Federal National Mortgage Association a/k/a Fannie Mae,<br><br>       Defendants. | Case No. 10 CV 1284 DMS BGS<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION FOR APPROVAL OF:**<br>**(1) WITHDRAWAL OF DAVIS OBJECTION, AND**<br>**(2) AGREEMENT ALLOCATING OBJECTOR ATTORNEYS' FEES AND INCENTIVE AWARD**<br><br>Date: December 15, 2014<br>Time: 1:30 p.m.<br>Judge: Hon. Gonzalo P. Curiel<br>Courtroom: 2D |

# TABLE OF CONTENTS

I. INTRODUCTION AND FACTUAL BACKGROUND ................................. 1

II. ARGUMENT ........................................................................... 3

A.   Objector has no Further Objections to the Settlement as Amended;
     the Davis Objection may be Withdrawn .............................................. 4

B.   The Fee Allocation to Davis's Counsel Should be Approved ............... 7

  1.   Objector's Counsel Conferred a Compensable Benefit in the Case ... 7

  2.   The Stipulated Allocation Was Negotiated in Good Faith and will
       not Affect the Class's Recovery; This Court should Afford it
       Deference ........................................................................... 9

  3.   The Negotiated Allocation is Reasonable in Light of the Result ...... 11

  4.   The Negotiated Fee is Reasonable in Light of the Risk ................... 13

  5.   The Skill and Expertise of Mr. Davis's Counsel Support the
       Negotiated Fee ................................................................... 16

C.   An Incentive Award for Mr. Davis is supported ................................. 17

# TABLE OF AUTHORITIES

**<u>Cases</u>**

*Bell Atlantic Corp. v. Bolger*
  2 F.3d 1304 (3d Cir. 1993) ........................................................................ 15

*Bowling v. Pfizer, Inc.*
  102 F.3d 777, 781 (6th Cir. 1996) ............................................................. 4

*Consolidated Edison Co. Of New York v. Bodman*
  445 F.3d 438 (D.C. Cir. 2006) .................................................................. 11

*Consumer Cause v. Mrs. Gooch's Natural Food Markets, Inc.*
  127 Cal.App.4th 387 (2005) ...................................................................... 15

*Duhaime v. John Hancock Mut. Life Ins. Co.*
  2 F.Supp.2d 175 (D.Mass. 1998) ............................................................. 10

*Eubank v. Pella Corp.*
  753 F.3d 718 (7th Cir. 2014) ...................................................................... 8

*Fischel v. Equitable Life Assur. Soc'y of U.S.*
  307 F.3d 997 (9th Cir. 2002) .................................................................... 13

*Frankenstein v. McCrory Corporation*
  425 F. Supp. 762 (S.D.N.Y. 1977) ............................................................. 8

*Green v. Transitron Electronics Corp.*
  326 F.2d 492 (1st Cir. 1964) .................................................................... 15

*Hartless v. Clorox Co.*
  273 F.R.D. 630 (S.D. Cal. 2011) .......................................................... 4, 10

*Howes v. Atkins*
  668 F. Supp. 1021 (E.D. Ky. 1987) ............................................................ 8

*In re "Agent Orange" Product Liability Litigation*
  818 F.2d 216 (2d Cir. 1987) ....................................................................... 4

*In re Ampicillin Antitrust Litigation*
  81 F.R.D. 395 (D.D.C.1978) ................................................................. 10, 12

*In re First Databank Antitrust Litigation*
  209 F.Supp.2d 96 (D.D.C. 2002) ............................................................. 12

*In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*
  55 F.3d 768 (3d Cir. 1995) ........................................................................ 10

*In re Prudential Ins. Co. Of Am. Sales Practices Litig.*
  273 F.Supp.2d 563 (D.N.J.2003) ............................................................ 12

*In re Telectronics Pacing Sys., Inc.*
   137 F. Supp. 2d 985 (S.D. Ohio 2001) ........................................... 10

*In re Trans Union Corp. Privacy Litig.*
   629 F.3d 741 (7th Cir. 2011) ...................................................... 8, 11

*Pergamet v. Kaiser-Frazer Corp.*
   224 F.2d 80 (6th Cir. 1955) ............................................................. 12

*Reynolds v. Beneficial National Bank*
   288 F.3d 277, 288 (7th Cir. 2002) ................................................. 15

*Rodriguez v. Disner*
   688 F.3d 645 (9th Cir. 2012) ................................................. 8, 11, 15

*Seigal v. Merrick*
   619 F.2d 160 (2d Cir. 1980) ........................................................... 15

*Shaw v. Toshiba America Information Systems, Inc.*
   91 F.Supp.2d 942 (E.D. Texas 2000) ........................................... 17

*Swedish Hospital v. Shalala*
   1 F.3d 1261 (D.C. Cir. 1993) ......................................................... 12

*Torrisi v. Tucson Electric Power Company*
   8 F.3d 1370 (9th Cir. 1993) ........................................................... 13

*Van Vranken v. Atlantic Richfield Co.*
   901 F.Supp. 294 (N.D.Cal.1995) ............................................. 13, 17

*Vizcaino v. Microsoft Corp.*
   290 F.3d 1043 (9th Cir. 2002) ................................................... 8, 13

*Zucker v. Occidental Petroleum Corp.*
   192 F.3d 1323 (9th Cir. 1999) ......................................................... 7

## **Rules**

Fed. Rule Civ. Proc. 23 ........................................................................ 3, 4

## **Treatises**

Christopher R. Leslie, *The Significance of Silence: Collective Action
   Problems and Class Action Settlements*, 59 Fla. L. Rev. 71 (2007) 14, 15, 16

Edward Brunet, *Class Action Objectors: Extortionist Free Riders or
   Fairness Guarantors*, 2003 U. Chi. Legal F. 403 (2003) ................... 14, 16

# I. INTRODUCTION AND FACTUAL BACKGROUND

Class Counsel and Objector John Davis have reached an agreement by which Davis's counsel will be compensated for his efforts in bringing about the amended settlement in this case.  Mr. Davis also seeks to withdraw the original objection that led to the amended settlement.

Davis's objection resulted in a comprehensive effort by Chase to uncover unidentified class members.  That effort increased the number of eligible class members by over 100%.  Meanwhile, the parties negotiated an amendment to the settlement, with the participation of Davis's counsel.   As a consequence of the objection and the renegotiation of the settlement, Chase is bound to pay an additional $3,960,092 to the newly-discovered class members.

The original approved settlement had a $7 million floor and a $9 million cap (inclusive of all fees, costs, and incidental expenses).  Under its terms, the minimum possible *pro-rata* recovery was $25, until the $9 million cap, at which point the *pro rata* recovery could go below $25 if there were enough valid claims.  Doc. 50 at ECF 12 (citing Settlement Agreement at §5.02).   Initial (Group 1) claims did not meet the $7 million floor, resulting in a recovery of about $69 each for Group 1 claimants.

Thus, there was a reasonable argument that the existing settlement could absorb the newly-discovered Group 2 class members without any

change (except perhaps Chase paying for additional notice or other incremental costs) because the settlement never guaranteed any specific minimum *pro rata* return. That is, even if the claimant pool were doubled, the *pro rata* recovery would still be within the noticed terms of the initial settlement preliminarily approved by the Court.

However, the amendment was designed to ensure that all claiming class members would get approximately $69, by adding up to $3,960,092.09 for new claimants.[1] The amendment effectively converted the settlement, at least for Group 2 members, into a claims-made settlement that added $69.97 to the settlement fund for each claiming class member of Group 2. See Doc. No. 146-1 at ECF 13 (up to 60,998 claims). That also protected the $69.97 recovery already calculated for Group 1 members, by making it unlikely that the addition of Group 2 claims would dilute Group 1's recoveries, and ensuring parity between the two groups for due process purposes. Doc. 105 at ECF 2 (clarifying that Group 1 and Group 2 claimants would receive same *pro rata* amount).

The fee allocation of $345,000, to be taken from Class Counsel's gross fee award, is reasonable. The fees and expense allocation requested equals between 7 to 9 percent of the additional value created by the settlement

---

[1] *See* Doc. 122-1 at ECF 13:8-20 (Memorandum of Points and Authorities in Support of Plaintiff's Motion in Support of Final Approval of Class Action Settlement).

amendment,[2] and approximately 14 percent of the total fees requested by all counsel. The fee allocation was negotiated in good faith with Class Counsel, and the allocation will not reduce the class fund or the recovery of any class member.

## II. ARGUMENT

The withdrawal of an objection to a class settlement requires court approval. Fed. Rule Civ. Proc. 23(e)(5). Although the major changes to the settlement terms and other subsequent events have effectively rendered the Davis objection sustained in pertinent part, resolved by stipulation, or otherwise moot, Rule 23 technically prevents it from being withdrawn without the approval of this Court. As the objection was successful, it may be deemed withdrawn.

Class Counsel also agreed to allocate from their fee award a payment of attorneys' fees to Mr. Davis's counsel, C. Benjamin Nutley. The degree to which the law requires disclosure of the attorneys' fee allocation to (or the approval of) this Court is unclear, particularly where it is a negotiated allocation being paid solely from fees awarded to Class Counsel. *E.g.*,

---

[2] That $4,557,500 value includes the additional $3,960,092 in cash, costs of notice and administration of $580,500, and defendant's agreement to add up to $125,000 in fees. Omitting notice and administration costs and the additional attorneys' fee payment, the fee allocation is 8.5% of the additional cash benefit being paid directly to the Group 2 claimants. Viewed another way, the allocation is 17% of the $1.96 million cash added to the settlement over and above the $9 million cap in the first settlement.

*Hartless v. Clorox Co.*, 273 F.R.D. 630, 646 (S.D. Cal. 2011) *aff'd in part*, 473 F. App'x 716 (9th Cir. 2012) (Rule 23(e)(3) requires identification of agreements with defendant as to total amount of attorneys' fees, which could affect class members' interests, but not the good-faith allocation of the awarded fees among class counsel, which "does not affect the monetary benefit to class members.").[3]

Regardless, as embodied in the Stipulation and Order submitted herewith, objector's counsel and class counsel agreed to seek a separate order approving both the withdrawal of the objection and the fee allocation to Davis's counsel, to ensure a clear public record and full compliance with any interpretation of the rules.

## A.    Objector has no Further Objections to the Settlement as Amended; the Davis Objection may be Withdrawn

As set forth in Plaintiffs' papers in support of the settlement, Mr. Davis's objection about the omission of class members was addressed by defendant's extensive efforts to identify the omitted people.  Doc. No. 146-1

---

[3]    There is authority that fee-sharing agreements among class counsel, at least, must be disclosed so that courts can screen for potential conflicts or skewed incentives.  *E.g., In re "Agent Orange" Product Liability Litigation,* 818 F.2d 216, 226 (2d Cir.), *cert. denied,* 484 U.S. 926 (1987) (class counsel "must inform the court of the existence of a fee sharing agreement at the time it is formulated" so that the court may "prevent potential conflicts from arising"); *cf. Bowling v. Pfizer, Inc.*, 102 F.3d 777, 781 n.3 (6th Cir. 1996) (*in camera* disclosure of fee-sharing required at settlement approval so that court can guard against the "risk that counsel has in some way been 'bought off' and provided with a significant incentive to not represent the class's interest.").

at ECF 12.

On the primary merits issue – the result obtained for the class – Plaintiffs here have also established that the result is squarely within the range found in similar cases. Doc. 139 at 20-21. Davis does not regard the "similar cases" statistic as dispositive. Given potentially large variations in culpability among defendants, it is undesirable to establish a presumptive "going rate" for TCPA cases divorced from their individual merit. However, Davis's counsel has reviewed discovery in the case and conferred at length with Class Counsel concerning the evidence developed in the case, their perception of the risk, and developments in applicable law over the course of the last two years. Nutley Decl., ¶¶ 3, 4. In addition, Davis's counsel is aware of the issues faced in bringing class actions to trial generally and has confirmed through independent research the specific potential issues faced in certifying a TCPA class and bringing the case to trial. Nutley Decl., ¶¶1, 9. On consideration of this multiplicity of factors, including the unusual procedural complications in the case, any further gainsay of the recovery would be unproductive.

Davis's earlier objections to the attorneys' fees have been addressed satisfactorily or rendered inapplicable. Now, Class Counsel's fee request, both in percentage and lodestar/multiplier terms, is more modest than the fee that Davis originally objected to. Class Counsel's papers actually

understate that reduction, for the allocation to Davis's counsel is to be made from the fee awarded to Class Counsel. Thus, while the total fee to all counsel working on the Plaintiffs' side remains just under 20%, Class Counsel's share of that fee is actually slightly less. Class Counsel performed additional work and took additional risk. To Class Counsel's credit, they took up the cause of negotiating a higher settlement value for the class, though there was an argument that they were bound to the earlier settlement and that it could have gone forward essentially unchanged. *See* discussion, *supra*, at 1-2. Given the additional work of counsel, not to mention the significant increase in the class membership and settlement amount, the fee requested now cannot support any reasonable inference of collusion in connection with the settlement.

In fact, now that the claims rates and class compensation are known, Davis further notes that the fee request is based primarily upon dollars *actually claimed* by the class and paid over by Chase, rather than a percentage of a hypothetical fund merely being "made available" for claims. Thus Davis's central objections to the settlement and attorneys' fees no longer apply, and Davis's other objections to the settlement or its amendment have variously been corrected, clarified by the parties, or

mooted by subsequent developments.[4]   Accordingly, Davis submits that the

objection may be deemed satisfied and withdrawn.

## B.  The Fee Allocation to Davis's Counsel Should be Approved

There is substantial legal authority and factual support for an award of

fees to Davis's counsel in this case, and the amount of the allocation is

reasonable.  First, that Class Counsel have agreed to the allocation is

compelling, because it confirms their acknowledgment of the benefit

conferred by Davis and his counsel.   The allocation is objectively reasonable,

given the impact of the objection, Davis's counsel's role in the amendment to

the settlement, and the results of that amendment.

### 1.  Objector's Counsel Conferred a Compensable Benefit in the Case

Davis's objection unquestionably had a beneficial effect on the

litigation, by revealing the omission of a more than half of the affected

consumers, preserving their due process rights.  Even if the settlement had

not been measurably improved afterward, that would support a

discretionary award of fees for contributing adversarial context.[5]

---

[4]     For example, Davis originally objected to the *cy pres* provisions of the
settlement, but it soon became obvious they would not involve a material
amount of money.  *See* Doc. 139 at ECF 29-31 (settlement fund will be
exhausted, such that *cy pres* provisions of settlement need not be
considered).

[5]     *E.g.*, **Error! Main Document Only.***Zucker v. Occidental Petroleum
Corp.*, 192 F.3d 1323, 1329 (9th Cir. 1999) (observing that objector's attorney

But here, the objection resulted in more than backstop advocacy; the settlement was improved, and its revisions require Chase to add $3.9 million to the settlement. That result equitably requires the payment of fees to Davis's counsel; when objections "result in an increase to the common fund, the objectors may claim entitlement to fees on the same equitable principles as class counsel." *Rodriguez v. Disner*, 688 F.3d 645, 658 (9th Cir. 2012) ("*Rodriguez II*"), citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051-52 (9th Cir. 2002); *Eubank v. Pella Corp.*, 753 F.3d 718, 720 (7th Cir. 2014) (observing that "if a settlement more favorable to the class is negotiated and approved, the objectors will receive a cash award that can be substantial.") citing *In re Trans Union Corp. Privacy Litig.*, 629 F.3d 741 (7th Cir. 2011) (directing increased fee award allocation to objecting attorney for helping to increase common fund, despite "inherent uncertainties" in estimating her relative contribution to the increase).

Here, the increase in the settlement amount was not a preordained result of adding the undiscovered class members to the original settlement.

---

had made a "substantial" contribution "by providing an adversarial context in which the district court could evaluate the fairness of attorneys' fees."); **Error! Main Document Only.***Frankenstein v. McCrory Corporation*, 425 F. Supp. 762, 767 (S.D.N.Y. 1977) **Error! Main Document Only.**("where the objections filed produced a beneficial effect upon the progress of the litigation, an award of fees is appropriate."); *Howes v. Atkins*, 668 F. Supp. 1021, 1027 (E.D. Ky. 1987) ("Objectors' counsel ably performed the role of devil's advocate in this litigation and is deserving of a fee award for this service, even though the settlement was not improved.").

*See* discussion, *supra*, at 1-2. It required an amendment to the settlement that succeeded in maintaining the pro-rata recovery at $69.97. As the parties themselves have acknowledged, that amendment was not easily reached and, until recently, was not entirely clarified and finalized in its particulars.

### 2. The Stipulated Allocation Was Negotiated in Good Faith and will not Affect the Class's Recovery; This Court should Afford it Deference

Class Counsel have agreed to pay the fee allocation from their own fee award. Consequently, the allocation of the fee to Davis's counsel will not reduce the amount that would otherwise be paid to the class. Nor is it subject to objection by Defendant, because the total fee sought by Class Counsel (including the fee allocation to objector's counsel) is well under the amount of the "clear sailing" agreement the Settling Parties originally negotiated. *See* Doc. 100-7 at ECF 8, ¶14.

Class Counsel and Davis's counsel negotiated the instant fee allocation in late September, 2014, and reached agreement in principle in early October, 2014. Nutley Decl., ¶12. Because Davis's objection was by that time already substantially and favorably resolved, Class Counsel had no incentive to agree to excessive fees in exchange for the withdrawal of a too-meritorious

objection.[6]   Instead, the primary issue was whether the fee award to Davis's counsel would be higher or lower if sought by contested motion.  That was an issue of direct financial interest to Class Counsel, given the likely source of the requested fee.[7]   The resulting stipulation is an allocation amount negotiated in good faith by sophisticated participants, properly incentivized, with an understanding of the value of the services provided and the range of potential results of a litigated alternative.  The Court should therefore give substantial deference to that negotiated result.  *Hartless v. Clorox Co.*, 273 F.R.D. at 646; *In re Ampicillin Antitrust Litigation*,  81 F.R.D. 395, 400 (D.D.C.1978) (awarding lump-sum fee to be allocated by inter-counsel agreement and commenting that "it is virtually impossible for the Court to determine as accurately as can the attorneys themselves the internal distribution of work, responsibility and risk" relevant to the fee allocation).

---

[6]     *Cf., e.g.*, *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1021-24 (S.D. Ohio 2001) (finding $300,000 payment to settle related claims of single objector, to be taken from a separate fund designated for that purpose, did not prejudice the class and was not a "secret" payment to buy the objector's silence).

[7]     Courts frequently pay successful objectors' counsel from funds allocated to pay class counsel.  **Error! Main Document Only.***Duhaime v. John Hancock Mut. Life Ins. Co.*, 2 F.Supp.2d 175, 176 (D.Mass. 1998) (ordering objector's counsel paid from class counsel's fee fund; because objector had "shared with class counsel the work of producing a beneficial settlement" the Court found it "appropriate that they also share in the fund awarded to recognize the cost of producing the benefit to the class.") citing *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 820 (3d Cir. 1995).

Finally, as explained below, the amount Class Counsel agreed to pay is objectively reasonable, both as a percentage of the increase in the settlement and as a percentage of the total fees requested by Class Counsel.

### 3. The Negotiated Allocation is Reasonable in Light of the Result

In common fund cases, when objectors' efforts lead to an increase in a fund, courts consider the contributions of objectors using the same equitable considerations as are applied to class counsel. *Rodriguez II*, 688 F.3d at 660 ("In awarding attorneys' fees from the common fund generated by litigation, courts are bound by traditional principles of equity and we must review awards to class counsel and objectors in that light.") citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).

Where an objector's efforts lead to an incremental increase in the class fund that can be estimated, then courts use that incremental amount as the benefit conferred for the purpose of setting fees under the common fund doctrine. *In re Trans Union*, 629 F.3d at 748; *Consolidated Edison Co. Of New York v. Bodman*, 445 F.3d 438, 460 (D.C. Cir. 2006) (reversing denial of fees to an attorney who did not represent a certified class and directing that "[P]ayment should be allowed "as a reasonable proportion of the amount actually collected ... for which petitioners' attorneys were responsible") *cf. Swedish Hospital v. Shalala*, 1 F.3d 1261, 1272 (D.C. Cir.

1993) (reminding that courts should "apply a percentage of the fund calculation to only that portion of the fund for which counsel was responsible."); followed in *In re First Databank Antitrust Litigation*, 209 F.Supp.2d 96, 100-101 (D.D.C. 2002) (in case "piggybacking" on FTC action, class counsel would be limited to payment of 30%, or $2.4 million, of the $8 million amount their efforts increased the existing common fund).  Here, the amendment to the settlement provided for an additional 4.5 million in additional value to the class, and approximately $2 million more in cash than the original settlement.  The fee allocation to Davis's counsel is only 7.5 % of the incremental increase in the total value conferred upon class members, and only 8.5% of the additional cash being paid over by Chase to the Group 2 class members.  *See* discussion, *supra*, at 3, fn. 2.

The result is likewise supported by comparing the allocation amount to the total fees requested by Class Counsel.  *E.g.*, *In re Prudential Ins. Co. Of Am. Sales Practices Litig.*, 273 F.Supp.2d 563, 565 (D.N.J.2003) (because objections were responsible for 1.4% of the value of the fund, objectors were awarded 1.4% of total attorneys' fees); *Ampicillin*, 81 F.R.D. at 400 (lump sum fee to be allocated in part based on relative contribution of the attorneys to the group effort); *Pergamet v. Kaiser-Frazer Corp.*, 224 F.2d 80 (6th Cir. 1955) (in derivative case, evaluating district court allocation among principal attorneys and objectors attorneys based upon same "substantial benefit"

standard, considering their relative contributions to result); Here, Class Counsel and Davis's counsel agreed to a payment that is 14% of the entire fee being requested by Class Counsel. Given the magnitude of the effect of the objection on the settlement as a whole, that proportion is surely reasonable.

### 4. The Negotiated Fee is Reasonable in Light of the Risk

It is well-established that fee awards should be set to compensate for the risk faced by lawyers who undertake cases in which their fee award is dependent upon success, and in which they face a risk of nonpayment. *Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1008 (9th Cir. 2002). Thus, Class Counsel here have sought a fee that, cross-checked on a lodestar/multiplier basis, includes a multiplier. Doc. 123-1 at ECF 26:20. So, too, does the allocation to Davis's counsel.[8] Both are within the range of multipliers awarded in contingent common-fund cases.[9]

That is appropriate. In some regards, counsel for objectors face more contingent risk of nonpayment than even class counsel, because they face

_____

[8] As a comparison to Mr. Nutley's current lodestar, the fee represents approximately a 2.75 multiplier. *See* Nutley Decl., ¶¶ 13-14. That lodestar is increasing; Mr. Nutley continues to bill time assisting Class Counsel in connection with final approval.

[9] *See Vizcaino*, 290 F.3d at 1051, n.6; *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (awarding 25% and noting resulting multiplier of 3.6 "which is well within the acceptable range for fee awards in complicated class action litigation such as this."); *Torrisi v. Tucson Electric Power Company*, 8 F.3d 1370, 1376–77 (9th Cir. 1993) (upholding percentage award resulting in a 3.75 multiplier on lodestar).

more hurdles in achieving compensable results. An objection typically challenges a settlement supported by the principal litigants and their sophisticated counsel, provisionally approved by a court, and favored by legal presumption. The inertia of such a settlement is considerable and, consequently, objections that result in a substantive change to a settlement are rare. Christopher R. Leslie, *The Significance of Silence: Collective Action Problems and Class Action Settlements*, 59 Fla. L. Rev. 71, 105 (2007).

Despite facing multiple adverse parties and presumptions, a successful objection typically requires the analysis of numerous case documents and the production of argument within a very short window of time. Edward Brunet, *Class Action Objectors: Extortionist Free Riders or Fairness Guarantors*, 2003 U. Chi. Legal F. 403, 448 (2003) (objectors' counsel "have little time to collect their own information, formulate a coherent position, and formally object to the court); Leslie, *supra*, 59 Fla. L. Rev. 71, 96-97 (concluding that "[a] dearth of information coupled with administrative hurdles and a short response period can combine to make any meaningful objection impractical.")

In spite of all this, even objectors who are successful risk going uncompensated. *See* Brunet, *supra*, 2003 U. Chi. Legal F. at 462 (noting that objectors are unlikely to be compensated for "major victories" in which

they "defeat a proposed settlement so thoroughly that the settlement is never revived.").[10]  In a troublingly persistent theme over the years, some courts have refused to credit objectors for demonstrable improvements in settlements or class recoveries.    *See* Leslie, *supra*, 59 Fla. L. Rev. at 99 & n.190 ("Even in cases in which the objectors did improve the settlement, their fees sometimes are denied."). [11]   This means that successful objectors' counsel sometimes must also successfully prosecute follow-on appeals just to establish their right to a fee award.  Circuit courts have made it clear that the constructive participation of objectors should be fostered.[12]  That can only be

---

[10]      For an example involving Mr. Nutley, see *Consumer Cause v. Mrs. Gooch's Natural Food Markets, Inc.*, 127 Cal.App.4th 387 (2005) (although "focused and persuasive" objections by "experienced class counsel" convinced trial court to deny final approval, where plaintiff then voluntarily dismissed case there was no source of payment of fees for successful objector's counsel).

[11]      *See also Rodriguez II,* 688 Fed.3d at 659 (error to deny fee on grounds that district court relied on its "own analysis" of the law in determining forfeiture of lead counsel's fee on ethical grounds, where objection and subsequent appeal led to that result); *Reynolds v. Beneficial* **Error! Main Document Only.***Reynolds v. Beneficial Natl. Bk.*, 288 F.3d 277, 288 (7th Cir. 2002) (Posner, J.) (error to deny fee on grounds that court had "without telling anybody" previously reached the conclusion urged by objector's counsel); **Error! Main Document Only.***Green v. Transitron Electronics Corp.*, 326 F.2d 492, 498-99 (1st Cir. 1964) (same).

[12]      *See Bell Atlantic Corp. v. Bolger* 2 F.3d 1304, 1310 (3d Cir. 1993) (in settlement, courts lose benefits of adversarial process so that "objectors play an important role by giving courts access to information on the settlement's merits."); *Reynolds* v. *Beneficial National Bank*, 288 F.3d 277, 288 (7th Cir. 2002) (desirable participation of objectors in fairness hearings "is

---

accomplished by awarding successful objectors' counsel fees that fully

compensate the unique risks attending their work.

### 5. The Skill and Expertise of Mr. Davis's Counsel Support the Negotiated Fee

C. Benjamin Nutley, the attorney Mr. Davis retained to prosecute the

objection, is experienced in prosecuting objections, but also has experience

representing plaintiff classes in all phases of class action litigation. *See*

Nutley Decl. ¶1 and Exhibit 1 thereto. This combination of skill and

experience is highly unusual for objectors' counsel. Attorneys with the

qualifications to be certified as class counsel – who possess the experience

required to object most effectively – rarely undertake objection work. That

is not only because, as discussed above, serving honestly as objectors'

counsel is not nearly as lucrative. It is also because objectors and their

counsel are generally unwelcome litigation participants. *See* Leslie, *supra*,

59 Fla. L. Rev. at 98-99 & nn.180-82 (objectors are often subject to withering

*ad hominem* attack by supporters of the settlement and, sometimes, the trial

judge); Brunet, *supra*, 2003 U. Chi. Legal F.at 411 (concluding that

"[O]bjectors may be the least popular litigation participants in the history of

civil procedure."). That perception is augmented by the often uneven quality

---

encouraged by permitting lawyers who contribute materially to the
proceeding to obtain a fee."); *cf***Error! Main Document Only.**. *Seigal v.
Merrick*, 619 F.2d 160, 164-65 (2d Cir. 1980) (disapproving a trial court's
reduction of fees to an objector in a derivative case for efforts on theories
that did not ultimately prevail).

of objections, and by the participation of objectors who lodge generic objections for improper purposes. *See, e.g., Shaw v. Toshiba America Information Systems, Inc.*, 91 F.Supp.2d 942, 973-74 & nn. 17-19 (E.D. Texas 2000). This presents yet another basis for rewarding objectors' counsel when they are successful: to encourage the desirable participation of competent, qualified counsel.

## C. An Incentive Award for Mr. Davis is supported

Class Counsel have agreed not to oppose an allocation of $2,500 to Mr. Davis, to be paid from the $345,000 allocation, as an incentive award.[13] Mr. Davis was indispensable to the result obtained. Nutley Decl., ¶ 12. He maintained detailed records of his communications with Chase (*see* Doc. 64-1), such that his objection could not be dismissed as erroneous or anomalous. Because of his training as a lawyer, he understood the potential implications of Chase's omission and he provided far more advice and assistance to his counsel than a lay objector could. He committed substantial time and effort doing so. Davis Decl., ¶ 5 . Additionally, Mr. Davis declined to opt-out to pursue his own case against Chase, though his

[13] The criteria courts may consider in determining whether to make an incentive award include: 1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation and; 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation." *Van Vranken v. Atlantic Richfield Co.,* 901 F.Supp. 294, 299 (N.D.Cal.1995) (citations omitted).

documentation would have made such a case more viable, and more

valuable, than most.  These factors support the allocation of $2,500 as an

incentive payment.


Dated:        December 10, 2014

_/s/  C. Benjamin Nutley_
**Attorney for John W. Davis**
**Email:  Nutley@zenlaw.com**