UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Patricia Connor, Individually and on behalf of all those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>JPMorgan Chase Bank, N.A., et al.,<br><br>Defendants. | Case No.: 3:10-cv-1284-GPC-BGS<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR A SECOND DISTRIBUTION TO CLASS MEMBERS AND CY PRES DISTRIBUTION FROM THE RESIDUAL SETTLEMENT FUND**<br><br>[ECF No. 166.] |

Before the Court is Plaintiff Patricia Connor's Motion for a Second Distribution to Class Members and *Cy Pres* Distribution from the Residual Settlement Fund. ECF No. 166. Defendant JPMorgan Chase Bank, N.A. has filed a response noting that it does not object to the relief requested in Plaintiff's Motion, and specifically does not oppose Plaintiff's selection of *cy pres* recipients. ECF No. 169. For the reasons that follow, the Court **GRANTS** Plaintiff's Motion. The hearing on this matter is hereby **VACATED**.

\ \ \

## I. Background

On June 16, 2010, Plaintiff filed a putative class action complaint seeking damages and injunctive relief pursuant to the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 et seq. ECF No. 1. On February 15, 2015, the Court issued a Final Judgment and Order of Dismissal approving of the Settlement Agreement between the parties. ECF No. 160. The Settlement Agreement provided that each approved claimant would be issued a settlement check, the amount of which would depend on the number of claimants. ECF No. 160-1 ("Settlement Agreement") ¶ 5.01. Plaintiff states that although checks were issued to all claimants,[1] approximately 12% were not cashed, leaving a balance of $924,515.17 in the Settlement Fund from the uncashed checks. ECF No. 168 ("Perry Decl.") ¶¶ 2, 3.

Plaintiff now moves for the Court's authorization of a second distribution to the 94,811 claimants who cashed their initial checks. ECF No. 166-1 at 4. Plaintiff simultaneously moves for authorization of distribution of any unclaimed funds remaining after the second distribution to two proposed *cy pres* recipients, the Consumer Federation of America and New Media Rights. *Id.* at 5.

## II. Second Distribution

"Most class actions result in some unclaimed funds," and the Court has "broad discretionary powers in shaping equitable decrees for distributing unclaimed class action funds." *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1307 (9th Cir. 1990). The exercise of this discretion should be guided by the statutory scheme and the interests of the class members. *See id.*; *see also Lane v. Facebook, Inc.*, 696 F.3d 811, 821 (9th Cir. 2012). Although the terms of a settlement agreement may dictate how unclaimed settlement funds should be allocated, a district court may otherwise exercise its equitable powers in managing the distribution of the settlement proceeds. *See Beecher*

---

[1] Several thousand settlement checks were returned as undeliverable, and the majority of those checks were reissued to updated addresses. Perry Decl. ¶ 2.

*v. Able*, 575 F.2d 1010, 1016 (2d Cir. 1978) (noting equitable powers retained by a court overseeing distribution of settlement proceeds); *see generally* 4 Newberg on Class Actions § 12:28 (5th ed.).

Here, although the Settlement Agreement indicates that remaining settlement proceeds be distributed to a *cy pres* recipient,[2] Plaintiff argues that the parties did not contemplate a *cy pres* distribution of this size—almost $1 million—and thus a second distribution to claimants should be made before a *cy pres* distribution. In the *Malta* case, the court confronted a similar situation in which the plaintiff filed an unopposed motion for a second distribution of settlement proceeds. *See Malta v. Fed. Home Loan Mortg. Corp.*, No. 3:10-cv-01290-BEN-NLS, 2017 U.S. Dist. LEXIS 121844 (S.D. Cal. July 31, 2017). The court found that "although the Agreement provides for *cy pres* distribution of unclaimed funds from the first distribution of the Settlement Fund, it is not clear from the Agreement that a *cy pres* distribution of this size was contemplated." *Id.* at *7. The court, noting that a second distribution would be small but not *de minimis*, authorized a second distribution to those class members who had cashed the initial settlement checks despite there being no provision for a second distribution in the settlement agreement. *Id.* at *7–8.

The Court concurs with the reasoning in *Malta*. Like in *Malta*, the Settlement Agreement's brief reference to a *cy pres* distribution of remaining funds does not necessarily suggest that the parties contemplated such a large sum—over 10% of the total amount intended to be distributed to claimants—be directed towards a *cy pres* recipient when distribution to claimants remains viable. Defendant's lack of objection to the Motion supports this conclusion regarding the parties' intent. ECF No. 169; *cf. Malta*, 2017 U.S. Dist. LEXIS 121844 at *7 n.3. A second distribution here would also be

---

[2] The Settlement Agreement provides: "Any returned checks and un-cashed settlement checks shall be paid as a *cy pres* award as determined by the Parties and approved by the Court." Settlement Agreement ¶ 11.02.

feasible given that the amount remaining in the settlement fund, $924,515.17, would cover administrative costs associated with the distribution and result in a non-*de minimis* distribution of $8.19 to each claimant who had cashed the initial settlement check.[3] *See* Perry Decl. ¶ 4; *cf. Maxin v. RHG & Co., Inc.*, No. 16-CV-2625 JLS (BLM), 2019 WL 4295325, at *2 (S.D. Cal. June 24, 2019) (finding potential distribution of $1.89, prior to deduction of administration costs, *de minimis*); *Malta*, 2017 U.S. Dist. LEXIS 121844 at *4, 7 (finding payment amount of $3.07 not *de minimis*).

Further, although little case law addresses this precise issue, Ninth Circuit precedent regarding *cy pres* distributions affirms the Court's view that a second distribution to class members, where possible and not contrary to the aims of the settlement agreement,[4] is often preferable to a *cy pres* distribution. The *cy pres* (often translated as "next best") distribution approach is typically employed when distribution to individual class members is infeasible, but compensation directed towards to a related institution or non-profit organization would best approximate such benefits to the class. *See Nachshin v. AOL*, LLC, 663 F.3d 1034, 1038 (9th Cir. 2011); *see also* Principles of the Law of Aggregate Litigation § 3.07(b) (Am. L. Inst. 2010) ("[When funds remain,] the settlement should presumptively provide for further distributions to participating class members unless the amounts involved are too small to make individual distributions economically viable or other specific reasons exist that would make such further distributions impossible or unfair."). Accordingly, although the Settlement Agreement does not expressly contemplate a second distribution to claimants, directing the

---

[3] Plaintiff does not provide a specific explanation for why the Motion proposes to distribute the second round of checks only to claimants who cashed the initial settlement checks. *See* ECF No. 166-1 at 4; Perry Decl. ¶ 4. However, like in *Malta*, the Court notes it is not likely that claimants who did not cash the initial check for approximately $70 would cash a second check for roughly $8. *See Malta*, 2017 U.S. Dist. LEXIS 121844 at *7–8.

[4] A second distribution might not be appropriate where such a payment would result in a significant "windfall" to a limited number of claimants to the detriment of class members who did not submit claims, but that does not appear to be the case here, where the second distribution is only about $8. *See generally* 4 Newberg on Class Actions § 12:30 (5th ed.).

remaining funds towards the claimants would further the settlement's purpose of compensating claimants for potential violations of the TCPA. *Cf. Hester v. Vision Airlines, Inc.*, No. 2:09-CV-00117-RLH, 2017 WL 4227928, at *2 (D. Nev. Sept. 22, 2017) (finding that a second distribution would "bring the class members closer to [the full] value of their claims") (internal quotation marks and citations omitted).

Thus, the Court GRANTS Plaintiff's Motion for a Second Distribution to Class Members.

### III.  *Cy Pres* Distribution

"*Cy pres* provides a mechanism for distributing unclaimed funds to the next best class of beneficiaries." *In re Easysaver Rewards Litig.*, 906 F.3d 747, 760 (9th Cir. 2018). Courts have approved *cy pres* where "proof of individual claims would be burdensome or distribution of damages costly." *Six Mexican Workers*, 904 F.2d at 1305. A determination of whether an entity is an appropriate recipient of a *cy pres* distribution must take into account "the nature of the plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class members, including their geographic diversity." *Nachsin*, 663 F.3d at 1036. In *Nachsin*, the Ninth Circuit held that the objectives of the Electronic Communications Privacy Act, at issue, had nothing to do with the *cy pres* donations to Legal Aid Foundation of Los Angeles, the Boys and Girls Clubs of Santa Monica and Los Angeles, and the Federal Judicial Center Foundation. *Id.* While the *cy pres* recipient need not be ideal, it must bear "a substantial nexus to the interests of the class members." *Lane*, 696 F.3d at 821.

Here, although Plaintiff cannot calculate precisely the amount of unclaimed funds that will remain after the second distribution, it is likely to be *de minimis*. The experience of the first distribution suggests that many, but not all, claimants will cash the second settlement checks. *See* Perry Decl. ¶ 3. Even if far fewer claimants cash the second settlement checks due to their lower value, a third distribution would entail yet another set of administration costs, potentially again exceeding $100,000. *See id.* (noting that administrative costs for the second distribution are estimated to be $147,877.95).

1   Therefore, it is unlikely that following a second distribution there will be more than *de*
2   *minimis* funds available for a third distribution given the administrative costs associated
3   with distribution to claimants.  It would therefore be burdensome, and contrary to the
4   language of the Settlement Agreement, to require a third and likely *de minimis*
5   distribution to claimants before permitting distribution to a *cy pres* recipient.
6          Additionally, the Court finds that there is a "substantial nexus" between the
7   interests of the class members and the proposed *cy pres* recipients, the Consumer
8   Federation of America ("CFA") and New Media Rights ("NMR"), and that a *cy pres*
9   distribution to these organizations would be consistent with the objectives of the TCPA.
10  In this lawsuit, Plaintiff and the class members alleged violations of the TCPA, arising
11  from Defendants' alleged use of an automated dialer or artificial or prerecorded voice to
12  contact class members on their cell phones. *See* Settlement Agreement ¶ 1.01.  NMR is a
13  program at Western School of Law that works to advance the privacy rights of consumers
14  and others through pro bono legal services and education. *See generally* ECF No. 166-3
15  ("Neill Decl.").  Additionally, NMR helps small businesses and non-profits comply with
16  privacy laws like the TCPA to protect consumer privacy before violations occur, which
17  would directly serve the interests of class members. *Id.* at 1–2.  CFA is an association of
18  consumer rights-focused non-profit groups that works to advance the interests of
19  consumers.  *See generally* ECF No. 166-2 ("Weintraub Decl.").   Although CFA's
20  mission is broader in scope and not specifically targeted towards privacy and technology,
21  the organization advocates for the enforcement of the TCPA and similar laws and will
22  generally further the interests of class members by advancing consumer protection
23  through research, education, and advocacy. *Id.* ¶¶ 3, 6, 7.  CFA operates at the national
24  level, Weintraub Decl. ¶ 4, and NMR engages in both national and local work, Neill
25  Decl. at 2–3.  As the Settlement Agreement does not specify the geographic location of
26  the class members, these *cy pres* recipients reflect an appropriate geographic scope.  *See*
27  Settlement Agreement ¶ 2.16.
28         The Court therefore GRANTS Plaintiff's Motion for *Cy Pres* Distribution from the

Residual Settlement Fund.

## IV. Conclusion

For the reasons set forth above, the Court hereby:

1. **GRANTS** Plaintiff's Motion for a Second Distribution to Class Members;

2. **GRANTS** Plaintiff's Motion for a *Cy Pres* Distribution from the Residual Settlement Fund to be completed should there be funds remaining following the second distribution, to recipients CFA and NMR; and

2. **VACATES** the hearing currently set for April 9, 2021.

**IT IS SO ORDERED.**

Dated: April 2, 2021

Hon. Gonzalo P. Curiel
United States District Judge